UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAWKER MEDIA, LLC and GREGG D.
THOMAS,

           Plaintiffs,

                            Case No.:  8:15-cv-01202-SCB-EAJ

vs.

                            **DISPOSITIVE MOTION**

THE FEDERAL BUREAU OF
INVESTIGATION and THE EXECUTIVE
OFFICE OF UNITED STATES ATTORNEYS

           Defendants.

_____/

## PLAINTIFFS' DISPOSITIVE MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

Gawker Media, LLC and its counsel Gregg D. Thomas, Esq. (together, "Gawker"),

respectfully move the Court for summary judgment ordering Defendants, the Federal Bureau of

Investigation ("FBI") and the Executive Office of United States Attorneys ("EOUSA") (together,

the "Agencies"), to promptly disclose wrongfully withheld public records requested by Gawker

under the Freedom of Information Act ("FOIA").

### PRELIMINARY STATEMENT

Gawker is currently defending against a $100 million lawsuit in Florida state court

brought by the celebrity known as Hulk Hogan ("Hogan"), following his earlier, aborted lawsuit

against it in this Court.  Thomas, together with the other below-listed counsel, have served as

counsel for Gawker and other related defendants in both lawsuits.

Both lawsuits arose out of a report and commentary Gawker published in 2012 about

Hogan and, in particular, the ongoing controversy over video footage depicting him having sex

with Heather Clem, the wife of Hogan's best friend, radio shock jock Bubba the Love Sponge

1

Clem.  Gawker had received from an unknown source a copy of about 30 minutes of such video footage, and included about a minute-and-a-half of heavily edited excerpts with its report (referred to herein as the "Gawker Story").

At around the time Gawker published that report, a lawyer from Los Angeles was separately – and unbeknownst to Gawker – attempting to sell to Hogan video footage depicting him having sex with Mrs. Clem.  Without specifically mentioning those events, Hogan and his long-time counsel, David Houston, Esq., publicly announced that they were contacting the FBI's Tampa Field Office.  The FBI investigated the matter, but the U.S. Attorney's Office for the Middle District of Florida declined to prosecute.  Now, close to three years later, any potential involvement of either of the Agencies is decidedly over.  The facts demonstrating this are set forth below, in the accompanying Declaration of Gregg D. Thomas (the "Thomas Decl.") and, because Hogan designated some of those facts as confidential under a protective order in the Florida state action, a separate Confidential Declaration of Gregg D. Thomas (the "Conf. Thomas Decl."), that Gawker is moving to file under seal.

On November 8, 2013, more than a year after the events at issue, Gawker requested, via FOIA, public records relating to the FBI investigation for use in its defense against Hogan's lawsuit.  Gawker wanted, for example, to determine whether what Hogan was telling the Agencies was consistent with his position in his lawsuit against Gawker and wanted to obtain the raw materials (video, emails, and the like) that have been determined by the Florida state court to be critical to its case.  Initially, the FBI raised privacy concerns, so Gawker requested records authorizations from Hogan and his counsel.  They refused, but after a year of litigation on that subject were ultimately ordered by the Florida courts to provide the signed authorizations for the release of the records.  Heather Clem provided one as well.  Gawker then submitted those

authorizations with renewed requests, asking both the FBI and the EOUSA for the records in early November 2014, more than six months ago.

The FBI has now refused to produce *any* records about the investigation on the grounds that they are exempt from disclosure under FOIA's law enforcement exemption, 5 U.S.C. § 552(b)(7)(A).  The EOUSA has not responded at all, and its failure to do so is deemed a constructive denial of the request.  Because Exemption 7(A) cannot possibly apply to records from an investigation which is clearly long since over, Gawker seeks relief in this Court to obtain documents that are critical to its defense of its First Amendment rights in the underlying case. As explained below and in the accompanying declarations, there is no valid basis to withhold them.

## MOTION FOR SUMMARY JUDGMENT

1.      In October 2012, Gawker published a news report and commentary about video footage it had obtained depicting Hogan's sexual affair with Heather Clem, the wife of his best friend, the radio shock jock Bubba the Love Sponge Clem.  Along with the report and commentary, Gawker also published short and heavily-edited excerpts of the video footage.  As a result of that publication, Hogan filed a $100 million lawsuit against Gawker, alleging claims for invasion-of-privacy and related torts.

2.      In connection with its defense of that lawsuit, Gawker sought, under FOIA, records from the FBI and the EOUSA related to an investigation conducted by the FBI in 2012 into the source and distribution of video footage depicting Hogan and Ms. Clem, focusing on a Los Angeles lawyer who was – unbeknownst to Gawker – attempting to sell the video footage to Hogan.

3.      The EOUSA never responded to Gawker's FOIA request.  The FBI (at the initial stage and on administrative appeal) denied Gawker's request on the grounds that disclosure would interfere with an ongoing or prospective law enforcement investigation, and thus the records were exempt under 5 U.S.C. § 552(b)(7)(A).

4.      The FBI's invocation of the law enforcement exception is erroneous in light of the facts that (1) substantial evidence confirms that there is no ongoing or prospective investigation (which precludes invocation of Exemption 7(A)), and, (2) even if there were, the FBI and EOUSA have not shown and cannot show that release of the documents requested by Gawker would interfere with any such investigation.  Because these are legal questions based on undisputed facts, Gawker therefore moves for summary judgment.

## MEMORANDUM OF LAW

## FACTUAL BACKGROUND

**A.      The FBI Investigation**

Hogan made many public statements about the sex tape controversy, complaining that the video footage depicting his sexual affair with Ms. Clem had been unlawfully recorded and was being unlawfully disseminated.  Among those statements, Hogan and his counsel announced to to the media that they had contacted the FBI, and requested that the Bureau investigate.  *See* Thomas Decl. ¶ 5 & Exs.  1-5.  Hogan's counsel later confirmed in the lawsuit against Gawker that the FBI had indeed commenced a criminal investigation into the "source and distribution" of the video footage at issue.  *Id.* ¶ 6 & Ex.  6.  In particular, the FBI investigated a lawyer from Los Angeles who attempted to sell Hogan video footage of him and Ms. Clem to Hogan for a substantial payment.  *See* Thomas Decl. at ¶ 7; Conf. Thomas Decl. at ¶¶ 4-6 & Exs. 26-C & 27-

C. As described below, however, no one was ever prosecuted, and for some time now both the Agencies and Hogan have treated the matter as effectively over.

**B.      The Litigation Against Gawker**

Hogan initially sued Gawker in this Court under a variety of legal theories, seeking to recover $100 million in damages and to enjoin Gawker's continued publication of the Gawker Story.  Hogan repeatedly sought preliminary injunctive relief from this Court, which rejected those serial requests on the grounds that the Gawker Story was a news report and commentary on a matter of public concern and that its publication was protected by the First Amendment.[1]

Having had no success in this Court, Hogan dismissed his action and re-filed his claims in Florida state court on December 28, 2012, seeking damages and various injunctive relief and joining those claims to his existing state court lawsuit against Heather Clem (the "Florida Litigation").  *See* Thomas Decl. Ex. 7 (Am. Compl., *Bollea v. Clem, et al.*, No. 12012447-CI-011 (Fla. Cir. Ct.)).  Gawker removed the case to this Court, which granted Hogan's motion to remand.  *See Bollea v. Clem*, 937 F. Supp. 2d 1344 (M.D. Fla. 2013).

Notwithstanding this Court's prior rulings, following remand, the Florida trial court issued a temporary injunction enjoining continued publication.  That order was immediately stayed and then unanimously reversed by the Florida District Court of Appeal, which also found that Gawker's publication involved a matter of public concern and was protected by the First Amendment.  *See Gawker Media, LLC v. Bollea*, 129 So. 3d 1196 (Fla. 2d DCA 2014).  Despite that appellate ruling on a dispositive legal issue, the state trial court denied Gawker's motion to

---

[1] *Bollea v. Gawker Media, LLC*, No. 8:12-CV-02348-T-27, Dkt. 8 (M.D. Fla. Oct. 22, 2012) (denying motion for temporary restraining order); *Bollea v. Gawker Media, LLC*, 2012 WL 5509624, at *4-5 (M.D. Fla. Nov. 14, 2012) (denying motion for preliminary injunction); *Bollea v. Gawker Media, LLC*, No. 8:12-CV-02348-T-27, Dkt. 61 (M.D. Fla. Dec. 4, 2012) (denying motion for injunction pending appeal); *Bollea v. Gawker Media, LLC*, 913 F. Supp. 2d 1325, 1331 (M.D. Fla. 2012) (denying motion for preliminary injunction on copyright grounds).

dismiss and ordered the parties to proceed with discovery, including as is relevant here, discovery related to the FBI investigation.  Thomas Decl. ¶ 9.

**C.**     **It Becomes Clear Through Discovery That the Agencies' Investigation is Over.**

In discovery, Gawker sought (a) Hogan's documents related to the FBI investigation, and (b) a Department of Justice-issued records authorization to allow Gawker to submit the FOIA requests at issue here.  *Id.* ¶ 10.  Hogan objected to such discovery, contending both that it was irrelevant and that it would interfere with an ongoing law enforcement investigation.  Both the Special Discovery Magistrate (Hon. James R. Case, Ret.) and the presiding Florida trial court judge (Hon. Pamela A.M. Campbell) rejected Hogan's arguments, with the latter finding, *inter alia*, that this information was relevant and concerned a critical aspect of the case.  Thomas Decl. ¶ 12-13 & Exs. 9-10; Conf. Thomas Decl. Ex. 30-C at 6:4-8.[2]  With respect to the records authorizations, Hogan's efforts to have the trial court's ruling overturned by the District Court of Appeal were also unsuccessful.  *See Bollea v. Clem*, 151 So. 3d 1241 (Fla. 2d DCA 2014) (Table) (dismissing writ petition).

With respect to Hogan's claim that the discovery sought from him and a FOIA request to the Agencies would interfere with an ongoing law enforcement investigation, Gawker contacted the Agencies and explained that it had no interest in interfering with any active investigation.  In response, the U.S. Attorney's Office confirmed that:

(a) the Government was "not asserting any privilege with respect to documents that [Hogan] or his counsel have in their possession, including the documents on [Hogan's] privilege log" asserting a law enforcement privilege;

---

[2] *See also* Thomas Decl. Ex. 14 (Jan. 17, 2014 Hrg. Tr.) at 32:1 – 33:23 (finding, at an earlier hearing, that any other video footage goes to "the credibility of Mr. Bollea as far as his knowledge of the Clems – Mr. and Mrs. Clem's practices as far as taping or any other – the credibility of Mr. Bollea, his knowledge, his sense of taping, those kinds of things").

(b) Gawker "would not be interfering in any way with any investigation if those
documents were disclosed or if [it] contact[s] witnesses who may have provided
information to the Government";

(c) Hogan and his counsel were not currently under any instructions "by the Government
not to speak about these subjects or any investigation"; and

(d) Gawker was not a target or subject of any investigation (addressing Hogan's
contention to the contrary).

Thomas Decl. ¶ 19 and Ex. 15 (describing and attaching email confirming same from Sara
Sweeney, the AUSA responsible for the matter).  The Section Chief in the U.S. Attorney's
Office further confirmed the United States was not asserting any evidentiary law enforcement
privilege in connection with the information sought in the Florida Litigation.  *Id.* ¶ 20 & Ex. 16.
And, the FBI similarly confirmed that its position "echoed" that of the U.S. Attorney's Office,
including that the FBI was not asserting any law enforcement privilege with respect to Hogan's
records relating to the investigation and that Gawker could "do what it needed to do" without in
any way interfering with any investigation.  *Id.* ¶ 21 & Ex. 16.

Hogan was thus ordered to provide records authorizations for him and his counsel, and to
produce his documents related to the FBI investigation.  *See* Thomas Decl. ¶¶ 13, 16 & Exs. 10,
13 (orders granting motions to compel Hogan's investigation-related documents and orders and
hearing transcript related to FBI authorizations); Conf. Thomas Decl. ¶ 10 & Ex. 30-C (Apr. 23,
2014 Conf. Hrg. Tr.) at 6:2-11 (confidential hearing transcript related to Hogan's records).
Hogan designated the records he produced as confidential under the confidentiality order
governing discovery in the Florida state court case.  The import of those records on this matter,

and on this motion, is therefore further addressed in the Confidential Thomas Declaration, at

¶¶ 11-12, and the exhibits attached thereto.

**D.      The FOIA Requests**

Through its counsel, Gawker submitted a FOIA request on November 8, 2013 seeking all

records in the custody of the FBI relating to its investigation of this matter.  Thomas Decl. Ex.

18.  The FBI denied that request, citing only privacy concerns and making no reference to any

interference with law enforcement investigation or the law enforcement exemption.  *Id.* Ex. 19.

As described above, following a year of litigation before the Special Discovery Magistrate,

Circuit Court, and the District Court of Appeal, Hogan and his counsel were compelled to

provide signed records authorizations so that the records could be released.  (Mrs. Clem, now

known as Heather Cole, provided a similar authorization without objection.  *See* Thomas Decl.

¶¶ 14-16, and exhibits attached thereto.)

On November 7, 2014, Gawker renewed its request to the FBI and submitted an identical

one to the EOUSA, in both cases enclosing the records authorizations from Hogan, his counsel,

and Ms. Clem/Cole.  Thomas Decl. Exs. 20 & 21.  Gawker specifically enumerated certain

categories of records it was seeking relating to the FBI investigation:

(1)  communications between Hogan and his counsel with the FBI;

(2)  documents related to video recordings depicting Hogan engaged in sexual activity

with Ms. Clem, including the recordings themselves;

(3)  statements by Hogan and/or his counsel; and

(4)  records pertaining to the source and distribution of the video recordings, or attempts

to disseminate or sell those video recordings.

*Id.* On January 29, 2015, the FBI advised that it had located 1,168 pages of responsive records and two CDs containing responsive video material. Thomas Decl. Ex. 22. Gawker responded on February 3, 2015, accepting all duplication charges and requesting expedited treatment on the basis of discovery deadlines in the Florida Litigation. Thomas Decl. Ex. 23.

By letter dated February 4, 2015, however, the FBI denied the request in full and declined to produce any records, citing only Exemption 7(A), the law enforcement exemption. Thomas Decl. Ex. 24 (the "Denial"). The FBI provided nothing more than a conclusory assertion of the exemption, stating only: "The records responsive to your request are law enforcement records; there is a pending or prospective law enforcement proceeding relevant to these responsive records, and release of the information in these responsive records could reasonably be expected to interfere with enforcement proceedings." *Id.*

On March 4, 2015, Gawker submitted an administrative appeal from the FBI's Denial. Conf. Thomas Decl. Ex. 34-C. In the administrative appeal, Gawker pointed out that, as noted above, there was no ongoing investigation, no showing of any interference, and thus no proper basis for wholesale denial. *Id.* at 4-6. Gawker also explained that the FBI had a responsibility to conduct its review (and justify withholding) on a category-by-category basis, and requested that the FBI provide a specific explanation why it was denying Gawker's request for each category of documents. *Id.* at 4-6.

On May 6, 2015, the Department of Justice affirmed the FBI's decision not to disclose any records. Thomas Decl. Ex. 25 (the "Final Determination"). The Final Determination did not dispute or rebut any of the showings Gawker made in its administrative appeal – it neither asserted that any investigation exists, nor claimed that any such investigation would be harmed by disclosure of any responsive records. *Id.* And it did not contain any explanation of the

reasons it believed Exemption 7(A) applied.  *Id.*  Rather, the Final Determination stated only:

"The FBI properly withheld certain information in full because it is protected from disclosure

under the FOIA pursuant to 5 U.S.C. § 552(b)(7)(A).  This provision concerns records or

information compiled for law enforcement purposes the release of which could reasonably be

expected to interfere with enforcement proceedings."  *Id.*

Despite the passage of more than six months and repeated efforts to follow up, the

EOUSA has still not responded to Gawker's request at all.  Thomas Decl. ¶ 35.[3]

## ARGUMENT

## I.    SUMMARY JUDGMENT SHOULD BE GRANTED.

Summary judgment is appropriate if "there is no genuine issue as to any material fact"

and "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  FOIA

cases "should be handled on motions for summary judgment, once the documents in issue are

properly identified," because the records speak for themselves and the propriety of their

withholding is a matter of law.  *Miccosukee Tribe of Indians of Florida v. United States*, 516

F.3d 1235, 1243 (11th Cir. 2008) (*quoting Miscavige v. I.R.S.*, 2 F.3d 366, 369 (11th Cir. 1993)).

On that question, the Court's review is *de novo*, 5 U.S.C. § 552(a)(4)(B), and "the burden is

squarely on the government to prove that the information in question is covered by one of the

exemptions."  *Ely v. F.B.I.*, 781 F.2d 1487, 1489-90 (11th Cir. 1986).  Where, as here, "it is

determined that records do exist, the District Court must do something more to assure itself of

---

[3] Having failed to respond, the EOUSA has constructively denied the Request.
*Miccosukee Tribe of Indians of Florida v. U.S. Dep't of Justice*, 2015 WL 1649957, at *6 (S.D.
Fla. Apr. 14, 2015) (EOUSA's failure to respond within statutory deadline satisfied requirement
that requestor exhaust administrative remedies).

the factual basis and bona fides of the agency's claim of exemption than rely solely upon an

affidavit." *Stephenson v. I.R.S.*, 629 F.2d 1140, 1145 (5th Cir. 1980).

## II.     THE LAW ENFORCEMENT EXEMPTION CANNOT AND DOES NOT JUSTIFY WITHHOLDING THE REQUESTED RECORDS.

To lawfully withhold records under FOIA, the government must demonstrate with

concreteness and specificity that the exemption it invokes permits withholding.  "An agency

cannot meet its statutory burden of justification by conclusory allegations." *Mead Data Cent.,*

*Inc. v. Dep't of the Air Force*, 566 F.2d 242, 258 (D.C. Cir. 1977); *id.* at 251 (agencies must

provide "relatively detailed justification, specifically identifying the reasons why a particular

exemption is relevant and correlating those claims with the particular part of a withheld

document to which they apply"); *Stephenson*, 629 F.2d at 1144, n.9 ("blanket objections" and

"mere conclusory allegations" are insufficient).  Here, the EOUSA has not provided any reasons

at all for its withholding, and the FBI simply parroted back the statutory language of

Exemption 7(A) without explaining how or why it applies to every document that Gawker seeks,

at least some of which have already been disclosed by Hogan with the Agencies' express

consent.  For this reason alone, Gawker is entitled to summary judgment.

But even if the Agencies' wholesale failure to explain themselves were not sufficient to

entitle Gawker to relief, the facts and evidence in this case make clear that Exemption 7(A)

cannot possibly apply.  Under that exemption, an agency may withhold from disclosure "records

or information compiled for law enforcement purposes, *but only to the extent that the production*

*of such law enforcement records or information could reasonably be expected to interfere with*

*enforcement proceedings*." 5 U.S.C. § 552(b)(7)(A) (emphasis added).  "[E]xemption 7(A) was

enacted in 1974 mainly to overrule judicial decisions that prohibited disclosure of investigatory

files in 'closed' cases" because "when the investigation is all over and the purpose and point of it

has expired, it would no longer be an interference with enforcement proceedings and there ought to be . . . disclosure." *Moorefield v. U.S. Secret Serv.*, 611 F.2d 1021, 1024-25 (5th Cir. 1980) (citations omitted).  Thus, to rely on this exemption, agencies have the burden of showing two things: (1) that a law enforcement proceeding is either underway or actually prospective, and (2) that the release of responsive records "could reasonably be expected to interfere" with those current or prospective proceedings.  5 U.S.C. § 552(b)(7)(A).  The Government has not, and cannot, meet this burden.

    **A.**    **The Government's Claim That There Is An Active Investigation Cannot Withstand Scrutiny.**

As explained above and in the accompanying affidavits, both the FBI and the U.S. Attorney's Office for the Middle District of Florida have effectively confirmed that there are no ongoing or prospective enforcement proceedings.  *See* Thomas Decl. ¶¶ 20-23 & Exs. 16-17; Conf. Thomas Decl. at ¶¶ 7-9 & Exs. attached thereto (reciting substantial evidence that any investigation into this matter is over).  There is no pending or reasonably anticipated law enforcement proceeding relating to the requested records.  And the FBI's conclusory assertion to the contrary does not withstand scrutiny.  *See, e.g.*, *Linn v. Dep't of Justice*, 1995 WL 417810, at *9 (D.D.C. June 6, 1995) (rejecting agency's assertion of law enforcement exemption where agency averred only that "some unspecified investigation. . . was ongoing," and the release of the information sought would interfere with it); *North v. Walsh*, 881 F.2d 1088, 1100 (D.C. Cir. 1989) (disclosure "cannot interfere with parts of the enforcement proceeding already concluded").  With any investigation long since over, Exemption 7(A) simply cannot apply.

**B.      The Government Has Not Shown, and Cannot Show, that Release of the Requested Records Would "Interfere" With Any Ongoing Investigation.**

*Even if* there were an ongoing investigation, the Agencies have not made any showing, as they must, that the categories of materials requested pose any specific threat to the integrity of the supposed investigation.  *See Van Bilderbeek v. Dep't of Justice*, 416 F. App'x 9, 13 (11th Cir. 2011) (agency cannot categorically withhold all documents found in investigative file, even of active investigation, where some are "publicly known" or not likely to interfere); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1114 (D.C. Cir. 2007) (agencies must provide "specific information about the impact . . . the disclosures" would have on the investigation); *Kuffel v. U.S. Bureau of Prisons*, 882 F. Supp. 1116, 1126 (D.D.C. 1995) (agency must be "specific as to what information is being withheld and the distinct harm that could result from its disclosure"); *see also Cuban v. SEC*, 744 F. Supp. 2d 60, 85 (D.D.C. 2010) (law enforcement exemption "is not meant to be a 'blanket exemption' for any files or records that are relevant to an investigation – their disclosure must be reasonably expected to interfere in a 'palpable, particular way' with the investigation").

To justify withholding records about an active investigation, "the FBI has a three-fold task.  First, it must define its categories functionally.  Second, it must conduct a document-by-document review in order to assign documents to the proper category.  Finally, it must explain . . . how the release of each category would interfere with enforcement proceedings."  *Bevis v. Dep't of State*, 801 F.2d 1386, 1389-90 (D.C. Cir. 1986); *see also Tipograph v. Dep't of Justice*, 2015 WL 1245921, at *4 (D.D.C. Mar. 18, 2015) (FBI required to perform detailed review of records *at the administrative stage*).

The Agencies have done none of this, nor could they meet their burden under this test. Indeed, much of the information related to the aborted investigation has already been disclosed –

either by Hogan in discovery or by other media in their news reporting – and the Agencies have not claimed that this disclosure has had any negative effect on any "investigation."  Nor have they explained why they themselves have not produced this same information, which is plainly responsive to Gawker's Request.  *See, e.g.*, *Scheer v. Dep't of Justice*, 35 F. Supp. 2d 9, 14 (D.D.C. 1999) (an agency "cannot successfully claim that disclosure of the same information" that was previously disclosed "would have resulted in distinct harm").  There is thus no reasonable basis to believe that release of related documents would somehow be detrimental to any ongoing investigation.  And even if adequate showings could be made for certain records or categories of records, the Agencies have offered no justification for withholding every portion of every single one of the 1,168 responsive documents and video files in their possession.  *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (it is incumbent on the government to ensure that "any 'reasonably segregable' information from those [properly exempted] documents [is] disclosed after redaction of the exempt information").

## CONCLUSION

For the foregoing reasons, summary judgment is appropriate here.  Gawker respectfully requests that this Court order the Agencies to produce the requested records within 10 days of its order.  Upon entry of such an order, Gawker reserves its right to move for an award of attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E)(i).

Respectfully submitted,

THOMAS & LOCICERO PL

By:  ___/s/ Gregg D. Thomas_____
    Gregg D. Thomas
    Florida Bar No.: 223913
    Rachel E. Fugate
    Florida Bar No.: 0144029
601 South Boulevard
P.O. Box 2602 (33601)
Tampa, FL 33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070
gthomas@tlolawfirm.com
rfugate@tlolawfirm.com

*Counsel for Plaintiffs*

*Of counsel:*

Seth D. Berlin
Pro hac vice application forthcoming
Alia L. Smith
Pro hac vice application forthcoming
Patrick Kabat
Pro hac vice application forthcoming
LEVINE SULLIVAN KOCH & SCHULZ, LLP
1899 L Street, NW, Suite 200
Washington, DC 20036
Telephone: (202) 508-1122
Facsimile: (202) 861-9888
sberlin@lskslaw.com
asmith@lskslaw.com
pkabat@lskslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of May 2015 a true and correct copy of the

foregoing, together with the Declaration of Gregg D. Thomas, is being electronically filed via

CM/ECF.  It is also being served, by certified mail, on the following:

> Loretta Lynch
> Attorney General of the United Stats
> U.S. Department of Justice
> 950 Pennsylvania Ave., NW
> Washington, DC 20530
>
> The Federal Bureau of Investigation
> 933 Pennsylvania Ave., NW
> Washington, DC 20530
>
> The Executive Office of United States Attorneys
> 950 Pennsylvania Ave., NW, Room 2242
> Washington, DC 20530.

It is being served by hand on the following:

> Office of the United States Attorney for the Middle District of Florida
> Attention:  Civil Process Clerk
> 400 North Tampa Street, Suite 3200
> Tampa, FL 33602

_____/s Gregg D. Thomas_____
Attorney