UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAWKER MEDIA, LLC and GREGG D. THOMAS,

    Plaintiffs,

vs.

Case No.: 8:15-cv-01202-SCB-EAJ

THE FEDERAL BUREAU OF INVESTIGATION and THE EXECUTIVE OFFICE OF UNITED STATES ATTORNEYS

    Defendants.

_____/

## DECLARATION OF GREGG D. THOMAS

I, Gregg D. Thomas, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct:

1. The statements made in this Declaration are based on my personal knowledge.

2. I am a partner at Thomas & LoCicero PL, counsel for plaintiffs in the above-captioned matter. My firm, along with the law firm of Levine Sullivan Koch & Schulz, LLP, also serves as defense counsel for Gawker Media, LLC and other related entities and individuals, in connection with the related case *Bollea v. Clem, et. al.*, No. 12012447-CI-011, currently pending in state court in Pinellas County (referred to herein as the "Florida Litigation"). The plaintiff in that case is Terry Gene Bollea, the celebrity widely known as "Hulk Hogan" ("Hogan").

3. I submit this Declaration in support of plaintiffs' motion for summary judgment, filed herewith, which seeks to compel the FBI and Executive Office of the United States Attorneys ("EOUSA") to release, as required under the Freedom of Information Act, certain

1

records critical to the defense of the Florida Litigation. I am also submitting a supplemental Confidential Declaration in order to put before this Court certain evidence that has been designated as "CONFIDENTIAL" or "CONFIDENTIAL – Attorneys' Eyes Only" under the protective order in place in the Florida Litigation.

### A. The FBI Investigation

4. The Florida Litigation arises out of an article published by Gawker in October 2012 reporting on a controversy involving video footage of Hogan having sexual relations with Heather Clem, the wife of his best friend, radio shock jock Bubba the Love Sponge Clem.

5. Attached hereto are examples of news articles reporting about statements by Hogan and his counsel to the media that they had contacted the FBI, and requested that the Bureau investigate, including:

   a. Attached hereto as Exhibit 1 is a true and correct copy of an article published by *TMZ* on October 14, 2012, entitled "Hulk Hogan Contacts FBI Over Leaked Sex Tape." It reports that "Hulk's lawyer says he has contacted the FBI to track down the sex tape leaker . . . and bring that person to justice. We're told Hulk plans to meet with FBI agents on Monday."

   b. Attached hereto as Exhibit 2 is a true and correct copy of an article published by *SFGate* on October 16, 2012, entitled "Hulk Hogan Sues for $100 Million Over Sex Tape Leak." It reports that Hogan has "called in the FBI."

   c. Attached hereto as Exhibit 3 is a true and correct copy of an article published by the *Daily Mail* on October 14, 2012, entitled "Hulk Hogan 'to contact the FBI over sex tape to bring the perpetrator to justice' after best friend Bubba the Love

      Sponge is 'cleared of leak.'" It reports that "Hogan plans to contact the FBI over the leak."

    d. Attached hereto as Exhibit 4 is a true and correct copy of an article published by *TMZ* on October 9, 2012, entitled "Hulk Hogan – Yes, I Banged Bubba's Wife Heather Clem." It reports that Hogan told Howard Stern that he was "working with officials to find out who released the tape . . . because he swears he didn't know he was being recorded . . . and vows to press charges against the perpetrator."

    e. Attached hereto as Exhibit 5 is a true and correct copy of an article published by *USA Today* on October 5, 2012, entitled "Hulk Hogan Fights Sex Tape Leak," which reports statements by Hogan's counsel David Houston that his team is "doing everything in our power to unearth whomever has done this and . . . to see they are prosecuted to the full extent of the law."

6.     Attached hereto as Exhibit 6 is a true and correct copy of an Affidavit dated March 5, 2014, signed by David Houston in the Florida Litigation, confirming that the FBI had indeed commenced a criminal investigation into the "source and distribution" of the video footage at issue.

7.     Gawker also learned that the FBI investigation centered around a lawyer from Los Angeles who attempted to sell Hogan video footage of him and Ms. Clem for a substantial payment. It is Gawker's and my understanding that no one was ever prosecuted. (Additional information concerning the investigation is set forth in my accompanying Confidential Declaration at ¶¶ 4-15.)

3

B. **The Florida Litigation, and Discovery Confirming Any Investigation is Over**

8. Attached hereto as Exhibit 7 is a true and correct copy of the First Amended Complaint in the Florida Litigation asserting claims against Gawker for invasion-of-privacy and other related causes of action.

9. The Florida trial court denied Gawker's motion to dismiss and ordered the parties to proceed with discovery, including as is relevant here, discovery related to the FBI investigation.

10. In discovery, Gawker sought (a) Hogan's documents related to the FBI investigation, and (b) a Department of Justice-issued records authorization to allow Gawker to submit the FOIA requests at issue here.

11. Attached hereto as Exhibit 8 is a true and correct copy of Gawker's Document Request No. 52, which requested that Hogan produce "documents in any manner referring or relating to communications between you or anyone acting on your behalf and any law enforcement person or agency concerning any recording of you having sexual relations with Heather Clem."

12. Attached hereto as Exhibit 9 is a true and correct copy of the February 28, 2014 Report and Recommendation of Special Discovery Magistrate James R. Case in the Florida Litigation recommending that the Court grant Gawker's motion to compel Hogan to respond to Document Request No. 52 concerning the his communications with law enforcement agencies.

13. Attached hereto as Exhibit 10 is a true and correct copy of the April 23, 2014 order by the judge presiding over the Florida Litigation, the Honorable Pamela A.M. Campbell, granting Gawker's motion to compel Hogan to respond to Gawker's Document Request No. 52 seeking his communications with law enforcement agencies. (The transcript reflecting the

parties' arguments concerning this motion were designated as confidential at Hogan's request, and excerpts are therefore submitted with my Confidential Declaration.)

14. Attached hereto as Exhibit 11 is a true and correct copy of excerpts from a transcript of a January 31, 2014 hearing in the Florida Litigation before the Special Discovery Magistrate at which he concluded that Hogan and his counsel should be required to provide Gawker with signed records authorizations, on Department of Justice-issued forms, authorizing the release of records related to the FBI's investigation concerning the sex tape.

15. Attached hereto as Exhibit 12 is a true and correct copy of the Special Discovery Magistrate's February 5, 2014, Report and Recommendation memorializing his recommendation granting Gawker's request, and directing Hogan and his counsel to provide the signed records authorizations to Gawker within three days.

16. Attached hereto as Exhibit 13 is a true and correct copy of the Florida Circuit Court's order, dated February 26, 2014, affirming the Special Discovery Magistrate's February 5, 2014 Report and Recommendation and directing Hogan and his counsel to provide the signed authorizations to Gawker within three days. Hogan's efforts to have that ruling overturned by the District Court of Appeal were unsuccessful. *See Bollea v. Clem*, 151 So. 3d 1241 (Fla. 2d DCA 2014) (Table) (dismissing writ petition).

17. Attached hereto as Exhibit 14 is a true and correct copy of excerpts from a January 17, 2014 hearing in the Florida Litigation, at which the court directed the production of any video footage depicting sexual relations between Hogan and Ms. Clem be produced (in the first instance to the Special Discovery Magistrate for his review) because such footage goes to "the credibility of Mr. Bollea as far as his knowledge of the Clems – Mr. and Mrs. Clem's

5

practices as far as taping or any other – the credibility of Mr. Bollea, his knowledge, his sense of taping, those kinds of things."

18. In objecting to providing the above-described discovery and records authorizations, Hogan contended that it would interfere with an ongoing law enforcement investigation. Both my co-counsel and I contacted the Agencies and explained that Gawker had no interest in interfering with any active investigation. As set forth below, the Agencies explained that we would not be interfering with any such investigation.

19. Attached hereto as Exhibit 15 is a true and correct copy of an email dated March 19, 2014, from Assistant United States Attorney Sara Sweeney to my co-counsel Seth Berlin stating:

   a. the Government is "not asserting any privilege with respect to documents that [Hogan] or his counsel have in their possession, including the documents on [Hogan's] privilege log" in which he asserted a law enforcement privilege;

   b. Gawker "would not be interfering in any way with any investigation if those documents were disclosed or if [it] contact[s] witnesses who may have provided information to the Government"; and

   c. Hogan and his counsel were not currently under any instructions "by the Government not to speak about these subjects or any investigation."

20. Attached hereto as Exhibit 16 is an affidavit from Mr. Berlin describing his conversation on March 11, 2014, with Ms. Sweeney's supervisor, Section Chief Robert Mosakowski, in which Mr. Mosakowski confirmed that the United States would not assert any evidentiary law enforcement privilege in connection with the information sought in the Florida Litigation.

21. That Affidavit also describes statements to Gawker's counsel on March 11, 2014, by Special Agent Jason R. Shearn of the FBI's Tampa Field Office, who confirmed that the FBI's position "echoed" the position of the U.S. Attorney's Office, including that the FBI was not asserting any law enforcement privilege with respect to Hogan's records relating to any investigation and that Gawker could "do what it needed to do" without in any way interfering with any investigation.

22. Attached hereto as Exhibit 17 is a true and correct copy of a letter dated March 18, 2014, from AUSA Sara Sweeney to Gawker's counsel Seth Berlin confirming in writing that Gawker was "neither the subject nor the target of any criminal investigation conducted by the United States Attorney's Office for the Middle District of Florida."

23. Additional documents demonstrating that any investigation is long since over have been designated as confidential by Hogan and are therefore being submitted with my supplemental Confidential Declaration.

C. **The FOIA Requests**

24. Attached hereto as Exhibit 18 is a true and correct copy of a FOIA request submitted to the FBI by my firm on Gawker's behalf on November 8, 2013, seeking all records in the custody of the FBI relating to its investigation of this matter.

25. Attached hereto as Exhibit 19 is a true and correct copy of the FBI's denial of that request based solely on privacy concerns and providing a records authorization to be completed if the records were to be produced. As described above, Hogan and his counsel objected to providing those authorizations but, after a year of litigation, were ultimately ordered to provide them. Heather Clem also provided a signed authorization without objection.

26.  Attached hereto as Exhibit 20 is a true and correct copy of a second FOIA request I submitted to the FBI on Gawker's behalf on November 7, 2014.

27.  Attached hereto as Exhibit 21 is a true and correct copy of an identical FOIA request I submitted to the EOUSA on Gawker's behalf on November 7, 2014.

28.  As reflected in Exhibits 20 and 21, both FOIA requests specifically enumerated the categories of records they were seeking relating to the FBI investigation, including:

   a. communications between Hogan and his counsel with the FBI;

   b. documents related to video recordings depicting Hogan engaged in sexual activity with Ms. Clem, including the recordings themselves;

   c. statements by Hogan; and

   d. records pertaining to the source and distribution of the video recordings, or attempts to disseminate or sell those video recordings.

29.  The FOIA requests (Exs. 20 and 21) were submitted to the FBI and the EOUSA together with the signed records authorizations from Hogan, his counsel and Ms. Clem (described above). Those authorizations were designated as confidential because they contain each signatory's social security number, and are therefore not submitted herewith. If the Court would like to review copies of the authorizations, I would be pleased to provide them.

30.  Attached hereto as Exhibit 22 is a true and correct copy of a letter dated January 29, 2015 I received from the FBI, stating that the agency had located 1,168 pages of responsive records and two CDs containing responsive video material.

31.  Attached hereto as Exhibit 23 is a true and correct copy of a letter I sent to the FBI on February 3, 2015, accepting all duplication charges and requesting expedited treatment on the basis of discovery deadlines in the Florida Litigation.

32. Attached hereto as Exhibit 24 is a true and correct copy of a letter from the FBI dated February 4, 2015, denying the FOIA request in full and declining to produce any records. As reflected therein, the only basis cited for the denial was FOIA Exemption 7(A), the law enforcement exemption.

33. On March 4, 2015, Gawker submitted an administrative appeal from the FBI's denial. Because that administrative appeal both described and attached documents that had been designated as confidential under the confidentiality order in the Florida Litigation, I am submitting that document and the attachments thereto with my supplemental Confidential Declaration.

34. Attached hereto as Exhibit 25 is a true and correct copy of correspondence dated May 5, 2015, from the Department of Justice affirming the FBI's decision not to disclose any records.

35. Despite the passage of more than six months and my repeated efforts to follow up with the agency, the EOUSA has still not responded to my November 7, 2014 FOIA request at all.

36. The combination of the facts set forth herein and in my Confidential Declaration confirms that any investigation is long since over and undercuts any assertion of Exemption 7(A) by the Government.

I, GREGG D. THOMAS, declare under penalty of perjury under the laws of the State of Florida that the foregoing is true and correct.

Date of Execution: May 20, 2015
Place of Execution: Tampa, Florida

_____
GREGG D. THOMAS