UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAWKER MEDIA, LLC and GREGG D. THOMAS,

    Plaintiffs,

vs.

Case No.: 8:15-cv-01202-SCB-EAJ

THE FEDERAL BUREAU OF INVESTIGATION and THE EXECUTIVE OFFICE OF UNITED STATES ATTORNEYS

    Defendants.

_____/

**PLAINTIFFS' MOTION FOR EXPEDITED CONSIDERATION
AND *VAUGHN* INDEXES, AND SUPPORTING MEMORANDUM OF LAW**

    Plaintiffs Gawker Media, LLC and its counsel Gregg D. Thomas, Esq. (together, "Gawker"), respectfully move the Court for expedited consideration of their motion for summary judgment pursuant to 28 U.S.C. § 1657(a) (the Priorities Act), and for an Order requiring Defendants, the Federal Bureau of Investigation ("FBI") and the Executive Office of United States Attorneys ("EOUSA") (together, the "Agencies"), to promptly serve *Vaughn* indexes in connection therewith.

**PRELIMINARY STATEMENT**

    As the Court knows, Gawker initiated this Freedom of Information Act ("FOIA") lawsuit to obtain improperly withheld records ruled "critical" to its defense of a $100 million lawsuit. Dkt. 5 at 6. Gawker seeks expedited consideration of its Motion for Summary Judgment, Dkt. 5 ("SJ Motion"), because the Florida state court has scheduled trial to commence on July 6, 2015. These are the very circumstances for which the Priorities Act was intended: where failure to

1

expedite will "deprive the relief requested of much of its value," or cause "extraordinary hardship to a litigant." H.R. Rep. 98-985, 5-6, 1984 U.S.C.C.A.N. 5779, 5783-84.

The Court should also require the Agencies to submit a so-called *Vaughn* index with their summary judgment opposition, detailing the documents and their particularized objections by category so that the Court can assess whether the documents should be disclosed.[1]  The Agencies have provided nothing more than conclusory justifications for withholding, which are insufficient to support meaningful consideration by this Court or a fully-developed response by Gawker.  Only the FBI responded before suit was filed, and it provided no explanation how the sole exemption it cited (Exemption 7(A), the law enforcement investigation exemption) could apply at all, let alone to each of the 1168 documents it located.  The EOUSA did not respond until after this FOIA lawsuit was filed, issuing a partial denial every bit as unenlightening, asserting three new bases for exemption without any explanation.  *See* Supplemental Declaration of Gregg D. Thomas ("Suppl. Thomas Decl.") ¶ 3 and Ex. 1.[2]  Tellingly, the EOUSA did *not* assert that any law enforcement investigation is ongoing.  None of the other exemptions it asserted plausibly justifies withholding all records in these circumstances.  In light of the Agencies' generalized invocation of various exemptions, the Agencies should be required to submit detailed *Vaughn* indexes with their Opposition to Gawker's SJ Motion.  Gawker

---

[1] A *Vaughn* index is a document which an agency provides a detailed roster of withheld records with particularized explanations for why asserted exemptions apply to particular records, or appropriately tailored categories, because the "lack of knowledge by the party seeing disclosure seriously distorts the traditional adversary nature of our legal system's form of dispute resolution." *Vaughn v. Rosen*, 484 F.2d 820, 824 (D.C. Cir. 1973).  "[C]ourts often rely upon indices such as a *Vaughn v. Rosen* index in evaluating the claims of exemption as they apply to the withheld documents." *Currie v. IRS*, 704 F.2d 523, 530 (11th Cir. 1983).

[2] The EOUSA's post-suit response does not alter the proceedings before this Court: issuing a final agency response post-suit does not revive a lapsed exhaustion requirement. *In Def. of Animals v. Nat'l Institutes of Health*, 543 F. Supp. 2d 83, 96-97 (D.D.C. 2008); *see also Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 63 (D.C. Cir. 1990) (only pre-suit response "cures" an agency's constructive denial and triggers exhaustion requirements).

respectfully requests that the Court order them to do so, and to permit Gawker to respond if necessary either at a hearing, if one is ordered, or in a short written response. Proceeding in this fashion will allow the Court to adjudicate whether the Agencies have properly withheld the requested records before the Florida state court trial commences.[3]

## MOTION FOR EXPEDITED CONSIDERATION AND *VAUGHN* INDEXES

1.      Last Fall, the Florida trial court scheduled a trial for July 6. In an order dated May 7, 2015, that order was quashed by the Florida Second District Court of Appeal because it was entered before all defendants had answered, with one defendant (a Hungarian affiliate of Gawker) still the subject of a jurisdictional challenge.[4] Nevertheless, at a hearing on May 29, 2015, Hogan's counsel advised that it planned to dismiss the Hungarian defendant, and asked the trial court to proceed on July 6. In response, the trial court judge advised that she was not going to alter her trial docket for July 6, indicating that she intended to proceed. *See* Suppl. Thomas Decl. ¶ 5 & Ex. 3 (hearing transcript) at 107:19-20 ("THE COURT: I'm not changing my trial orders at this point for July"). Hogan has not yet dismissed the Hungarian defendant, but based

---

[3] Although he has not yet filed a notice of appearance, counsel for the Agencies contacted the below listed counsel on May 29, 2015, to inquire about the possibility of an extension of time to oppose Gawker's motion for summary judgment, indicating that he would call back with a specific request. A week later, on June 5, 2015, he telephoned again and asked for a week's extension, from June 8, 2015 to June 15, 2015. Gawker's counsel advised that it was agreeable to the requested extension provided that the Agencies (a) would agree to submit a *Vaughn* index with their opposition, and (b) would either consent to or would not oppose Gawker's request for expedited consideration. Gawker remains agreeable to such a schedule – which both affords the government additional time while allowing sufficient time for this matter to be adjudicated in advance of the July 6 trial date – but in the meantime feels constrained to file this motion seeking expedited treatment and a *Vaughn* index.

[4] *See* Suppl. Thomas Decl. ¶ 4 & Ex. 2 (May 7, 2015 Order quashing orders severing Hungarian defendant and setting July 6 trial date, where Hungarian defendant had not answered); *see also Blogwire Hungary Szellemi Alkotást Hasznosító, KFT v. Bollea*, --- So. 3d ----, 2015 WL 1748108 (Fla. 2d DCA Apr. 17, 2015) (reversing order denying Hungarian defendant's motion to dismiss for lack of jurisdiction and remanding for further hearing).

3

on his representation that he plans to do so and the Court's indication that it plans to proceed, Gawker feels constrained to ask for expedited consideration of its pending summary judgment motion, because it seeks evidence "critical" to the impending trial that it has been requesting from the Agencies for more than a year and a half.

2. In addition, the Agencies should be required to prepare and serve a *Vaughn* index with their opposition to Gawker's summary judgment motion. The FBI's final determination to withhold all responsive records provides no adequate basis for adjudication or opposition. The FBI refused to explain why the sole FOIA exemption it asserts, Exemption 7(A), applies to any of the records, and provided no adequate basis for adjudication or opposition. SJ Motion, Dkt. 5 at 11. Gawker has submitted ample documentation both to the FBI and to this Court that shows that no law enforcement investigation is ongoing, and that release of withheld documents known to exist cannot harm any such investigation. SJ Motion, Dkt. 5 at 11-13. To the extent that the FBI contends that the release of individual documents would interfere with some (as-yet unspecified) investigation, it should be required to make that particularized showing for each category of documents, which is best accomplished through a *Vaughn* index.

3. The same is true for the EOUSA. A week *after* this lawsuit was filed, the EOUSA finally responded to Gawker's Request, more than six months late. Suppl. Thomas Decl. ¶ 3 and Ex. 1 (the "Partial Denial"). In its Partial Denial, the EOUSA did not claim that any law enforcement investigation is ongoing, or would be threatened. Rather, the Partial Denial asserted three new exemptions with no explanation whatsoever – merely listing them by subsection number: (B)(5), (B)(6), and (B)(7)(C). *Id.* at 1. *See* 5 U.S.C. §§ 552(b)(5) (Exemption 5 for internal agency memoranda and policy discussions); 552(b)(6) (Exemption 6 for personal privacy); 552(b)(7)(C) (Exemption 7(C) for personal privacy of information in the

law enforcement context). Among other things, the EUOSA's cursory denial nowhere explains how the U.S. Attorney's Office's numerous communications with third parties would be covered by Exemption 5, or how it can rely on Exemptions 6 and 7 when the most recent FOIA requests were submitted with privacy waivers by Hogan, his counsel and Heather Clem.

4. The EOUSA produced one document (a printout of an online article not at issue in the Florida Litigation) and three almost entirely redacted emails from long after the investigation concluded (and while the FOIA Requests at issue in this lawsuit were pending). *Id.* at 4-7. The EOUSA withheld 59 other documents, claiming that no portion of them could be segregated and produced, and referred an unspecified number of other documents to the FBI, without claiming any applicable exemption. Given the conclusory nature of the response, a *Vaughn* index will allow the Court to review the categories of documents with much greater clarity, and will allow Gawker to have the opportunity to respond meaningfully to the EOUSA's cursory invocations of the three exemptions. In addition, Gawker respectfully requests that the EOUSA be directed to include on its *Vaughn* index the documents it referred to the FBI.

5. Gawker's claims that the Agencies have improperly withheld public records are compelling (and certainly more than non-frivolous, as required under the Priorities Act), and the value of the improperly withheld records to Gawker will largely disappear if it cannot use them at trial. Because the trial court has advised that it intends to commence trial on July 6, 2015, Gawker respectfully requests that this Court adjudicate Gawker's motion on an expedited basis, with the aid of a *Vaughn* index, so that any documents, if ordered to be released, may be used at trial.

**MEMORANDUM OF LAW**

I.   **GOOD CAUSE EXISTS FOR EXPEDITED CONSIDERATION.**

The Priorities Act provides that district courts "shall expedite the consideration of any action" upon a showing of "good cause." 28 U.S.C. § 1657(a). Expediting courts' review of FOIA denials was a core purpose of the Priorities Act, as reflected by the statute's express reference to FOIA. 28 U.S.C. § 1657(a); *see also Freedom Commc'ns Inc. v. FDIC*, 157 F.R.D. 485, 486 (C.D. Cal. 1994) (The "special designation makes FOIA actions first among equals."); *Ferguson v. FBI*, 722 F. Supp. 1137, 1144 (S.D.N.Y. 1989) ("Prompt review of decisions denying access to government information is critical to FOIA users and to the purposes of the Act.") (quoting legislative history). This is because "the value of disclosed information is transitory. If this information is not released in a timely manner, it may be of no value at all." H.R. Rep. 98-985, 5-6, 1984 U.S.C.C.A.N. 5779, 5783-84.

Accordingly, good cause must be "liberally construed by the courts in granting requests for expedited consideration under the Freedom of Information Act." H.R. Rep. 98-985, 5-6, 1984 U.S.C.C.A.N. 5779, 5783-84. A FOIA plaintiff need only demonstrate that its claims are not frivolous, and show a public or private interest in expedition, or that failure to expedite would deprive the information of its value to the requestor. *See Ferguson*, 722 F. Supp. at 1144 (FOIA claim must be non-frivolous); H.R. Rep. 98-985, 4, 1984 U.S.C.C.A.N. 5779, 5782 (good cause is shown where litigants "can persuasively assert that there is a special public or private interest in expeditious treatment of their case"); H.R. Rep. 98-985, 5-6, 1984 U.S.C.C.A.N. 5779, 5783-84 (good cause is shown where "failure to expedite would result in mootness or deprive the relief requested of much of its value [or] in a case in which failure to expedite would result in extraordinary hardship to a litigant"). As Gawker demonstrated in its Summary

6

Judgment Motion, declarations and exhibits, its claims that the Agencies improperly withheld public records are far from frivolous, Gawker has a significant interest in the documents, and, given the impending state court trial date, delay in releasing the documents would render the documents of virtually no value to Gawker.

### A. Gawker's Claims Are Clearly Not Frivolous.

The Agencies' asserted exemptions simply do not withstand scrutiny, both because (a) any law enforcement investigation is long since over (as the EOUSA's Partial Denial appears to confirm) and (b) there is no meaningful basis to contend that release of the requested documents – some of which have already been obtained from Hogan with the government's blessing – will interfere with a law enforcement investigation. SJ Motion, Dkt. 5 at 4-7, 13-14.

While it is hard to know for sure, given that the EOUSA's claimed exemptions were asserted with no explanation whatsoever, it appears that they, too, are without any merit. Exemption 5 cannot shield the numerous communications between prosecutors and non-governmental third parties: there is no attorney-client privilege in such outside communications, and they are not deliberative, pre-decisional inter- or intra-agency communications.[5]

Similarly, the newly-asserted privacy exemptions (Exemptions 6 and 7(C)) cannot possibly apply here. As an initial matter, an "agency's burden under Exemption 6 . . . is an

---

[5] Attorney-client privilege claims under Exemption 5 are limited to communications "between government attorneys and their clients." *Miccosukee Tribe of Indians of Florida v. United States*, 516 F.3d 1235, 1262 (11th Cir. 2008); *see also Williams v. Dep't of Veterans Affairs*, 510 F. Supp. 2d 912, 921 (M.D. Fla. 2007) ("e-mails exchanged *between* [government] attorneys" properly withheld as work product) (emphasis added); *Sun-Sentinel Co. v. U.S. Dep't of Homeland Sec.*, 431 F. Supp. 2d 1258, 1277 (S.D. Fla. 2006) (permitting withholding only of emails containing "confidential legal advice from the General Counsel of FEMA to FEMA officials"). Exemption 5 also does not apply to other communications that are not pre-decisional or disclose pre-decisional deliberations. *See Miccosukee Tribe*, 516 F.3d at 1263-64 (deliberative process protection under Exemption 5 is limited to records where "distribution of [the] documents was internal-limited only to agency employees and contractors").

7

onerous one," and the release of "names and other identifying information does not inherently and always constitute a 'clearly unwarranted' invasion of personal privacy." *News-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173, 1198-99 (11th Cir. 2007). More to the point here, Gawker submitted its requests with privacy waivers from Hogan, his counsel and Heather Clem, the key participants who might plausibly otherwise have a privacy interest in the requested records. *See* Conf. Thomas Decl. in support of Gawker's SJ Mot. at ¶ 15 & Ex. 34-C. And, numerous documents already disclosed by Hogan in discovery further illustrate that the release of the requested records would not constitute an unwarranted invasion of personal privacy. *See, e.g., id.* at ¶¶ 5-14.[6] The EOUSA's belated suggestion that some unspecified privacy interest now warrants wholesale withholding is both inconsistent and implausible.

Finally, the EOUSA's "referral" to the FBI, by which it purports to make no response at all, is improper.[7] Moreover, with the conspicuous absence of any claim that Exemption 7(A) applies, its belated response further undermines the FBI's dubious assertion of that exemption.

---

[6] While it would be hard to see how release of the requested records would result in an "unwarranted invasion of personal privacy" in connection with other individuals identified in them, and it is the Agencies' burden to establish any such claim, at a minimum the records could be redacted rather than withheld in their entirety. *See Corbett v. TSA*, 568 F. App'x 690, 703-04 (11th Cir. 2014) (authorizing "limited redaction" of identities of individuals and low-level government employees where full investigative files and materials were otherwise disclosed). In that regard, the government confirmed that it had no objection to Hogan's release of documents and communications from the investigation. *See* Thomas Decl. in support of Gawker's SJ Mot. at ¶¶ 19-22 & Exs. 15-17. The involvement of Assistant United States Attorneys Robert Mosakowski and Sara Sweeney, who supervised the investigation, and Special Agent Jason Shearn of the FBI, who was the lead case agent, is a matter of public record. *Id.* at ¶¶ 19-21. And, the government did not oppose disclosure of documents identifying other third parties involved in the investigation. *See* Conf. Thomas Decl. at ¶¶ 4-14 & Exs. 26-C – 33-C; *see also* SJ Motion, Dkt. 5 at 13-14.

[7] Delayed, post-suit referral is improper. *See Keys v. Dep't of Homeland Sec.*, 570 F. Supp. 2d 59, 70 (D.D.C. 2008) (referral was not prompt and significantly delayed resolution of FOIA request); *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983) ("when an agency receives a FOIA request for "agency records" in its possession, it must take responsibility for processing the request"); *Paisley v. CIA*, 712 F.2d 686, 691 (D.C. Cir. 1983) (directing agency to

B.  **The Documents Are of Significant Interest to Gawker, and Their Value Would Be Largely Lost If Disclosure Is Delayed.**

Without access to documents that have been ruled both relevant and "critical" to its defense, SJ Mot. at 6 & n.2, Gawker is likely to suffer significant hardship at trial. The stakes are particularly high in this case, given the First Amendment concerns at issue and Hogan's claimed damages of $100 million. Furthermore, it is beyond reasonable dispute that the value to Gawker of the improperly withheld documents effectively evaporates if Gawker cannot obtain them in time for use at trial. Given that Gawker has spent the past 18 months requesting the documents, engaging in extensive litigation to obtain records authorizations from Hogan and his counsel, and has waited more than six months for the Agencies to respond to its most recent requests, expedited consideration of Gawker's summary judgment motion is warranted.

**II.     THE AGENCIES SHOULD PROMPTLY PRODUCE *VAUGHN* INDEXES.**

Expedited production of detailed *Vaughn* indexes are subject to the same "good cause" standard established by the Priorities Act, "because an index is an integral component of trial court review of FOIA challenges to non-disclosure of information." *Ferguson*, 722 F. Supp. at 1144; *Ely v. FBI*, 781 F.2d 1487, 1493 (11th Cir. 1986) (*Vaughn* indexes "make for more effective court review" because they "provide opposing counsel with at least a limited opportunity to focus and controvert the real issues").

*Vaughn* indexes are particularly necessary in this case, where the need for full and prompt adjudication is significant, and, as discussed *supra* and in Gawker's Summary Judgment Motion, the Agencies' responses are vague, conclusory and implausible. Prompt production of a *Vaughn* index (including, on the part of the EOUSA, justifications for withholding the "referred"

---

justify withholding of improperly referred records), *vacated in part on other grounds*, 724 F.2d 201 (D.C. Cir. 1984).

9

records) is therefore necessary to ensure that the Court has sufficient information to resolve the status of the documents, and to ensure that Gawker can play a meaningful adversarial role in the adjudicative process.

## GOOD FAITH CERTIFICATION

Gawker's counsel spoke with counsel for the Agencies, Kenneth Stegeby of the United States Attorneys' Office for the Middle District of Florida (who has not yet formally appeared) on May 29, 2015. At that time, Gawker's counsel explained that time was of the essence including because of the impending trial date in the state court case. Counsel for Gawker and Mr. Stegeby spoke again on June 5, 2015, and Gawker's counsel requested that Agencies (a) agree to submit a *Vaughn* index with their opposition, and (b) consent to or not oppose Gawker's request for expedited consideration. Mr. Stregeby stated that he would get back to Gawker later that day, but, to date, has not done so.

## CONCLUSION

For the foregoing reasons, Gawker respectfully requests that this Court (1) order the Agencies to file detailed *Vaughn* indexes with their Opposition to Gawker's Summary Judgment Motion, including, on the part of the EOUSA, justifications for withholding the unspecified documents the agency "referred" to the FBI, (2) allow Gawker to promptly file a brief response to the *Vaughn* indexes or to address them at a hearing in this matter, and (3) thereafter expeditiously adjudicate Gawker's Summary Judgment Motion, in light of the impending July 6 trial date in the underlying state court litigation, including to schedule a prompt hearing if the Court would like to hear oral argument on the matter.

Respectfully submitted,

THOMAS & LOCICERO PL

By: */s/ Gregg D. Thomas*
Gregg D. Thomas
Florida Bar No.: 223913
Rachel E. Fugate
Florida Bar No.: 0144029
601 South Boulevard
P.O. Box 2602 (33601)
Tampa, FL 33606
Tel.: (813) 984-3060; Fax: (813) 984-3070
gthomas@tlolawfirm.com
rfugate@tlolawfirm.com

-and-

Seth D. Berlin (pro hac vice)
Alia L. Smith (pro hac vice)
Patrick Kabat (pro hac vice)
LEVINE SULLIVAN KOCH & SCHULZ, LLP
1899 L Street, NW, Suite 200
Washington, DC 20036
Tel.: (202) 508-1100; Fax: (202) 861-9888
sberlin@lskslaw.com
asmith@lskslaw.com
pkabat@lskslaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of June 2015 a true and correct copy of the foregoing is being electronically filed via CM/ECF. It is also being served, by certified mail, on the following:

Loretta Lynch
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530

The Federal Bureau of Investigation
933 Pennsylvania Ave., NW
Washington, DC 20530

The Executive Office of United States Attorneys
950 Pennsylvania Ave., NW, Room 2242
Washington, DC 20530.

Office of the United States Attorney for the Middle District of Florida
Attention: Civil Process Clerk
400 North Tampa Street, Suite 3200
Tampa, FL 33602

and by electronic mail on:

Kenneth Stegeby
Office of the United States Attorney for the Middle District of Florida
400 North Tampa Street, Suite 3200
Tampa, FL 33602
Kenneth.Stegeby@usdoj.gov

*/s Gregg D. Thomas*
Attorney