IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAWKER MEDIA, LLC and
GREGG D. THOMAS,

    Plaintiffs,

v.                                                 Case No. 8:15-cv-01202-SCB-EAJ

THE FEDERAL BUREAU OF
INVESTIGATION and THE
EXECUTIVE OFFICE OF
UNITED STATES ATTORNEYS,

    Defendants.
_____/

**DEFENDANT'S RESPONSE TO PLAINTIFFS' DISPOSITIVE
MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW**

Defendants, the Federal Bureau of Investigation ("FBI") and the Executive Office of United States Attorneys ("EOUSA"), hereby respectfully respond to plaintiff's motion for summary judgment. Plaintiffs' motion should be denied for the following reasons:

**I.  Undisputed Facts**

1.  On November 8, 2013, Gawker submitted a Freedom of Information Act ("FOIA") request to the FBI and the EOUSA seeking documents and video footage related to an investigation conducted by the FBI in the fall of 2012. *See* Complaint [Doc. No. 1], ¶¶ 2, 13, 15.

2.  The investigation concerned a video tape showing Terry Gene Bollea,

also known as Hulk Hogan ("Hogan"), engaging in a sexual affair with Heather Clem, who at the time was the wife of a local radio personality.  *See id.*

3. According to plaintiff, these "records have been ruled to be critical to Gawker's defense of a $100 million lawsuit brought by Hogan [in state court] . . . arising from Gawker's publication [of] a news report and commentary" regarding the above mentioned video.  *Id.*, ¶¶ 2-3.

4. Because the records sought by Gawker involved third-party individuals, on November 19, 2013, the FBI sent Gawker a letter stating that Gawker must submit a Certification of Identity, Form DOJ 361, executed by each of the third-party individuals related to the records sought, namely Hogan, Hogan's attorneys and Heather Clem.  *See* Declaration of David M. Hardy, attached hereto as Exhibit A ("Exh. A"), Exh. E, pp. FBI031-32; Complaint, ¶¶ 16-17.

5. "After nearly a year of litigating the matter in the Florida Litigation, Hogan and his attorneys were eventually required to provide the authorizations . . . ."  Complaint, ¶ 17.

6. Heather Clem voluntarily executed the necessary release form.  *See id.*, ¶ 18.

7. On November 7, 2014, Gawker submitted a second FOIA request that was virtually identical to the request submitted a year earlier, but this time Gawker included the required Certifications executed by the affected third-parties.  *See id.*, ¶ 18.

8. On November 17, 2014, the FBI acknowledged receipt of Gawker's

new FOIA request, and, on January 29, 2015, the FBI "informed Gawker that it had located 1,168 pages of responsive records and two CDs containing responsive video material." *Id.*, ¶ 19.

9.  In its January 29, 2015 letter, the FBI asked Gawker if it would accept the charges that the FBI would incur in processing the records requested by Gawker.  *See* Exh. A, Exh. E, pp. FBI031-32.

10. On February 3, 2015, Gawker responded and agreed to pay up to $500.00.  *See* Complaint, ¶ 20.

11. On or before February 4, 2015, the FBI learned that another, non-federal law enforcement agency had commenced a separate investigation related to the video tape and that the investigation was ongoing.  *See* Exh. A, ¶ 11.

12. Accordingly, the FBI sent a letter informing Gawker that the responsive records were exempt from production pursuant to FOIA Exemption 7(A) because they "are law enforcement records; there is a pending or prospective law enforcement proceeding relevant to these responsive records, and release of the information in these responsive records could reasonably be expected to interfere with enforcement proceedings."  Exh. A, Exh. G, p. FBI038; *Complaint*, ¶ 21.

13. The FBI did not produce any records.

14. On March 4, 2015, Gawker filed an administrative appeal with the Office of Information and Policy ("OIP").  *See* Exh. A, ¶ 12.

15. According to Gawker, it submitted "substantial evidence that there was no ongoing or prospective investigation . . . ," and claimed that there could be no

interference with a non-existing investigation.  Complaint, ¶ 22.

16. However, while Gawker is correct that the FBI's 2012 investigation of the circumstances surrounding the video tape was no longer active, as noted above, the FBI learned that another law enforcement agency had opened an investigation related to the video tape.  *See* Exh. A, ¶¶ 11, 28.

17. On March 4, 2015, plaintiffs appealed the FBI's decision.  See Exh. A, ¶ 12.

18. By letter dated March 18, 2015, the Office of Information Policy ("OIP") acknowledged receipt of plaintiffs appeal and assigned it appeal number AP-2015-02411.  *See id.*, ¶13.

19. On May 6, 2015, the OIP affirmed the FBI's determination and also informed Gawker that it was denying Gawker's request that the OIP itemize and justify each item of the information withheld, since it was not entitled to it at the administrative stage.  *See id.*, ¶ 14.

20. In addition, the OIP advised plaintiff of its right to file a lawsuit in the federal district court if it was dissatisfied with its action on the appeal.  *See id*.  On May 19, 2015, plaintiffs filed their complaint in the present action.  *See id.*, ¶ 15.

**II.   Argument**

To prevail in a FOIA action, an agency that is withholds any information pursuant to FOIA Exemption 7(A) must first show that the documents were compiled for a law enforcement purpose.  *See Antonelli v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 2005 WL 3276222, *1, *4 (D.D.C. Aug. 16, 2005) ("An

agency must prove that the withheld records were compiled for law enforcement purposes 'before [withholding] requested documents on the basis of any of [that exemption's] subparts.'") (quoting *Pratt v. Webster*, 673 F.2d 408, 416 (D.C. Cir. 1982). Here, plaintiff has acknowledged that all the documents at issue were collected by the FBI, a federal law enforcement agency, during an investigation into the source and distribution of the video at issue. *See* Complaint, ¶ 13. Thus, the FBI has satisfied the first test.

The next step is to analyze sub-part 7(A). Under Exemption 7(A), an agency may withhold from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Plaintiffs argue that Exemption 7(A) does not apply because there is no active or ongoing law enforcement investigation, but that is not necessarily a requirement. *See Center for Nat. Sec. Studies v. United States Dept. of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003) ("Exemption 7(A) does not require a presently pending 'enforcement proceeding.' Rather, as the district court correctly noted, it is sufficient that the government's ongoing September 11 terrorism investigation is likely to lead to such proceedings.") (citation omitted). However, the Court need not reach that issue because there is an ongoing investigation here as further explained below. *See* Exh. A, ¶ 28 ("Upon receipt of plaintiffs lawsuit, the FBI contacted the Tampa Field Office ('TPFO') to request information pertaining to the current status of the investigation referenced in the records responsive to plaintiffs request. The TPFO

advised RIDS that another law enforcement agency has an on-going investigation."). The final step in the analysis here is whether the release of the requested records could perceptibly interfere with the ongoing investigation by a non-federal law enforcement agency. The FBI states that it would interfere with that investigation. *See id.* ("Furthermore, TPFO indicated that release of any information from this file will interfere with that pending investigation; therefore, the information is exempt from disclosure pursuant to FOIA exemption (b)(7)(A), 5 U.S.C. § 552(b)(7)(A).").

At this phase of the litigation, it is axiomatic that the Court must view the facts in the light most favorable to defendants, as the non-movants. *See Mudd v. United States Army*, 2007 WL 4358262, *1, *4 (M.D. Fla. Dec. 10, 2007) ("In ruling on a motion for summary judgment, if there is a conflict in the evidence the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party.") (citing *Shotz v. City of Plantation, Fl.*, 344 F.3d 1161, 1164 (11th Cir. 2003)). Further, "[a]ffidavits submitted by an agency 'are accorded a presumption of good faith.'" *Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2nd Cir. 1994) (citation omitted); *Florida Immigrant Advocacy Center v. National Sec. Agency*, 380 F. Supp.2d 1332, 1343 (S.D. Fla. 2005). Similarly, the decision of an agency that specializes in law enforcement, like the FBI, "to invoke exemption 7 is entitled to deference." *Bilderbeek v. United States Dept. of Justice*, 2010 WL 1049618, *1, *3 (M.D. Fla. Mar. 22, 2010) (citing *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998)).

### a. The Records Sought are the Subject of an Ongoing Law Enforcement Investigation

Plaintiffs state that "[t]hrough this lawsuit, Gawker seeks to compel the Agencies[1] to provide records it requested through FOIA relating to an FBI investigation, conducted in 2012, into the source and distribution of [the] video" discussed above. Complaint, ¶¶ 2, 13. In addition, plaintiffs correctly assert that the FBI investigation is no longer ongoing and that no criminal charges were ever issued. *See id.*, ¶ 14. To their credit, plaintiffs implicitly acknowledge that their initial FOIA request, filed on November 8, 2013, did not enclose the requisite Certification of Identifications from the necessary third-parties. *See id.*, ¶¶ 15-17. Accordingly, on November 19, 2013, the FBI sent plaintiffs a letter stating that they had to supplement their request with the Certifications, which were enclosed, executed by the third-parties. *See id.*, ¶ 16; Exh. A, ¶ 6. Because plaintiffs did not submit the Certifications, and their first FOIA request was therefore improper. Without the Certifications, defendants were under no obligation to produce or even process any documents.

Plaintiffs state that, originally, Hogan and his attorneys refused to sign the Certifications, but that they were compelled to sign them after one year of litigation in state court. *See* Complaint, ¶ 17. Thus, on November 7, 2014, plaintiffs submitted their second FOIA request and enclosed the Certifications executed by Hogan, his attorneys, as well as Heather Clem, who voluntarily signed her

---

[1] The EOUSA had some responsive documents that it referred to the FBI for processing and response. Accordingly, most of the communication relevant to this case is between plaintiffs and the FBI.

Certification. *See id.*, ¶ 18. The FBI acknowledged the second request by letter on November 17, 2014 and continued to process the request. *See* Exh. A, ¶¶ 8-9. On or before February 4, 2015, the FBI learned of a "pending or prospective law enforcement proceeding relevant to these records and release of the information could reasonably be expected to interfere with the enforcement proceedings," so the FBI told plaintiffs that the records were subject to the protections of Exemption 7(A). *Id.*, ¶ 11. Because the FBI deemed the records exempted, it did not produce them to plaintiffs, but the FBI informed plaintiffs they could appeal the decision to the Office of Information Policy ("OIP") within sixty days. *See id.*

One month later, on March 4, 2015, plaintiffs filed an appeal with the OIP. *See id.*, ¶ 12; Exh. A., Exh. H, pp. FBI042-91. Specifically, plaintiffs argued that the FBI had not made a sufficient showing of an ongoing law enforcement investigation. *See* Exh. A, Exh. H, p. FBI045. However, it is undisputed that on or before February 4, 2015 the FBI was made aware of an investigation related to the records sought by plaintiffs by another non-federal law enforcement agency that at this point does not want to be identified. Consequently, "[a]fter carefully considering [plaintiffs'] appeal," the OIP affirmed the FBI's decision. *See id.*, Exh. J, p. FBI096.

### III.  Releasing the Records Sought Would Interfere with an Ongoing Law Enforcement Investigation

According to plaintiffs, no investigation, whether ongoing or not, would be interfered with should the FBI be ordered to release the records at issue. See Plaintiff's Motion for Summary Judgment [Doc. No. 5] ("MSJ"), p. 13. However, they are incorrect. First, the FBI does not need to show that the release of a "particular

document would actually interfere with an enforcement proceeding." *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1037 (7th Cir. 1998). Instead, it "need show only 'that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally interfere with enforcement proceedings.'" *Id.* (citation omitted). This burden has been explained as one where an agency only have to establish that "disclosure could reasonably be expected perceptibly to interfere with an enforcement proceeding." *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989) (citation omitted).

The courts have long held that Congress intended that Exemption 7(A) apply "whenever the government's case in court would be harmed by the premature release of evidence or information," the harm from disclosure is sufficient to support application of Exemption 7(A)." *Sussman v. United States Marshals Service*, 494 F.3d 1106, 1114 (D.C. Cir. 2007) (citation omitted); *see, e.g.*, *Stolt-Nielsen Trans. Group, Ltd. v. Department of Justice*, 480 F. Supp.2d 166, 180 (D.D.C. 2007) (noting that release of information "would provide potential witnesses with insights into the Division's strategy and the strength of its position"), vacated and remanded on other grounds, 534 F. 3d 728, 733-34 (D.C. Cir. 2008); *Faiella v. Internal Revenue Serv.*, 2006 WL 2040130, *1, *3 (D.N.H. July 20, 2006) (stating that "disclosing information under active consideration" could undermine any future prosecution by "prematurely disclosing the government's potential theories, issues, and evidentiary requirements"); *Suzhou Yuanda Enter. Co. v. Customs and Border*

*Prot.*, 404 F. Supp.2d 9, 14 (D.D.C. 2005) (agreeing that release of information "would interfere with an agency investigation [by] informing the public of the evidence sought and scrutinized by this type of investigation"); *Environmental Prot. Servs. v. EPA*, 364 F. Supp. 2d 575, 588 (N.D. W. Va. 2005) (explaining that disclosure "would prematurely reveal the EPA's case"); *Rosenglick v. Internal Revenue Serv.*, 1998 U.S. Dist. LEXIS 3920, at *7-8 (M.D. Fla. Mar. 10, 1998) (explaining that early access could "aid a wrongdoer"); *Durham v. United States Postal Serv.*, 1992 WL 700246, *1, *1 (D.D.C. Nov. 25, 1992) (deciding that release of investigative memoranda, witness files, and electronic surveillance material would substantially interfere with pending homicide investigation by impeding government's ability to prosecute its strongest case), aff'd, No. 92-5511 (D.C. Cir. July 27, 1993).

Like in those cases, disclosure here would interfere with the non-federal law enforcement agency's investigation.  *See* Exh. A, ¶ 28.  Plaintiffs have already identified the purpose for seeking these records.  According to them, "Gawker wanted, for example, to determine whether what Hogan was telling the Agencies was consistent with his position in his lawsuit against Gawker and wanted to obtain the raw materials (video, emails, and the like) . . . ."  MSJ, p. 2.  As found by numerous courts over time, releasing records prematurely will interfere with the ongoing criminal investigation here.  The FBI has interviewed a number of people including Hogan.  If the public were made aware of such statements, people who have been named by him and could therefore potentially be called as witnesses will

obtain information that may provide them with "insights into the Division's strategy and the strength of its position . . . ." *Stolt-Nielsen Trans. Group*, 480 F. Supp.2d at 180.  Such disclosure could therefore undermine the future prosecution under investigation by the non-federal law enforcement agency.  *See Faiella*, 2006 WL 2040130, at *3.  Not only could release of the records help potential defendants evade prosecution, *see Rosenglick*, 1998 U.S. Dist. LEXIS 3920, at *7-8, but it could also possibly chill people's willingness to cooperate in the investigation and therefore prevent the agency from building its strongest case.  *See Durham*, 1992 WL 700246, at *1.  Clearly, the release of the records in this case could "reasonably be expected perceptibly to interfere with an enforcement proceeding." *North*, 881 F.2d at 1097 (citation omitted).

**IV.	FOIA is Not a Litigation Tool for Private Individuals and Companies but is a Tool for the Public to be Able to Investigate the Work of Federal Agencies**

The purpose of the FOIA is to ensure that the administrative process may be subject to scrutiny of the press and the general public.  *See Roberts v. Internal Revenue Serv.*, 2014 WL 1724383, *1, *3 (M.D. Fla. Mar. 17, 2014) (citing *Federal Labor Relations Auth. v. United States Dep't of Defense*, 977 F.2d 545, 547 (11th Cir. 1992) (noting that "FOIA' s central purpose is to ensure that the Government's activities be open to the sharp eye of public scrutiny.")).  While decided in the context of privacy and the balancing of private and public interests under Exemption 6, the legal analysis in *Cappabianca v. Commissioner, United States Customs Service*, 847 F.Supp. 1558, 1564 (M.D. Fla. 1994) should apply here as well.  In

*Cappabianca*, the Court held that a "private interest in obtaining materials for personal reasons plays no part in the required balancing of interests [of public v. private interests]. Indeed, several courts have noted that FOIA is no substitute for discovery practice, nor do private needs for documents affect determination of whether disclosure is warranted." Id. (citing *L & C Marine Transport, LTD. v. United States*, 740 F.2d 919 (11th Cir. 1984); *Nix v. United States*, 572 F.2d 998 (4th Cir. 1978)).

Here, plaintiff has an express interest in the release of the documents to use them in a lawsuit between two private entities. Plaintiff's FOIA request is not intended to shed light on the workings and performance of the FBI. Thus, even though Gawker is a media company and provides services to the public, the interest involved here is purely private – to defend against a $100 million law suit that is going on in state court. Accordingly, by analogy to *Cappabianca*, the non-federal law enforcement agency's interest in its ability to conduct a criminal investigation related to the records that plaintiffs are seeking here clearly outweighs plaintiffs' interest in using FOIA as a replacement for conducting discovery to be better able to defend itself in state court.

/ / /

## **CONCLUSION**

Based on the foregoing, defendants respectfully request that this Court deny plaintiffs' motion for summary judgment.

                    **A. LEE BENTLEY, III**
                    United States Attorney

                    Respectfully submitted,

By:  *s/ E. Kenneth Stegeby*
      **E. KENNETH STEGEBY**
      Esquire Assistant U.S. Attorney
      USAO No. 112
      400 North Tampa Street, Ste. 3200
      Tampa, Florida 33602
      Telephone: (813) 274-6087
      Facsimile: (813) 274-6198
      Email: kenneth.stegeby@usdoj.gov
      *Attorney for Defendant*

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 8, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Alia L. Smith
Gregg Darrow Thomas
Patrick Kabat
Rachel E. Fugate
Seth D. Berlin
*Plaintiffs' Counsel*

                                 *s/E. Kenneth Stegeby*
                                 E. Kenneth Stegeby