UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAWKER MEDIA, LLC and GREGG D.
THOMAS,

      Plaintiffs,

                                             Case No.:  8:15-cv-01202-SCB-EAJ

vs.

THE FEDERAL BUREAU OF
INVESTIGATION and THE EXECUTIVE
OFFICE OF UNITED STATES ATTORNEYS

      Defendants.
_____/

**PLAINTIFFS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to this Court's order dated June 17, 2015, Gawker Media, LLC and its counsel Gregg D. Thomas, Esq. (together, "Gawker"), respectfully submit this Reply Memorandum in support of their Motion for Summary Judgment (the "Motion," Dkt. No. 5) and Motion for Expedited Hearing and *Vaughn* Index (the "*Vaughn* Motion," Dkt. No. 20) to compel Defendants, the Federal Bureau of Investigation ("FBI") and the Executive Office of United States Attorneys ("EOUSA") (together, the "Agencies"), to promptly disclose wrongfully withheld public records requested by Gawker under the Freedom of Information Act ("FOIA"), and, if required, to promptly produce a *Vaughn* index.

**ARGUMENT**

**I.    THE OPPOSITION PROVIDES NO BASIS TO KEEP SECRET THE DOCUMENTS REQUESTED BY GAWKER FROM THE EOUSA.**

As explained in Gawker's *Vaughn* Motion at 4-5, the EOUSA belatedly responded to Gawker's FOIA request *after* this lawsuit was filed and *after* Gawker moved for summary judgment.  *See* Supp. Thomas Decl. (Dkt. No. 21), Ex. 1.  It denied Gawker's request in

1

significant part, noting, without explanation, that it was withholding 59 pages of documents based upon FOIA exemptions for inter-agency memoranda, personal privacy, and privacy in the context of law enforcement investigations, and substantially redacting another three pages.  *Id*.  It also explained that it was "referring" to the FBI an unspecified number of documents, so that the Bureau could determine whether to disclose them.  *Id.*

In their Opposition to Gawker's Summary Judgment motion, the Agencies effectively concede that the EOUSA's withholding was inadequate and unjustified, because it does not make *any* argument in defense.  Thus, for the reasons explained in Gawker's *Vaughn* Motion, the documents held by the EOUSA, including those it purportedly "referred" to the FBI, should be ordered disclosed immediately.  *See Vaughn* Mot. at 7-8 (citing cases).  Incredibly, while implicitly contending that the EOUSA has no documents it can produce, the Agencies' opposition actually attaches various documents created by the U.S. Attorney's Office for the Middle District of Florida.  *See, e.g.*, Hardy Decl. (Dkt. 23-1), Ex. H at 70-79 (correspondence between AUSAs, FBI agents, and Hogan's attorneys in connection with the FBI investigation). This calls into serious question the assertion that no production is possible, illustrating concretely the need for a *Vaughn* index if summary judgment is not granted outright.  *See Van Bilderbeek v. DOJ*, 416 F. App'x 9, 13 (11th Cir. 2011) (per curiam) (further disclosure of already public information cannot interfere with an investigation).

II. **THE VAGUE CLAIM OF AN UNSPECIFIED "NON-FEDERAL" INVESTIGATION IS INSUFFICIENT TO JUSTIFY WITHHOLDING.**

In their Opposition, the Agencies assert for the first time that the "investigation" with which disclosure would supposedly interfere is not their *own* investigation, but rather that of another, unspecified, "non-federal law enforcement agency." Opp. at 3; *see also id*. at 4 (after Gawker made its request, the "FBI learned that another law enforcement agency had opened an

investigation related to the video tape" and contending that disclosure would interfere with that investigation); *accord id*. at 5-6.  This unsupported assertion is insufficient to establish that another investigation actually exists, and, as discussed below, is exceedingly suspect as a matter of fact.  But even if such an investigation does exist, the Agencies have made no showing, as they must, that release of each of the records requested by Gawker would interfere with it.

        **A.**        **The Agencies cannot evade their responsibilities under FOIA simply by claiming, without explanation, that another agency is investigating.**

The Agencies claim that a non-federal investigation exists, but they provide no evidence (as they must) that it actually does.  Rather, in a supporting declaration, an employee in Winchester, Virginia asserts that he was told by an unspecified agent in the Tampa Field Office that someone else at an unspecified agency told him "that another law enforcement agency has an on-going investigation."  Hardy Decl. ¶ 28.  This is hearsay.  Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 801; *Prison Legal News v. Lappin*, 603 F. Supp. 2d 124, 127 (D.D.C. 2009) ("the Court cannot presume personal knowledge by the affiant.").  Moreover, despite his lengthy declaration, the FBI's declarant provides no information about, for example, *which* non-federal agency is supposedly investigating, *when* the investigation allegedly commenced, *why* such an investigation is ongoing more than seven years after the video at issue was recorded and more than three years after its existence was publicly reported, or *why* it is expected to go on for an indefinite period of time.  (As explained below, such basic information is needed for the Court to assess whether release of the requested records would interfere with such an investigation).  The Agencies' unsupported, hearsay allegation about the existence of another investigation is woefully inadequate to meet their burden to establish a legitimate basis for withholding.  *See, e.g.*, *Linn v. DOJ*, 1995 WL 417810, at *9 (D.D.C. June 6, 1995) (to properly invoke law

enforcement exemption, an agency may not simply aver only that "some unspecified investigation . . . was ongoing").

In addition, there is serious reason to question the FBI's incredibly vague and double-hearsay assertion that a "non-federal" investigation is supposedly ongoing. In that regard, Gawker submitted requests under the Florida Public Records Act to all non-federal agencies that might plausibly conduct an investigation related to the facts at issue, including the Belleair Police Department, the Clearwater Police Department, the Florida Attorney General's Office, the Florida Department of Law Enforcement, the Hillsborough County Sheriff's Office, the Pinellas County Sheriff's Office, the Pinellas County State Attorney, the St. Petersburg Police Department, and the Tampa Police Department. Without exception, each of these agencies confirmed to Gawker that it had *no* documents indicating it was investigating. *See* Thomas Reply Decl. (Exhibit 1, attached hereto) ¶¶ 4-12 & Exs. A-I. Given that Hogan has repeatedly tried to hide behind a "law enforcement privilege" with respect to key facts germane to his case against Gawker, the Court should approach this vague claim with skepticism.

Given the Agencies' minimal showing, their claim that there is an ongoing investigation by a state agency – and that therefore the FOIA "law enforcement" exemption applies – should be disregarded. *See, e.g.*, *Stephenson v. IRS*, 629 F.2d 1140, 1145 (5th Cir. 1980) ("the District Court must do something more to assure itself of the factual basis and bona fides of the agency's claim of exemption than rely solely upon an affidavit.").

### B. Even if another investigation *does* exist, the Agencies have made no showing that the release of documents would interfere with it.

Even assuming that some state investigation does exist, and that a federal agency can claim exemption on its behalf, which is questionable, *see Playboy Enters., Inc. v. DOJ*, 516 F. Supp. 233, 246 (D.D.C. 1981), the Agencies have failed to meet their burden of showing that the

4

release of the requested documents would interfere with the supposed investigation. *See* Mot. at 11-14 (explaining Agencies' burden to show interference with investigation). Indeed, again, on this point, the Agencies' declarant simply makes the hearsay statement that the Tampa Field Office "indicated that release of any information from this file will interfere with that pending investigation." Hardy Decl. ¶ 28. But he says nothing to establish, for instance, that the unspecified state agency even knows what is in the FBI's files or that it briefed the FBI on its investigation such that the FBI could make a reasoned determination about what might be exempt. He says nothing to establish how each document in the *FBI*'s files would interfere with an investigation by a different, unrelated agency. And he says nothing, more generally, to establish that disclosure could "be reasonably expected to interfere in a 'palpable, particular way' with the investigation." *Cuban v. SEC*, 744 F. Supp. 2d 60, 85 (D.D.C. 2010) (citation omitted). Moreover, such a showing would be especially difficult given that substantial information about the FBI's investigation has already been disclosed to Gawker by Hogan with the Agencies' express approval. *E.g.*, Hardy Decl., Ex. H at 72 (email from AUSA confirming that Gawker "would not be interfering in any way with any investigation" by disclosing responsive records or if Gawker were to "contact witnesses who may have provided information to the Government").

Without such a showing, the Agencies' claimed exemption, and wholesale withholding of documents, cannot stand. *See*, *e.g.*, *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1114 (D.C. Cir. 2007) (agencies must provide "specific information about the impact . . . the disclosures" would have on the investigation); *see also Bevis v. Dep't of State*, 801 F.2d 1386, 1389-90 (D.C. Cir. 1986) (agencies should redact rather than withhold).

III.   **THE OPPOSITION MISSTATES BASIC PRINCIPLES GOVERNING FOIA.**

Without belaboring the point, Gawker also draws the Court's attention to several misstatements by the Agencies of basic FOIA law:

5

1. The Agencies claim that Exemption 7(A) has "categorical applicability," by which they appear to mean that any document in an investigative file may properly be withheld. Hardy Decl. ¶¶ 29-31. That is not the law: the exemption "is not meant to be a 'blanket exemption' for any files or records that are relevant to an investigation." *Cuban*, 744 F. Supp. 2d at 85 (citation omitted). Accordingly, the Agencies "must define [] categories [of documents] functionally," "conduct a document-by-document review in order to assign documents to the proper category," and "explain . . . how the release of each category would interfere with enforcement proceedings." *Bevis*, 801 F.2d at 1389-90.

2. The Agencies also assert that the Hardy Declaration deserves judicial "deference." Opp. at 6. But the authority they cite, *Bilderbeek v. United States Department of Justice*, 2010 WL 1049618 (M.D. Fla. Mar. 22, 2010), stands only for the proposition that law enforcement agencies may be entitled to deference on the *separate* question of whether the records were "compiled for a law enforcement purpose" in the first place. *See also Campbell v. DOJ*, 164 F.3d 20, 32 (D.C. Cir. 1998) (FBI is entitled to presumption that records were *compiled* for law enforcement purpose because the agency "specializes in law enforcement"). That question is not at issue here. In any event, courts only accord "agency declarations a presumption of expertise" if they "are clear, specific and adequately detailed, and set forth the reasons for nondisclosure in a non-conclusory manner." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 90 F. Supp. 2d 9, 13 (D.D.C. 2000); *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("agency affidavits must be . . . 'relatively detailed and non-conclusory'") (citation omitted). Here, while the Hardy Declaration includes lots of boilerplate detail about the FBI's records systems and search capability (neither of which is at issue), it contains no details whatsoever on the issues actually before the Court – whether there is in fact

an ongoing investigation and whether release of the requested records would in fact interfere with that investigation.

   3. The Agencies mischaracterize their burden at summary judgment. Opp. at 6 (suggesting that courts should defer to blanket, conclusory representations made in agency affidavits at summary judgment). While an actual conflict in *evidence* precludes summary judgment, *Mudd v. U.S. Army*, 2007 WL 4358262, at *4 (M.D. Fla. Dec. 10, 2007), ambiguous, conclusory declarations are not evidence. Nor is hearsay. While Gawker, as the movant, bears the initial burden to show that there is no genuine issue of material fact, the burden of proof, as a matter of law, remains "squarely on the government to prove that the information in question is covered by one of the exemptions." *Ely v. FBI*, 781 F.2d 1487, 1489-90 (11th Cir. 1986).

   4. Finally, the Agencies claim that Gawker's FOIA requests are somehow improper because the documents are to be used for a private purpose. This is not the law. *See DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 771-72 (1989) ("the identity of the requesting party has no bearing on the merits of his or her FOIA request" nor does "the particular purpose for which the document is being requested."); *see also Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (same); *Jurewicz v. U.S. Dep't of Agric.*, 741 F.3d 1326, 1332 (D.C. Cir. 2014) (intended use is "not relevant").

**IV. THE GOVERNMENT'S REQUEST FOR THREE EXTRA MONTHS TO PRODUCE A *VAUGHN* INDEX SHOULD BE REJECTED.**

In the Declaration supporting its Opposition, the FBI requests that it be permitted to move for summary judgment on its claimed exemption and that the Court allow it three *months* to index under 1,200 pages. *See* Hardy Decl. ¶¶ 31, 32; *see also* Supp. Thomas Decl., Ex. 1 (EOUSA identifying 59 pages of withheld documents). While the showing to date is sufficiently inadequate that Gawker is entitled to summary judgment now, if the Court is inclined to review

7

an index, it should insist that the Agencies provide one promptly, given the fact that Gawker has been requesting this information since November 2013, the Agencies have substantially delayed in responding, and Gawker is facing trial with important First Amendment interests at stake.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in its opening papers, Gawker respectfully requests that this Court grant it summary judgment and order the Agencies to disclose the requested records forthwith. If the Court determines that a *Vaughn* index is needed, Gawker respectfully requests that the Court order its production promptly in light of the schedule in the underlying litigation.

Respectfully submitted,

THOMAS & LOCICERO PL

Seth D. Berlin (pro hac vice)
Alia L. Smith (pro hac vice)
Patrick Kabat (pro hac vice)
LEVINE SULLIVAN KOCH
 & SCHULZ, LLP
1899 L Street, NW, Suite 200
Washington, DC 20036
Telephone: (202) 508-1122
Facsimile: (202) 861-9888
sberlin@lskslaw.com
asmith@lskslaw.com
pkabat@lskslaw.com

By: */s/ Gregg D. Thomas*
   Gregg D. Thomas
   Florida Bar No.: 223913
   Rachel E. Fugate
   Florida Bar No.: 0144029
601 South Boulevard
P.O. Box 2602 (33601)
Tampa, FL 33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070
gthomas@tlolawfirm.com
rfugate@tlolawfirm.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of June 2015 a true and correct copy of the foregoing is being electronically filed and served via CM/ECF on the following:

Kenneth Stegeby
Office of the United States Attorney for the Middle District of Florida
400 North Tampa Street, Suite 3200
Tampa, FL 33602
Kenneth.Stegeby@usdoj.gov

*Counsel for Defendants*

                                                                     */s Gregg D. Thomas*
                                                                         Attorney