1              UNITED STATES OF AMERICA
            UNITED STATES DISTRICT COURT
2            MIDDLE DISTRICT OF FLORIDA
                 TAMPA DIVISION
3
                   - - -
4           HONORABLE SUSAN C. BUCKLEW
      UNITED STATES DISTRICT JUDGE PRESIDING
5                  - - -

6   GAWKER MEDIA, LLC, ET. AL. )
                              )
7        PLAINTIFF,           )
                              )
8   VS.                       ) NO. 8:15-CV-1202-T-24EAJ
                              )
9   FBI, ET. AL.              )
                              )
10       DEFENDANTS.          )
    _____)
11

12
                    **MOTION HEARING**
13
          REPORTER'S TRANSCRIPT OF PROCEEDINGS
14                **JUNE 24, 2015**
                  TAMPA, FLORIDA
15

16

17       MELISSA A. PIERSON, CA/CSR 12499,
             IL/CSR 084.003138, RPR
18        FEDERAL OFFICIAL COURT REPORTER
          801 N. FLORIDA AVENUE, 2ND FLOOR
19            TAMPA, FLORIDA 33602
             PH:  (813) 301-5336
20         USDCTRANSCRIPTS@GMAIL.COM

21

22

23

24

25

```
1    APPEARANCES OF COUNSEL:

2    ON BEHALF OF PLAINTIFF:
             Levine, Sullivan, Koch & Schultz, LLP
3            BY:  Mr. Seth D. Berlin, Esq.
             BY: Ms. Rachel E. Fugate, Esq.
4            1899 L. Street, NW
             St. 200
5            Washington, DC 20036
             (202) 508-1122
6            www.lskslaw.com

7    Also present:  Ms. Heather Detrick

8

9    ON BEHALF OF DEFENDANTS:

10           United States Attorney
             Mr. A. Lee Bentley, III
11           BY:  Mr. Erik K. Stegeby, Esq.
             400 N. Tampa St.
12           St. 3200
             Tampa, FL 33602
13           (813) 274-6087
             Kenneth.Stegeby@usdoj.gov
14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

```
1              TAMPA, FLORIDA; WEDNESDAY, JUNE 24, 2015

2                            - - -

3              (COURT IN SESSION AT 11:00 A.M.)

4                          *   *   *

5         THE COURT:  All right.  The matter that is set this

6    afternoon -- or this morning, I guess, still, is sort of an

7    interesting case, but at any rate, the style of the case is

8    Gawker Media, Greg Thomas versus the Executive Office of the

9    United States Attorney, the FBI.  This is a criminal case --

10   civil case.  The civil case number is 15-1202.

11        So let me begin by asking counsel to state their

12   appearances, and we'll start with counsel for the plaintiff,

13   and if someone else is seated at counsel table, tell me who

14   that is.

15        MR. BERLIN:  Very well, your Honor.  I am Seth

16   Berlin with the office of Levine, Sullivan, Koch & Schulz in

17   Washington, DC.  I represent plaintiff.  To my right is

18   Heather Detrick, and she is the plaintiff in this matter and

19   next to her is Rachel Fugate, co-counsel in this matter.

20        I wanted to mention Mr. Thomas had, on short

21   notice, been committed to be out-of-state with another client

22   and sends his regrets.  I did want to mention that.

23        THE COURT:  Thank you.  On behalf of the

24   defendants.

25        MR. STEGEBY:  Good morning, Kenneth Stegeby on
```

```
 1    behalf of the FBI and the AUSA, and next to me is Karen
 2    Pipas.
 3              THE COURT:  Do me a favor and pronounce your last
 4    name for me again.
 5              MR. STEGEBY:  Stegeby.
 6              THE COURT:  Stegeby.  Okay.  Thank you.
 7    Mr. Stegeby, let me see if I can find a pen that works.
 8              Let me just tell you how I see this hearing going,
 9    and then if you need to make any comments, I'll give you the
10    opportunity to do that.
11              I have read everything.  That includes, obviously,
12    the motion and the attachments, and the response and the
13    attachments, and the reply and any attachments, as well as
14    the motion for expedited consideration and for a Vaughn
15    index, etc.
16              So with that understanding, here's what I would
17    propose to do.  I have a number of questions, and I would
18    like to ask those questions.  Most of them are for you,
19    Mr. Stegeby, and perhaps a few, Mr. Berlin, for you, but by
20    far most for the defendants.  After I have finished asking
21    all of my questions, then I will give each of you an
22    opportunity to make whatever remarks you would like to make.
23    Fair enough?
24              MR. STEGEBY:  Yes, your Honor.
25              MR. BERLIN:  Yes, your Honor.
```

1          THE COURT:  Okay.  Mr. Berlin, let's start with

2   you.  Could I get you to stand at the podium so I could hear

3   you?

4          MR. BERLIN:  Absolutely, your Honor.

5          THE COURT:  As far as the state court case, you're

6   one of the trial lawyers?

7          MR. BERLIN:  That's right, your Honor.

8          THE COURT:  And that case is still set to go on

9   July 6th.

10          MR. BERLIN:  It is, your Honor.  In the interest of

11   giving the Court full information, there is currently pending

12   a proceeding in the Second District Court of Appeal that asks

13   whether that can go forward jurisdictionally speaking, and in

14   compliance with a rule of Florida procedure, but it is

15   currently scheduled for July 6th.

16          THE COURT:  All right.  And since your last filing,

17   you've not received anything from the FBI.  They've

18   identified, I think, 1168 pages that may be responsive and

19   you've not received any of that?

20          MR. BERLIN:  That's correct, your Honor.

21          THE COURT:  All right.  You did receive -- and I

22   should have asked, you didn't receive the CD's either?

23          MR. BERLIN:  No.

24          THE COURT:  As far as the Executive Office of the

25   US Attorney, I think attached to Mr. Thomas' reply was a

1    February 27, 2015 response from the Executive Office, and

2    essentially, it consisted of one page, which was a --

3    appeared to be something from Gawker, is that what it was.

4              MR. BERLIN:  Yes, your Honor.  It was a news report

5    on Gawker that is not the story that is at issue in the state

6    court litigation.  That's a different piece.

7              THE COURT:  Okay.  Three emails completely

8    redacted, other than dates.

9              MR. BERLIN:  That's correct, your Honor.

10             THE COURT:  All right.  And then, it seemed to

11   suggest there were 59 pages withheld, and that they had been

12   compiled by another agency and were being turned over to the

13   FBI?

14             MR. BERLIN:  I'm not sure.  Maybe Mr. Stegeby can

15   shed more light on this.  As I understand from our response,

16   which we submitted to the Court with our motion to expedite,

17   along with an affidavit from Mr. Thomas, the 59 pages were

18   actually being withheld asserting three exemptions, and that

19   there was a separate set of documents that had been referred.

20   That response, as I understand it, doesn't address how many

21   of those documents, but there's an affidavit attached to the

22   Government's opposition that appears to state that those were

23   FER documents that consisted of one page, and two CD's.  I'm

24   not sure whether they meant DVD's, but there's two disks and

25   one page.  That's what I understand.  We're a little bit in

1    the dark.  So that's about as much as I know.

2              THE COURT:  So what is your understanding of the

3    status of the 59 pages?

4              MR. BERLIN:  That they have been withheld.

5              THE COURT:  Just withheld.

6              MR. BERLIN:  Withheld.  They listed in that letter

7    three -- they didn't explain anything, but they listed three

8    exemptions under FOIA by their exemption number.

9              THE COURT:  Okay.  At least two of those exemptions

10   were privacy exemptions, right?

11             MR. BERLIN:  That's correct, your Honor.

12             THE COURT:  Okay.  Is it your understanding that

13   there is still a privacy exemption being asserted here?

14             MR. BERLIN:  Well, I believe it to be asserted

15   because it was listed in the letter, but it was perplexing to

16   us because we had had a prior round with the Government where

17   they raised the privacy concerns, and we after -- not an

18   insignificant amount of effort, I won't rehash it cause it's

19   in the papers, but after a significant amount of effort in

20   the state court were able to obtain, what are essentially,

21   privacy waivers or records authorizations from

22   Mr. Bollea/Mr. Hogan, his counsel.  And then, without any

23   objection, we were able to get one from Mrs. Clem, and those

24   seem to be the players who would have a legitimate privacy

25   interest in this.  We provided those records certifications.

```
 1              THE COURT:  You did a new FOIA request?

 2              MR. BERLIN:  With our new FOIA request we provided

 3    those authorizations.  So we were perplexed to see privacy

 4    considerations being asserted.

 5              Sometimes the Government will, in my experience,

 6    assert a blanket privacy objection even, for example, for the

 7    identities of the law enforcement officials who participate

 8    in an investigation, usually when there is, for example, an

 9    undercover agent, and that's perfectly appropriate.

10              In this instance the people who were principally

11    involved had been -- have already been put on the record in

12    court proceedings, including in the state court, litigating

13    over these privacy things.  Because what we do, and as I said

14    at the outset, I come from Washington.  I have a number of

15    colleagues in Washington who have various jobs working for

16    the Department of Justice, and I called Ms. Sweeney who's in

17    the courtroom today, who's one of the US Attorney's who

18    worked on this investigation, and spoke with her.  I spoke

19    with her, what I understand to be her supervisor,

20    Mr. Mosakowski.  We spoke with the FBI agent.  To all of

21    them, we don't want to interfere with an investigation.

22    That's not our purpose, and please tell us if we are, and we

23    were told, "No, we're not."  So that's sort of a separate

24    issue.

25              But on the privacy issues we were somewhat
```

```
 1    mystified by that.  It would be our position, for what it's
 2    worth, your Honor, that at this point in the proceedings that
 3    issue was asserted after the complaint was filed and, I
 4    guess, if they do that, then they do that.  But there has
 5    been in the summary judgment briefing or any of the other
 6    briefing no showing at all by the Executive Office of the
 7    US Attorney's office, there is no affidavit from them.  There
 8    is no showing as to the privacy interest.  There is no
 9    showing as to the -- they don't assert, curiously, the law
10    enforcement exemption.  One of those three exemptions.  There
11    is two that deal with privacy, and the third deals with
12    deliberative process or attorney/client privilege.  So we are
13    -- it's a little bit confusing.
14              THE COURT:  I'll ask Mr. Stegeby.
15              MR. BERLIN:  Fair enough.
16              THE COURT:  Anything else happen since your last
17    filing that I should be aware of?
18              MR. BERLIN:  Just that -- you asked this at the
19    beginning, just that the trial judge in the state court
20    proceeding reiterated a case management conference last week
21    that the case would go to trial and subject to this appellate
22    proceeding.  That's new since the filings, but since you
23    asked, I wanted to mention that.
24              THE COURT:  Okay.  Thank you.  Mr. Stegeby.  The
25    rest of the questions are all yours.
```

1          MR. STEGEBY:  Thank you, your Honor.

2          THE COURT:  All right.  Let me just make sure of

3     your representation.  You are representing both the Executive

4     Office of the United States Attorney and the FBI, is that

5     correct?

6          MR. STEGEBY:  Yes, your Honor.

7          THE COURT:  All right.  And let me just verify a

8     couple of other things.  Probably a good place to start is

9     just where I left off with Mr. Berlin, and let's talk about

10    the Executive Office and the US Attorney first.

11         The Justice Department turned over one page, as I

12    said, which appeared to be some news article regarding

13    Gawker.  Three pages of completely redacted emails, except

14    for, I think, the date.  And then, they withheld 59 pages.

15    And it says, I'm reading from this -- from May 27, 2015, "The

16    redacted withheld documents were reviewed to be determined if

17    any information could be segregated, but they are being

18    withheld in their entirety."

19         And then, there was also an additional box checked

20    that said, "Our office located records that originated with

21    another government component.  These records were found in

22    the US Attorney's office files and may or may not be

23    responsive to your request.  And these records will be

24    referred to the following components for review in direct

25    response to the FBI."

1          So that I'm clear, you turned over, essentially,

2     one page, three redacted pages, and -- I don't mean you, I

3     mean the office of the US Attorney -- Justice.  59 pages were

4     withheld, and I want to talk about that in a minute.  And

5     then, there were other documents that you forwarded to the

6     FBI.

7               MR. STEGEBY:  That is correct, your Honor.

8               THE COURT:  Okay.  Let's go back to those documents

9     that you did turn over, to the extent you turned them over.

10              The emails, for example, say, and the only thing --

11     I have three emails.  The date is February 23, 2015.  They

12     appear to be stream emails, or maybe they are duplications, I

13     don't know.  But at any rate, there appear to be exemptions

14     listed on those, and they are B(6), B(7)(c).  And if I look

15     at my list, B(6) says, "Personal medical files which would

16     constitute invasion of privacy."  And the other exemption has

17     to do with reasonably -- I'm sorry.  The invasion of personal

18     privacy.  I'm not sure I understand that.  Why are you

19     asserting any, if you are, privacy exemptions after you have

20     gotten the releases?

21              MR. STEGEBY:  Your Honor, I have not had the

22     benefit of looking at the actual files themselves.

23              I know that the FBI received waivers from multiple

24     attorneys, as well as Mr. Hogan and Ms. Clem.

25              THE COURT:  Yes.

1          MR. STEGEBY:  Heather.  Those seem to be

2     appropriate.  If the same waivers were submitted to the

3     EOUSA, we have to agree that to the extent that information

4     related to them are found in the 59 documents, or even in the

5     emails, that needs to be produced.

6          I have to say that I agree with Mr. Berlin that to

7     the extent that those documents contain any law enforcement

8     officers, personal identification, phone numbers and so

9     forth, we're going to have to redact that information.

10          THE COURT:  That's understandable.

11          MR. STEGEBY:  Yes.

12          THE COURT:  But you don't understand the privacy

13     exemption either then?

14          MR. STEGEBY:  I'm sorry?

15          THE COURT:  You don't understand why the privacy

16     exemption is being asserted?

17          MR. STEGEBY:  Today.  That's correct.

18          THE COURT:  Okay.  All right.  Then, with respect

19     to the other documents -- well, the 59 documents, I guess, we

20     don't know why they are being withheld?

21          MR. STEGEBY:  That's correct.

22          THE COURT:  And you don't know?

23          MR. STEGEBY:  I have not seen the documents.  I

24     also have not seen the waivers themselves.  So I don't know.

25          THE COURT:  How could you not have see the waivers?

```
 1   They are attached to everything.  I've seen them at least two
 2   or three times.
 3           MR. STEGEBY:  I have not seen the waivers submitted
 4   to the Executive Office.  I've seen the waivers that were
 5   submitted to the FBI.
 6           THE COURT:  This is not going to be helpful if you
 7   don't know much.
 8           All right.  So there are 59 pages and you have no
 9   idea why they are being withheld?
10           MR. STEGEBY:  That's correct.
11           THE COURT:  And you don't know, Mr. Berlin?
12           MR. BERLIN:  Your Honor, all I know is what was at
13   the bottom of the letter, which is the three exemptions by
14   number.  That's all I know.
15           THE COURT:  All right.  Then let's switch gears a
16   minute.
17           MR. STEGEBY:  Yes, your Honor.
18           THE COURT:  All right.  And I've written these
19   down.  So if you'll bear with me as I was reading through the
20   documents.
21           Attached to your response was -- I believe it was
22   Agent Hardy's declaration, that there are some 1100 plus
23   documents that the FBI is willing to process and perhaps turn
24   some of them over.  Some of them are non-exempt, apparently,
25   and some of them are, is that right?
```

1           MR. STEGEBY:  Your Honor, at this point, what the

2    FBI is doing, they are trying to review the documents for

3    exemption 7(a) with respect to an ongoing law enforcement

4    investigation.  They are not reviewing the documents for

5    other exemptions, such as 6(c), or 6, or 7(c), 7(d), etc.  As

6    was suggested by Mr. Hardy, it is a much quicker process to

7    categorize the documents that the FBI has in its file.  They

8    are working hard at it.  Ordinarily they can process about

9    500 pages per month and this involves about 1200 pages.  That

10   ordinarily would take two-and-a-half-months or so.

11          THE COURT:  500 pages per month?

12          MR. STEGEBY:  That is correct, your Honor.

13          Now, when my office received the lawsuit here, we

14   impressed upon the FBI that they are going to have to get

15   going to do at least a categorical declaration on behalf of

16   the FBI that we can utilize and submit -- or file a motion

17   for summary judgment based upon it.  I was informed recently

18   that they have made great progress with that.  So they said

19   that they might be able to produce a declaration to me at the

20   end of next week.

21          THE COURT:  All right.  Well, I'm going to issue an

22   order at the end of this that I might lose some of those

23   dates that you are proposing, or that they have already

24   proposed.

25          He does say in his declaration, he does a proposed

1   time frame, and he gives an X date as July the 8th, which he

2   will process and release all non-exempt material.  Now, that

3   leads me to believe there is some non-exempt material.

4           MR. STEGEBY:  There may be.  I have not been

5   informed of that.  Our office actually offered to go through

6   the documents themselves, and they said we prefer to do it

7   themselves, which is understandable.  Because the FBI has a

8   lot of different types of documents in their files.  Many of

9   them are confidential, maybe even top secret and so forth, so

10  they are sort of guarding their documents jealously.  So we

11  understood that.

12          At the same time, we also told them that your Honor

13  may not agree with the timeline that they have asked for.

14          THE COURT:  Okay.  Suffice it to say I understood

15  that to mean that there are some non-exempt documents in

16  that, and that when he -- made his proposal that he would

17  turn over on X date the non-exempt documents, and then

18  approximately ten days later, and I'm not saying I agree with

19  the time frame, but ten days later that he would provide an

20  index and then give us the reasons for the exemption being

21  applied.  I assumed there were exempt and non-exempt

22  documents.  Maybe that was an incorrect assumption.  That was

23  my assumption.

24          Now, let me ask another question, and you may have

25  answered this.  But as a result of the releases that have

 1   been signed by Mr. Bollea, his attorneys, Ms. Cole, formally

 2   known as Ms. Clem, I guess, they were forwarded, as I

 3   understand it, along with the FOIA request, the supplemental

 4   FOIA request on November 7, 2014, the FBI is no longer

 5   asserting a privacy exemption.  We are only now working with

 6   the law enforcement exemption?

 7            MR. STEGEBY:  That's correct, your Honor.

 8            THE COURT:  Okay.  So that's no longer an issue

 9   with the FBI.

10            MR. STEGEBY:  That's correct, your Honor.

11            THE COURT:  It may be an issue with the Executive

12   Office of the US Attorney or you don't know?

13            MR. STEGEBY:  At this point, I don't know.

14            As far as the privacy goes, if we have the waivers,

15   if the waivers were indeed submitted with the FOIA request to

16   the EOUSA, they obviously have to go through those documents

17   again and redact only information that do not fall under the

18   waivers.

19            THE COURT:  Well, I assume they were submitted

20   because I was given a copy of the November 7th, I believe it

21   was, request and they seemed to be attached.  So I assumed

22   they were submitted.

23            All right.  Let me move on.  So now, the FBI is

24   asserting a law enforcement exemption as to some of the

25   documents or all of the documents.  I'm going to assume it's

1      some of the documents, is that correct?

2               MR. STEGEBY:  My understanding is that they are

3      trying to protect all of the documents under 7(a) because

4      they are under the belief that releasing them would interfere

5      with an ongoing law enforcement investigation.

6               THE COURT:  All of the documents?

7               MR. STEGEBY:  That is my understanding, yes, your

8      Honor.

9               THE COURT:  Well, what's the objective of the

10     two-part disclosure that Mr. Hardy suggested where he would

11     go through and turn over the non-exempt and then give us a --

12     essentially a Vaughn index?

13              MR. STEGEBY:  Well, Mr. Hardy is one of the

14     top-level officials for the FOIA unit up in West Virginia.

15     So I don't believe that he, himself, has yet gone through the

16     documents.  So he has five teams that operate and work on the

17     FOIA requests.

18              THE COURT:  What are they doing?

19              MR. STEGEBY:  They go through about -- since

20     October of last year up until June of this year, they have

21     received about 5000 different FOIA requests, and they are

22     working on about 5.5 million documents that they are

23     reviewing.  They have five teams that are dividing up the

24     work that needs to be done.

25              There are some cases that have been filed against

1    the FBI where the Court has ordered them to move faster.  So

2    obviously those cases take precedent.

3         Like I mentioned, the documents they go through are

4    very sensitive, and FOIA requests are processed in the order

5    they were received.  So certainly a Court has the authority

6    to make the FBI work a little faster, but they are physical

7    capabilities of the FBI's FOIA Unit.

8         THE COURT:  So this request was filed November 7th.

9    That's, what, eight months ago?  That's not fast?

10        MR. STEGEBY:  No, your Honor.  Because when they

11   first received the request, they did not -- the FBI was not

12   aware of an ongoing investigation.  What they did do was to

13   process the request, and they identified the 1168 pages that

14   potentially was responsible -- or responsive to the request.

15        They sent a letter out to plaintiffs and they said,

16   "This is how many documents -- pages we have found.  It's

17   going to cost this much to process it."  About $150, I

18   believe.

19        THE COURT:  That does not seem to be an issue.

20        MR. STEGEBY:  Correct.  On February 3rd they sent a

21   letter to the FBI and they said, "Okay.  We'll accept the

22   charges up to $500.  Give us the documents or process the

23   documents."

24        The following day, February 4th, the FBI sent a

25   letter out to Plaintiff and said, "Sorry, we have learned

1    that there is an ongoing investigation.  So we have to

2    protect the documents under 7(a)."

3            And then, they also mentioned to Plaintiff that

4    Plaintiff could appeal, which they did, and that appeal was

5    resolved in May, after which they filed the lawsuit.

6            THE COURT:  Right.  All right.  Let's talk about

7    the law enforcement proceeding.  You're right.  You said --

8    or they said, I'm sorry, the FBI, "On or before February 4th,

9    2015, they learned of a pending non-federal law enforcement

10   proceeding relevant to certain or all of the documents..."

11   now you seem to say "all," "...and that the release of some

12   of the documents could reasonably be expected to interfere

13   with that investigation."  So far correct?

14           MR. STEGEBY:  Yes, your Honor.

15           THE COURT:  Okay.  Who is the non-federal law

16   enforcement agency that's investigating?

17           MR. STEGEBY:  At this time, the FBI has said that

18   the law enforcement agency wants to be -- remain anonymous.

19   They simply don't want to give away what it is.

20           THE COURT:  They are not asking to give away.  I

21   mean, you're telling me a law enforcement office that's doing

22   an investigation they want to remain anonymous?

23           MR. STEGEBY:  Yes, your Honor.

24           THE COURT:  Do you know who it is?

25           MR. STEGEBY:  Yes, I do.

1          THE COURT:  If I send everybody out of this

2     courtroom, except for you, will you tell me who it is?

3          MR. STEGEBY:  Yes, I can do that.

4          THE COURT:  All right.  Let's start there.  I'm

5     going to ask everybody to step out for just a minute.

6          MR. BERLIN:  Your Honor, if I may, sorry to

7     interrupt.  I would like to note an objection on the record.

8     This is supposed to be adversarial process.

9          THE COURT:  Well, I can't make him tell me on the

10    record here with you in here.  I'm going to make him tell me

11    without you in here.

12          MR. BERLIN:  I respectfully suggest you have the

13    authority to make him answer with us in here.

14          THE COURT:  All right.  Well, let me see what he

15    says without you in here for a minute.

16          MR. BERLIN:  Fair enough, your Honor.

17          THE COURT:  All right.

18    (Courtroom is cleared.)

19          THE COURT:  This is my law clerk.  Do you mind if

20    she stays here?

21          MR. STEGEBY:  No, that's fine, your Honor.  I'm

22    sure it will remain within the chambers and at some point I

23    suspect this will be admitted officially, too, but for now,

24    okay.

25    (Discussion sealed for the record.)

1    (Everyone enters courtroom.)

2         THE COURT:  All right.  Mr. Stegeby has informed me

3    as to the law enforcement agency that is conducting the

4    investigation.  He has also informed me as to the subject

5    matter of the investigation.  Mr. Berlin, at this time, I'm

6    not going to reveal that to you.  So I think, depending on

7    what I do at the end of this hearing, however, it will help

8    me to resolve any issues that I have to resolve.

9         So let me go ahead and ask another series of

10   questions because I have a bunch of questions for you,

11   Mr. Stegeby.  All right.

12        What has the FBI done, if you know, to look at any

13   of these 1168 pages to determine if this exemption applies?

14   Do you know if they have done anything?

15        MR. STEGEBY:  Yes, your Honor.  Once the lawsuit

16   was filed, we knew that there would be a possibility that the

17   Court would order either a Vaughn index or a declaration of

18   some sort.

19        THE COURT:  Both.

20        MR. STEGEBY:  An in-camera review or both as well.

21   So we told them that they had to get going.  The way that we

22   look at the case law is that when you assert a 7(a)

23   exemption, it is sufficient to submit a summary judgment

24   motion to the Court supported by a declaration by the agency

25   that categorizes the documents.  So rather than a

1    page-by-page redaction process, which would take ordinarily

2    two-and-a-half months with 1200 documents, they can do

3    categorization of the types of documents like witness

4    interviews, ER-2's and so forth, which is a

5    document-by-document review.  So they have started the

6    document-by-document review, and as I mentioned, I was told

7    they may be done with that and a declaration by the end of

8    next week.

9         I've seen a draft of it.  There are issues that I

10   have with it that I'm working with them on, but it seems to

11   be in pretty decent shape so far.

12        THE COURT:  Okay.  I might hurry that up a little

13   bit.  Let me go on and ask a couple of other questions.

14        There also appeared to be two DVD's or CD's, I'm

15   not sure what the media is that it's on.  Do you know what

16   I'm talking about?

17        MR. STEGEBY:  Yes, your Honor.

18        THE COURT:  I'm making the assumption that those

19   are the "sex tapes?"

20        MR. STEGEBY:  That is my understanding.  I have not

21   seen them myself.  So I don't know.  That is my

22   understanding.

23        THE COURT:  Okay.  So that is your understanding?

24        MR. STEGEBY:  Yes, your Honor.

25        THE COURT:  Well, explain to me how there could be

1    any law enforcement exemption to those?

2            MR. STEGEBY:  The videotape, in my belief, is about

3    approximately 30 minutes.  There may be statements that

4    Mr. Hogan makes on that tape that could potentially be --

5    would potentially interfere with the ongoing law enforcement

6    investigation.

7            THE COURT:  While having sex he's making statements

8    that would interfere with the law enforcement investigation?

9            MR. STEGEBY:  Your Honor, like I said, I haven't

10   seen it.  I don't know if they have sex for 30 minutes or for

11   2 minutes or talk for 28 minutes.  I just don't know.

12           THE COURT:  Okay.  Well, I can somehow envision

13   where this, at one point, might have been a privacy exemption

14   which no longer exists.  For the life of me I can't

15   understand how there can be any law enforcement exemption to

16   those tapes.

17           MR. STEGEBY:  Your Honor, if I may?

18           THE COURT:  Or DVD's, or CD's or whatever they are.

19           MR. STEGEBY:  I can see the Court's point of view

20   on that.  By making a 7(a) exemption argument at this point,

21   the FBI is going through the documents and the DVD's

22   categorically, so not line-by-line.

23           THE COURT:  Going through the DVD's categorically?

24           MR. STEGEBY:  Correct.  So there may be other

25   exemptions.  If the only exemption is --

1        THE COURT:  That's the only one you asserted.

2        MR. STEGEBY:  Well, what I was going to say, your

3   Honor, is if the only other exemption besides 7(a) attaches

4   to the videotape is a privacy one, obviously we're going to

5   have to produce the DVD because of the waiver.

6        THE COURT:  All right.  Let me go through a couple

7   of other questions.  You agree that you have, meaning the

8   FBI/Executive Office of the US Attorney, you have the burden

9   of establishing that the documents or the categories of

10  documents are covered, it's your burden?

11       MR. STEGEBY:  Correct.  Yes, your Honor.

12       THE COURT:  Can reasonably be expected to

13  interfere?

14       MR. STEGEBY:  Correct.

15       THE COURT:  All right.  Mr. Thomas, in the

16  expedited request and the request for a Vaughn index,

17  requested that a Vaughn index be ordered, and he also gave me

18  a definition of a Vaughn index.  What is your -- I've never

19  done this before in my entire judicial career, so what is

20  your understanding of a Vaughn index.

21       MR. STEGEBY:  A Vaughn index is a document,

22  typically it comes in a chart, and it lists the label of the

23  document, like an email or something, and then who is

24  involved, so "to/from," and usually the date and time; and

25  then, it also lists which exemption it applies to that

1    particular document; and then, you have a little box, for the

2    most part, that explains why, without revealing the content

3    of the document.  But it's something that is detailed enough

4    that the Court can take a look at the chart and say, "Yep,

5    that seems to be it."

6            So, for example, if 6 or 7(c) applies, which deal

7    with privacy like what we are talking about in this case --

8            THE COURT:  We're not talking about that anymore

9    because we're talking about 7(a).

10           MR. STEGEBY:  That's correct.  For right now.  But

11   if we talked about the privacy issues, it would most likely

12   say, "Redacted name, and telephone number, and address of law

13   enforcement officer."  That would give the Court sufficient

14   information to say, "Yep, that is exactly what that exemption

15   applies to."

16           So that is separate from a declaration or an

17   affidavit, which is usually a little bit less detailed.  If

18   it's a Vaughn declaration, then you will get the same

19   information as in a Vaughn index, but in sort of a narrative

20   form as opposed to a chart.

21           What we are doing in this case here is a little bit

22   different because instead of going through each document

23   line-by-line and redacting whatever is redactable based on

24   whatever exemption applies to it, in this case the FBI is

25   going through each document which may consist of three, or

1    two or something, with attachments.  It could be 100 pages,

2    but they look through the document and do a

3    document-by-document categorization.  So we have 49 documents

4    of this sort, and 13 of this sort, etc., and then, the agency

5    has to produce some sort of evidence of what kind of harm

6    would or could reasonably be expected to occur with an

7    ongoing law enforcement investigation.

8             THE COURT:  All right.  Let's take -- since the US

9    Attorney produced emails, they are all redacted, but let's

10   take emails as an example.  Emails would be a category, for

11   example?

12            MR. STEGEBY:  Yes, your Honor.  That could be a

13   category.

14            THE COURT:  All right.  So the category -- what

15   would I get from you in a Vaughn index as it might relate to

16   emails?

17            MR. STEGEBY:  In a Vaughn index you will get, like

18   I mentioned before, the title email from whom to whom, etc.,

19   and then date and time, and then a description of what is in

20   there without revealing what is in there, and then the

21   exemption that applies to it and a description of why it was

22   redacted, like personal information, telephone numbers or

23   something of this sort.

24            THE COURT:  Okay.  Then along with that if I got a

25   declaration it would explain to me why -- more specifically,

1    why it was necessary to either redact or why it was

2    necessary -- or why you are claiming that this falls into the

3    law enforcement exemption?

4              MR. STEGEBY:  Yes, your Honor.  The chart obviously

5    just contains the data.  And a declaration would explain why

6    the data was withheld, and explain the exemption, the legal

7    status of it, and why it would apply to certain kinds of

8    information without revealing what information is in there.

9    But it's going to be more general than the chart itself.

10             And the case law in this circuit, and probably in

11   other circuits as well, is that the federal agency can

12   satisfy it's burden of proof either by an affidavit or

13   declaration, or the Vaughn index or both.

14             THE COURT:  Right.  Okay.  Let me go back and pick

15   up on something you said.  You've seen the draft?

16             MR. STEGEBY:  I have, your Honor.

17             THE COURT:  Hmm-hmm.  I would send -- "emails" is

18   one of the categories in the draft?

19             MR. STEGEBY:  I don't remember seeing emails.

20             THE COURT:  With a statement.

21             MR. STEGEBY:  Itself.  I don't recall the

22   categories that they put in there, but there were a number of

23   them.  It's a pretty lengthy declaration.

24             THE COURT:  Right.  How long?

25             MR. STEGEBY:  18 pages, is the draft.

```
1              THE COURT:  All right.  Well, at this point you
2    would agree with me that the FBI, or the Executive Office of
3    the US Attorney has done nothing, I guess we're talking
4    primarily about the FBI, to establish any kind of exemption,
5    or give me anything that might make me -- or give me an
6    affidavit or declaration where I can intelligently rule on
7    anything?
8              MR. STEGEBY:  At this point that is correct, your
9    Honor, besides the declaration that was attached to the
10   response in opposition of the motion for summary judgment.
11             THE COURT:  That wasn't helpful at all.  That was
12   just vague.  Let's see if I can -- I wrote that down because
13   I thought it was so general and vague.  "The FBI has
14   interviewed a number of people.  If the public were made
15   aware of such statements, people might be called as witnesses
16   in a civil case and could undermine the future prosecution
17   under investigation by the non-federal law enforcement
18   agency.  That chills people's willingness to cooperate."  I
19   mean, that's just nothing.
20             MR. STEGEBY:  Yes, your Honor.  And there is
21   actually case law supporting summary judgment motions based
22   on approximately that language.
23             At the very least, a response in opposition to the
24   motion for summary judgment should -- that, in my opinion, is
25   enough because we're entitled to the facts in opposition to
```

1    the motion for summary judgment.

2         THE COURT:  Well, I might not agree with you on

3    that.  But at any rate, so in my opinion, that was vague.  In

4    my opinion, that was conclusory.  In my opinion, that doesn't

5    relate at all to this big law enforcement investigation so

6    that I can, again, make any type of intelligent decision.

7         Anything else you want to tell me?

8         MR. STEGEBY:  No, your Honor, besides the fact that

9    the FBI is hard at work preparing a declaration for your

10   Honor.

11        THE COURT:  You're a good soldier.

12        MR. STEGEBY:  Thank you, your Honor.  I'm working

13   on the motion for summary judgment for this case.

14        THE COURT:  Okay.  And, you know, here's the thing,

15   I realize that -- well, at least partially I realize, not

16   entirely, I don't think the FBI has been very cooperative.

17   But, you know, the plaintiffs in this case, once they got

18   their privacy once -- their exemptions regarding privacy, and

19   they re-filed their FOIA request, and then they had to go

20   through an administrative appeal, and then they filed their

21   lawsuit, they've acted, in my opinion, very promptly.  You

22   know, we had, let's say -- I wrote this down somewhere.

23   November 7, 2014, they renewed their FOIA request.  That's

24   about -- over eight months ago, and along with the releases.

25        January 29th, the FBI informed them that this is

1    2015.  That there are over 1168 pages that may be responsive

2    and the two CD'S.  And then, the FBI denied any FOIA request

3    to produce the records.

4            Then Gawker did an administrative appeal that got

5    affirmed on May 6th.  May 19th they filed the case, and

6    May 20th they filed their summary judgment motion.

7            So, I mean, and here we are, what, June 24th,

8    having a hearing.  I can't fault them for not acting more

9    promptly, but I can fault the FBI for knowing that there's a

10   trial date.  I realize that that's just one consideration,

11   but for not acting more promptly.  They've known about this

12   since November the 7th.

13           MR. STEGEBY:  If I may address your Honor's

14   concern.  When a FOIA request gets into an agency, they can't

15   start working on it immediately.  They have to get an

16   agreement by their requester that they will pay however much.

17           THE COURT:  They did that promptly.

18           MR. STEGEBY:  Yes, they did.  But the day after

19   they agreed to pay, the FBI learned of the investigation and

20   sent a letter immediately to plaintiff and told plaintiff,

21   "If you disagree with our FOIA decision, you can appeal."

22   Yet plaintiff waited for over a month before they appealed.

23           Once they appealed in March of this year, the

24   appeal process will take some time.  So by May 6th of this

25   year, the final agency decision came out.  By May 20th a suit

1    was filed.

2          THE COURT:  They have to appeal.  Don't they have

3    to go through the administrative process before they can

4    actually file a lawsuit?

5          MR. STEGEBY:  I believe you're right on that, your

6    Honor, but at the same time, the FBI did its job here under

7    the FOIA requirements.  And there has been delays, but they

8    have been administrative delays.  And up until May 20th, the

9    FBI didn't think it had an obligation to do anything because

10   the final agency decision affirmed the FBI's decision to

11   apply 7(a).  So up to that point the FBI had no obligation to

12   do anything about the FOIA request.

13         However, when Gawker filed their suit on May 20th,

14   then we realized that, okay, now we can really be ordered to

15   produce a Vaughn index, or a declaration, or both, or

16   in-camera review.  So that's when the FBI started.

17         Ordinarily it would take, as Mr. Hardy explains,

18   about four to five days to do a categorical review, and an

19   additional ten days or so to draft a declaration based on the

20   categories.  We have pushed them hard.  They have pushed

21   themselves hard, and we are making great progress in

22   producing that declaration.  So I don't believe the FBI has

23   been doing anything to delay the resolution of this case.

24         I contacted plaintiffs after I was assigned to this

25   case and I said, "Hey, look, I understand you have a trial

```
 1    coming up in July.  I'm going to do try to do this as quickly
 2    as possible."  At that time I was unaware how much time the
 3    FBI needs.  Now, I understand why they need that much time,
 4    and I think that they have done a good job of speeding up
 5    their process.
 6              THE COURT:  You're a good soldier.  Do you want to
 7    tell me anything else?
 8              MR. STEGEBY:  Thank you.  No, I think that is it,
 9    your Honor.
10              THE COURT:  All right.  Thank you.  You may have a
11    seat.
12              MR. STEGEBY:  Thank you, your Honor.
13              THE COURT:  Mr. Berlin, look, the same thing I just
14    said to Mr. Stegeby, I can't make an intelligent decision
15    until I get more information.  Mr. Thomas -- unfortunately I
16    was out of town, but Mr. Thomas did file a motion requesting
17    an expedited decision.  I understand that.  Trial is
18    July 6th.  He did request a Vaughn index and perhaps a
19    declaration or affidavit.  I want you to talk to me about
20    what you think I need in order to make a decision and the
21    time frame, and then whatever else you want to talk about.
22              MR. BERLIN:  Sure.  Let me answer that in a couple
23    of ways, your Honor.
24              The first thing is I want to address the timelines.
25    FOIA sets forth the time lines.  They are statutorily set and
```

1    they are supposed to take 20 days to respond to the request,

2    30 days in extraordinary circumstances, and if there is an

3    administrative appeal there is supposed to be 20 days.

4         Now, in the real world that sometimes takes longer,

5    and we have been trying to be reasonable with the Government.

6    As I said, we understand they have better things to do.  But

7    we're talking here, there are cases, and many have been cited

8    to you in the papers, your Honor, where FOIA requests results

9    in a search that yields 5 million pages of documents, and

10   then the government comes and says we have a problem.

11        We're now talking about an 8-month delay where

12   somebody is saying, essentially, there are 1100 pages.  We're

13   saying, "Please, we'll pay for those copies," and still here

14   we are.

15        THE COURT:  I'm with ya.

16        MR. BERLIN:  We don't know, right.  But I want to

17   be clear -- and I realize, and look, I feel bad for

18   Mr. Stegeby because he has -- he has been a prince to deal

19   with.  So this is not directed at him.  But the reality is

20   when he stands here before your Honor and takes the position

21   that the FBI did its job, the FBI did not do its job.  It

22   violated the statute repeatedly and there's a consequence to

23   that.

24        For what it's worth, your Honor, even assuming that

25   a government agency could take the position they don't really

```
1    have to lift their fingers until a lawsuit is filed, and
2    let's pause for a moment and think about what that means.
3    Not for a company like Gawker, who if it needs to, can do
4    that.  FOIA is meant to protect citizens.  If that's the
5    Government's position, which is we don't really have to look
6    at the documents or do anything until a lawsuit is filed,
7    that is a staggering, staggering assertion.
8              THE COURT:  Well -- and I agree.  I think -- I
9    think the defendants made the argument that really, maybe it
10   was the declaration, that they didn't really have to do this
11   quickly because they shouldn't be held to your schedule
12   because the purpose of FOIA doesn't have anything to do to
13   aid litigants or aid somebody that's litigating.  I don't
14   really think that's an issue that I'm particularly interested
15   in exploring.  I realize you have a deadline, and I realize
16   that I, too, don't think things have gone quickly.  So I'm
17   with you so far.  So what would you suggest?
18             MR. BERLIN:  So I want to answer this in two ways,
19   your Honor.  I think that the first thing is to say that the
20   Government in this circumstance -- if I came into a summary
21   judgment hearing representing a defendant and said, "I
22   haven't done the work.  I don't know.  In civil litigation
23   often there's a privilege log, which is sort of the closest
24   analogue to a Vaughn index, but I didn't do that and I was
25   asking you to make judgments about privilege," you would tell
```

```
 1    me, I think, fairly viewed, unless there was some huge
 2    burden, if there was 5 million pages I had you review, you
 3    might give me some leeway, I think you should -- I think that
 4    we filed our motion, as your Honor stated.  They have not
 5    made a showing that is their requirement to make.  They bear
 6    the burden.  And the burden is not just to show, even
 7    assuming that there is a valid law enforcement investigation,
 8    and that it has not been concocted by the plaintiff in our
 9    case with some law enforcement buddies, which was a real
10    concern --
11         THE COURT:  I understand completely.  And he's
12    informed me there is one, but as I informed him, that was my
13    concern as well.
14         MR. BERLIN:  But even assuming that, there is a
15    second piece of the test.  One of the famous cases in this
16    area is a case called North v. -- it's Ollie North, and then
17    Judge Ginsberg, before she was elevated to the Supreme Court,
18    basically said, "Look, there's a second part to this test,
19    which is that you have to show there's an interference with
20    this investigation, and you can't just do it by saying if we
21    did this there would be interference with this
22    investigation."  That's a totality that doesn't get you
23    anywhere.
24         In the absence of that showing, what I would
25    respectfully suggest, your Honor, is that we're entitled to
```

```
1    summary judgment.  Right?  That's the first thing.

2              THE COURT:  Let's go to the fallback position.

3              MR. BERLIN:  I realize that may make your Honor

4    uncomfortable.

5              THE COURT:  It does.

6              MR. BERLIN:  The second thing I would say is,

7    "Delay has all been on one side of the V in this case and

8    it's not ours."  I would ask that the Court set in place to

9    do two things.  One is to set in place a time table that

10   allows the Court to take up and order these documents

11   produced next week.  I realize that may burden the Court.  I

12   realize that certainly is going to burden the FBI, but this

13   is not a situation of our client's making, and they are in a

14   case with serious constitutional issues, and this evidence

15   has been deemed to be critical in that case.

16             THE COURT:  All right.  So what would you ask --

17   what would you ask that they provide, a Vaughn index and a

18   declaration?

19             MR. BERLIN:  Yes, your Honor.  And I would think --

20   I would think that since they already have a draft, that

21   should be able to be done by the end of the week or by Monday

22   at the latest.

23             THE COURT:  Okay.

24             MR. BERLIN:  Subject to your Honor's schedule, that

25   we could reconvene next week, you could address what their
```

 1    concerns are, and at that point, I would ask you to rule on

 2    our motion for summary judgment.

 3            The one footnote to that, your Honor, is this:  As

 4    your Honor correctly pointed out there is -- it is highly

 5    unlikely that the two DVD's, or CD's or whatever media they

 6    are would have any interference with the law enforcement

 7    investigation.  And in our case, the way -- the procedure

 8    that has been set up is that when -- if those are produced by

 9    the Government, they are then to be reviewed by the discovery

10    magistrate and we need more time on that.  I would ask on

11    those that they be ordered disclosed immediately.

12            THE COURT:  That's your discovery magistrate's --

13    Jim Case?

14            MR. BERLIN:  That's correct, your Honor.  And they

15    would go to him and he would determine if there is stuff

16    relevant to the case, given their sensitive nature.  That's

17    not something that they are coming to us.  They would go

18    directly to him.

19            THE COURT:  They would be turned over immediately.

20            MR. BERLIN:  That allows that to happen before the

21    trial starts in this case.

22            THE COURT:  I understand.  Mr. Stegeby, let's just

23    start -- stay right there, Mr. Berlin.  That just starts --

24    that's one simple thing.  You said, what, 30 minutes of tape?

25    Isn't that what you said DVD/CD, 30 minutes?

1          MR. STEGEBY:  Yes, your Honor.  That's my

2     understanding.

3          THE COURT:  Even though maybe you haven't seen

4     them, the time frame.

5          MR. STEGEBY:  Correct.

6          THE COURT:  First of all, I already said I can't

7     imagine how there is any law enforcement exemption to those,

8     and nobody has asserted a privacy exemption at this point.

9     So what would be the problem with my saying, "Okay.  Turn

10    those over immediately, or by Friday?"

11         MR. STEGEBY:  I would like to talk to my client

12    first and make sure that they have watched the DVD's.

13         THE COURT:  I bet they watched them.

14         MR. STEGEBY:  Well, I don't know.  I would probably

15    prefer not to watch them myself.

16         The problem with what Mr. Berlin is suggesting is

17    with the Vaughn index.

18         THE COURT:  Okay.  Well, let's just talk about --

19    so you don't know.  You don't have an answer about the

20    question about the DVD's?

21         MR. STEGEBY:  That's correct, your Honor.

22         THE COURT:  That's fine.  You can sit down for now.

23    Go ahead, Mr. Berlin.

24         MR. BERLIN:  Let me speak, if I may, to that, your

25    Honor.  I feel for Mr. Stegeby.  I see this, and sometimes my

1    friends who are government lawyers are put in the situation

2    that he's in, but the reality is, that what the FBI is

3    essentially saying is, "We get to do this on our own time

4    table regardless of what the statute says, regardless of the

5    fact that your Honor has a process that's put in place,

6    regardless of the fact that there's a state trial coming up."

7    This, "let's wait and see," the time to have asked the client

8    do you have a problem if this was ordered to produce was not

9    after this hearing, but before this hearing.  We all had

10    notice of it.  I talked to my client, "If there's a position

11    to be taken, what would that position be?"  And I would

12    respectfully request that those be ordered produced so that

13    we can let Magistrate Judge Case do his work.

14           THE COURT:  And you have a procedure where he is to

15    pick those up?

16           MR. BERLIN:  Yes.  My understanding is he may be

17    out of town, but they may need to be shipped to him, but we

18    can work out the details of that.  Everybody in the case

19    agrees that they need to go directly to him.

20           THE COURT:  Go ahead.

21           MR. BERLIN:  And then on the subject of the Vaughn

22    index, I know that Mr. Stegeby was going to address this, but

23    if we are at a point now where we have a draft, and we are at

24    a point now where we have waited for eight months, and we are

25    now at a point where we have a trial starting a week from

1   Monday, including a holiday next week, Friday the 3rd is a

2   holiday, we are sort of out of time.  I am sympathetic very

3   much to government officials who are often overworked and

4   underpaid and do very, very good work, but this is a

5   situation where I feel like the burden that we're asking for

6   at this point, which is to finish the work on what is

7   essentially 1100 pages, is something that needs to happen.

8           There is one other piece to this that I want to

9   address, which is, that essentially what the Government is

10  saying, and it was unclear to me from your questions whether

11  this was entirely clear, but as I understand it, what the

12  Government is saying is, "We want to review the documents

13  twice.  We want to review them now for purposes of the law

14  enforcement exemption, and we're entitled to do that on a

15  category-by-category basis.  Right?  Here are the 302's.

16  Here are the emails.  And to give you a Vaughn index on

17  that."  And then, they are asking for, essentially, another

18  three months to take that same 1100 pages and go through it a

19  second time and see, what are the documents for which there

20  are -- is not a valid law enforcement objection or exemption?

21  Can we assert a separate exemption?  And to the extent that

22  is what is being requested, that can't be right.

23          THE COURT:  Is that right?  Is that's what's being

24  requested?

25          MR. STEGEBY:  Yes, your Honor.  And the reason for

1    that is there's plenty of case law where courts have upheld

2    withholding of documents under 7(a) only, without touching

3    any underlying exemptions separately, because if 7(a) applies

4    to all of these documents, we win the summary judgment.  If

5    they apply to some of the documents, we win to that extent.

6    If the Court finds that 7(a) does not apply to anything, then

7    we have to go back and see if there are any other --

8             THE COURT:  Well, Mr. Stegeby, that doesn't make

9    any sense to me.  Why couldn't you have done that in the

10   first place?

11            MR. STEGEBY:  Because the FBI was concerned and

12   wanted to go through with this as quickly as possible, and to

13   bifurcate the review, we could speed it up.  If we are

14   ordered to produce a Vaughn index, we have to go through each

15   document line-by-line and pull out whatever exemptions apply

16   to whatever line that is.  That is a much more time consuming

17   effort rather than looking at a document to say, "This is

18   this kind of a document.  They apply to the -- or the 7(a)

19   law enforcement exemption applies."

20            THE COURT:  Well, it would be my intention, I mean,

21   at the conclusion of this, I'm going to give you a schedule,

22   and I'm going to order you to give me a Vaughn index and I'm

23   going to order you to give me a declaration.  I'm going to

24   expect to be able to rule based on that, and I'm going to

25   expect to tell you to turn over whatever documents that I

1    think you ought to turn over.  So I don't see this as a

2    two-part process.  The only exemption that anybody has

3    mentioned here is 7(a).

4              MR. BERLIN:  Your Honor, can I speak to that one

5    point.  Before you went to Mr. Stegeby this is exactly the

6    point that I wanted to make.

7              FOIA is not a process that is a serial process

8    where you say, "Oh, let's assert exemption 7(a).  That didn't

9    work.  Now let's assert a different exemption.  That didn't

10   work.  Let's assert a third exemption."

11             It is true that the review that is required for

12   some exemptions, which can be done by category and other

13   exemptions which need to be done line-by-line, is different.

14   There is no case that I'm aware that says you get to do this

15   bifurcated procedure.  Especially where we have now had two

16   rounds of making a request, getting a denial.  Making an

17   appeal, getting a denial.  And the only exemption that has

18   been asserted has been a law enforcement exemption.

19             In fact, the whole point of that process is

20   designed to crystalize those issues so that this does not end

21   up on your Honor's desk, right?  So we have a situation where

22   the only thing we've been given is there's a law enforcement

23   exemption, and we didn't even know until we filed suit and we

24   got their opposition to our summary judgment motion that it

25   wasn't a federal investigation.  So we spent a bunch of time

1    in our administer of appeal demonstrating that based on all

2    of the documentation that we had that there was no federal

3    investigation pending or contemplated, only to have them say

4    "Yes, you're right."  It's a big waste of everybody's time.

5           THE COURT:  Apparently they didn't know either,

6    though.

7           MR. BERLIN:  Well, they knew on the 4th of February

8    is what they are saying.

9           THE COURT:  Well, you're right.

10          MR. BERLIN:  Our appeal was denied a couple months

11   after that.  So they knew that then and could have said it

12   was a non-federal investigation.  It would have saved

13   everybody a lot of time.

14          Here we are, and they tell us in the summary

15   judgment opposition brief, and we have a situation where

16   we're then -- and now we're being told we didn't raise any

17   other exemptions at all, but now we want to, you know, after

18   we're done, and after your Honor rules about the law

19   enforcement exemption, we want to do another set of

20   exemptions.  My view about that, your Honor, that those have

21   been waived.

22          These exemptions are not -- FOIA sets up a

23   statutory scheme where the exemptions are discretionary.

24   Except for Exemption 3, every one of these is discretionary.

25   The Government is not required to assert these, right?  If

1   the Government has discretionary exemption and they don't

2   assert it for eight months and then they come and say, "After

3   your Honor rules then we want an opportunity to assert that,"

4   I don't think there's a procedure where you get to give them

5   another round at this.  Even if we weren't under time

6   pressure, there is no case I'm aware of that says, "Let's go

7   back and do that a second time."

8            So at a minimum, it has to be in the Vaughn index,

9   but I would respectfully submit that that's just a sideshow

10  because the only one we are focused on now is the one they

11  raised, which is the law enforcement exemption.

12           THE COURT:  All right.  The way you see this,

13  Mr. Berlin, is that, all right, turn over the DVD's or CD's

14  according to the process.

15           Turn over any materials, should there be any

16  materials, that Mr. Hardy, it was my understanding, was

17  suggesting there were, that they have determined to be

18  non-exempt.

19           And then, supply a Vaughn index and a declaration

20  sometime, say -- I've got to have some time to look at it, by

21  Tuesday, have a hearing on Thursday.  Friday is a holiday,

22  and your trial starts Monday.

23           MR. BERLIN:  And the trial starts Monday.

24           THE COURT:  I know.

25           MR. BERLIN:  I would add two things to that, if I

1     may, your Honor.  I'm sorry to make this complicated, but the

2     time schedule does that.

3              One is, that I would like it to be clear in your

4     Honor's order that if on Thursday your Honor orders documents

5     produced, that they be ready to produce on Thursday.  By

6     waiting until the end of the holiday weekend and we're

7     starting trial on Monday that's not too useful to us.  We

8     have to have a situation in place where after the hearing

9     there is only 1100 pages, if there are certain documents

10    being produced, that we can actually get them.

11             And the second thing is that on the exemptions

12    themselves, on the question of whether or not there are

13    documents that are exempt, right, you said to Mr. Stegeby

14    during your questions to him, it seemed to me, my

15    understanding, that we are segregating documents from two

16    piles.  Here's the ones that are exempt, here are the ones

17    that are not.

18             THE COURT:  And I may have misread it, but that's

19    the way I read the declaration.

20             MR. BERLIN:  My understanding was that Mr.

21    Stegeby's answer was twofold.  One is, that at this point the

22    FBI believes that all of them are exempt and I wanted to

23    speak to that.

24             THE COURT:  That's what he just said.

25             MR. BERLIN:  Right.  So we don't have a

1    misunderstanding, there are documents the Government has put

2    in the court file in this case.  There are documents that the

3    Government has knowingly authorized be given to us by

4    Mr. Bollea.  It can't be that -- things that have already

5    been made public or disclosed --

6            THE COURT:  The Government, you mean the US

7    Attorney's office here?

8            MR. BERLIN:  US Attorney's office here and the FBI,

9    right.  We have gotten those documents, and they have been

10   put in the court record, and it cannot be the case that

11   100 percent of the records are exempt if they have already

12   done that.  And I want to make that clear so that we're not

13   sitting here next Thursday with them taking the position that

14   some document that's actually in the Court file or previously

15   disclosed with their blessing is exempt because that would

16   just be fanciful.  So we need to be clear about that.

17           The last thing, your Honor, is that there's a

18   segregateable issue under FOIA after the exemption in the

19   statute it says the Government is supposed to produce things

20   that it can reasonably segregate, and that's not just, "Here

21   are the documents you can produce.  Here the documents that

22   are exempt," but in many cases there are things that can be

23   produced where you redact a portion of the document and you

24   produce the rest.  And I would like your Honor to give

25   Mr. Stegeby and the Government an instruction that your

1   expectation is that they will comply with that part of the

2   statute as well in conducting their review and creating a

3   Vaughn index, and determining which documents can now be

4   produced even before that so that we are in a situation where

5   we are a not having this issue, again, come up next Thursday

6   where we are a saying they say this document is exempt and

7   say, "How could that whole document be exempt," right?  We

8   should redact and produce.

9        I understand that that's worked for the FBI in its

10  document review team, but Mr. Hardy's declaration says that

11  he's got 224 employees who work for him, and certainly one of

12  them could take out a day and review a stack of 1168 pages.

13  I mean, we're not -- if I were here asking about this for 5

14  million pages, I would understand if you would look sideways

15  at me, but this is just not that case.

16       MR. STEGEBY:  If I may, your Honor --

17       THE COURT:  Just hold it.  Anything else?

18       MR. BERLIN:  I think that states where I would come

19  out on this, your Honor.  And I realize that's asking, if

20  we're not just going to deny summary judgment today and order

21  this stuff produced, I would like to see the DVD's produced

22  immediately, the things that are not exempt by the law

23  enforcement exemption, and probably several produced early

24  next week so we can properly prepare for our trial, along

25  with the Vaughn index, and then we resume to go over the

1    Vaughn index as soon as your Honor's schedule would allow.

2            THE COURT:  Okay.  Thank you.  I'm going to let you

3    stand at the podium.

4            MR. STEGEBY:  Okay.

5            THE COURT:  Thank you.

6            MR. STEGEBY:  I fully appreciate Mr. Berlin's

7    position.  He has an upcoming trial.  Unfortunately, this

8    sort of emergency in that situation.  We are both the Court

9    and the federal government.  It was not created by the

10   Federal Government.  The FBI has been diligent in moving

11   forward with trying to produce the documents.

12           THE COURT:  Diligence is sometimes in the eye of

13   the beholder.

14           MR. STEGEBY:  Certainly, your Honor.

15           A Vaughn index line-by-line of the 1100 documents

16   may be very difficult.  I believe that if it turns out that

17   we make a decision, as the Government, to only assert the

18   7(a) law enforcement exempt, then we only need to do

19   categorical declaration, not a Vaughn declaration or a Vaughn

20   index.  It is sufficient to produce a categorical declaration

21   instead.

22           So if --

23           THE COURT:  Hold on.  If the exemption is only a

24   7(a) exemption, do you have any problem -- which I'm assuming

25   it is, do you have any problem with a categorical index?  I

1   kind of assumed that's what we were doing was a categorical

2   index.

3          MR. BERLIN:  Your Honor, the main issue is that --

4   whether it's a declaration affidavit Vaughn index the whole

5   point of this process is that there is supposed to be a

6   sufficient amount of information --

7          THE COURT:  So I can rule.

8          MR. BERLIN:  So you can rule in the proper

9   adversarial way, speak to the issues raised by it.  If we get

10  a thing that just says 500 of these pages of email and here's

11  a line that says 500 emails --

12         THE COURT:  I understand.

13         MR. BERLIN:  -- if the answer is the Government is

14  not asserting any other exemption, for the reasons I said

15  earlier, I think that horse has already left the barn since

16  they didn't assert any of them.  If that's their position,

17  this categorical document Mr. Stegeby is describing seems to

18  me applies with the statute.

19         THE COURT:  That's kind of what I understood what

20  you described earlier.

21         MR. STEGEBY:  Yes.  Like I said, for the 7(a)

22  purposes, yes.  Not for the other purposes, then --

23         THE COURT:  As far as I am concerned, there are no

24  other purposes that have been raised here.  That's the only

25  thing that has been raised.

1              Here's what I will do, Mr. Stegeby, you'll have to

2      be the messenger here.  I'll enter an order this afternoon so

3      it's all set out in writing, but I'm essentially going to

4      tell you to turn over any of the documents that have been --

5      if there are any, and found to be nonexempt, and to turn over

6      the CD's, the DVD's whatever those are, the tapes, by Friday.

7              I'm then going to ask you to give me a categorical

8      index and a declaration, and I'll be more specific in my

9      order, by Tuesday.  I'm just talking to you about the dates.

10     And then I'll set a hearing by Thursday.

11             MR. STEGEBY:  Yes, your Honor.

12             THE COURT:  Okay.  Let me just make sure I can set

13     a hearing on Thursday.

14     (discussion had off the record.)

15             THE COURT:  All right.  We're having a little

16     courtroom discussion here.

17             So I'll -- I don't have anything, right?

18             MADAM CLERK:  No, your Honor.

19             THE COURT:  So I'm going to set this for

20     9:00 o'clock on Thursday morning.  I don't know what

21     courtroom yet, but we'll get a courtroom and we'll put it in

22     the order.

23             He's right, Mr. Stegeby, to the extent that I rule

24     that certain things should be turned over, if I do so rule, I

25     will expect you to go ahead and turn them over, not wait for

1    two weeks.

2              MR. STEGEBY:  Yes, your Honor.

3              THE COURT:  Okay.  All right.  Anything else?

4              MR. STEGEBY:  No, your Honor.

5              THE COURT:  Well, this has been interesting.  Thank

6    you.

7              MR. STEGEBY:  Thank you.

8              MR. BERLIN:  Thank you very much, your Honor.

9    (Which were all the proceedings

10   held in the above-entitled cause.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<pre>
1                    CERTIFICATE OF REPORTER

2

3   COUNTY OF HILLSBOROUGH     )

4                             )  SS.

5   STATE OF FLORIDA          )

6

7   I, MELISSA A. PIERSON, OFFICIAL COURT REPORTER, REGISTERED

8   PROFESSIONAL REPORTER, IN AND FOR THE UNITED STATES DISTRICT

9   COURT FOR THE MIDDLE DISTRICT OF FLORIDA, DO HEREBY CERTIFY

10  THAT I REPORTED, STENOGRAPHICALLY, THE FOREGOING PROCEEDINGS

11  AT THE TIME AND PLACE HEREINBEFORE SET FORTH; THAT THE SAME

12  WAS THEREAFTER REDUCED TO TYPEWRITTEN FORM BY MEANS OF

13  COMPUTER-AIDED TRANSCRIPTION; AND I DO FURTHER CERTIFY THAT

14  THIS IS A TRUE AND CORRECT TRANSCRIPTION OF MY STENOGRAPHIC

15  NOTES.

16

17

18  DATE: 6-24-15

19

20  S:/Melissa A. Pierson

21  MELISSA A. PIERSON, CA/CSR 12499

22  IL/CSR 084.003138, RPR

23  FEDERAL OFFICIAL COURT REPORTER

24

25
</pre>