# **Exhibit A**

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| GAWKER MEDIA, LLC et al, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE FEDERAL BUREAU OF )<br>INVESTIGATION and THE EXECUTIVE )<br>OFFICE OF UNITED STATES )<br>ATTORNEYS, )<br>)<br>Defendant. )<br>_____) | Case No. 8:15-CV-01202-SCB-EAJ |

## SECOND DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)  I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)  In my official capacity as Section Chief of RIDS, I supervise approximately 224

1

employees who staff a total of ten (10) Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of 2009; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to plaintiff's request for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of Plaintiff's FOIA requests seeking records pertaining to an investigation concerning recording(s) of Terry Bollea aka "Hulk Hogan" engaged in sexual relations with Heather Clem. Additionally, I have personally reviewed the video material on the CDs in paragraphs 8-10 supra below.

(4)     This declaration incorporates my declaration dated June 8, 2015 (hereinafter "First Hardy Declaration") (Dkt. No. 23-1) and details the FBI's continuing efforts to meet the deadlines set forth in the June 24, 2015 briefing schedule. The First Hardy Declaration provided an administrative history of the plaintiff's FOIA request, a general description of the FBI's recordkeeping system, and a description of the FBI's search efforts in locating responsive records.

I submit this declaration in support of the FBI's request for additional time to process and release all non-exempt video material to plaintiff.

## COURT ORDER

(5)     The Court Order entered an order on June 24, 2015, directing the FBI to turn over to the Florida state court Special Discovery Magistrate Hon. James R. Case the two CDs it deemed to be responsive to plaintiff's November 7, 2014 FOIA request and to turn to Plaintiffs all non-exempt information from the 1,168 responsive pages it identified, all by June 26, 2015.  The order was notified to the FBI on June 25, 2015, leaving the FBI with less than 48 hrs to take the necessary steps to comply.  The records at issue in this order are physically located in Winchester, Virginia at the RIDS location, approximately 917 miles away from the delivery location.  Furthermore, at the time of the order, the FBI was relying on FOIA Exemption (b)(7)(A) to exempt these records in their entirety.  Subsequently to this order, the FBI again contacted the other law enforcement agency conducting the investigation at issue.  Based upon information received from that law enforcement agency, the FBI is no longer claiming Exception 7(A) over the records.  Upon receiving this information, the FBI immediately started processing these records at issue including the two CDs referenced in paragraph (1) of the Court's June 24, 2015 Court Order so that the FBI would be in compliance with the Order.  However, due to the physical distance, and the labor involved in the processing of these paper records and CDs in order assert any additional exemption that may apply, the FBI is unable to produce the two CDs discussed in paragraph (1) and the non-exempt records discussed in paragraph (2) of the Court Order by the court imposed deadline.

### The CDs Discussed in Paragraph 1 of the Court Order

(6)     The FBI is currently and diligently working to process the two CDs discussed in paragraph (1) of the Court Order, and estimates to complete the process today. In order to deliver these records to the ordered location, the FBI will rely on the next day delivery services of FedEx. The CDs will be delivered via FedEx to the AUSA, who will in turn, provide them to the court on Monday, June 29, 2015.

(7)     By letter dated January 29, 2015, the FBI informed plaintiff that the two CDs were potentially responsive. (Dkt. No. 23-1) The FBI based this initial estimation of the two responsive CDs on a preliminary review of the documents it possessed at the time. This notification was only an estimate of the number of potentially responsive CDs[1]. Upon the initiation of this civil action, and by letter dated May 27, 2015, EOUSA notified plaintiff that they referred records to the FBI for direct response to the requester. (*See* **Exhibit A.**) Personnel from RIDS FBI conducted a further review of the referred records and determined that approximately three CDs included in that material contained video recordings and two CDs containing audio recording responsive to plaintiff's FOIA request. The FBI briefly details the content of the CDs containing video recordings in the paragraphs 8, 9 and 10, and CDs containing the audio recordings in paragraphs 16 and 17 below.

---

[1] The FBI originally had two CDs; however, once it closed its investigation, sent these CDs to the other law enforcement agency to aid in their investigation. At the litigation stage of the FOIA claim, the FBI no longer had the two CDs referenced its June 29, letter; however, EOUSA referred the same CDs from their files in response to the FOIA request, and these are the CDs that the FBI currently has in its possession.

4

## SUMMARY OF THE CONTENT OF THE THREE CDS CONTAINING VIDEO RECORDINGS

(8) <u>CD 1 -</u> DVD video recording of Heather Clem and Terry Bollea engaged in sexual relations. A third party, who is not deceased nor has provided a privacy waiver to plaintiff, enters the recording, speaks briefly to both Heather Clem and Terry Bollea and then exits, within the first minute of the recording.

(9) <u>CD 2 -</u> DVD video recording of Heather Clem and Terry Bollea engaged in sexual relations. A third party, who is not deceased nor has provided a privacy waiver to plaintiff, speaks partly in this recording.[2]

(10) <u>CD 3 -</u> DVD video recording of Heather Clem and Terry Bollea engaged in sexual relations. Also a third party, who is not deceased nor has provided a privacy waiver to plaintiff, appears throughout this recording.

(11) The FBI is currently processing all the CDs listed in paragraphs 8-10 supra above to apply necessary FOIA exemptions (i.e. redacting third-party information).

### The Potentially Responsive Records Discussed in Paragraph (2) of the Court Order

(12) Additionally, the FBI is requesting additional time to process the 1,168 potentially responsive pages and 138 potentially responsive pages from the EOUSA referral. The potentially responsive records contain information over which the FBI will claim exemptions under the FOIA. For example, an initial review has shown that certain grand jury information is included in the

---

[2] The FBI has determined that although the majority of the content on this DVD concerns Terry Bollea and Heather Clem, and therefore would be released; there is a part of the content on this CD that contains a third party that will be withheld pursuant to FOIA exemption (b)(6)(b)(7)(C).

5

responsive records contain information over which the FBI will claim exemptions under the FOIA. For example, an initial review has shown that certain grand jury information is included in the potentially responsive records. Such information must be redacted pursuant to Fed. Rules of Criminal Procedure 6(e). Also, by way of example, this initial review has revealed that personal privacy information is also contained in these records, which will be redacted pursuant to Exemptions 6 and 7(C) of the FOIA. We anticipate other information could be exempt from release pursuant to various other FOIA exemptions.

(13)   The FBI has devoted additional resources and is currently making its best effort to process these records to segregate the non-exempt information to the plaintiff as soon as possible. The FBI intends to have approximately 11 employees work approximately 66 hours over the weekend (in addition to working on this matter during the standard work week) in the best attempt to process the 1,168 potentially responsive pages and 138 potentially responsive pages from the EOUSA referral. This will come at an estimated cost of $2751.54 to the FBI.

(14)   By utilizing all of these resources, the FBI expects to complete the processing of these records by Tuesday, June 30, 2015 and could FedEx them to plaintiffs' the same day for a next day delivery, namely Wednesday, July 1, 2015.

## REVIEW OF TWO CDS CONTAINING AUDIO RECORDINGS

(15)   As discussed in paragraph 7 above, in addition to the three CDs containing video recordings, the EOUSA referred two audio CDs to the FBI for direct response to the requestor. The FBI briefly details the content of those CDs as follows,

(16)   <u>CD 4 -</u>   CD audio recording of a third party speaking about the Terry Bollea case.

6

(17)   <u>CD 5</u> -  CD audio recording of an FBI Special Agent, David Houston, and third parties.

(18)   In regards to these two audio CDs, the FBI is requesting a thirty day extension in order to process and release non-exempt information, because the production of this type of audio material is more problematic.  Below are the steps involved in the processing of audio material.

(19)   Processing audio material in response to FOIA requests requires multiple steps as detailed below. The FBI must go through its processing steps to meet its obligations under the FOIA to review and segregate material, thereby ensuring nonexempt information is provided to the public while preventing the inadvertent release of exempt information that may trigger harm to one or more of the FOIA exemptions, including personal privacy.  As noted above, these audio CDs contain third party information.  Some of these third parties have waived their privacy rights via the execution of privacy waivers; however, other third party individuals' privacy interest are still at stake; therefore, the FBI must review and process this media in order to properly protect these privacy interests.  Unfortunately, reviewing this form of media is significantly more labor intensive than paper records or records on other electronic format.  The FOIA processing of these types of audio material requires a multi-step process.  First, a certified FOIA analyst trained in the processing of this type of media must listen to each and every file on the disk from beginning to end.  Second, the analyst may need to conduct research in order make informed disclosure determinations, i.e. research into the context from which the audio material was created or obtained, must attempt to identify the parties whose voices appear on the material, or the source of the information contained on it.  Only by conducting the proper research and diligence in reviewing

7

the materials fully, can the FBI make a proper determination on the disclosure of the information to meet its obligations under the FOIA.

(20)    Once a determination is made, the next step is the actual redaction work, if exempt material is identified. The FBI utilizes various types of software to excise any exempt audio material from the recordings. Upon completion of the excisions, supervisory review is required – RIDS requires a verification process of all work performed by RIDS' employees to ensure accuracy and quality control. After supervisory approval, the item must then go through mandated security protocols to ensure that no sensitive information was missed during the process.[3] Finally, as this case is in litigation, a parallel review by litigation personnel is also conducted prior to release to ensure that all the redactions of exempt information are legally justifiable. Again, FOIA processing of audio material involves additional processing steps making the process more labor intensive. This record format readily combined with the required process steps are factored into RIDS' request for additional time to produce these two CDs noted in paragraph 7 supra.

## REQUEST FOR ADDITIONAL TIME

(21)    As detailed above, the FBI is diligently trying to comply with the Court's order of June 24, 2015; however, due to the lack of time, the labor intensive nature of processing audio material, as detailed above, and the lack of a privacy waiver from some third parties whose privacy rights are at stake, the FBI will use best efforts to FedEx to plaintiffs all non-exempt records for delivery on Wednesday, July 1, 2015. The FBI requests a reasonable time thereafter to prepare a

---

[3] This does not calculate in time for any declassification review; however, the FBI does not anticipate this video recording containing classified information and has therefore omitted that from the calculation.

8

relied upon to protect exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibit A attached hereto is a true and correct copy.

Executed this 26th day of June, 2015.

*[signature]*
DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

9

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| GAWKER MEDIA, LLC et al, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) Case No. 8:15-CV-01202-SCB-EAJ |
| THE FEDERAL BUREAU OF INVESTIGATION and THE EXECUTIVE OFFICE OF UNITED STATES ATTORNEYS, | ) <br> ) <br> ) <br> ) <br> ) |
| Defendant. | ) <br> ) |

# Exhibit A



**U.S. Department of Justice**
*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 252-6020   FAX: 252-6047   (www.usdoj.gov/usao)*

May 27, 2015

Gregg Thomas
Thomas & LoCicero PL
601 South Boulevard
Tampa, Florida 33606

      Re: Request Number: FOIA-2015-00350
      Date of Receipt: November 10, 2014
      Subject of Request: Terry Bollea (aka Hulk Hogan) investigation /FLM

Dear Mr. Thomas:

    Your request for records under the Freedom of Information Act/Privacy Act has been processed. This letter constitutes a reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorneys' Office.

    To provide you with the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes.

    The records you seek are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act. 28 CFR § 16.81. We have also processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you. This letter is a [ X ] partial [   ] full denial.

    Enclosed please find:

  __1__ page(s) are being released in full (RIF);
  __3__ page(s) are being released in part (RIP);
  __59__ page(s) are withheld in full (WIF). **The redacted/withheld documents were reviewed to determine if any information could be segregated for release.**

    The exemption(s) cited for withholding records or portions of records are marked below. An enclosure to this letter explains the exemptions in more detail.

(B)(5)
(B)(6)
(B)(7)(c)

[ X ]   A review of the material revealed:

[ X ]   Our office located records that originated with another government component. **These records were found in the U.S. Attorney's Office files and may or may not be responsive to your request.** These records will be referred to the following component(s) listed for review and direct response to you: Federal Bureau of Investigation (FBI).

This is the final action on this above-numbered request. If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Suite 11050, 1425 New York Avenue, Washington, DC 20530-0001, or you may submit an appeal through this Office's eFOIA portal at http://www.justice.gov/oip/efoia-portal.html. Your appeal must be received within sixty days from the date of this letter. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Susan B. Gerson
Assistant Director

Enclosure(s)

Form No. 021nofee – 6/12