IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

|  |  |  |
|---|---|---|
| GAWKER MEDIA, LLC et al, ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | | Case No. 8:15-CV-01202-SCB-EAJ |
| ) | | |
| THE FEDERAL BUREAU OF ) | | |
| INVESTIGATION and THE EXECUTIVE ) | | |
| OFFICE OF UNITED STATES ) | | |
| ATTORNEYS, ) | | |
| ) | | |
| Defendant. ) | | |
| ) | | |
| ) | | |

## THIRD DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am the Section Chief of the Record/Information Dissemination Section ("RIDS"),

Records Management Division ("RMD"), in Winchester, Virginia.   I have held this position since

August 1, 2002.   Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1,

2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law.   In

that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures,

appeals, and litigation for the Navy.   From October 1, 1980 to April 30, 2001, I served as a Navy

Judge Advocate at various commands and routinely worked with FOIA matters.   I am also an

attorney who has been licensed to practice law in the State of Texas since 1980.

1

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 224 employees who staff a total of ten (10) Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of 2009; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives.   The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to Plaintiff's request for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552.   Specifically, I am aware of the FBI's handling of Plaintiff's FOIA request to FBIHQ, which sought access to records concerning recording(s) of Terry Bollea, aka "Hulk Hogan", engaged in sexual relations with Heather Clem.

(4)     This declaration incorporates by reference my declarations dated June 8, 2015 and June 26, 2015 hereinafter "First Hardy Declaration" and "Second Hardy Declaration" (Dkt. Nos. 23-1 and 35-1).   Per the Court Oder of June 29, 2015, and in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), the FBI submits this declaration in response to the Court's June 29, 2015 order that categorical indexes and supporting declarations be filed with the Court.   It provides the justifications for the witholdings of information in full or in part from the records responsive to

2

Plaintiff's request pursuant to FOIA Exemptions 3, 5, 6, 7(C), 7(E), 5 U.S.C. §§ 552 (b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

(5)     The First Hardy Declaration provided an administrative history of the Plaintiff's FOIA request, a description of the FBI's recordkeeping system, and a description of the FBI's search efforts in locating responsive records.

(6)     In response to Plaintiff's request and per the Court's June 24, 2015 order, the FBI processed and provided three responsive CDs containing video recordings to the United States Attorney's Office for the Middle District of Florida for delivery to the state court Special Discovery Magistrate Hon. James R. Case on June 29, 2015.   The FBI has now processed and released to Plaintiff a total of 1178 responsive pages.   Included in these responsive pages are 138 pages EOUSA referred to the FBI[1] for direct response to the Plaintiff.   Additionally, after taking additional personnel resources away from processing the FOIA requests of citizens and FBI RIDS personnel working through the night of June 29-June 30th as well as throughout today and tonight if necessary, the FBI reasonably expects to release the two audio CDs referenced by the Court's Wednesday July 1, 2015.[2]   The final CDs (audio files in digital format) will contain appropriate audio redactions to protect the privacy of individuals who have not submitted waivers and thus retain a privacy interest in FBI records.

---

[1] Bates stamped pages GAWKER-1041-1178.

[2] The FBI continues to employ its best efforts to complete the audio processing by the Court's deadline of noon tomorrow.   As previously articulated in my Second Declaration, this process is materially more labor intensive than processing records in document form and is subject to myriad factors, to include technological capability and the type of media format in the FBI's possession.   At a minimum, the FBI will produce by the Court's deadline redacted versions of the transcripts of the two audio CDs.

3

(7)     The FBI processed the above described records and released non-exempt segregable information to Plaintiff by letter dated June 30, 2015.   The FBI also processed two CDs containing audio recordings that were being released in full or part, with certain information withheld pursuant to FOIA Exemptions (b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).   The FBI also advised Plaintiff that he could appeal the FBI's determination by filing an administrative appeal with the Department of Justice ("DOJ"), Office of Information Policy ("OIP") within sixty days.

(8)     The FBI also provided copies of these records to the United States Attorney's Office for the Middle District of Florida so that that office could provide the records to the Court at Chambers_flmd_buckley@flmd.uscourts.gov, as instructed.

**JUSTIFICATION FOR NONDISCLOSURE UNDER THE FOIA**

***Explanation of the Coded Format Used to Describe and Justify Withholdings***

(9)     All documents responsive to Plaintiff's request were processed to achieve maximum disclosure consistent with the access provisions of the FOIA.   Every effort was made to provide Plaintiff with all material in the public domain and with all reasonably segregable, non-exempt information in the responsive records.   No reasonably segregable, nonexempt portions have been withheld from Plaintiff.   Further description of the information withheld, beyond what is provided herein, could identify the actual exempt information the FBI has protected.   Copies of the pages released in part and in full have been consecutively numbered "Gawker-1 through Gawker-1178" at the bottom of each page.   Pages withheld in their entirety (*e.g.*, removed per exemption, duplicates, documents subject to sealing order) were replaced by a "Deleted Page Information Sheet" ("DPIS"), identifying the reason and/or the applicable FOIA exemptions relied upon to withhold

4

the page in full, as well as the Bates numbers for the withheld page.   The exemptions asserted by the FBI as grounds for non-disclosure of portions of documents are FOIA Exemptions (b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

(10)    The Bates-numbered documents contain, on their faces, coded categories of exemptions detailing the nature of the information withheld pursuant to the provisions of the FOIA. The coded categories are provided to aid the Court's and Plaintiff's review of the FBI's explanations of the FOIA exemptions it asserted to withhold the material.   The coded, Bates-numbered pages together with this declaration and the attached Index demonstrate that all material withheld by the FBI is exempt from disclosure pursuant to the cited FOIA Exemptions, or is so intertwined with protected material that segregation is not possible without revealing the underlying protected material.

(11)    Each instance of information withheld on the Bates-numbered documents is accompanied by a coded designation that corresponds to the categories listed below.   For example, if "(b)(7)(C)-1" appears on a document, the "(b)(7)(C)" designation refers to FOIA Exemption 7(C) protecting against unwarranted invasions of personal privacy.   The numerical designation of "1" following the "(b)(7)(C)" narrows the main category into a more specific subcategory, such as "Names and/or Identifying Information Pertaining to FBI Special Agents and/or Support Personnel."

(12)    Listed below are the categories used to explain the FOIA exemptions asserted to withhold the protected material:

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Category (b)(3)** | **INFORMATION PROTECTED BY STATUTE** |
| (b)(3)-1 | Federal Grand Jury information (Federal Rule of Criminal Procedure 6(e)) |
| **Category (b)(5)** | **Privileged Information** |
| (b)(5)-1 | Attorney Client Privilege [cited in conjunction with (b)(5)-2] |
| (b)(5)-2 | Attorney Work Product   [cited in conjunction with (b)(5)-1] |
| **Category (b)(6) and (b)(7)(C)** | **CLEARLY UNWARRANTED INVASION OF PRIVACY AND UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| (b)(6)-1 and (b)(7)(C)-1 | Names and/or Identifying Information of FBI Special Agents and Support Personnel |
| (b)(6)-2 and (b)(7)(C)-2 | Names and/or Identifying Information of Third Parties of Investigative Interest |
| (b)(6)-3 and (b)(7)(C)-3 | Names and/or Identifying Information of Non-FBI Federal Government Personnel |
| (b)(6)-4 and (b)(7)(C)-4 | Names and/or Identifying Information of Third Parties Merely Mentioned |
| (b)(6)-5 and (b)(7)(C)-5 | Names and/or Identifying Information of Local Law Enforcement Personnel |
| (b)(6)-6 and (b)(7)(C)-6 | Names and/or Identifying Data Regarding a Third Party Victim |
| **Category (b)(7)(E)** | **LAW ENFORCEMENT INVESTIGATIVE TECHNIQUES AND PROCEDURES** |
| (b)(7)(E)-1 | Investigative Techniques and Procedures (Consensual Monitoring) |
| (b)(7)(E)-2 | Dates / Types of Investigations (Preliminary / Full Investigations) |
| (b)(7)(E)-3 | FBI Internal Web Addresses |
| (b)(7)(E)-4 | Database Identifiers / Printouts |
| (b)(7)(E)-5 | Monetary Payments for Investigative Techniques |

| SUMMARY OF JUSTIFICATION CATEGORIES | |
| --- | --- |
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| (b)(7)(E)-6 | Collection / Analysis of Information |
| (b)(7)(E)-7 | Sensitive FBI Files or Sub-file Names |

## EXEMPTION 3 – INFORMATION PROTECTED BY STATUTE

(13)     Exemption 3 protects information specifically exempted from disclosure by statute requiring . . . provided that such statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.   5 U.S.C. § 552(b)(3).

**(b)(3)-1**          **Federal Grand Jury information (Federal Rule of Criminal Procedure 6(e))**

(14)     In Category (b)(3)-1, the FBI protected Federal Grand Jury information pursuant to Federal Rule of Criminal Procedure 6(e).   As relevant to 5 U.S.C. § 552(b)(3)(B), Rule 6(e) is a statute[3] enacted before the date of enactment of the OPEN FOIA Act of 2009.[4]   It is well

---

[3]   As prescribed by 18 U.S.C. § 3771, proposed rules become effective ninety days after the Chief Justice reports them to Congress.   By order of April 26, 1976, the Supreme Court adopted amendments to the Federal Rules of Criminal Procedure which included Rule 6(e) and reported the amendments to Congress. Congress voted to delay the effective date of several of the proposed rules, to include Rule 6(e), "until August 1, 1977, or until and to the extent approved by Act of Congress, whichever is earlier."   Pub.L. No. 94-349 § 1, 90 Stat. 822 (1976). Subsequently, Congress, by statute, enacted a modified version of Rule 6(e).   *See* Pub.L. No. 95-78, § 2(a), 91 Stat. 319 (1977), FED. R. CRIM. P. 6(e).

[4]   The OPEN FOIA Act of 2009 was enacted October 28, 2009.   *See* Pub.L. 111-83, 123 Stat. 2142, 2184.

established that Rule 6(e) embodies a broad, sweeping policy of preserving the secrecy of grand

jury material regardless of the substance in which the material is contained.   The records

responsive to Plaintiff's requests reflect that one or more federal grand juries were empanelled in

relation to the investigation(s) at issue in the records here, and information in the investigative files

responsive to Plaintiff's requests reveals matters occurring before the grand jury/juries.

Specifically, the investigative files contain information about the names of recipients of federal

grand jury subpoenas; information identifying specific records subpoenaed by a federal grand jury;

and copies of specific records provided to a federal grand jury in response to federal grand jury

subpoenas.   Any disclosure of this information would clearly violate the secrecy of the grand jury

proceedings and could reveal the inner workings of a federal grand jury, and thus, the FBI is

precluded from disclosing it.   Accordingly, the FBI has withheld this information pursuant to

Exemption 3, in conjunction with Rule 6(e).

## EXEMPTION 5 – PRIVILEGED INFORMATION

(15)     FOIA Exemption (b)(5) exempts from FOIA's disclosure requirements

"inter-agency or intra-agency memorandums or letters which would not be available by law to a

party other than an agency in litigation with the agency."   5 U.S.C. § 552(b)(5).

(16)     FOIA Exemption (b)(5) has been construed to exempt documents or information

normally privileged in the civil discovery context, and incorporates the attorney work product,

attorney-client, and deliberative process privileges.   Generally, the attorney work product

privilege protects documents and other memoranda prepared by an attorney or under the direction

of an attorney as part of, or in reasonable anticipation of litigation.   The attorney-client privilege protects confidential communications from a client to an attorney and from an attorney to a client for the purpose of seeking and providing legal advice.   The privilege covers client-supplied information and opinions given by an attorney based on and reflecting that information.

(17)   In order to apply FOIA Exemption (b)(5), agencies must first satisfy the threshold requirement – *i.e.*, show that the information protected was "inter-agency or intra-agency."   Once the threshold is satisfied, agencies must satisfy the elements of the pertinent privilege.   These elements are articulated below.

**(b)(5)-1**                    **Attorney-Client Privilege**

(18)   In Category (b)(5)-1, the FBI protected privileged attorney-client communications. The attorney-client privilege is appropriately asserted to protect confidential communications between a client seeking legal advice from a professional legal adviser in his/her capacity as a lawyer.   Such communications are permanently protected from disclosure by the legal adviser unless the client waives the protection.   This privilege encompasses confidential communications made to an agency attorney by decision-making personnel as well as lower echelon employees who possess information relevant to an attorney's advice-rendering function.   Disclosure of communications between the attorneys and their clients would inhibit candor between the clients and their attorneys in relation to the issues about which they are seeking legal advice.   Such candor and full disclosure is necessary in order to ensure that thorough and sound legal advice is provided.

(19)   The FBI protected communications between the Assistant U.S. Attorneys who were representing the government, including the FBI, and various counsel of the United States

9

Attorney's Office, to include the United States Attorney, First Assistant United States Attorney, Chief of the Criminal Division, and the Chief of the Economic Crime Section.   The protected communication pertains to the decision making process of potential prosecutive actions in the Terry Bollea extortion investigation.   This communication reflects the seeking and providing of legal advice related to the prosecution of individuals targeted in this investigation and legal analysis relevant to potential criminal charges.   These communications were made within DOJ, and thus satisfy Exemption 5's threshold.   Furthermore, the communications between clients and attorneys were made in confidence, were not shared with or circulated to individuals outside the attorney-client relationship, and were made for the purpose of securing legal assistance or advice in relation to the government's decision to prosecute any individuals.   Accordingly, the FBI properly withheld these privileged communications pursuant to FOIA Exemption (b)(5).   These records were also protected under the attorney work product privilege, discussed below.

**(b)(5)-2**               **Attorney Work Product Privilege**

(20)     In Category (b)(5)-2, the FBI protected privileged attorney work products.   The attorney work product privilege protects such tangible and intangible items as interviews, memoranda, correspondence, mental impressions, and personal beliefs prepared or developed by an attorney in anticipation of litigation.   The privilege is predicated on the recognition that proper preparation of a case depends on an attorney's ability to assemble information, sort relevant from irrelevant facts, and prepare his/her legal theories and strategies without intrusive or needless scrutiny.

(21)     The FBI relied on the attorney work product privilege to protect materials created by

10

attorneys involved in the Terry Bollea extortion investigation, including Assistant U.S. Attorneys. The FBI also protected communications between these attorneys in relation to their decision of whether to prosecute any individuals involved in the extortion case targeted against Terry Bollea. This information satisfies Exemption 5's threshold because these records were exchanged within the Department of Justice (*i.e.*, between the EOUSA, the FBI and U.S. Attorney's Office). Furthermore, these records are quintessential attorney work products and readily satisfy the elements of the attorney work product privilege because they were created by attorneys discussing potential prosecution as part of the attorneys' representation of the government in response to the FBI's investigation.   Finally, because the attorney work product privilege protects both factual and deliberative material, segregation is not required.   Accordingly, the FBI properly withheld this information pursuant to FOIA Exemption (b)(5)-2.

## **EXEMPTION 7 THRESHOLD**

(22)     Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes.   Pursuant to 28 USC §§ 533, 534, and Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations ("AGG-DOM") and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States. Under this investigative authority, the responsive records herein were compiled for the following

specific law enforcement purpose.

(23)     The FBI compiled the records responsive to Plaintiff's requests during the FBI's

criminal investigation of extortion attempts on Terry Bollea involving recording(s) of Terry Bollea

engaged in sexual relations with Heather Clem.

(24)     Thus, these records were complied for a law enforcement purpose; they squarely fall

within the law enforcement duties of the FBI; therefore, the information readily meets the threshold

requirement of Exemption (b)(7).

### EXEMPTIONS 6 AND 7(C) –INVASIONS OF PERSONAL PRIVACY

(25)     Exemption 6 exempts from disclosure "personnel and medical files and similar files

the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

5 U.S.C. § 552(b)(6).   All information that applies to a particular person falls within the scope of

Exemption 6.

(26)     Exemption 7(C) similarly exempts from disclosure "records or information

compiled for law enforcement purposes [when disclosure] could reasonably be expected to

constitute an unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(7)(C).[5]

(27)     When withholding information pursuant to these two exemptions, the FBI is

required to balance the privacy interests of the individuals mentioned in these records against any

public interest in disclosure.   In asserting these exemptions, each piece of information was

---

[5]  The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C).   Although the balancing test
for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for
Exemption 7(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of
personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a
consolidated discussion.   The privacy interests are balanced against the public's interest in disclosure under both
exemptions.

scrutinized to determine the nature and strength of the privacy interest of every individual whose name and/or identifying information appears in the documents at issue.   When withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure.   For purposes of these exemptions, a public interest exists only when information about an individual would shed light on the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners.   In each instance where information was withheld pursuant to Exemptions 6 and 7(C), the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure.

### (b)(6)-1 and (b)(7)(C)-1     Names and/or Identifying Information of FBI Special Agents and Support Personnel

(28)   In Category (b)(6)-1 and (b)(7)(C)-1, the FBI protected the names and identifying information of FBI Special Agents ("SAs") and support personnel who were responsible for conducting, supervising, and/or maintaining the investigative activities reflected in the documents responsive to Plaintiff's FOIA request.   These responsibilities included conducting interviews and compiling information, as well as reporting on the status of the investigation.   Assignments of SAs to any particular investigation are not by choice.   Publicity (adverse or otherwise) regarding any particular investigation to which they have been assigned may seriously prejudice their effectiveness in conducting other investigations.   The privacy consideration is also to protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of this or other

investigations, whether or not they are currently employed by the FBI.   FBI SAs conduct official

inquiries into various criminal and national security violation cases.   They come into contact with

all strata of society, conducting searches and making arrests, both of which result in reasonable but

nonetheless serious disturbances to people and their lives.   It is possible for an individual targeted

by such law enforcement actions to carry a grudge which may last for years.   These individuals

may seek revenge on the agents and other federal employees involved in a particular investigation.

The publicity associated with the release of an agent's identity in connection with a particular

investigation could trigger hostility toward a particular agent.   Thus, SAs maintain substantial

privacy interests in information about them in criminal investigative files.   In contrast, there is no

public interest to be served by disclosing the identities of the SAs to the public because their

identities would not, themselves, significantly increase the public's understanding of the FBI's

operations and activities.

   (29) The names of FBI support employees were also protected.   Support personnel are

assigned to handle tasks related to the official investigations reflected in the documents responsive

to Plaintiff's FOIA request.   They were, and possibly are, in positions of access to information

regarding official law enforcement investigations, and therefore could become targets of harassing

inquiries for unauthorized access to investigations if their identities were released.   Thus, these

individuals maintain substantial privacy interests in not having their identities disclosed.   In

contrast, the FBI concluded that no public interest would be served by disclosing the identities of

these FBI support employees to the general public because their identities would not, themselves,

significantly increase the public's understanding of the FBI's operations and activities.

Accordingly, after balancing these employees' substantial privacy interests against the non-existent public interest, the FBI properly protected the names and identifying information of SAs and support personnel pursuant to FOIA Exemptions (b)(6)-1 and (b)(7)(C)-1.

**(b)(6)-2 and (b)(7)(C)-2    Names and/or Identifying Information of Third-Parties of Investigative Interest**

(30)    In Category (b)(6)-2 and (b)(7)(C)-2, the FBI protected the names and/or identifying information of third-parties who were of investigative interest to the FBI.   Identifying information may include, but is not limited to, names, dates of birth, social security numbers, addresses, telephone numbers, and/or other personal information.   Being identified as a subject of a criminal investigation such as the one documented in the records at issue, carries a strong negative connotation and a stigma.   Release of the identities of these individuals to the public could subject them to harassment or embarrassment, as well as undue public attention.   Accordingly, the FBI has determined that these individuals maintain substantial privacy interests in not having their identities disclosed.   In contrast, disclosing personal information about these individuals would not significantly increase the public's understanding of the FBI's performance of its mission and so the FBI concluded that there was no public interest here sufficient to override these individuals' substantial privacy interests.   For these reasons, the FBI properly withheld this information pursuant to FOIA Exemptions (b)(6)-2 and (b)(7)(C)-2.

**(b)(6)-3 and (b)(7)(C)-3    Names and/or Identifying Information of Non-FBI Federal Government Personnel**

(31)    In Category (b)(6)-3 and (b)(7)(C)-3, the FBI protected the names and identifying information of non-FBI federal government personnel mentioned in records responsive to

15

Plaintiff's request.   Specifically, the FBI protected information of EOUSA's personnel.   The relevant inquiry here is whether public access to this information would violate a viable privacy interest of these individuals, and whether there is a public interest in releasing their identities. Disclosure of their identities and identifying information could subject these EOUSA personnel, to unauthorized inquiries and harassment and would constitute a clearly unwarranted invasion of their personal privacy.   The rationale for protecting non-FBI federal employees is the same as that for FBI employees, *supra*.

(32)    In balancing the legitimate privacy interest of these individuals against any public interest in disclosure, the FBI determined that there is a complete lack of bona fide public interest in this information because its disclosure will not shed light on the operations and activities of the federal government.   Accordingly, the FBI has concluded that the disclosure of this information would "constitute a clearly unwarranted" and "unwarranted invasion of their personal privacy." The FBI properly protected the names and identifying information of non-FBI federal government personnel pursuant to FOIA Exemptions (b)(6)-3 and (b)(7)(C)-3.

### (b)(6)-4 and (b)(7)(C)-4      Names and/or Identifying Information of Third Parties Merely Mentioned

(33)    In Category (b)(6)-4 and (b)(7)(C)-4, the FBI protected the names and identifying information of third-parties who were merely mentioned in the criminal investigative files containing information responsive to Plaintiff's request.   The FBI has information about these third-parties in its files because these individuals came into direct or indirect contact with the subjects of the FBI extortion investigation(s).   These individuals were not of investigative interest

16

to the FBI.   These third-parties maintain substantial and legitimate privacy interests in not having

this information disclosed and thus, being connected with a criminal investigation.   Disclosure of

these third-parties' names and/or identifying information in connection with an FBI investigation of

criminal activities carries an extremely negative connotation.   Disclosure of their identities would

subject these individuals to possible harassment or criticism and focus derogatory inferences and

suspicion on them.   The FBI then considered whether there was any public interest that would

override these privacy interests, and concluded that disclosing information about individuals who

were merely mentioned in an FBI investigative file would not significantly increase the public's

understanding of the operations and activities of the FBI.   Accordingly, the FBI properly protected

these individuals' privacy interests pursuant to FOIA Exemptions (b)(6)-4 and (b)(7)(C)-4.

**(b)(6)-5 and (b)(7)(C)-5**       **Names and/or Identifying Information of Local Law Enforcement Personnel**

(34)       In Category (b)(6)-5 and (b)(7)(C)-5, the FBI withheld the names and identifying

information of local law enforcement personnel.   Identifying information withheld may include

the title/rank of these employees.   These employees were acting in their official capacity and aided

the FBI in the law enforcement investigative records responsive to Plaintiff's request.   The

rationale for protecting the identities of FBI SAs and support personnel found at paragraphs 28-29,

supra, also pertains to withholding the names and identifying information of these local law

enforcement personnel.   To release the identities of these law enforcement personnel could subject

them as individuals to unnecessary, unwarranted harassment which would constitute an

unwarranted invasion of privacy.   Furthermore, these individuals could become a prime target for

compromise if their identities were known.    There is no public interest to be served in releasing the

identities of these individuals.    The FBI concluded that the disclosure of this information would

constitute a clearly unwarranted and an unwarranted invasion of their personal privacy.    The FBI

has properly withheld this information pursuant to FOIA Exemptions (b)(6)-5 and (b)(7)(C)-5.

**(b)(6)-6 and (b)(7)(C)-6:      Names and/or Identifying Data Regarding a
                                  Third Party Victim**

(35)    In Category (b)(6)-6 and (b)(7)(C)-6, the FBI withheld the Social Security Number

and date of birth of Terry Bollea.    Although Mr. Boella provided a privacy waiver to the

Plaintiff, the FBI believes that this waiver was not intended to serve as a blanket waiver for all his

personal information.    The Government has an obligation uder the FOIA not to release Social

Security Numbers of live individuals.[6]   The Courts have recognized that the increasing prevalence

of identity fraud, as reflected in various federal statutes, demands that federal agencies take

particular care when publicly disclosing documents that contain Social Security Numbers.[7]   Thus,

there is a strong privacy interest in the protection of such personal information.    The FBI could

identify no discernible public interest in the disclosing of Terry Bollea's Social Security Number

and/or date of birth because the disclosure of this identifying information would not shed light on

the operations and activities of the FBI.    Thus, disclosure of this information would constitute a

clearly unwarranted invasion of personal privacy and could reasonably be expected to constitute

an unwarranted invasion of personal privacy.

---

[6] Taitz v. Obama, 754 F. Supp. 2d 57, 60 (D.D.C.,2010).
[7] Sherman v. U.S. Dept. of Army, 244 F.3d 357 (5th Cir. 2001)

**(b)(7)(E)-1**          **Investigative Techniques and Procedures (Consensual Monitoring)**

(36)     In Category (b)(7)(E)-1, the FBI protected information about techniques and

procedures used by the FBI in conducting investigations, including information that would reveal

what types of techniques and procedures are routinely used in such investigations, and non-public

details about when, how, and under what circumstances they are used.   The information withheld

under this category pertains to consensual monitoring techniques.   To describe this information in

further detail on the public record would identify the very information that the FBI seeks to protect

pursuant to this exemption.   Specifically, revealing the details of what techniques and procedures

pertaining to consensual monitoring are commonly used in particular investigations, and the details

and circumstances under which they are used, would enable the targets of these techniques to avoid

detection or develop countermeasures to circumvent the ability of the FBI and/or law enforcement

authorities to effectively use these important law enforcement techniques in future investigations,

therefore allowing for circumvention of the law.   Accordingly, the FBI properly withheld this

information pursuant to FOIA Exemption (b)(7)(E)-1.

**(b)(7)(E)-2**          **Dates and Types of Investigations (Preliminary or Full Investigations)**

(37)     In Category (b)(7)(E)-2, the FBI protected information pertaining to the types and

dates of investigations referenced in the records at issue in this case.   Specifically, the

information withheld, when referenced in connection with the actual investigation and not in

general discussion, pertains to the type of investigation, whether it is a "preliminary" or "full"

investigation and the date it was initiated.   Disclosure of this information would allow

individuals to know the types of activities that would trigger a full investigation as opposed to a preliminary investigation, and the particular dates that the investigation covers, which would allow individuals to adjust their behavior accordingly.   Moreover, the knowledge that a specific activity in general warrants a preliminary versus a full investigation could likewise cause individuals to adjust their conduct to avoid detection.   Because disclosure of this information could reasonably be expected to impede the FBI's effectiveness and potentially aid in circumvention of the law, the FBI has properly withheld this information pursuant to FOIA Exemption (b)(7)(E)-2.

**(b)(7)(E)-3**                    **FBI Internal Web Addresses**

(38)    In Category (b)(7)(E)-3, the FBI protected internal FBI web addresses.   Releasing these internal web addresses would provide criminals with potential targets for cyber attack. Armed with these web addresses, criminals capable of cyber attacks would know where to go in the FBI's computer system to disrupt or undermine FBI investigative activities and counter-terrorism initiatives.   Disruption could be achieved by deleting, changing, and/or corrupting the data housed at the web addresses and/or utilizing the information found there for nefarious purposes. Disruption of the FBI's mission could result in an increase in violence, crime, or the destruction of property by criminal and terrorists.   In this manner, release of this information would jeopardize the FBI's mission and counter-terrorism program and enable criminals to circumvent the law. Therefore, the FBI protected this information pursuant to FOIA Exemption (b)(7)(E)-3.

**(b)(7)(E)-4**                       **Database Information and/or Printouts**

(39)    In Category (b)(7)(E)-4, the FBI protected database search results located through

non-public databases used for official law enforcement purposes by the FBI and/or law

enforcement personnel.    These non-public databases serve as repositories for counterterrorism

and investigative data.    They are essentially "one-stop" shops that allow law enforcement to

query information and develop investigative leads from a variety of source data using

state-of-the-art analytical tools.    FBI personnel as well as task force members from local, state

and other federal agencies have access to these databases.    Disclosure of the printouts or

information compiled from these search results could enable criminals to employ

countermeasures to avoid detection, thus jeopardizing the FBI's investigative mission.    Because

disclosure would impede the FBI's effectiveness and potentially aid in circumvention of the

techniques if disclosed, the FBI properly withheld this information pursuant to FOIA Exemption

(b)(7)(E)-4.

**(b)(7)(E)-5**                    **Monetary Payments for Investigative Techniques**

(40)    In Category (b)(7)(E)-5, the FBI protected monetary amounts requested by FBI

personnel and/or paid by the FBI in order to implement particular investigative techniques.    The

FBI has limited resources that it must allocate strategically in order to effectively pursue its law

enforcement and intelligence gathering missions.    Revealing the amount of money the FBI has

paid or plans to pay in order to implement certain investigative techniques would reveal the FBI's

level of focus on certain types of law enforcement or intelligence gathering efforts.    Revealing this

level of focus would reveal how the FBI plans to allocate its limited resources and essentially paint

21

a picture as to where the FBI's strengths and weaknesses lie within the spectrum of illegal activities it is mandated to investigate.   Releasing this information would give criminals the opportunity to structure their activities in a manner which avoids the FBI's strengths and exploits its weaknesses. Because release of this type of information would enable criminals to circumvent the law, this information has been redacted pursuant to Exemption (b)(7)(E)-5.

**(b)(7)(E)-6**             **Collection / Analysis of Information**

(41)    In Category (b)(7)(E)-6, the FBI protected methods it uses to collect and analyze the information it obtains for investigative purposes.   The release of this information would disclose the identity of methods used in the collection and analysis of information, including how and from where the FBI collects information and the methodologies employed to analyze it once collected. Such disclosures would enable subjects of FBI investigations to circumvent similar currently used techniques.   The relative utility of these techniques could be diminished if the actual techniques were released in this matter.   This in turn would facilitate the accumulation of information by investigative subjects regarding the circumstances under which the specific techniques were used or requested and the usefulness of the information obtained.   Release of this type of information would enable criminals to educate themselves about the techniques employed for the collection and analysis of information and therefore allow these individuals to take countermeasures to circumvent the effectiveness of these techniques and to continue to violate the law and engage in intelligence, terrorist, and criminal activities.   The FBI has properly withheld this information pursuant to FOIA Exemption (b)(7)(E)-6.

**(b)(7)(E)-7**          **Sensitive FBI Files or Sub-file Names**

(42)      In Category (b)(7)(E)-7, Exemption 7(E) has been asserted to protect a sensitive FBI

file or sub-file.   The name or nature of a file or sub-file indicates which techniques and/or

investigative strategies were utilized by the FBI in particular investigations.   Revealing the names

of files or sub-files regarding sensitive techniques would obviously then reveal that the FBI used

particular types of techniques in certain investigations, such as the one at issue in this case.   It

would also show, more globally, what types of investigative strategies the FBI uses in countering

and/or investigating certain types of criminal behavior.   Armed with this information, criminals

and terrorists would be able to predict the FBI's actions, structure their behavior in a manner that

avoids detection and/or disruption by the FBI, and circumvent the law.   Moreover, while the

release of a single piece of information such as the file number at issue here may seem harmless on

its face, this piece of investigative information could be combined with other information in mosaic

fashion by criminals and terrorists to glean insight into FBI enforcement efforts.   Therefore, this

information has been protected pursuant to FOIA Exemption (b)(7)(E)-7.

## SEGREGABILITY

(43)      As discussed in ¶ 4 *supra*, there were 1178 responsive pages identified:   Some

Released in Full ("RIF"), Some Released in Part ("RIP"), and Some Withheld in Full ("WIF").

Each of these categories is discussed below to further address segregability.

    A. Pages RIF.   Following the segregability review, RIDS determined that some pages

        could be released in full without redaction as there was no foreseeable harm to an

        interest protected by a FOIA exemption.

B. <u>Pages RIP</u>.   Following the segregability review, RIDS determined that some pages could be released in part with redactions per the identified FOIA exemptions herein. These pages comprise a mixture of material that could be segregated for release and material that was withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages.

C. <u>Pages WIF</u>.   Following the segregability review, RIDS determined that some pages were required to be withheld in their entirety.   RIDS determined that all information on each page was covered by one or more of the cited FOIA exemptions; therefore, there was no information that could be reasonably segregated for release without triggering foreseeable harm to one or more of the cited FOIA exemptions.

D. <u>Audio CDs</u>.   Following the segregability review, RIDS determined that two (2) CDs containing audio recordings could be released in part with redactions per the identified FOIA exemptions herein. These disks comprise a mixture of material that could be segregated for release and material that was withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages.

## CONCLUSION

(44)   The FBI has performed adequate and reasonable searches for responsive records; has processed all such records and released all reasonably segregable non-exempt information from documents responsive to Plaintiff's FOIA requests that are subject to FOIA.   The FBI processed

24

the records under the access provisions of the FOIA to achieve maximum disclosure.   Information was properly withheld pursuant to FOIA Exemptions (b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). The FBI carefully examined the documents and determined that the information withheld from the responsive records in this case, if disclosed, would: reveal statutorily protected information; reveal privileged information; cause a clearly unwarranted invasion of the personal privacy, or could reasonably be expected to constitute an unwarranted invasion of personal privacy; and/or disclose techniques and procedures for law enforcement investigations.   After extensive review of the documents at issue, I have determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed this _____ day of June 2015.


DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

26