UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAWKER MEDIA, LLC and GREGG D.
THOMAS,

            Plaintiffs,

                                       Case No.:  8:15-cv-01202-SCB-EAJ

vs.

THE FEDERAL BUREAU OF
INVESTIGATION and THE EXECUTIVE
OFFICE OF UNITED STATES ATTORNEYS

            Defendants.
_____/

**PLAINTIFFS' STATEMENT REGARDING DEFENDANT
<u>AGENCIES' INVOCATION OF NEWLY-CLAIMED EXEMPTIONS</u>**

      Gawker Media, LLC and its counsel Gregg D. Thomas, Esq. (together, "Gawker"),

respectfully submit this Statement, in advance of the July 2, 2015 hearing, regarding (a) the

FBI's remarkable admission that the original reason for denying Gawker's FOIA requests does

not apply after all and (b) the belated claims asserted by the FBI and EOUSA (collectively, the

"Agencies") – raised for the first time in their motion for "reconsideration" – that new and

different FOIA exemptions apply to the materials Gawker requested.[1]

      For the reasons stated below, allowing the Agencies, at the eleventh hour, to invoke new

exemptions which they could have asserted at any time over the last eight months, but neglected

---

[1] This Statement does not address in detail the Agencies' request for more time to comply with this Court's June 24, 2015 Order, as the Court has already ruled on that Request.  *See* Order dated June 29, 2015 (Dkt. 36).  However, Gawker expresses its serious concern that, just as the Agencies disregarded the statutory deadlines for responding to its FOIA requests, the FBI essentially gave itself an extension to comply with this Court's June 24, 2015 Order (Dkt. 31). The FBI admitted that it did not even learn of the Court's order until the following day, *see* Second Hardy Decl. (Dkt. 35-1) at 3 ¶ 5, and advanced the remarkable contention that it needed 66 hours of weekend work (plus weekday shifts) to review just 1,300 pages of documents and an additional *thirty days* to process two audio CDs, *id.* at 6-7.

to do, would be contrary to law, and fundamentally unfair to Gawker.  To the extent that this Court nevertheless elects to consider the merits of the belatedly-invoked exemptions, it should reject them.  For example, the privacy exemptions cannot reasonably apply under the circumstances here, given that (a) privacy waivers have been provided for the key individuals involved in sexual conduct, (b) the identities of others that the Agencies are apparently seeking to protect here are already well known, and (c) the curious handling of this investigation initiated at the behest of a famous celebrity merits public scrutiny.  The other new exemptions claimed by the Agencies should likewise be rejected.

## FACTS

1.     Gawker filed this lawsuit to compel the Agencies to provide public records, including as necessary for its defense of a state court lawsuit brought by Terry Gene Bollea, professionally known as "Hulk Hogan."

2.     **The FBI Request:**  Gawker submitted the operative FOIA request to the FBI last November.  The FBI refused to provide any records on the sole ground that they were exempt in their entirety under FOIA Exemption 7(A) (regarding law enforcement investigations).  After Gawker filed this lawsuit, the FBI conceded that it did not have an ongoing law enforcement investigation related to the requested records, but asserted that it was invoking the exemption on behalf of some unnamed non-federal agency.

3.     At the hearing on Gawker's motion for summary judgment on June 24, 2015, this Court ordered the FBI (a) to produce certain videos in their entirety by Friday, June 26, 2015, because there was no valid law enforcement exemption as to them, (b) to produce the documents as to which it was not claiming Exemption 7(A) by the same date, and (c) to produce an index by June 30, 2015 describing the categories of documents withheld under Exemption 7(A) and

2

explaining "why disclosure of the documents could reasonably be expected to interfere with law enforcement proceedings," together with a declaration providing "a more particularized explanation."  *See* Order dated June 24, 2015 (Dkt. No. 31.)

4.     *After* the deadline for producing materials had passed, the FBI submitted a "motion for reconsideration."  Without explanation, that motion withdrew the FBI's assertion of Exemption 7(A) – the only claim it had ever asserted applied to the records sought.[2]  But instead of simply producing the records, it now asserted instead that other, unspecified exemptions applied, including, just by way of example, FOIA's privacy exemptions – Exemption 6 (invasion of personal privacy) and Exemption 7(C) (invasion of privacy in connection with law enforcement records).  *See* Second Hardy Decl. (Dkt. 35-1) at 4-6.  As a result, it requested more time to process the documents to raise new exemptions, even though this exact approach was rejected by the Court at the June 24, 2015 hearing.  *See* June 24, 2015 Hrg. Tr. (Smith Decl., Ex. A) at 40:8 – 44:11 (crediting Gawker's argument that "FOIA is not . . . a serial process, where you say, 'Oh, let's assert exemption 7(A).  That didn't work.  Now let's assert a different exemption.'"); *id.* at 42:1-3 (THE COURT:  "I don't see this as a two-part process.  The only exemption that anybody has mentioned here is 7(A).").  And, the FBI announced for the first time that it would be producing *redacted* versions of the videos it was ordered to produce in full, ostensibly for privacy reasons.

5.     On June 29, 2015, this Court granted the FBI a limited amount of additional time to comply with its Order and reiterated that it would hold another hearing on this matter on

---

[2] Indeed, at the hearing on June 24, 2015, counsel for the FBI confirmed that only the law enforcement investigations exemption – Exemption 7(A) – was at issue.  *See* June 24, 2015 Hrg. Tr. (Ex. A to the Declaration of Alia L. Smith) at 16:5-7 ("THE COURT: We are only now working with the law enforcement exemption?  MR. STEGEBY: That's correct, your Honor."); *see also* Order dated June 24, 2015, at 2 n.1 ("the only exemption the Court finds to be at issue with respect to the FBI is the law enforcement exemption, 5 U.S.C. § 552(b)(7)(A)").

Thursday, July 2.  *See* Order dated June 29, 2015 (Dkt. 36).  Although the FBI's declaration

recites that it produced 1,178 pages of documents on June 30, 2015, Gawker did not receive any

such documents, and has orally been promised them by July 1, 2015.  Accordingly, Gawker

reserves the right to raise at the July 2 hearing additional issues that may arise after it reviews the

FBI's forthcoming document production.[3]

6.     On June 30, 2015, the FBI filed the Third Declaration of David M. Hardy (Dkt.

37-1), along with a "Categorical Vaughn Index" (Dkt. 38-1).  Despite the original limitation by

both the FBI and this Court to Exemption 7(A), the index and accompanying Hardy Declaration

assert FOIA exemptions related to privacy (Exemptions 6 and 7(C)); statutorily-protected

records, like grand jury materials (Exemption 3); privileged/inter-agency communications

(Exemption 5); and law enforcement investigative techniques (Exemption 7(E)).  The FBI's

submission further advises that it is withholding or redacting documents based on each of those

exemptions.  Moreover, although a *Vaughn* index is supposed to enable the Court and the party

requesting the documents to be able to assess whether each document was properly withheld, the

FBI's index contains very little information and it is virtually impossible to conduct that analysis

without the documents themselves, thus defeating the purpose of submitting an index.  Indeed,

---

[3] On June 25, 2015, counsel for Gawker sent counsel for the Agencies a letter requesting that the Agencies bring two copies of all documents not produced in full to the hearing scheduled for July 2.  One would allow the Court to review any document about which it had a question, and the other would allow immediate production of any documents ordered produced.  Smith Decl., Ex. C.  On June 26, 2015, after being advised that the FBI planned to redact the DVDs that this Court had ordered produced in full, counsel for Gawker expanded that request to include the videos, so that the Court could review the redacted portions if necessary, and so that the full DVDs could be produced immediately if ordered.  *Id.*, Ex. D.  To date, counsel for the Agencies has not responded to either request.

without the documents, it is unclear whether the *Vaughn* index covers both redacted and withheld documents, or only the latter.[4]

7.      **The EOUSA Request:**  Gawker also submitted a FOIA request to the EOUSA in early November 2014.  It did not respond at all until Gawker filed this lawsuit.  Then, belatedly, it produced three almost-entirely-redacted emails and stated it was withholding another 59 documents on grounds of FOIA Exemptions 5, 6 and 7(C).[5]

8.      At the hearing on Gawker's summary judgment motion, this Court ordered the EOUSA (a) to produce, by Friday, June 26, 2015, all its documents for which is was not claiming exemption (keeping in mind that privacy concerns were minimal in light of the waivers submitted by Gawker, *see* Order at 2), and (b) to produce an index and declaration explaining its claimed exemptions.

9.      On Friday evening, June 26, 2015, the EOUSA produced just 24 pages of records, including the agency's post-lawsuit denial (2 pages), and 19 pages that Gawker had supplied to the agency, after having obtained them, with the Government's blessing, from Hogan.  *See* Smith Decl. Ex. B (examples of unredacted documents provided by Gawker to the Agencies juxtaposed with the EOUSA's redacted production of the same documents).  Remarkably, the EOUSA

_____

[4] As indicated above, neither the records nor the accompanying cover letter has been provided.  However, Mr. Hardy's Declaration recites that the cover letter advises Gawker that it "could appeal the FBI's determination by filing [another] administrative appeal with the [Agency] within sixty days."  Third Hardy Decl. (Dkt. 37-1) at 4 ¶ 7. As explained herein, Gawker is not required to be in a potentially endless loop of denials and administrative appeals, and instead is properly entitled to have these issues adjudicated by this Court now.  *See* note 5 *infra*.

[5] The EOUSA's contention, in its reconsideration motion, that Gawker did not exhaust its administrative remedies, and is not entitled to sue, is simply wrong.  *See, e.g.*, *In Def. of Animals v. Nat'l Inst.'s of Health*, 543 F. Supp. 2d 83, 96-97 (D.D.C. 2008) (a final agency response which is issued post-suit does not revive a lapsed exhaustion requirement); *see also Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 63 (D.C. Cir. 1990) (only pre-suit response "cures" an agency's constructive denial and triggers exhaustion requirements).

redacted the documents even though (a) many of the documents had been filed in un-redacted

form in the public record in this proceeding, available to anyone with a PACER account, and

(b) many of them were Gawker's documents in the first place.  *See, e.g.*, Smith Decl., Ex. B at

FBI 055/EOUSA 018 (redacted version of correspondence the U.S. Attorney's Office sent to

*counsel for Gawker* confirming that it was not a target or subject of any investigation).

    10.    On June 30, 2015, the EOUSA submitted a *Vaughn* index and declarations

purporting to justify the total withholding of documents it did not produce on June 26, 2015, as

well as the redactions in the documents it had produced.

## ARGUMENT

### I.    The FBI's Belated Assertion of New Exemptions Is Improper and Should Be Rejected.

    As discussed, the FBI received Gawker's FOIA request nearly eight months ago.  If it

had thought other discretionary exemptions beyond Exemption 7(A) applied, it should have

invoked them when it first responded to Gawker's requests.  Or when it decided Gawker's

administrative appeal.  Or when it opposed Gawker's motion for summary judgment.  Or when it

answered Gawker's complaint in the matter.  Or when the Court held a full hearing on Gawker's

dispositive motion.  The documents at issue have been available to the FBI for *months*, and the

FBI had an obligation to assert all applicable objections at the outset.  *See, e.g.*, *Tipograph v.

Dep't of Justice*, 2015 WL 1245921, at *4 (D.D.C. Mar. 18, 2015) (FBI must conduct a

document-by-document review *at the administrative stage*).[6]

    As the Court instinctively recognized when it stated "I don't see this as a two-step

process," June 24, 2015 Hrg. Tr. (Smith Decl., Ex. A) at 42:1-3, under settled law, there is no

---

[6] This is especially true given that the FBI took months to respond to Gawker's request, and several more months to respond to Gawker's administrative appeal, when FOIA requires a response to each within 20 days.  5 U.S.C. § 552(a)(6)(A)(i) & (ii).

basis to assert additional exemptions at this late stage.  *See Ray v. U.S. Dep't of Justice*, 908 F.2d 1549, 1557 (11th Cir. 1990) (agency exemptions waived if not raised in or before the filing of the first responsive pleading);  *rev'd on other grounds*, *U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991); *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 764 (D.C. Cir. 2000) ("We have plainly and repeatedly told the government that, as a general rule, it must assert all exemptions at the same time . . . . [T]he delay caused by permitting the government to raise its FOIA exemption claims one at a time interferes both with the statutory goals of 'efficient, prompt, and full disclosure of information.'") (citation omitted).  Indeed, courts apply this rule in FOIA cases precisely to prevent exactly what the FBI has done here:  cause undue delay by asserting exemptions in piecemeal fashion.  *Ray*, 908 F.2d at 1557 ("courts should not allow government to raise FOIA exemptions in a piecemeal fashion.").

While the FBI contends that it is required to assert these exemptions now, that is incorrect.  All exemptions other than Exemption 3 are discretionary, particularly the privacy exemptions which, by definition, require a balancing of interests first by the agency and then on a *de novo* basis by this Court.  *See Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec*., 598 F. Supp. 2d 93, 96 (D.D.C. 2009); 5 U.S.C. § 552(b)(3)(A); *see also AT&T Inc. v. FCC*, 582 F.3d 490, 495 n.2 (3d Cir. 2009) ("FOIA itself does not prohibit disclosure of information falling within its exemptions."), *rev'd on other grounds*, *FCC v. AT&T Inc.*, 562 U.S. 397 (2011).  The FBI's failure to exercise its discretion to timely assert other exemptions defeats its belated invocation of new exemptions as a matter of law.  *See, e.g., Maydak*, 218 F.3d at 764 (D.C. Cir. 2000); *Crooker v. U.S. Parole Comm'n*, 760 F.2d 1, 2 (1st Cir. 1985).

For these reasons, the Court should not consider the FBI's newly-asserted exemptions, and should order unredacted versions of all responsive documents (including audio and video

files) released immediately, given the FBI's concession that Exemption 7(A) – the only exemption it timely asserted – does not apply.

## II.     No Privacy Exemption Can Possibly Apply.

In their *Vaughn* indexes, the Agencies assert that the privacy/law enforcement exemption (7(C)) applies to numerous documents, including the three DVDs and two CDs.[7]  Even if that exemption had been timely invoked, it simply cannot apply here.  For Exemption 7(C) to apply, there must be a showing both that the materials at issue are private and that the public interest does not outweigh the privacy interest.  *See, e.g., McMichael v. U.S. Dep't of Defense*, 910 F. Supp. 2d 47, 52 (D.D.C. 2012) (under Exemption 7(C), court must consider whether "the privacy interest at stake outweighs the public interest in disclosure"); *Landano v. U.S. Dep't of Justice*, 758 F. Supp. 1021, 1026 (D.N.J. 1991) (same); *see also ACLU  v. U.S. Dep't of Justice*, 655 F.3d 1 (D.C. Cir. 2011) ("in light of the strength of the public interest in disclosure and the relative weakness of the privacy interests at stake, we conclude that production of the requested information will not constitute an 'unwarranted' invasion of personal privacy under Exemption 7(C)").  Contrary to the FBI's assertion, not every disclosure of a person's name results in an "unwarranted" invasion of personal privacy.  Moreover, here much of that information is not private at all, and the public interest is strong.

### A.     There Is No Privacy Interest in Information That Is Already Known.

There is obviously no privacy interest with respect to the "main actors" in the tapes and documents, as they have submitted privacy waivers.  And most of the "third parties" the

---

[7] The Agencies also invoke Exemption 6, which exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  They do not show how that exemption would apply here, and appear to concede that if Exemption 7(C) does not authorize withholding particular information, Exemption 6 does not either.  Dkt. 35 at 5-6.  Accordingly, Gawker focuses on their newly-minted assertion of Exemption 7(C).

Agencies seek to protect likewise have no privacy interest because their identities are already known – through news reports, discovery in the underlying case, and the Agencies' own public disclosures, including publicly filed documents in the record of *this case*.  It is well-established that there is no privacy interest in information that is, in substance, already public.  *See, e.g.*, *Showing Animals Respect & Kindness v. U.S. Dep't of Interior*, 730 F. Supp. 2d 180, 191 (D.D.C. 2010) (no cognizable privacy interest where "the cat is out of the bag"); *Hunt v. FBI*, 972 F.2d 286, 288 (9th Cir. 1992) (redaction would be a "pointless exercise" where name was publicly known).  This is particularly so when the government itself makes the disclosure.  *See Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1198 (9th Cir. 2011) ("when an agency freely discloses to a third party confidential information covered by a FOIA exemption without limiting the third-party's ability to further disseminate the information then the agency waives the ability to claim an exemption to a FOIA request for the disclosed information"); *Lazaridis v. U.S. Dep't of State*, 934 F. Supp. 2d 21, 35 (D.D.C. 2013) ("FOIA-exempt information loses its protection if it was previously disclosed").

Thus, the FBI's redaction of, for example, the three DVDs was improper.  The main participants in those videos provided privacy waivers, and the "third person" (whose privacy the FBI is seeking to protect, *see* Mot. for Recons. (Dkt. 35) at 4-5) has already been publicly identified as Bubba the Love Sponge Clem.[8]  Likewise, the EOUSA's claims that it may redact records that "were created in response to a potential extortion case against a third party who was under investigation," *see* Mot. for Recons. (Dkt. 35) at 10, are also improper.  It is publicly

---

[8] *See, e.g.*, Peter Sterne, "Gawker in the fight of its life with Hulk Hogan sex-tape suit," *Capital New York* (June 12, 2015) ("The video also shows Bubba giving his blessing for Hogan and Clem to have sex."), *available at* http://www.capitalnewyork.com/article/media/2015/06/8570075/gawker-fight-its-life-hulk-hogan-sex-tape-suit.

known that this "third party" is Keith Davidson, including through the Government's own public filings in this case.  *See, e.g.*, Decl. of David M. Hardy (Dkt. 23-1) at ECF page 78 (referencing the investigation into "Keith M. Davidson, USAO No. 2012R02418").[9]  Moreover, the key purpose of Exemption 7(C) is to protect against the stigma of being involved in a Government investigation, but here the investigation is closed and there was no prosecution, as that correspondence confirms.  Additionally, the EOUSA's redaction of the names of officials, including AUSAs Bob Mosakowski and Sarah Sweeney, and FBI Agent Jason Shearn, is baseless.  Their names have all previously been made public, *see, e.g.*, Decl. of G. Thomas (Dkts. 5-1, 5-16, 5-17) Exs. 15-17, and shielding them and other officials on the grounds that they are somehow "private" makes no sense.

> ### B.     The Public Interest Justifies Disclosure.

The public interest also weighs in favor of disclosure.  Gawker – a news organization – concededly began this process simply because it sought information for use in connection with the state court litigation.  But, at this point, finding out what the Agencies are up to here is clearly within the public interest.

Here's what we know so far.  We have an internationally-known celebrity who initiated a significant investigation into Mr. Davidson over three DVDs depicting sexual encounters with Heather Clem, the then-wife of celebrity shock jock Bubba the Love Sponge Clem (himself no

---

[9] *See also, e.g.*, Kara Bloomgarden-Smoke, "In Hulk Hogan v. Gawker, FBI Holds Three Mystery DVDs," *The New York Observer* (June 23, 2015) (reporting on Government's filing in this action, and stating "An official document, never reported on until now, outlines some of the evidence held by the FBI in the course of its investigation, including a case containing three DVDs, and a check for $150,000 made out to Keith Davidson, a Hollywood lawyer, from Mr. Hogan's lawyer David Houston."), *available at* http://observer.com/2015/06/in-hulk-hogan-v-gawker-fbi-holds-three-mystery-dvds/.

stranger to controversy).  But, as best we can tell, the Government did not prosecute anyone, despite concededly having both audio and video evidence.

Then, when Gawker sought records related to this investigation, the FBI – but not the EOUSA – asserted the law enforcement exemption (7(A)), even though it concededly had no ongoing law enforcement proceeding and without disclosing for months that the investigation was ostensibly by some unnamed non-federal agency.  This of course raised the question of whether cronies in local law enforcement initiated an "investigation" to prevent release of the documents, potentially with the cooperation of sympathetic officials in the FBI.  This assertion of the law enforcement exemption was particularly suspicious because the U.S. Attorney's Office did not raise that exemption at all in its subsequent (and post-suit) response to Gawker's FOIA request.  Then, within two days of this Court's order, the FBI dropped the law enforcement exemption like a hot potato.  Curiously, one of the few documents that *was* produced raises further questions about whether Hogan's counsel attempted to prevent the release of the DVDs (or other documents) ordered produced by this Court.  Simply put, even had the FBI not waived Exemptions 6 and 7(C) in the first place, the absence of any meaningful privacy interest by Bubba Clem, Keith Davidson or the government officials whose identities and connection to this investigation are already public, when balanced against the public interest in understanding the many highly unusual and suspect aspects of this investigation, clearly warrant disclosure.

## III.   The Other New Exemptions Asserted by the Agencies Should Be Carefully Scrutinized by this Court.

In addition to asserting privacy exemptions, the Agencies also now allege a variety of other new exemptions.  The Court should scrutinize carefully the FBI's newly-claimed exemptions, including if needed through an *in camera* review of the responsive documents since, as discussed above, its *Vaughn* index makes it virtually impossible to determine what is being

withheld and why.  Indeed, comparing the FBI's index to the one supplied by the EOUSA illustrates this point, although even the EOUSA has improperly withheld documents – including its communications with *Gawker*, which simply makes no sense.

In scrutinizing the Agencies' assertions, the Court should keep in mind the following:

1.     Unlike the other exemptions, Exemption 3, which requires withholding of materials exempt from disclosure under *other* statutes, is mandatory.  Here, both the EOUSA and the FBI invoke it to apply to grand jury documents.  While Gawker does not dispute that *legitimate* grand jury materials are exempt from disclosure, the fact that materials may at some point have been produced in response to a grand jury subpoena, or even placed before a grand jury, does not entitle an agency to withhold them.  Only if the Agencies can show that particular documents would "reveal the secret workings of the grand jury" may those documents be withheld.  *See Boehm v. FBI*, 948 F. Supp. 2d 9, 27-8 (D.D.C. 2013) ("[t]he disclosure of information 'coincidentally before the grand jury [which can] be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury' is not prohibited").

2.     Under Exemption 5, agencies *may* withhold material if it reflects attorney-client communications or attorney work product.  (Exemption 5 also may apply to other types of documents, not at issue here.)  But "like all privileges," these must be "narrowly construed." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980), and, contrary to the Agencies' assertion, the government may not withhold factual information from third parties, even when transmitted internally in connection with legal issues.  *Schlefer v. United States*, 702 F.2d 233, 245 (D.C. Cir. 1983); *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 255 (D.C. Cir. 1977).

3.       Finally, under Exemption 7(E), agencies *may* withhold documents the disclosure of which would reveal investigative techniques.  But, to properly invoke this exemption, the agency must show that disclosing the withheld records "could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).[10]  *See Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1102 (D.D.C. 2014) (to invoke this exemption, agency must provide "explanation of what procedures are involved and how they would be disclosed"); *ACLU v. U.S. Dep't of Homeland Sec.*, 973 F. Supp. 2d 306, 319 (S.D.N.Y. 2013) (rejecting Government's invocation of Exemption 7(E) where it failed to make showing that disclosure would risk "circumvention of the law").

At the end of the day, the FBI's declaration from Mr. Hardy reads like an encyclopedia of every potential reason the agency could think of not to produce records.  For all its heft setting forth general grounds for asserting exemptions, it is accompanied by an index that gives precious little information and will not serve the purpose of allowing the Court and the plaintiffs to evaluate whether these various exemptions are properly asserted.  Moreover, these filings bear no relation to reality:  they recite that documents have been delivered when they haven't; they assert privacy interests for people and information already made public, often by the government itself; and they reflect little appreciation for the actual circumstances underlying this request (indeed, the FBI objects to providing Mr. Bollea's date of birth and social security number even though it was on the very waiver that Gawker supplied to the FBI eight months ago).

---

[10] In full, Exemption 7(E) provides that agencies may withhold documents that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

**CONCLUSION**

For the foregoing reasons, Gawker respectfully requests that this Court disallow the

Agencies from claiming new exemptions at this late date, order the Agencies to disclose in full

all documents (including unredacted videotapes and other records) forthwith, and bring

unredacted copies of all records not disclosed in their entirety, including all video and audio

materials, to the July 2 hearing.

July 1, 2015

Seth D. Berlin (pro hac vice)
Alia L. Smith (pro hac vice)
Patrick Kabat (pro hac vice)
LEVINE SULLIVAN KOCH
  & SCHULZ, LLP
1899 L Street, NW, Suite 200
Washington, DC 20036
Tel.: (202) 508-1122; Fax: (202) 861-9888
sberlin@lskslaw.com
asmith@lskslaw.com
pkabat@lskslaw.com

Respectfully submitted,

THOMAS & LOCICERO PL

By: ___*/s/ Gregg D. Thomas*_____
    Gregg D. Thomas
    Florida Bar No.: 223913
    Rachel E. Fugate
    Florida Bar No.: 0144029
601 South Boulevard
P.O. Box 2602 (33601)
Tampa, FL 33606
Tel.: (813) 984-3060; Fax: (813) 984-3070
gthomas@tlolawfirm.com
rfugate@tlolawfirm.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of July 2015 a true and correct copy of the

foregoing is being electronically filed and served via CM/ECF on the following:

Kenneth Stegeby
Office of the United States Attorney for the Middle District of Florida
400 North Tampa Street, Suite 3200
Tampa, FL 33602
Kenneth.Stegeby@usdoj.gov

*Counsel for Defendants*

_____/s Gregg D. Thomas_____
Attorney

15