UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAWKER MEDIA, LLC and GREGG D.
THOMAS,

        Plaintiffs,

                                      Case No.:  8:15-cv-01202-SCB-EAJ

vs.

THE FEDERAL BUREAU OF
INVESTIGATION and THE EXECUTIVE
OFFICE OF UNITED STATES ATTORNEYS

        Defendants.
_____/

## PLAINTIFFS' OBJECTIONS TO DEFENDANT AGENCIES' FOIA RESPONSES, *VAUGHN* INDEXES, AND DECLARATIONS

Pursuant to this Court's July 2, 2015 Order, Plaintiffs Gawker Media, LLC and Gregg D. Thomas (collectively, "Gawker") hereby submit the following objections to the Agencies' FOIA responses and move for further production.  Below, Gawker addresses: (a) missing or unaccounted-for items in the Agencies' production, including the as-of-yet unexplained production of two additional "re-processed" DVDs of sexual encounters between Terry Bollea a.k.a. Hulk Hogan ("Hogan") and Heather Clem; (b) the Agencies' improper assertion of new exemptions; (c) the Agencies' seriously deficient *Vaughn* indexes and declarations, (d) the Agencies' improper withholding of certain documents in their entirety, and (e) the Agencies' excessive redaction, without justification, of the documents that were produced.

Gawker also submits herewith a Declaration of Gregg D. Thomas (the "Thomas Obj. Decl.") and a Motion for Leave to file a Supplemental Confidential Declaration of Gregg D. Thomas ("Conf. Thomas Obj. Decl.").  In that regard, as reflected in Exhibits 1 and 2 to the Thomas Objections Declaration, counsel for Hogan has designated the Agencies' *entire*

1

production as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the protective

order entered in the state court action.  While Gawker questions the extent of Hogan's

designations, for now Gawker is required to treat them confidentially, and therefore asks the

Court to accept the supplemental confidential declaration under seal.

## I.    MISSING OR UNACCOUNTED FOR DOCUMENTS, AND OTHER PRODUCTION ISSUES.

### A.    The Agencies' Production to Date

To date, the FBI has produced: (a) 1,178 extensively-redacted pages of documents,

(b) two redacted audio CDs, (c) three redacted DVDs, produced to the Honorable Pamela A.M.

Campbell, one of which appeared to be materially incomplete and one of which had serious

audio irregularities, on June 29, 2015, (d) two "re-processed" and redacted DVDs, produced to

Judge Campbell on July 16, 2015, and (e) three declarations from David Hardy and a *Vaughn*

index that addressed only those documents the FBI withheld in full.  To date, the EOUSA has

produced:  (a) one page in full (a news report from Gawker.com) and three pages in part (almost

entirely redacted emails) on May 27, 2015, (b) 22 pages produced on June 26, 2015 (ten pages in

full and 12 pages in part), most of which Gawker had supplied to the U.S. Attorney's Office, and

(d) a *Vaughn* index, two declarations of Tricia Francis, and a declaration of Belinda Brown.

### B.    Missing or Unaccounted-For EOUSA Documents

The EOUSA's initial denial of Gawker's FOIA request – on May 27, 2015, after this

lawsuit was filed – recites that the Agency was (1) withholding 3 pages in part, (2) withholding

59 pages in full, and (3) referring an unspecified number of pages to the FBI.  *See* Dkt. 22-1

at 2-3.  Each of these is addressed separately below.

First, it does not appear that the three pages initially withheld in part by the EOUSA

appear on the Agency's *Vaughn* index.  Those documents are almost completely redacted emails

between federal employees in the Middle District of Florida, *see* Dkt. 22-1 at 6-8 (disclosing email identifiers as "USAFLM"), and there are no entries on the EOUSA's *Vaughn* index for documents released in part that correspond to these documents.  The EOUSA has therefore failed to demonstrate that it is entitled to assert that these documents are exempt from production as required by FOIA and as ordered by the Court.

Second, following this Court's June 24 Order, the EOUSA appears to have re-processed the 59 pages it was initially withholding in full.  In its June 26 correspondence, however, the EOUSA only accounted for 54 pages, reciting that 10 pages were being produced in full, 12 pages withheld in part and 32 pages withheld in full.  *See* Thomas Obj. Decl. ¶ 9 and Ex. 3. Despite the EOUSA's reference to withholding 32 pages in full in its transmittal correspondence, *id.*, it then listed 38 pages of documents withheld in full on its *Vaughn* index.  The EOUSA's filings to date do not account for the discrepancy between its initial denial reciting that it was withholding 59 pages, the Agency's June 26 production (accounting for 54 pages, and withholding 32 in full) and its June 30 *Vaughn* index (accounting for 60 pages, and withholding 38 in full).  The EOUSA should be required (a) to certify under oath, from a person with first-hand knowledge of these documents, to explain these discrepancies and to ensure that all documents are accounted for, and (b) to produce any documents omitted from its production.

Third, the EOUSA's initial denial recited an unspecified number of pages that had been referred to the FBI.  *See* Dkt. 22-1.  In David Hardy's First Declaration on behalf of the FBI (filed June 8, 2015), he testified that the EOUSA "referred one page and two CDs for disclosure determination and requested that the FBI correspond with [Gawker] directly as a result of this consultation."  Dkt. 23-1 at 12 ¶ 27; *see also* June 24, 2015 Hrg. Tr. at 6:10-25 (Gawker's counsel reciting same in response to inquiry from the Court).  Yet, in Declarations filed on

3

June 26, 2015, both Ms. Francis of the EOUSA and Mr. Hardy of the FBI stated that between 138 and 140 pages had been referred by the EOUSA for processing by the FBI. *See* First Francis Decl., Dkt. 35-2 at 5 ¶ 14 ("Approximately 140 pages of the remaining records that were provided to EOUSA [were] referred to the FBI for that agency's FOIA point of contact to review and provide a direct response to Mr. Thomas's FOIA request."); Second Hardy Decl., Dkt. 25-1 at 6-7 ¶¶ 12-13 (referencing "138 potentially responsive pages from the EOUSA referral").

Thus, between the 1,168 pages of the FBI's own documents, *see* First Hardy Decl., Dkt. 23-1, at 5 ¶ 9, and the additional 138 pages that the EOUSA most recently claims to have referred to the FBI, a total of 1,306 pages should have been produced or otherwise accounted for by the FBI (since the FBI assigned Bates numbers even to pages it was withholding in full, *see, e.g.*, FBI *Vaughn* Index, Dkt. 38-1). However, as recited in Mr. Hardy's Third Declaration, and in the documents actually produced, only 1,178 pages were produced. *See* Dkt. 37-1 at 3 ¶ 6. He purports to account for the 138 pages of referred EOUSA documents in Document Nos. GAWKER-1041 – 1178, *see id.* at 3 n.1, but that would mean that only 1,040 pages were produced by the FBI, instead of the 1,168 it initially represented it had prior to the referral by the EOUSA. The EOUSA should be required (a) to certify under oath, from a person with first-hand knowledge of these documents, that all "referred" documents have been accounted for and (b) to produce any documents omitted from its production.

### C.  Missing or Unaccounted-For FBI Documents

As explained above, the FBI represented in sworn declarations that it was processing 1,168 pages of documents, and ultimately that it was also processing 138 pages of documents referred to it by the EOUSA. *See* First Hardy Decl., Dkt. 23-1 at 5 ¶ 9; Second Hardy Decl., Dkt. 25-1 at 6-7 ¶¶ 12-13. However, rather than accounting for 1,306 pages, it only produced or

logged on its *Vaughn* index 1,178 pages.  Like the EOUSA, the FBI should be required (a) to certify under oath, from a person with first-hand knowledge of these documents, that all documents – both its own and the EOUSA's referred documents – have been accounted for and (b) to produce any documents omitted from its production.

In addition, there are a number of other documents that are described in the FBI's document production that are not accounted for, including:

1.     Video footage of the December 14, 2012 meeting and sting operation.  In that regard, the FBI's production includes authorizations to record the sting operation using closed circuit television cameras, and other information further confirms this.  *See* Conf. Thomas Obj. Decl. at ¶¶ 23-25 & Exs. 48-C & 49-C.  But no video footage has been produced or reflected on any index of withheld documents.

2.     Audio recording of November 27, 2012 telephone call between David Houston and a person who appears to be Keith Davidson.  The documents produced to date reflect that a recording was made of this call.  *See* Conf. Thomas Obj. Decl. at ¶¶ 26-28 & Exs. 50-C & 51-C.  However, no recording or other notes or transcripts of that call have been produced or reflected on any index of withheld documents.

3.     Audio recording of December 5, 2012 telephone call between David Houston and a person appearing to be Keith Davidson.  The documents produced include a transcript of this recorded call.  *See* Conf. Thomas Obj. Decl. at ¶¶ 29-30 & Ex. 52-C.   No recording that call has been produced or reflected on any index of withheld documents.

4.     Communications between the FBI and Hogan and/or Houston.  Hogan and Houston have separately produced to Gawker various communications with the FBI that were neither included in the FBI's production nor reflected on any log.  *See, e.g.*, Conf.

Thomas Obj. Decl. at ¶ 31 & Ex. 53-C.  While Gawker obviously has these documents already from Hogan and Houston, their omission from the FBI's production raises serious concerns about the completeness of that production.

5.     Letter from AUSA regarding decision not to prosecute.  The FBI produced a document indicating that the U.S. Attorney's Office had prepared and emailed such correspondence.  *See* Conf. Thomas Obj. Decl. at ¶ 32 & Ex. 54-C.  Email correspondence between Hogan and the Agencies also reference this letter.  *Id.* Ex. 53-C at GAWKER 1165.  But the letter itself has not been produced or otherwise accounted for in the Agencies' *Vaughn* indexes.

6.     Agreement between Hogan and Davidson, and Drafts Thereof.  The FBI has produced the final signed version of this Agreement, but it is incomplete.  Specifically, the FBI's production omits the final version of Exhibit B (which is significant because it contains Davidson's summary transcript of the three DVDs depicting the encounters between Hogan and Heather Clem), which was among the records seized on December 14, 2012.  *See* Conf. Thomas Obj. Decl. at ¶¶ 33-34 & Ex. 55-C.  In addition, at least two drafts of the Agreement (version 4 and a redlined version 5) have been omitted from the FBI's production.  *Id.*  Again, while Gawker obviously has these documents already from Hogan and Houston, their omission from the FBI's production raises serious concerns about the completeness of that production.[1]

---

[1] As described at the July 2 hearing, *see* July 2, 2015 Hrg. Tr. at 42:9-20, where the FBI believed that a document was a duplicate, instead of producing the duplicate, it instead inserted a form noting that there was a duplicate.  It is possible that the missing Exhibit B or some of the missing agreement drafts (or, for that matter, missing communications described in item 4 above) were incorrectly removed as duplicates.

7.      An FBI Form FD-302 witness statement for a person whom we think is well-known but whom we have identified only in the Confidential Thomas Objections Declaration because of Hogan's confidentiality designation.  The FBI's production contains what appear to be handwritten notes of the interview with that witness, and other information confirms this.  The FBI generated 302 witness statements for all other witnesses who were interviewed, but the 302 for this witness was not produced.  *See* Conf. Thomas Obj. Decl. ¶¶ 35-36 & Exs. 56-C & 57-C.

> **D.     Issues Surrounding the FBI's Production of the Three DVDs Depicting Sexual Encounters Between Hogan and Heather Clem.**

Mr. Hardy's First Declaration recited that, in addition to paper documents, the FBI had identified "two compact discs."  Dkt. 23-1 at 6 ¶ 9.  Mr. Hardy's Second Declaration recited that the reference to two CDs was "only an estimate," that the FBI had "conducted a further review," and that it "determined that approximately three CDs . . . contained video recordings and two CDs contain[ed] audio recording responsive to plaintiff's FOIA request."  Dkt. 35-1 at 5 ¶ 7.  Mr. Hardy explained that (a) the three video recordings depicted sexual encounters between Hogan and Heather Clem, *id.* at 6 ¶¶ 8-10, and (b) there were two audio CDs as well, *id.* at 7-8 ¶¶ 15-17, which reflect recordings made by or at the direction of the FBI.

Based on the FBI's initial representation, this Court initially ordered the FBI to produce to the state court "the two CDs it deemed to be responsive" to Gawker's FOIA request.  *See* June 24, 2015 Order, Dkt. 31 at 1.  Eventually, the FBI produced three such DVDs but one was materially incomplete (lasting only one minute and 14 seconds) and a second had a serious irregularity with the audio portion of the recording.  *See* July 2, 2015 Hrg. Tr. at 50:4 – 55:8.  As Gawker's counsel explained at the July 2 hearing, Keith Davidson, the target of the FBI's investigation, had prepared a summary transcript of the three DVDs.  *Id.* at 48:20 – 49:5.  But

when Gawker's and Hogan's counsel reviewed the DVDs initially supplied to Judge Campbell by the FBI:

    a.  One DVD fully corresponded the transcript (in both audio and video),

    b.  A second DVD matched the audio and video for the first fifteen minutes; then for most of the balance of the DVD, the video continued to follow the transcript but the audio from the first DVD was dubbed onto the video over its actual audio, including to remove key audio content.  The significance of the removed audio content is described more fully in the Confidential Thomas Objections Declaration at ¶¶ 8-22, 37-38.  Then, towards the end of the DVD, the correct audio resumed.

    c.  The third very brief DVD showed no people and no activity and therefore did not correspond to the transcript.

Gawker's counsel also explained at the July 2 hearing that Davidson, Houston and Hogan watched significant portions of the DVDs during their December 14, 2012 meeting; that the meeting was recorded by the FBI; and that the audio on the DVDs, as heard on that recording of the meeting, differed from the DVDs provided to Judge Campbell and instead matched the Davidson transcript.  *See also* Conf. Thomas Obj. Decl. ¶ 20.

       Upon hearing these concerns, the Court directed counsel for the FBI to review the videos and determine "whether a second, more accurate and complete production is required."  July 2 Order, Dkt. 46 at 2.  Upon conducting that review, the FBI acknowledged that "one of the FBI's DVDs was corrupt and contained video footage that was a little over one minute" and a second "video appeared to have audio that, in part, was not synchronized with the video footage."  Dkt. 51 at 1.  The FBI's counsel further advised that the "re-processed" DVDs now correspond fully with the transcripts.  Conf. Thomas Obj. Decl. Ex. 58-C.

While the FBI agreed to re-reprocess the videos and to produce them again to the state court, Dkt. 51 at 1, it has offered no explanation as to how and why the initial production failed to produce any content on one DVD and the audio was altered at a key moment in the second DVD. *See also* Conf. Thomas Obj. Decl. ¶ 38 (further addressing whether FBI's production is complete in this regard). Given the substantial questions this raises, and the substantial devotion of resources by the state court and the parties to the Florida Litigation reviewing and addressing improperly produced DVDs, the FBI should be required to explain under oath how perhaps the most significant audio content on the three DVDs came to be dubbed over.

## II.   THE AGENCIES FAILED TO MEET THEIR BURDEN TO ESTABLISH THAT THE EXEMPTIONS APPLY.

### A.   The FBI Waived Its Exemptions.

In its prior Statement, Gawker explained that (a) with the exception of Exemption 3, exemptions are discretionary, (b) as a result, government agencies are required to assert whatever FOIA exemptions they claim apply by the time they file their answer, at the latest, and (c) if they do not, the exemptions are waived.[2] The Court instinctively recognized this at both of the prior hearings, observing that it is "disconcerting, distressing, and a waste of time" to say "okay, let's look at this exemption; if that doesn't work, let's go over to this exemption and see if that works." July 2, 2015 Hrg. Tr. at 37:3-7; *see also* June 24 Hrg. Tr. at 40:8 – 44:11 (crediting Gawker's argument that "FOIA is not . . . a serial process, where you say, 'Oh, let's assert exemption 7(A). That didn't work. Now let's assert a different exemption.'"); *id.* at 42:1-3

---

[2] Dkt. 42 at 6-7 (citing, *inter alia*, *AT&T Inc. v. FCC*, 582 F.3d 490, 495 n.2 (3d Cir. 2009) ("FOIA itself does not prohibit disclosure of information falling within its exemptions."), *rev'd on other grounds*, *FCC v. AT&T Inc.*, 562 U.S. 397 (2011); *Ray v. U.S. Dep't of Justice*, 908 F.2d 1549, 1557 (11th Cir. 1990) (agency exemptions waived if not raised in or before the filing of the first responsive pleading), *rev'd on other grounds*, *U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991); *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 764 (D.C. Cir. 2000)).

(THE COURT:  "I don't see this as a two-part process.  The only exemption that anybody has mentioned here is 7(A).").  The Court is not required to allow agencies to engage in piecemeal assertions of exemptions until it finds an exemption it thinks will stick.  *See Ray*, 908 F.2d at 1557 ("courts should not allow government to raise FOIA exemptions in a piecemeal fashion").

In *Maydak*, for example, just as the FBI did here, the Government relied on Exemption 7(A) and, when that was no longer available because the investigation had been concluded, it tried to raise other exemptions, which the Court rejected:  "We have plainly and repeatedly told the government that, as a general rule, it must assert all exemptions at the same time . . . .  [T]he delay caused by permitting the government to raise its FOIA exemption claims one at a time interferes . . . with the statutory goals of 'efficient, *prompt*, and full disclosure of information.'"  *Maydak*, 218 F.3d at 764 (citation omitted) (emphasis in original).  After the Supreme Court denied review, the Department of Justice instructed that "agencies should take pains to abide by *Maydak* in lawsuits that involve underlying FOIA exemptions – such as most commonly is the case whenever large volumes of records are withheld categorically under Exemption 7(A)."  *See* http://www.justice.gov/oip/blog/foia-post-2001-supreme-court-declines-review-waiver-case.

Here, that did not happen.  Gawker submitted its most recent request in early November 2014.  The FBI denied the request on grounds of Exemption 7(A) alone.  It denied the administrative appeal on grounds of Exemption 7(A) alone.  It opposed Gawker's Motion for Summary Judgment on grounds of 7(A) alone.  It asserted only Exemption 7(A) in its answer to Gawker's complaint.  It told this Court at the June 24, 2015 hearing that Exemption 7(A) was the only one that applied.  *See* June 24, 2015 Hrg. Tr. at 16:5-7 ("THE COURT: We are only now working with the law enforcement exemption?  MR. STEGEBY: That's correct, your Honor.").

The FBI should not be permitted to assert one exemption for *eight months*, through and including

on summary judgment, and then, after the Court called that exemption into serious question,

suddenly decide that new and different exemptions apply, particularly where, as discussed

below, its *Vaughn* index and redacted-document production fall far short of properly invoking

those new exemptions.  *See, e.g.*, *Judicial Watch v. Dep't of the Army*, 466 F. Supp. 2d 112, 123-

24 (D.D.C. 2006) (emphasizing that agencies should not be allowed to raise new exceptions *after*

an adverse action:  "In the FOIA context, an agency may waive the right to raise certain

exemptions if it fails to raise them prior to the district court ruling in favor of the other party.").

The FBI's newly-claimed exemptions should be deemed waived.[3]

## B.    The Agencies' *Vaughn* Indexes Are Inadequate.

Agencies bear the burden of creating an index of withheld and redacted documents that

contains information sufficient to make a determination about "whether the exemption was

properly claimed"; otherwise, the index is "patently inadequate."  *Coastal States Gas Corp. v.

Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir 1980) ("[T]he burden is on [the agencies] to

establish their right to withhold information from the public and they must supply the courts with

sufficient information to allow us to make a reasoned determination that they were correct."); *see

also Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006) (agency must "provide a

relatively detailed justification, specifically identify the reasons why a particular exemption is

relevant and correlate those claims with the particular part of a withheld document to which they

---

[3] At the hearing on July 2, 2015, counsel for the FBI tried to distinguish *Ray* and *Maydak* on their facts.  July 2, 2015 Hrg. Tr. at 39:14 – 40:6.  While courts have sometimes allowed belated assertions of exemptions in limited circumstances not applicable here, the FBI did not, and cannot, dispute that *Ray* reaffirmed the "fundamental rule" that discretionary exemptions are waived if they are not promptly alleged at the outset, 908 F.2d at 1557, and that *Maydak* held that agencies "must assert all exemptions at the same time."  *See also, e.g.*, *Judicial Watch v. U.S. Dep't of Energy*, 319 F. Supp. 2d 32, 35 (D.D.C 2004) (disallowing new exemptions to be asserted at later point in district court proceeding).

apply"). The indexes submitted by the Agencies here – particularly the index submitted by the FBI – do not meet this burden.

### 1.     The FBI's *Vaughn* Index is Wholly Inadequate.

The FBI asserted its new exemptions in two different ways. For the documents it withheld entirely, the FBI provided an index identifying the claimed exemptions. *See* Dkt. 38-1. For the documents it redacted, it provided no index. Instead, it noted the claimed exemptions using various numerical codes on the documents themselves. The Third Hardy Declaration, Dkt. 37-1, explains the document coding system in a generic, omnibus fashion, but offers only incredibly generalized descriptions of the exemptions, without reference to particular documents or why the exemption applies to any specific one. Neither the FBI's *Vaughn* index, nor its document notations (which are supposedly explained by the Third Hardy Declaration), is sufficient under applicable law.

**The index of withheld documents:** This Court has already concluded that the FBI's *Vaughn* index is inadequate because it does not provide a basis for an "intelligent decision regarding exemption." July 2, 2015 Hrg. Tr. at 12:14-21. For example, the FBI withheld three pages of "Private Twitter Account Screenshots," Dkt. No. 38-1 at 1, on the grounds that such information was "private." But it did not provide any information about the date of the documents or why Twitter screenshots would necessarily be private. *See* July 2, 2015 Hrg. Tr. at 26:16-25 (referring to the *Vaughn* index entry for the Twitter screen shots and noting "I don't have enough information to decide what that is or anything about that"). The FBI also withheld a "legal memorandum" under various exemptions, but, as the Court noted, failed to explain "who is doing the investigating" or "who is doing the legal analysis" or "why . . . a privacy exemption" was being claimed, or anything else. *Id*. at 28:25 – 29:10. As this Court said, "suffice it to say, I

12

don't have enough information" to tell if those exemptions are valid. *Id*. at 29:9-10. And so on throughout the index. *See, e.g.*, *id*. at 29:14-15 ("I just don't have enough description."), 29:23 (referring to another document that is "not properly described"), 30:2-3 (index does not provide enough information "to make any kind of intelligent decision"), 30:12-13 ("Again, I have no idea what we're talking about."), 31:11-12 ("I'm not sure this [document] falls into that [exemption] without more information."), 31:19 – 32:4 ("I'm just going to say the same thing over and over again. . . . I don't know. I don't know. . . . I don't have enough information.").

The FBI concedes that it bears the burden of demonstrating that exemptions apply to the documents they seek to withhold. *See, e.g.*, July 2, 2015 Hrg. Tr. at 24:13-24 (conceding same). The purpose of doing so with a *Vaughn* index is to provide the Government's proffered justification to both the Court *and* to the requestor so that it may challenge the basis asserted for withholding. Since the FBI failed to meet its burden to do so here, the Court cannot meaningfully address the claimed justifications, and it is exceedingly difficult for Gawker to address them at all. Accordingly, since the FBI failed to meet it burden of demonstrating an entitlement to withhold the documents, they must be produced. *See, e.g.*, *Coastal States Gas Corp.*, 617 F.2d at 870 ("We agree with the district court that the defendant DOE has failed to carry its burden of establishing that the documents involved in this appeal were properly withheld pursuant to Exemptions 5 or 7 of the FOIA. The decision of the district court ordering release of the documents is therefore affirmed."); *Maine v. U.S. Dep't of the Interior*, 298 F.3d 60, 73 (1st Cir. 2002) (affirming order that a number of documents be disclosed because agency failed to bear its burden to justify withholding with adequate specificity in *Vaughn* index).

**The coded notations on the documents:** The information provided in the notations to the redacted documents is even less helpful. The claimed exemptions are not identified or

explained in any sort of index, the way that the redacted material provided by the EOUSA was explained in its *Vaughn* index.  Rather, the exemptions are merely listed in the documents themselves, adjacent to the redacted portions.  This requires Gawker to guess why and how the exemptions might possibly apply.  For example, the FBI document labeled "Gawker 12" contains multiple redactions, all of which the FBI justified using the code "b6-1, 2, 4" and "b7C – 1, 2, 4."  Conf. Thomas Decl. Ex. 61-C.  But, obviously, a person cannot be an "FBI Special Agent" or "Support Personnel" (Code 1) *and* a "Third Party of Investigative Interest" (Code 2) *and* a "Third Party Merely Mentioned" (Code 4).  This problem of identifying the redaction of what appears to be a single name with codes indicating different – and mutually-exclusive – categories of people recurs throughout the FBI's production.  *See, e.g.*, Conf. Thomas Decl. Ex. 65-C (Gawker 315, 325, 363, 422, 462, 930, 1101, 1130) (a few among many examples).  And, even putting this issue aside, the notation system, like the *Vaughn* index discussed above, simply does not provide any detail as to why, for example, disclosure of the name of person "merely mentioned" in a law enforcement investigation or the disclosure of a publicly-known FBI agent or AUSA would constitute an "unwarranted" invasion of personal privacy.  Overall, it provides little, if any, useful information about why any of the exemptions were invoked.

The FBI's failure to meet its burden of providing a proper index, that would allow both the Court and Gawker to participate in a meaningful way in evaluating and scrutinizing the newly-claimed exemptions, is fatal to their assertion.  Again, it is the FBI's burden, and having failed to meet it, the documents must be produced.  *See, e.g.*, *Coastal States Gas Corp.*, 617 F.2d at 870; *Maine*, 298 F.3d at 73.

14

### 2.     The EOSUA's Index

As the Court noted at the July 2, 2015 hearing, the index filed by the EOUSA "was a whole lot better than the index that was filed by the FBI."  *See* July 2, 2015 Hrg. Tr. at 12:12-14. Still, in many instances, the entries are not sufficiently detailed to allow Gawker to determine if the exemption was properly invoked.  The EOUSA relied on boilerplate language asserting FOIA exemptions, without explaining the specific reasons why any of the exemptions applied to particular documents.  For example, it repeatedly claimed the privacy exemption as to broad categories of people (many of whom often do not appear to be implicated by a particular document) without showing how or why disclosure would result in an *unwarranted* invasion of *personal* privacy.  And it repeatedly claimed that certain documents were "work product" without even stating that the documents were created "in anticipation of litigation."  *Hickman v. Taylor*, 329 U.S. 495, 508-10 (1947).  Accordingly, the EOUSA's *Vaughn* index fails to satisfy its burden to justify withholding, and, on that basis, the withheld documents should be produced.

## III.     THE NEWLY-CLAIMED EXEMPTIONS DO NOT APPLY.

Even had the newly-claimed exemptions not been waived and properly asserted in the *Vaughn* indexes, they do not justify the Agencies' extraordinary withholding.  Gawker sets forth specific objections to the eight categories of documents identified in the FBI's index and the 18 documents identified in the EOUSA's index in Attachments A and B, respectively, and also provides the following analysis of each of the Agencies' claimed exemptions to assist the Court.

### A.     The Privacy Exemptions Do Not Apply.

#### 1.     The Government's approach is inconsistent with the statute.

The FOIA statute on its face allows law enforcement documents to be withheld "only to the extent that the[ir] production" could "reasonably be expected to constitute an *unwarranted*

invasion of *personal* privacy"  5 U.S.C. § 552(b)(7)(C) (emphases added).  Moreover, any such

personal privacy interest can be overcome when it is outweighed by a public interest in the

information.  Instead of applying this carefully calibrated approach, the Agencies have redacted

virtually every name or other piece of identifying information in the documents.  They have

redacted the names of key participants in this incredibly public dispute, including Bubba Clem

and Keith Davidson.  There are passing references to Hulk Hogan's wife "_____" and his son,

"_____," as if their identities are somehow a secret.  They have redacted the name of Seth

Berlin, Gawker's counsel.  And, they have redacted the already-public names of the attorneys

and special agents in the United States Attorney's Office and FBI who handled the investigation

even though they have no *personal* privacy interest in connection with the performance of their

official duties on a routine matter involving no threat of harassment to them.

When Gawker's counsel articulated all this at the last hearing, the Agencies' counsel

advanced the remarkable proposition that individuals can have a personal privacy interest in their

identity even if it has already been made public and that no more nuanced approach was required

than to simply redact every name and every shred of identifying information in sight.  *See* July 2,

2015 Hrg. Tr. at 23:18 – 24:1 ("even if a document is shown publicly with the names of certain

people or they have been published in any other way, that doesn't necessarily waive their right to

privacy").  That is not the law, and the Government, whose burden it is in the first instance to

show that the exemption applies, has failed to meet its burden.

Moreover, for information about individuals other than witnesses, subjects of

investigations, or informants to be considered "private," agencies "must at least explain the

ground for concluding that there is some factual basis for concerns about 'harassment,

intimidation, or physical harm.'"  *United Am. Fin., Inc. v.  Potter*, 667 F. Supp. 2d 49, 60

(D.D.C. 2009).  *See also U.S. Dep't of Justice  v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 771 (1989) ("Exemption 7(C), by its terms, permits an agency to withhold a document only when revelation 'could reasonably be expected to constitute an *unwarranted* invasion of personal privacy'") (emphasis in original).  Here, the FBI does not even attempt to provide any "factual basis" showing that the release of the names of persons who are "merely mentioned" (identified as "(b)(6)-4" and "(b)(7)(C)-4") or who are government personnel ("(b)(6)-1," "(b)(6)-3," "(b)(7)(C)-1," and "(b)(7)(C)-3") would cause an *unwarranted* invasion of privacy or would create a threat of harassment, intimidation, or physical harm.

        **2.**      **The identities of virtually all the individuals and their connection to this matter are already known and not private.**

The controversy over the Hulk Hogan sex video has been the subject of literally global news coverage, as well as close to three years of litigation in both this Court and the Florida state courts.  Part of that news coverage and litigation has focused on the FBI's investigation into the alleged extortion attempt involving the tapes.  Not surprisingly, therefore, virtually all of the key participants' identities are already well-known, as explained in the Thomas Objections Declaration (documenting that identities of key participants are known, including Keith Davidson, Bubba Clem, the AUSA and FBI agents, as well as other people with more limited involvement or who are referenced in passing in the documents).  As such, there cannot be any legitimate claim that their identities are private.  *See also* Conf. Thomas Obj. Decl. ¶¶ 39-43.

At the July 2, 2015 hearing, the Court asked Gawker's counsel why, if we already knew who all these people were, we were requesting unredacted documents from the Government.  In response, Gawker would like to make two points.  First, Gawker's prior knowledge is not part of the legal test under the privacy exemptions, except to the extent that the fact that Gawker already knows the information undercuts any claim that disclosure would constitute an unwarranted

invasion of personal privacy.  Second, the production of documents has confirmed that Hogan

and his counsel told the FBI one version of events, while telling Gawker and the state court a

materially different version of events.  The Confidential Thomas Objections Declaration, at

¶¶ 47-66, amplifies counsel's comments at the July 2 hearing in this regard.  In the short term,

Gawker seeks unredacted documents to be able to demonstrate to the state court and the jury in

its upcoming trial that Hogan's proffered version of events departs in material respects from

what he and his counsel David Houston told the FBI and what that investigation reveals.  At

bottom, and as discussed below, that is FOIA's purpose – to shine the light on a matter which has

consumed significant official resources, be they federal investigators and prosecutors, their state

counterparts, or the federal and state court systems.  It is essential both to Gawker's defense of

the $100 million lawsuit against it, and to the public's understanding of that high profile case and

the FBI's companion investigation, to ensure that the Government's assertion of so-called

privacy interests on behalf of already-known participants is not used to shield the truth.

> **3.    Even if there were actual privacy interests, they are outweighed by
> the public interest.**

In addition to Gawker's status as a litigant in state court, it is also a news organization.

While documents produced to Gawker have, for now, been designated as "CONFIDENTIAL –

ATTORNEYS' EYES ONLY," Gawker believes that it – and more generally the public –

properly has a right to scrutinize the Government's handling of this matter.  Here, the FBI

devoted substantial resources to an extortion investigation initiated by a prominent public figure

and international celebrity, only to have the United States Attorney ultimately decline to

prosecute.  Under one view of this case, advanced publicly by Hogan, Davidson tried to extort

Hogan by threatening to disclose content from three sex tapes, and there are questions about why

he was not prosecuted.  Under this view, the public deserves to know why the Government did

not prosecute someone trying to shakedown a celebrity over a sex tape that purportedly was filmed surreptitiously and allegedly disseminated without the celebrity's knowledge or consent.

Under a different view of the case, and without intending to call into question the good faith of the FBI agents and AUSA involved, all of whom have been extremely above board in all of our dealings with them, the records could be viewed to suggest that Hogan sought to use the resources of the federal government to suppress unflattering, but truthful speech about him that could damage his celebrity brand.[4]  Essentially, Hogan faced embarrassment about the content of the tapes, and Davidson's suggestion that he might speak about what was contained on them may well have been constitutionally protected.  *See, e.g.*, *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 910 (1982) (unanimously confirming that threatening to inflict economic injury on stores if they refused to adopt certain practices constitutes protected expression under the First Amendment, because "[s]peech does not lose its protected character . . . simply because it may embarrass others or coerce them"); *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 264 (1994) (Souter, J., concurring) ("Conduct alleged to amount to . . . extortion" or "one of the other, somewhat elastic RICO predicate acts may turn out to be fully protected First Amendment activity, entitling the defendant to dismissal on that basis.").  Indeed, by the time of the sting operation at which Davidson was arrested, this Court (The Honorable James D. Whittemore) had already ruled that at least Gawker's speech about these sex tapes addresses a matter of public concern.  *Bollea v. Gawker Media, LLC*, 2012 WL 5509624, at *4-5 (M.D. Fla. Nov. 14, 2012).[5]
Under this view, the public has a right to understand why the Government elected to use its

---

[4] In addition, most extortionists do not engage in criminal conduct while memorializing the transaction in a written agreement allowing for payment in installments over time.

[5] To be clear, Gawker had no involvement with Davidson and only learned about his existence, his efforts to engage Hogan, and the subsequent criminal investigation long after it published the posting at issue in the state court litigation and long after the events revealed by the FBI's documents.

resources to protect a celebrity's fame and reputation.  *See, e.g.*, July 2, 2015 Hrg. Tr. at 57:23 –

58:3 (Gawker's counsel explaining that one reason investigation merits public scrutiny is

because "we've all done or said things that we wished we hadn't," but "I didn't know you could

[go] down to your local FBI office and say, 'hey, can you prosecute this or investigate this to try

and keep that from coming out'").

Again, regardless of one's view of this investigation and one's opinion of whether

Davidson should have been prosecuted fully or never should have been investigated, the public is

entitled to understand the decision-making by the FBI and U.S. Attorney's Office in its handling

of the Hogan matter now that it is closed.  *See, e.g.*, *Citizens for Responsibility and Ethics in*

*Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) ("the relevant public

interest is *not* to find out what DeLay himself was 'up to' but rather how the FBI and the DOJ

carried out their respective statutory duties to investigate and prosecute criminal conduct. . . .

Disclosure of the records would likely reveal much about the diligence of the FBI's investigation

and the DOJ's exercise of its prosecutorial discretion: whether the government had the evidence

but nevertheless pulled its punches.") (emphasis in original).  Indeed, given that there appears to

be a new investigation close to three years after the fact underway by the Tampa Police

Department and the Hillsborough County State's Attorney's Office, that is all the more so true

now.  The Confidential Thomas Objections Declaration includes additional specific facts from

the FBI documents that provide additional details which further confirm a public interest in

understanding the Government's handling of this matter.

### B. The Other Claimed Exemptions Do Not Justify the Agencies' Extensive Withholding and Redaction.

Although it is difficult to understand why various other exemptions are being claimed, it

appears, based on the limited information supplied, that the Agencies have overreached.

**Exemption 3:**   Both Mr. Hardy and Ms. Francis reference grand jury proceedings, and the FBI invokes the grand jury secrecy rule pursuant to Exemption 3 as grounds for withholding certain documents, including communications with alleged grand jury witnesses.  But there is no indication that there were a grand jury proceedings or that anyone testified before a grand jury, including because the indexes of withheld documents do not include transcripts of any such proceedings, even though such transcripts would have been required.  *See, e.g.*, Fed. R. Crim. P. 6(e)(1) ("Except while the grand jury is deliberating or voting, all proceedings must be recorded by a court reporter or by a suitable recording device.").  In that regard, the grand jury secrecy rule is limited to protecting matters actually "occurring before the grand jury," Fed. R. Crim. P. 6(e)(2)(B), 6(e)(5), and the Agencies should be required to demonstrate that such proceedings occurred and that the documents they seek to withhold reflect matters that actually transpired before the grand jury.

Moreover, assuming a grand jury was in fact convened, Gawker does not contest that matters properly occurring before the grand jury that would reveal its inner working are properly withheld.  However, it is noteworthy that the U.S. Attorney's Office does not assert any exemption based on grand jury secrecy, while the FBI appears to be overreaching in its invocation of the grand jury secrecy rule under this exemption.  FBI documents "Gawker-449" to "Gawker-451," for instance, contain redacted material with the "(b)(3)-1" notation, but these documents concern toll records.  Conf. Thomas Obj. Decl. ¶ 45 & Ex. 66-C.  The FBI provides no information about why such records contain information that is properly redacted as grand jury material, *i.e.*, it provides no explanation for how disclosure would "elucidate the inner workings of the grand jury."  *See Boehm v. FBI*, 948 F. Supp. 2d 9, 27-28 (D.D.C. 2013) (also noting that "[t]he disclosure of information" which is "'coincidentally before the grand jury' . . .

is not prohibited").  The same problem applies to the other information redacted pursuant to Exemption 3: the FBI has simply not made the required showing that a grand jury was convened, that the records reflect matters occurring before the grand jury or why disclosure would compromise grand jury secrecy.

**Exemption 5:**   The FBI and EOUSA have withheld documents under FOIA's Exemption 5, which, as the Third Hardy Declaration explains, allows (but does not require) agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  Third Hardy Decl. at ¶ 15 (citing Exemption 5).  This typically means that agencies may withhold materials that would be subject to "the attorney work product, attorney-client, and deliberative process privileges."  *Id*. at ¶ 16.  But "like all privileges," these must be "narrowly construed."  *Coastal States Gas Corp.*, 617 F.2d at 863.

Here, it appears that the FBI and EOUSA have too broadly invoked these privileges, as further explained in the charts appended hereto.  By way of example:

- The EOUSA withheld various documents under the work-product doctrine (Doc. Nos. 2-4), even though they were not created until *after* the government determined not to bring any prosecutions.  But the work-product doctrine covers only documents created "in anticipation of litigation."  *Hickman*, 329 U.S. at 509-10.

- The EOUSA has withheld, under the deliberative process privilege, portions of an "email chain" which "includes an email from an outside source" and which "discusses the potential cooperation of [a] witness" (Doc. No. 5).  Obviously, an email with an "outside source" is not privileged, and should be disclosed.  Moreover, even if parts of the email chain include advice or recommendations, the EOUSA

should, at most, redact those portions, but produce the rest.  *See, e.g.*, *Lurie v. Dep't of the Army*, 970 F. Supp. 19, 34 (D.D.C. 1997) (under deliberative process privilege, while "advice and recommendations may be withheld. . ., factual material must be disclosed"); *Playboy Enters., Inc. v. Dep't of Justice*, 677 F.2d 931 (D.C. Cir. 1982) ("exemption does not protect 'purely factual material appearing in . . . documents in a form that is severable'").

- The EOUSA withheld an email chain with counsel for Gawker as work product (Doc. No. 12).  Even to the extent that this was prepared in anticipation of litigation, there is no privilege or work product protection in communications with counsel for other parties, especially with counsel for *Gawker*.

**Exemption 7(E)**:  The FBI has also redacted certain information because its disclosure would supposedly reveal "law enforcement investigative techniques and procedures" under Exemption 7(E).  But, to properly invoke this exemption, the agency must show that disclosing the withheld records "could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).[6]  Here, the FBI has not – as it must – provided an "explanation of what procedures are involved and how they would be disclosed."  *Citizens for Responsibility and Ethics in Washington*, 746 F.3d at 1102.  Nor has it explained how "release of [the redacted information] might increase the risk 'that a law will be violated or that past violators will escape legal consequences.'"  *Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 205 (D.C. Cir. 2014) (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)); *see also ACLU v. U.S. Dep't of Homeland Sec.*, 973

---

[6] In full, Exemption 7(E) provides that agencies may withhold documents that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

F. Supp. 2d 306, 319 (S.D.N.Y. 2013) (rejecting Government's invocation of Exemption 7(E) where it failed to make showing that disclosure would risk "circumvention of the law").

The limited information that the FBI has made available certainly does not suggest that the withheld or redacted documents contain the secrets of law enforcement techniques. *See, e.g.*, Conf. Thomas Obj. Decl. Ex. 67-C (Gawker 18, 120-21; Gawker 118, 420; Gawker 209, 227) (Exemption 7(E) invoked in "evidence entry" forms, in "electronic communication" forms, and in "evidence log" forms, all without explanation) *See also* FBI *Vaughn* Index, Category 7 (forms regarding "consensual monitoring" withheld under Exemption 7(E), without explanation). It is hard to imagine that information concerning the routine entry of evidence or the well-known police practice of recording telephone calls or in-person meetings would be sufficient to invoke this exemption.

## RELIEF SOUGHT

Gawker respectfully seeks the following relief and requests that the Court:

1. Grant Gawker's motion for summary judgment;

2. As explained in Part I above, direct the Agencies to address the missing and unaccounted-for documents enumerated by Gawker, including to produce all such documents and to provide declarations from persons with first-hand knowledge of the documents;

3. As explained in Part II above, find that the Government has waived its assertions of discretionary exemptions (*i.e.*, other than Exemption 3) by failing to timely assert them and by failing to submit proper *Vaughn* indexes justifying the assertions of the exemptions, as required by FOIA and as ordered by this Court; and

4.      As explained in Part III above, and in the attached charts responding to the

Agencies' limited *Vaughn* indexes, direct the prompt production of all documents improperly

withheld or redacted.[7]

July 24, 2015                                             Respectfully submitted,

                                                         THOMAS & LOCICERO PL

Seth D. Berlin (pro hac vice)                            By:   */s/ Gregg D. Thomas*
Alia L. Smith (pro hac vice)                                  Gregg D. Thomas
Patrick Kabat (pro hac vice)                                 Florida Bar No.: 223913
LEVINE SULLIVAN KOCH                                          Rachel E. Fugate
  & SCHULZ, LLP                                              Florida Bar No.: 0144029
1899 L Street, NW, Suite 200                             601 South Boulevard
Washington, DC 20036                                     P.O. Box 2602 (33601)
Tel.: (202) 508-1122; Fax: (202) 861-9888                Tampa, FL 33606
sberlin@lskslaw.com                                      Tel.: (813) 984-3060; Fax: (813) 984-3070
asmith@lskslaw.com                                       gthomas@tlolawfirm.com
pkabat@lskslaw.com                                       rfugate@tlolawfirm.com

                            *Counsel for Plaintiffs*

---

[7] Gawker's review of the documents is continuing and it is likely that, if additional documents are produced or produced in redacted form, additional issues may arise.  Gawker respectfully requests that this Court keep this matter open for a period of 90 days following any supplemental production so that any such issues can be addressed.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 24th day of July 2015 a true and correct copy of the

foregoing is being electronically filed and served via CM/ECF on the following:

    Kenneth Stegeby
    Office of the United States Attorney for the Middle District of Florida
    400 North Tampa Street, Suite 3200
    Tampa, FL 33602
    Kenneth.Stegeby@usdoj.gov

    *Counsel for Defendants*

                           */s Gregg D. Thomas*
                                Attorney