**ATTACHMENT B**
(to Plaintiff's Objections to Defendant Agencies'
FOIA Responses, Vaughn Indexes and Declarations)

## Gawker's Objections to EOUSA's Vaughn Index

| Doc. No. | Description | Claimed Exemptions | Objections |
|---|---|---|---|
| 1 (WIF) | Internal memo created by an AUSA for the U.S. Attorney for the Middle District of Florida, dated February 28, 2013. Contains factual background and analysis of the legal issues presented by information gathered during the GJ investigation involving the matter relating to Mr. Thomas's FOIA request. | (b)(5) AWP (b)(7)(C) | Gawker objects to the assertion of attorney work product for the factual portions of the memo. Gawker concedes that it applies to the AUSA's impressions of the facts. Gawker objects to the invocation of the privacy exemption, which relies on boilerplate language asserting the privacy interests on behalf of various categories of individuals, who may or may not appear in the document, and does not explain how disclosure as to each of the individuals actually appearing in the document would constitute an unwarranted invasion of personal privacy. Certain of the individuals (including the AUSA) may already be known and not private, and there is also a substantial public interest in understanding the government's conduct of this investigation and its decision not to prosecute. The EOUSA does not explain why, even if certain names or other identifying information were private, they could not be redacted such that the remainder of the document could be produced. |
| 2 (WIF) | Email chain between AUSA and FBI dated between March 2 and March 4, 2013. Agent is seeking the AUSA's guidance regarding how to respond to an inquiry regarding the investigation. Contains handwritten notes by the AUSA regarding steps the AUSA has taken to resolve the issue. | (b)(5) AWP (b)(7)(C) | Gawker objects to the withholding, under the work product doctrine, of the email chain between an AUSA and the FBI on the grounds that the EOUSA has made no showing that this email chain regarding an "inquiry" was created "in anticipation of litigation." Hickman v. Taylor, 329 U.S. 495, 508-09 (1947). Nor has it made any other showing that would support the invocation of the work product doctrine under Exemption (b)(5). See, e.g., Am. Immigration Council v. U.S. Dep't of Homeland Sec., 950 F. Supp. 2d 221, 241-42 (D.D.C. 2013) ("in order for the government to discharge its evidentiary burden, it must 1) provide a description of the nature and contents of |

| Doc. No. | Description | Claimed Exemptions | Objections |
|---|---|---|---|
| | | | the withheld document, 2) identify the document's author or origin (by job title or otherwise), 3) describe the factual circumstances that surround the document's creation, and 4) provide some indication of the type of litigation for which the document's use is at least foreseeable"). <br><br> Gawker objects to the invocation of the privacy exemption, which relies on boilerplate language asserting the privacy interests on behalf of various categories of individuals, who may or may not appear in the document, and does not explain how disclosure as to each of the individuals actually appearing in the document would constitute an unwarranted invasion of personal privacy. Certain of the individuals (including the AUSA) may already be known and not private, and there is also a substantial public interest in understanding the government's conduct of this investigation and its decision not to prosecute. The EOUSA does not explain why, even if certain names or other identifying information were private, they could not be redacted such that the remainder of the document could be produced. |
| 3 (WIF) | A single page of handwritten notes, dated May 13, 2014, which contains notes regarding the GJ investigation. Contains the GJ AUSA's thoughts on information that could not be disclosed during the investigation. This note also contains the name and telephone number of an individual. | (b)(5) AWP <br><br> (b)(7)(C) | Gawker objects to withholding, under the work product doctrine, of notes that were dated close to a year after the investigation ended. See Conf. Thomas Obj. Decl. Ex. 54-C (confirming declination to prosecute in July 2013). Work product protection applies only to documents created "in anticipation of litigation." Hickman, 329 U.S. at 508-09. <br><br> Gawker objects to the invocation of the privacy exemption, which relies on boilerplate language asserting the privacy interests on behalf of various categories of individuals, who may or may not appear in the document, and does not explain |

| Doc. No. | Description | Claimed Exemptions | Objections |
|---|---|---|---|
| | | | how disclosure as to each of the individuals actually appearing in the document would constitute an unwarranted invasion of personal privacy. For example, while the "justification" references numerous categories of people, the description of the documents states only that the notes contain "the name and telephone number of an individual." In addition to the AUSA, whose identity is known, that individual may already be known and not private, and there is also a substantial public interest in understanding the government's conduct of this investigation and its decision not to prosecute. The EOUSA does not explain why, even if the name and number are truly private, they could not be redacted, such that the remainder of the notes could be produced. |
| 4 (WIF) | A single page of handwritten notes, dated August 21, 2013, regarding the GJ investigation. The content of the note is the result of a phone call between the AUSA and someone in connection [to] the investigation . | (b)(5) AWP (b)(7)(C) | Gawker objects to withholding, under the work product doctrine, of notes that were dated after the investigation ended. See Conf. Thomas Obj. Decl. Ex. 54-C (confirming declination to prosecute in July 2013). Work product protection applies only to documents created "in anticipation of litigation." Hickman, 329 U.S. at 508-09.<br><br>Gawker objects to the invocation of the privacy exemption, which relies on boilerplate language asserting the privacy interests on behalf of various categories of individuals, who may or may not appear in the document, and does not explain how disclosure as to each of the individuals actually appearing in the document would constitute an unwarranted invasion of personal privacy. For example, while the "justification" references numerous categories of people, the description of the documents states only that the note "is the result of a phone call between the AUSA and someone in connection with the investigation." In addition to the AUSA, whose identity is |

| Doc. No. | Description | Claimed Exemptions | Objections |
|---|---|---|---|
| | | | already known, that person or other individuals s/he identifies may already be known and not private, and there is also a substantial public interest in understanding the government's conduct of this investigation and its decision not to prosecute. The EOUSA does not explain why, even if certain names or other identifying information were private, they could not be redacted, such that the remainder of the notes could be produced. |
| 5 (WIF) | Email between the AUSA and a supervisory AUSA dated March 8, 2013, in which the AUSA is seeking advice from the supervisory AUSA on an issue regarding investigation. The information contained in this document contains references to witnesses to the investigation. This email chain includes an email from an outside source to the assigned AUSA, which identifies a witness in the investigation by name and discusses the potential cooperation of the witness with the government. | (b)(5) DP  (b)(7)(C) | Gawker does not object to the withholding those portions of the email chain in which the supervisory AUSA gives advice to the AUSA. However, to the extent that the email contains "factual" information, such factual information must be disclosed. See, e.g., Lurie v. Dep't of Army, 970 F. Supp. 19, 34 (D.D.C. 1997) (under deliberative process privilege, while "advice and recommendations may be withheld, . . . factual material must be disclosed"); Playboy Enters., Inc. v. DOJ, 677 F.2d 931 (D.C. Cir. 1982) ("exemption does not protect 'purely factual material appearing in . . . documents in a form that is severable. . .'").  In addition, the portion of the chain that is an email from an "outside source" is not privileged and must be disclosed.  Gawker objects to the invocation of the privacy exemption, which relies on boilerplate language asserting the privacy interests on behalf of various categories of individuals, who may or may not appear in the document, and does not explain how disclosure as to each of the individuals actually appearing in the document would constitute an unwarranted invasion of personal privacy. For example, while the "justification" references numerous categories of people, the description of |

4

| Doc. No. | Description | Claimed Exemptions | Objections |
|---|---|---|---|
|  |  |  | the documents states only that the email chain includes an email from an "outside source" and identifies a "witness." (The index does not specify whether the "outside source" and "witness" are the same person.) In addition to the AUSA, whose identity is already known, those individuals may already be known and not private, and there is also a substantial public interest in understanding the government's conduct of this investigation and its decision not to prosecute. The EOUSA does not explain why, even if certain names or other identifying information were private, they could not be redacted, such that the remainder of the email exchange could be produced. |
| 6 (WIF) | Five pages of handwritten notes concerning the GJ investigation. These notes are dated on December 17 and December 20, 2012, March 22, 2013, April 5, 2013. Notes contain facts that were obtained and developed during the GJ investigation, and the AUSA's impressions of the facts that were obtained during this investigation. It contains the names of third parties and their involvement into the activities that are the subject of the GJ investigation. | (b)(5) AWP  (b)(7)(C) | Gawker objects to the assertion of attorney work product for the factual portions of the notes. Gawker concedes that it applies to the AUSA's impressions of the facts.  Gawker objects to the invocation of the privacy exemption, which relies on boilerplate language asserting the privacy interests on behalf of various categories of individuals, who may or may not appear in the document, and does not explain how disclosure as to each of the individuals actually appearing in the document would constitute an unwarranted invasion of personal privacy. For example, while the "justification" references numerous categories of people, the description of the documents states only that the notes "contain the names of third parties and their involvement into the activities that are the subject of the GJ investigation." In addition to the AUSA, whose identity is already known, those individuals may already be known and not private, their conduct is not subject to a privacy exemption, and there is a substantial public interest in understanding the government's conduct of this |

| Doc. No. | Description | Claimed Exemptions | Objections |
|---|---|---|---|
| | | | investigation and its decision not to prosecute. The EOUSA does not explain why, even if certain names or other identifying information were private, they could not be redacted, such that the remainder of the notes could be produced.<br><br>Note: Although the description references the "GJ investigation," the EOUSA is not seeking to invoke grand jury secrecy rules under Exemption 3. |
| 7<br>(WIF) | Draft of an internal memo created by the GJ AUSA to the U.S. Attorney, Chief of the Criminal Division, and the Chief of the Economic Crimes Section of the U.S. Attorney's Office for the Middle District of Florida. This document contains the GJ AUSA's handwritten notes, which contain discussions regarding the direction and scope of the GJ investigation. It contains references to third parties. | (b)(5)<br>AWP<br><br>(b)(7)(C) | Gawker objects to this entry in the Vaughn index because it does not state the date that the referenced memo was created. To the extent that it was created after the U.S. Attorney's Office decided not to prosecute, see Conf. Thomas Obj. Decl. Ex. 54-C, the work product doctrine does not apply. See Hickman, 329 U.S. at 508-09.<br><br>Gawker objects to the invocation of the privacy exemption, which relies on boilerplate language asserting the privacy interests on behalf of various categories of individuals, who may or may not appear in the document, and does not explain how disclosure as to each of the individuals actually appearing in the document would constitute an unwarranted invasion of personal privacy. For example, while the "justification" references numerous categories of people, the description of the documents states only that the document "contains references to third parties." In addition to the AUSA and the two supervising AUSAs ("the Chief of the Criminal Division and the Chief of the Economic Crimes Section"), whose identities are already known, the referenced "third parties" may already be known and not private, and there is also a substantial public interest in understanding the government's conduct of this |

| Doc. No. | Description | Claimed Exemptions | Objections |
|---|---|---|---|
| | | | investigation and its decision not to prosecute. The EOUSA does not explain why, even if certain names or other identifying information were private, they could not be redacted, such that the remainder of the notes could be produced. |
| 8 (WIF) | A single-paged email from an attorney to the Grand Jury AUSA and a member of law enforcement dated March 8, 2013.<br><br>The author of the email discusses some factual details relating to the Grand Jury investigation that was taking place at that time, and provides the names of several third parties, as well as information about them. | (b)(7)(C) | Gawker objects to the invocation of the privacy exemption, which relies on boilerplate language asserting the privacy interests on behalf of various categories of individuals, who may or may not appear in the document, and does not explain how disclosure as to each of the individuals actually appearing in the document would constitute an unwarranted invasion of personal privacy. For example, while the "justification" references numerous categories of people, the description of the documents references the AUSA and a member of law enforcement, whose identities are likely already known, and states only that the document "provides the names of several third parties, as well as information about them." The referenced "third parties" may already be known and not private, and there is also a substantial public interest in understanding the government's conduct of this investigation and its decision not to prosecute. The EOUSA does not explain why, even if certain names or other identifying information were private, they could not be redacted, such that the remainder of the email could be produced.<br><br>Note: Although the description references the "Grand Jury investigation," the EOUSA is not seeking to invoke grand jury secrecy rules under Exemption 3. Although the document is an email between an USA and a "member of law enforcement," the EOUSA is not asserting attorney work product protection or the deliberative process privilege under Exemption 5. |

| Doc. No. | Description | Claimed Exemptions | Objections |
|---|---|---|---|
| 9 (WIF) | A two-page letter to an attorney for a witness in the case that was prepared by the GJ AUSA, dated November 8, 2013. The letter contains the name and contact information of third parties, and it contains items of interest that were evaluated during the Grand Jury investigation. | (b)(7)(C) | Gawker objects to the invocation of the privacy exemption, which relies on boilerplate language asserting the privacy interests on behalf of various categories of individuals, who may or may not appear in the document, and does not explain how disclosure as to each of the individuals actually appearing in the document would constitute an unwarranted invasion of personal privacy. For example, while the "justification" references numerous categories of people, the description of the documents references the "GJ AUSA," whose identity is already known, and states only that the document is a "letter to an attorney for a witness in the case" and "provides the names and contact information of several third parties, as well as information about them." The referenced "attorney" or "third parties" may already be known and not private, and there is also a substantial public interest in understanding the government's conduct of this investigation and its decision not to prosecute. Indeed, if the AUSA shared the information with an attorney for a witness, the information is no longer private. The EOUSA does not explain why, even if certain names or other identifying information were private, they could not be redacted, such that the remainder of the email could be produced.<br><br>Note: Although the description references the "Grand Jury investigation," the EOUSA is not seeking to invoke grand jury secrecy rules under Exemption 3. |
| 10 (WIF) | A two-page letter that was prepared by the Grand Jury AUSA on August 8, 2013, to an attorney who represented a witness in the Grand Jury investigation. The letter contains the name and/or contact information for | (b)(7)(C) | Gawker objects to the invocation of the privacy exemption, which relies on boilerplate language asserting the privacy interests on behalf of various categories of individuals, who may or may not appear in the document, and does not explain how disclosure as to each of the individuals actually appearing |

8

| Doc. No. | Description | Claimed Exemptions | Objections |
|---|---|---|---|
| | third parties, and it discusses evidence that was evaluated during the Grand Jury investigation. | | in the document would constitute an unwarranted invasion of personal privacy.  For example, while the "justification" references numerous categories of people, the description of the documents references the "GJ AUSA," whose identity is already known, and states only that the document is a letter "to an attorney who represented a witness" and "contains the names and/or contact information of several third parties." The referenced "attorney" or "third parties" may already be known and not private, and there is also a substantial public interest in understanding the government's conduct of this investigation and its decision not to prosecute.  Indeed, if the AUSA shared the information with an attorney for a witness, the information is no longer private.  The EOUSA does not explain why, even if certain names or other identifying information were private, they could not be redacted, such that the remainder of the email could be produced.<br><br>Note:  Although the description references the "Grand Jury investigation," the EOUSA is not seeking to invoke grand jury secrecy rules under Exemption 3. |
| 11 | Duplicate of Item 10 | | Same as Item 10 |

| Doc. No. | Description | Claimed Exemptions | Objections |
|---|---|---|---|
| 12 (WIF) | Two-page email chain between the GJ AUSA and the attorney for Gawker Media as of November 2013, where they discuss the attorney for Gawker's understanding of the FOIA request.  The first page of the document contains the GJ AUSA's identity and notes on discussions with members of law enforcement about the FOIA request. | (b)(5) AWP  (b)(7)(C) | Gawker objects to the invocation of the privacy exemption on the grounds that this document is correspondence with counsel for the requestor, and thus is already known to Gawker, and is not "private" in any sense.  Gawker also objects to the invocation of the work product doctrine.  Obviously, an email exchange with counsel for a FOIA requestor is not protected work product.  In addition, EOUSA has not made a showing that the "notes on discussions with members of law enforcement about the FOIA request" were made "in anticipation of litigation," particularly since the email exchange post-dates the U.S. Attorney's Office's decision not to prosecute.  Hickman, 329 U.S. at 508-09. |
| 13 -15, 17-18 (RIP) | Correspondence between David Houston and the U.S. Attorney's Office. | (b)(7)(C) | Gawker objects to the privacy-related redactions reflected in these documents, because the names of the redacted individuals are already publicly known and Gawker already obtained unredacted versions of most of these same documents in discovery in the state court litigation.  See Thomas Obj. Decl. at ¶¶ 10-40.  One of the documents was filed in unredacted form by the Government in this action.  See Dkt. 23-1 at 78-79. |
| 16 (RIP) | A single-page letter from the GJ AUSA to an attorney for Gawker Media, dated March 18, 2014, in which the AUSA informs the attorney of Gawker Media's status in relation to the GJ investigation being conducted by the U.S. Attorney's Office for the Middle District of Florida.  The letter contains the identity of the GJ AUSA. | (b)(7)(C) | Gawker objects to the privacy-related redactions in this document because the identity of "the GJ AUSA" is already known and this document was already filed in unredacted form in this action.  See Dkt. 23-1 at 70. |