UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAWKER MEDIA, LLC and GREGG D.
THOMAS,

        Plaintiffs,

                                        Case No.:  8:15-cv-01202-SCB-EAJ

vs.

THE FEDERAL BUREAU OF
INVESTIGATION and THE EXECUTIVE
OFFICE OF UNITED STATES ATTORNEYS

        Defendants.
_____/

**DECLARATION OF GREGG D. THOMAS
IN SUPPORT OF PLAINTIFFS' OBJECTIONS**

      I, Gregg D. Thomas, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of

perjury that the following is true and correct:

      1.      The statements made in this Declaration are based on my personal knowledge.

      2.      I am a partner at Thomas & LoCicero PL, counsel for plaintiffs in the above-

captioned matter, along with the law firm of Levine Sullivan Koch & Schulz, LLP.

      3.      My firm, along with the Levine Sullivan firm, also serves as defense counsel for

Gawker Media, LLC and other related parties in connection with the related case *Bollea v. Clem,*

*et. al.*, No. 12012447-CI-011, currently pending in state court in Pinellas County (referred to

herein as the "Florida Litigation").  The plaintiff in that case is Terry Gene Bollea, the celebrity

widely known as "Hulk Hogan" ("Hogan").  The Florida Litigation arises out of an article

published by Gawker in October 2012 reporting on a controversy involving video footage of

Hogan having sexual relations with Heather Clem, the wife of his best friend, radio shock jock

Bubba the Love Sponge Clem.

1

4.      I submit this Declaration to place before the Court certain information and documents in connection with Plaintiffs' Objections to Defendant Agencies' FOIA Responses and *Vaughn* Indexes and Declarations.  I am also moving for leave to submit a supplemental Confidential Declaration in order to put before this Court certain evidence that Hogan has designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" under the protective order in place in the Florida Litigation.

5.      In Part A of this Declaration, I begin by explaining the need for a confidential declaration.  In Part B, I attach a letter transmitting a supplemental response provided by the EOUSA.  In Part C, I address the facts and documents demonstrating that the names and other identifying information withheld by the Agencies is for the most part already public.

**A.      The Need for a Confidential Declaration.**

6.      Pursuant to the protocol established by the state court in the Florida Litigation, all documents produced in response to Gawker's FOIA Requests are to be treated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" for a period of thirty (30) days, after which documents may be designated as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" under the Protective Order entered in the Florida Litigation.  *See* Dkt. 7-1.

7.      Attached hereto as Exhibit 1 is a July 15, 2015 letter (without the exhibits thereto) from Hogan's counsel in the Florida Litigation designating all records produced by the FBI and the EOUSA as "CONFIDENTIAL – ATTORNEYS' EYES ONLY."  Gawker disagrees with these designations – which seal items like a published news article, correspondence that has been publicly filed on the court docket, and public information about both the three sex tapes and the extortion investigation – but is constrained to abide by the Protective Order in the Florida Litigation.

8.      Attached hereto as Exhibit 2 is a July 14, 2015 letter (without the exhibits thereto) from Hogan's counsel in the Florida Litigation to AUSA Kenneth Stegeby, as well as FOIA officers for the FBI and the EOUSA, purporting to impose upon those two Agencies various secrecy obligations not otherwise imposed by applicable law, including in connection with other FOIA requests that may be received by the Government, or that go beyond the protocol governing the parties to the Florida Litigation.

**B.      Documents Reflecting the Agencies' Further Response to Gawker's FOIA Requests.**

9.      Attached hereto as Exhibit 3 is a true and correct copy of the EOUSA's supplemental response, dated June 26, 2015, to Gawker's FOIA request.  As reflected therein, the EOUSA accounted for 54 pages, reciting that 10 pages were being produced in full, 12 pages withheld in part and 32 pages withheld in full.  The EOUSA also continued to recite, as it had in its initial response, *see* Dkt. 22-1, that an unspecified number of records had been referred to the FBI for processing.

**C.      The Names and Other Identifying Information that the Agencies Have Redacted Are Not Private.**

10.      The FBI and EOUSA have asserted a number of FOIA exemptions, and have produced heavily redacted documents in response to Gawker's FOIA requests.  By far the most extensive redactions are based on Exemptions 6 and/or 7(C), which deal with unwarranted invasions of personal privacy.

11.      As explained in Part III-A of plaintiffs' contemporaneously filed Objections, not all disclosures of an individual's name or other identifying information constitutes an *unwarranted* invasion of *personal* privacy.  Despite this, the Government appears to have

redacted every name without undertaking any calculus as to whether disclosure would constitute an unwarranted invasion of personal privacy, and/or whether disclosure is in the public interest.

12.     At a minimum, information that is already publicly known and/or previously disclosed by the Government is not properly deemed private in this context.  Accordingly, below and in the attached exhibits, I submit information and documents demonstrating that the names and identifying information redacted by the Agencies are in fact already well-known and/or have previously been disclosed by the Government, and are not properly withheld as a result.

13.     In many instances, the context of the redactions makes clear who the individual is and makes the redactions particularly silly.  Because Hogan has designated the entire production from the FBI and EOUSA as "CONFIDENTIAL – ATTORNEYS' EYES ONLY," I have not attached any pages showing the redactions here, but have instead attached them in a composite exhibit to my Confidential Declaration.  *See* Conf. Thomas Obj. Decl. ¶ 39 & Ex. 59-C.

**Keith Davidson**

14.     The largest number of unwarranted redactions relate to the target of the FBI investigation:  Keith Davidson.  His name appears to be redacted on nearly half of the pages that have been produced, and his voice is removed from the audio recordings of conversations that were produced.  *See, e.g.*, Conf. Thomas Obj. Decl. Ex. 59-C (GAWKER-2, 7, 608-618) (examples of the many instances in which Davidson's name was redacted).

15.     Mr. Davidson has been repeatedly identified publicly as the target of an FBI investigation into an alleged extortion scheme against Hogan involving the sex tapes.  For instance:

a.      On April 20, 2015, Davidson himself revealed his role in this matter when he filed papers in a California action related to subpoenas Gawker had served on him and his law firm.  Attached hereto as Exhibit 4 is a true and correct copy of these papers.  In those papers, he wrote:  "Davidson, a Los Angeles-based attorney and the sole shareholder of Davidson Law, was involved in a transaction regarding the potential sale of certain rights in the Video which led to criminal investigations in Florida."  Ex. 4 at 2.

b.      Hogan also publicly filed papers in the same California action.  Attached hereto as Exhibit 5 is a true and correct copy of his papers.  In those papers, Hogan stated that "Davidson was involved in an FBI investigation relating to an attempt to extort money from Mr. Bollea by threatening to release recordings depicting Mr. Bollea if Mr. Bollea did not pay money."  Ex. 5 at 2.  That filing further stated that:  "During Fall 2012, Mr. Bollea participated in an FBI sting operation relating to persons who claimed to have recordings of Mr. Bollea engaged in sexual relations, and who were attempting to extort money from Mr. Bollea in exchange for the delivery of those recordings.  Attorney Davidson . . . represented certain parties involved in that FBI sting."  *Id.* at 4.

c.      At the hearing before this Court on July 2, 2015, Hogan's counsel, Charles Harder, referred to the investigation of "the extortionist" and then publicly identified "Mr. Davidson."  July 2, 2015 Hrg. Tr. 87:24-25, 90:23.

d.      In this action, the Government publicly filed documents that identified Davidson as the target of the investigation.  *See* Dkt. No. 23-1 at 78-79.  Specifically, the Government publicly filed a document that included as an exhibit a letter from Assistant U.S. Attorney Sarah Sweeney to David Houston, counsel for Hogan, with the subject-line "Keith M. Davidson, USAO No. 2012R02418."  That letter indicated that the FBI was presently holding as

5

evidence "from the above-slated investigation" (a) settlement documents, (b) a check "in the amount of $150,000 made out to Keith Davidson from David R. Houston," and (c) three DVDs. *Id.*; *see also id.* at 77 (Government's public filing of emails from Ms. Sweeney and FBI agent Jason Shearn with subject line "Davidson investigation").

      e.     The Government's filing led to news reports that identified Davidson as having been the target of an FBI investigation into a possible attempt to extort Hogan in connection with the sex tapes.  On June 23, 2015, the *New York Observer* reported that the evidence being held by the FBI in connection with that investigation included a check made out to Davidson.  A true and correct copy of the *New York Observer* article is attached hereto as Exhibit 6, and is available at http://observer.com/2015/06/in-hulk-hogan-v-gawker-fbi-holds-three-mystery-dvds/.

      f.     A more detailed story was published by *Capital New York* on July 15, 2015, which stated:

> Charles Harder, the attorney representing Hogan at the hearing, told the court that the F.B.I. had enlisted Hogan and his lawyer David Houston in a sting operation.  The target was an alleged extortionist, who had allegedly obtained three sex tapes that depicted Hogan having sex with Heather Clem, who was then the wife of Hogan's good friend Bubba the Love Sponge Clem.

> "The FBI had Mr. Houston communicate with the extortionist and set up a sting and that's what these audio CDs are and that's where these DVDs come from and that's where these alleged transcripts come from," Harder said.

> Other court documents disclose the target's identity: Keith Davidson, a Los Angeles-based lawyer who was suspended by the California bar for 90 days for four counts of misconduct in 2010 and has previously been involved in lawsuits over sex tapes featuring celebrities such as model Tila Tequila and actor Verne Troyer.

A true and correct copy of the *Capital New York* article is attached hereto as Exhibit 7, and is available at http://www.capitalnewyork.com/article/media/2015/07/8571534/dodging-hulk-

hogan-trial-now-gawker-investigates-fbi; *see also* July 2, 2015 Hearing Tr. at 87:16 – 88:3

(reflecting Harder's argument quoted in *Capital New York* article).

> g.      Finally, the FBI production itself, despite the many redactions,
unambiguously identifies Davidson and includes the production of numerous documents on
which his name is not redacted. *See, e.g.*, Conf. Thomas Obj. Decl. Ex. 59-C (GAWKER-94, 96,
102).

16.      In light of the foregoing, the Government cannot meet its burden of establishing
that producing documents, on which Davidson's name is not redacted, would constitute an
unwarranted invasion of his personal privacy.

**Bubba the Love Sponge Clem**

17.      The second largest number of unwarranted redactions relate to Bubba Clem, the
then-husband of Hogan's sex tape partner, whose name has been redacted throughout the FBI's
production, often in contexts where his identity is obvious. *See* Conf. Thomas Obj. Decl.
Ex. 59-C (examples of same, at GAWKER- 6, 13, 16, 39-41, 92, 612, 614). Bubba Clem's role
in the sex-tape controversy is a matter of public record. Starting with the original posting of the
Gawker story that gave rise to Hogan's lawsuit, it has been widely reported that (a) Bubba Clem
consented to Hogan's sexual liaison with his then-wife, (b) Bubba Clem himself appears on the
video footage, and (c) Bubba Clem played a role in the recording of the footage. In fact, one of
the documents contained in the FBI's production is a *Tampa Bay Times* article that, in discussing
Hogan's lawsuit against Mr. Clem, details Mr. Clem's role in the sex-tape controversy. While
noting the irony of having to file a published news article under seal simply because it bears a
Bates number affixed by the FBI, I have filed it as part of Exhibit 59-C (GAWKER-5) to my

Confidential Declaration because Hogan has designated it as "CONFIDENTIAL –

ATTORNEYS' EYES ONLY" under the protective order in the Florida Litigation.

18.     Below is a much abbreviated chronology of the public reporting about Bubba

Clem's involvement in the sex tapes that gave rise to the FBI investigation:

        a.     On October 4, 2012, Gawker published its report and commentary about a

sex tape involving Hulk Hogan.  A true and correct copy of this report and commentary is

attached hereto as Exhibit 8, and is available at http://gawker.com/5948770/even-for-a-minute-

watching-hulk-hogan-have-sex-in-a-canopy-bed-is-not-safe-for-work-but-watch-it-anyway.

That post reports that the video supplied to Gawker depicts Hogan's sexual relations and that a

voice that appears to be that of Bubba Clem can be heard on the video giving his blessing to the

sexual encounter.  *Id.*  The contention that Bubba Clem's voice can be heard on the tape was

backed up by the posted video footage.  *Id.*  (That footage was subsequently removed from

Gawker's website six months later, but could be provided to the Court upon request.)

        b.     Shortly after the publication of Gawker's report and commentary, Hogan

publicly confirmed those basic facts.  On October 9-10, 2012, Hogan gave a series of interviews

with national media outlets in which he confirmed that the woman in the video is Heather Clem

and stated that Bubba Clem encouraged him to have sex with his then-wife.  Attached hereto are

true and correct copies of a selection of the many articles describing some of Hogan's

interviews:

        •     Ex. 9 (article published on TMZ.com on Oct. 9, 2012 summarizing

        Hogan's appearance on the *Howard Stern Show*), *available at*

        http://www.tmz.com/2012/10/09/hulk-hogan-bubba-the-love-sponge-radio-howard-

        stern/;

- Ex. 10 (Oct. 9, 2012 article published on the *Today Show* website summarizing Hogan's appearance on that program);

- Ex. 11 (Oct. 10, 2012 article summarizing Hogan's Oct. 10, 2012 appearance on the Sirius Satellite Radio program "Busted Open"), *available at* http://www.wrestlinginc.com/wi/news/2012/1010/557044/hulk-hogan/.

c.      On October 9, 2012, TMZ reported additional details about Bubba Clem's involvement in the sex tapes. A true and correct copy of this article is attached hereto as Exhibit 12, and also is available at http://www.tmz.com/2012/10/09/hulk-hogan-sex-tape-leaked-bubba-heather-clem-retire/. Specifically, TMZ reported that, after Hogan leaves the room, Bubba Clem can be seen and heard saying to Heather Clem, "If we ever did want to retire, all we'd have to do is use this footage." This TMZ report is referenced multiple times in the FBI production, with Bubba Clem's name redacted each time. *See, e.g.*, Conf. Thomas Obj. Decl. Ex. 59-C (GAWKER-1, GAWKER-16).

d.      On October 16-17, 2012, after Hogan sued Bubba Clem based on allegations that he was responsible for filming the sexual encounters, Mr. Clem took to his own nationally syndicated radio show, as well as the nationally syndicated radio and television show of Howard Stern, to tell his side of the story. In the course of doing so, Bubba Clem publicly stated that the sexual relations between Hogan and Heather Clem occurred with his blessing, that the recording was made via his "surveillance" system, and that his statement on one of the tapes about using the footage for his "retirement" was just an example of him being a "smart-ass" and should not be taken at face value. As examples, attached hereto are Exhibits 13 and 14, which are, respectively, true and correct copies of (a) an audio recording of Hour 2, Track 2 of the

Bubba the Love Sponge Show from October 16, 2012 (the most relevant portions of which occur at 9:39 – 14:08 and 21:03 – 24:00), and (b) excerpts from a transcript of that broadcast.

       e.        Attached hereto are true and correct copies of a selection of the many articles describing other of Bubba Clem's broadcast statements from mid-October 2012, as follows:

- Ex. 15 (an Oct. 16, 2012 E-Online article summarizing Bubba Clem's comments from his radio show that day, including his comment that he gave Mr. Bollea permission to have sex with his wife, *available at* http://www.eonline.com/news/354384/bubba-the-love-sponge-slams-hulk-hogan-s-sex-tape-lawsuit-blasts-wrestler-as-ultimate-lying-showman);

- Ex. 16 (an Oct. 17, 2012 *New York Daily News* article summarizing Bubba Clem's appearance on the *Howard Stern Show*, *available at* http://www.nydailynews.com/entertainment/gossip/howard-stern-hulk-hogan-drop-lawsuit-article-1.1186069).

       f.        When Hogan subsequently settled his lawsuit against Bubba Clem, that too was widely reported.  *See, e.g.*, Ex. 17 (a true and correct copy of an Oct. 29, 2012 *New York Daily News* article describing the settlement, *available at* http://www.nydailynews.com/entertainment/gossip/hulk-hogan-settles-sex-tape-lawsuit-article-1.1194557); Ex. 18 (a true and correct copy of an Oct. 29, 2012 *Tampa Bay Times* article reporting on settlement, *available at* http://www.tampabay.com/blogs/media/content/bubba-love-sponge-apologizes-hulk-hogan-after-lawsuit-settlement-was-it-all-stunt).  The *Tampa Bay Times* article about the settlement included the full text of an "apology" Mr. Clem read over the air, in

which he, among other things, referenced a "recording device in [his] bedroom" that had been used to tape the sexual encounters.

            g.     More recent news reports have publicized further details about Mr. Clem's involvement in the sex-tape controversy. For example, attached hereto as Exhibit 19 is a true and correct copy of an article published on BuzzFeed.com on July 15, 2015, *available at* http://www.buzzfeed.com/maryanngeorgantopoulos/the-biggest-mistake-of-my-life-court-records-detail-the-buil#.gagXoGg0d. The BuzzFeed article provided a comprehensive review of the publicly available filings from the Florida Litigation. Relying on publicly filed excerpts of Mr. Clem's deposition, the article described, *inter alia*, his testimony that he personally saved a recording of his wife having sex with Hogan to disk and labeled the disk "Hogan." *Id.* The article also posted excerpts from Mr. Clem's deposition in which he detailed his role in the controversy. *See* http://www.documentcloud.org/documents/2166412-bubba-the-love-sponge-deposition2.html. In a radio broadcast the day after the BuzzFeed article was posted, Mr. Clem discussed the BuzzFeed article, declaring that "the truth is now laid out there in an unbiased journalistic setting by Buzzfeed.com." Ex. 20 (a true and correct copy of the audio recording of July 16, 2015 *Bubba the Love Sponge* Show) at 42:26 – 43:54; Ex. 21 (a true and correct copy of relevant excerpts of the broadcast transcript).

**Bubba Clem's Attorneys**

        19.     There are a number of instances in which the FBI appears to have redacted the names of Bubba Clem's attorneys. For instance, the documents produced by the FBI include references to an "attorney for" someone who is clearly Bubba Clem. *See* Conf. Thomas Obj. Decl. Ex 59-C (GAWKER-6-7, GAWKER-86).

20.     It is widely known that one of Bubba Clem's lawyers in connection with this matter was Stephen Diaco.  Attached here as Exhibit 18 is a true and correct copy of a *Tampa Bay Times* article published on October 29, 2012, which is also *available at* http://www.tampabay.com/blogs/media/content/bubba-love-sponge-apologizes-hulk-hogan-after-lawsuit-settlement-was-it-all-stunt.  As reflected therein, Diaco was publicly identified as Bubba Clem's attorney in connection with the sex-tape controversy.

21.     More generally, Diaco's representation of Bubba Clem has been the subject of widespread media coverage in connection with *Schnitt v. Clem*, and the subsequent bar investigation into allegedly improper conduct by Diaco and his colleagues in connection with that action.  Attached hereto as Exhibits 22-24 are true and correct copies of the following news reports reflecting Diaco's representation of Bubba Clem:

      a.  Ex. 22 (a July 7, 2015 *Tampa Bay Times* article, also *available at* http://www.tampabay.com/news/courts/judge-adams--diaco-lawyers-guilty-of-multiple-violations/2236429);

      b.  Ex. 23 (a July 7, 2015 *My Fox Tampa Bay* article, also *available at* http://www.myfoxtampabay.com/story/29492021/judge-shock-jock-attorneys-guilty-of-ethics-violations);

      c.  Ex. 24 (a January 25, 2013 *Southwest Florida Online* article, also *available at* http://swflorida.blogspot.com/2013/01/bubba-love-sponge-trial-in-confused.html);

Also attached hereto as Exhibits 25 and 26, respectively, are true and correct copies of the Florida Bar Complaint against Diaco and the Florida Bar Referee's Preliminary Findings of Fact and Conclusions of Law, both arising out his representation of Bubba Clem.

22.     Additional information about a second lawyer's representation of Bubba Clem is included in my Confidential Declaration at Paragraph 40 & Exhibit 56-C because it has been designated as "CONFIDENTIAL" by Hogan – but notably not by Bubba Clem – under the protective order in the Florida Litigation.

**Heather Clem's Attorneys**

23.     The FBI has also redacted various references to the attorney representing Heather Clem in connection with the sex-tape litigation.  *See, e.g.*, Conf. Thomas Obj. Decl. Ex. 59-C (GAWKER-212, 297, 462, 463).  It is matter of public record that Heather Clem has been represented in connection with the state court sex-tape litigation by The Cohen Law Group, and specifically by Barry A. Cohen and Michael W. Gaines.  Attached hereto as Exhibit 27 is a true and correct copy of the counsel listing from the public docket from the Florida Litigation.

**FBI Investigators**

24.     In its production, the Government redacted the names of all of the FBI investigators involved in the case.  Documents publicly filed by the Government in this case have identified Jason R. Shearn as one of the FBI agents involved in the investigation.  *See* Dkt. No. 23-1 at 75, 77.

25.     Additional information about other agents is included in my Confidential Declaration at Paragraph 41 & Exhibit 60-C because it has been designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" by Hogan under the protective order in the state court action.

**Assistant United States Attorneys**

26.     The FBI production includes multiple references to an "AUSA" in which the identification of the attorney has been redacted.  *See, e.g.*, Conf. Thomas Obj. Decl. Ex. 59-C (GAWKER-2, 446, 456).  Documents publicly filed by the Government in this case have identified Sarah C. Sweeney, Esq. as the Assistant United States Attorney who oversaw the Davidson investigation.  *See, e.g.*, Dkt. No. 23-1 at 72, 73, 77-79.

27.     In addition, it is a matter of public record that her supervisor, whose name also appears to be redacted in certain of the documents produced by the Government, is Robert Mosakowski, the head of the economic crimes division.  For example, attached hereto as Exhibit 28 is a February 2014 *Tampa Tribune* article identifying AUSA Mosakowski as the official "who oversees Tampa's federal white collar crime prosecutions," which is also available at http://tbo.com/article/20140223/ARTICLE/140229685.

28.     Ms. Sweeney and Mr. Mosakowski both spoke with my co-counsel and me freely about their involvement in the matter at issue on multiple occasions, although they were limited in what they could say about the substance of the investigation and acted quite professionally.

**TMZ Personnel**

29.     The FBI production contains multiple references to people affiliated with the media outlet TMZ.  *See, e.g.*, Conf. Thomas Obj. Decl. Ex. 59-C (GAWKER 6-7, 8-11, 12-14, 17, 386, 725-744, 1111).  It is a matter of public record that Hogan and his counsel, David Houston, were in contact with TMZ regarding the sex tape(s).  For example, attached hereto as Exhibit 29 is a true and correct copy of an October 9, 2012 broadcast on *TMZ Live*, also *available at* http://www.tmz.com/videos/0_5fb6e0hk/, in which Hogan and Houston participated in a broadcast interview with Mike Walters and Harvey Levin of TMZ that appears at 23:15 –

14

32:44 on the broadcast.  During that interview, Walters reported that Bubba Clem can be heard on one of the tapes saying that he could use the "footage" for his "retirement," and Walters alludes to prior discussions with Hogan on the subject, telling Hogan:  "So I just kind of want your reaction to that.  I know you know that this might be in one of the tapes.  I can tell you 100 percent that is what Bubba says when you leave the room."  *Id.* at 25:18 – 25:44.  In addition, Walters and Houston are depicted agreeing to discuss the matter further "off air."  *Id.* at 31:35 – 32:17.

**Hogan's Ex-Wife, Linda, His Current Wife, Jennifer,**
**And His Children, Brooke and Nick**

30.     The Government has redacted the references to the names of Hogan's ex-wife, current wife, daughter and son, where other people mention them in passing and where their identity is obvious because they are otherwise identified by their familial relationship to Hogan.  *See, e.g.*, Conf. Thomas Obj. Decl. Ex. 59-C (GAWKER-12); *see also id.* ¶ 42.

31.     That Hogan was at one time married to Linda Bollea, and that their children are named Brooke and Nick is, of course, public knowledge, as the four of them starred on a reality television show for many years.  *See, e.g.*, Ex. 30 (a true and correct copy of the IMDB page for *Hogan Knows Best*, *available at* http://www.imdb.com/title/tt0468996/?ref_=ttep_ep_tt).  It is similarly public knowledge that Hogan is currently married to Jennifer Bollea, as their wedding was widely reported in the press.  *See, e.g.*, Ex. 31 (a true and correct copy of the TMZ report about the wedding, *available at* http://www.tmz.com/2010/12/14/hulk-hogan-wedding-beach-brawl-cops-called-clearwater-florida/).

32.     Significantly, Hogan has stated publicly on multiple occasions that he was married to, although separated from, Linda Bollea at the time of the sexual encounters with Heather Clem, and that he was married to Jennifer Bollea in October 2012, when the Gawker

posting about the sex tape was published.  *See, e.g.*, Ex. 10 (article summarizing Hogan's Oct. 9, 2012 appearance on the *Today Show*, stating that he was married to Linda Bollea at the time the sex tape was made, and is now married to Jennifer Bollea).

**Howard Stern**

33.     The FBI production includes passing references by others to Howard Stern and his show.  *See, e.g.*, Conf. Thomas Obj. Decl. Ex. 59-C (GAWKER-32, GAWKER-34).  The fact that Hogan and Bubba Clem appeared on Mr. Stern's nationally-broadcast radio program is obviously a matter of public knowledge.  The show itself was transmitted on Sirius XM and remains available online.  *See, e.g.*, https://www.youtube.com/watch?v=LmPis1-wJlo (video of Hogan's Oct. 9, 2012 appearance on Stern's show).  The appearances by Hogan and Bubba Clem also generated substantial press attention.  *See, e.g.*, Ex. 9 (TMZ report summarizing Hogan's appearance).

**David Houston's Business Manager, Kristy ("K.C.") Rosser**

34.     In numerous documents, the FBI appears to have redacted the name of Houston's business manager, Kristy ("K.C.") Rosser.  The only reason Rosser is referenced in the documents is that she acted on Houston's behalf.  Given that Houston was required to provide a privacy waiver in his capacity as Hogan's counsel, it cannot seriously be maintained that Rosser has an expectation of privacy in connection with her work on Houston's behalf on that matter.

35.     In that regard, Rosser regularly communicates on Mr. Houston's behalf, and her name appears on Houston's firm letterhead.  *See, e.g.*, Ex. 32 (letter from Houston published by TMZ, also *available at*

http://tmz.vo.llnwd.net/o28/newsdesk/tmz_documents/0203_joe_madonna_docs.pdf).

Nevertheless, the FBI has even redacted her name from that stationery.  *See* Conf. Thomas Obj. Decl. Ex. 59-C (GAWKER-583).

36.     Ms. Rosser's identity also has been publicly disclosed by the Government in its filings this case.  *See* Dkt. No. 23-1 at 75, 77 (emails from Jason Shearn to David Houston identifying Kristy Rosser).

37.     I have described additional information about Ms. Rosser in my Confidential Declaration because it has been designated as "CONFIDENTIAL" by Hogan under the protective order in the Florida Litigation.

**Nicknames for Mr. Bollea**

38.     In several places the Government has redacted nicknames and pseudonyms used by Hogan, even though he has submitted a privacy waiver.  *See, e.g*., Conf. Thomas Obj. Decl. Ex. 59-C (GAWKER-34).

39.     It is well known that Mr. Clem called Mr. Bollea "Hootie."  *See, e.g.*, Ex. 33 (a true and correct copy of the June 23, 2015 *New York Observer* article reporting on nickname in connection with this litigation and the DVDs held by the Government); Ex. 34 (true and correct copy of Facebook page for Hogan's Beach Shop referring to Hogan as "Hootie," *available at* https://www.facebook.com/HogansBeachShop/posts/267881853335436).  Additional information on this subject is attached to my confidential declaration because it has been designated as "CONFIDENTIAL" by Hogan under the protective order in the Florida Litigation. *See* Conf. Thomas Obj. Decl. ¶ 42 & Ex. 56-C.

40.     In addition, the Government redacted instances in which Davidson referred to Hogan by a pseudonym.  Hogan has signed a privacy waiver and this information can be released.  *See* Conf. Thomas Obj. Decl. Ex. 59-C (GAWKER-180-194).


I, GREGG D. THOMAS, declare under penalty of perjury under the laws of the State of Florida that the foregoing is true and correct.


Date of Execution:  July 24, 2015
Place of Execution: Tampa, Florida


                                        _____/s/ *Gregg D. Thomas*_____
                                        GREGG D. THOMAS