# EXHIBIT 4

to the

**DECLARATION OF GREGG D. THOMAS
IN SUPPORT OF PLAINTIFFS' OBJECTIONS**

PAUL S. BERRA (BAR NO. 186675)
BERRA CONNELLY LLP
5806 Waring Avenue, Suite #5
Los Angeles, CA 90038
Telephone: (323) 461-9500
Facsimile: (323) 461-9501
paul@berraconnelly.com

Attorneys for Third Parties
KEITH DAVIDSON and KEITH M. DAVIDSON & ASSOCIATES, PLC

RECEIVED APR 21 2015
Levine Sullivan
Koch & Schulz, L.L.P.

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| TERRY GENE BOLLEA professionally known as HULK HOGAN, <br><br> Plaintiff, <br><br> v. <br><br> HEATHER CLEM; GAWKER MEDIA, LLC aka GAWKER MEDIA; et al., <br><br> Defendants. | CASE NO.: BS154295 <br><br> [Hon. Samantha P. Jessner - Dept. 31] <br><br> **OPPOSITION OF THIRD PARTIES KEITH DAVIDSON AND KEITH M. DAVIDSON & ASSOCIATES, PLC, TO GAWKER MEDIA, LLC'S PETITION TO ENFORCE SUBPOENA** <br><br> [DECLARATIONS OF PAUL S. BERRA AND MICHAEL MARSHALL FILED CONCURRENTLY HEREWITH] <br><br> DATE: May 1, 2015 <br> TIME: 8:30 a.m. <br> PLACE: Department 31 |

Third Parties Keith Davidson ("Davidson") and Keith M. Davidson & Associates, PLC ("Davidson Law") oppose the petition filed by Defendant Gawker Media, LLC ("Gawker") to enforce the subpoena served on Davidson Law as follows:

I.  **INTRODUCTION**

On or about October 4, 2012, Gawker posted on its website, gawker.com, video footage showing Plaintiff Terry Bollea also known as the famous wrestler Hulk Hogan ("Bollea") and Defendant Heather Clem ("Clem") engaged in sexual relations (the "Video"). Bollea promptly sued Gawker, Clem, and others for invasion of privacy in Florida. Neither Davidson nor Davidson Law had anything to do with the disputes between the parties.

In an apparent attempt to create a "side show" on the eve of trial, Gawker is pursuing a subpoena on Davidson Law which it knows will yield little, if any, information that has anything to do with the privacy issues in the Florida case. Davidson, a Los Angeles-based attorney and the sole shareholder of Davidson Law, was involved in a transaction regarding the potential sale of certain rights in the Video which led to criminal investigations in Florida. Davidson Law timely objected to the subpoena on numerous grounds.

The court should deny the petition to compel on both procedural and substantive grounds. First, Gawker failed to provide the court with a copy of the actual subpoena at issue or Davidson Law's objections thereto. Second, Gawker failed to file the required separate statement under the California Rules of Court. Third, the information sought is neither relevant nor will it lead to the discovery of admissible evidence. Fourth, the information sought by Gawker is protected from disclosure by the Fifth Amendment, attorney-client privilege, and attorney work product doctrine. Fifth, most of the document requests are impermissibly compound, overly broad, and meant merely to harass. And finally, the judge in the Florida action entered an order mandating that Gawker complete all discovery by April 10, 2015. The court should respect that order.

## II. **GAWKER VIOLATED CALIFORNIA RULE OF COURT 3.1345**

The petition should be denied in its entirety because Gawker violated rule 3.1345(a) of the California Rules of Court which states in pertinent part, "Any motion involving the content of a discovery request or the responses to such a request *must* be accompanied by a separate statement. The motions that require a separate statement include a motion: . . . (3) To compel further responses to a demand for inspection of documents or tangible things; . . . (5)To compel or to quash the production of documents or tangible things at a deposition." (Emphasis added.) The language of the rule cannot be any clearer.

It appears that Gawker is attempting to confuse the court with this tactic. Section (c) of rule 3.1345 explains that a "separate statement is a separate document filed and served with the discovery motion that provides all the information necessary to understand each discovery request and all the responses to it that are at issue. *The separate statement must be full and complete so that no person is required to review any other document in order to determine the full request and the full*

1 *response.*" (Emphasis added.)

2 California law is clear that the court can, and indeed should, deny Gawker's petition on this basis alone. For example, in Mills v. U.S. Bank, 166 Cal.App.4th 871 (2008), the California Court of Appeal upheld the trial court's denial of a motion to compel further responses to interrogatories and document requests for failing to provide a separate statement that complied with former rule 335 (now rule 3.1345) of the California Rules of Court. The court stated, "We conclude that because Plaintiffs did not comply with the requirements of former rule 335, the trial court was well within its discretion to deny the motion to compel discovery on that basis." Id. at 893. The situation in this case is more egregious as the plaintiffs in Mills (unlike Gawker) actually filed a separate statement. It was merely defective because it "did not set forth U.S. Bank's full response to each of the interrogatories and requests for production at issue," but that was enough for the court to deny the motion. Id. *See also,* St. Mary v. Superior Court, 223 Cal.App.4th 762, 778 (2014) (cites to the Mills case for the notion that a "failure to include separate statement required by Cal. Rules of Court provided justification of the court's denial of discovery motion").

Not only did Gawker fail to provide the court with a separate statement, it failed to file copies of the actual subpoena and written objections at issue. (Kissinger Decl., Exs. A & B.)

### III. THE COURT SHOULD RESPECT THE FLORIDA DISCOVERY ORDER

Article IV, Section 1, of the United States Constitution states in pertinent part, "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." By pursuing its petition to enforce its subpoena on Davidson Law, Gawker is asking a California court to disregard a Florida court order that was entered several months ago.

On February 18, 2015, the Honorable Pamela A. M. Campbell, Circuit Court Judge for the Sixth Judicial Circuit in Pinellas County, Florida, ordered that: "All depositions of lay witnesses and all fact discovery must be completed no later than April 10, 2015. *Depositions of lay witnesses and fact discovery after April 10, 2015 shall be permitted only as allowed by the Special Discovery Magistrate, by the Court, or by stipulation of the parties.*" Berra Decl., Ex. A, p. 5 (emphasis added). There is no indication in its petition, or elsewhere, that Gawker obtained the necessary permission to extend the discovery cut-off date from either the Special Discovery Magistrate, Judge

Campbell, or the other parties (via a stipulation). Because the discovery cut-off date has passed, the court should deny the petition on that basis as well.

### IV.     THE INFORMATION SOUGHT IS COMPLETELY IRRELEVANT

In the underlying Florida case, Bollea is alleging that Gawker and others violated his privacy by posting the Video, and a detailed description of same, on gawker.com. Bollea's claims are invasion of privacy by intrusion upon seclusion, publication of private facts, violation of publicity rights, and infliction of emotional distress. The documents and testimony sought by Gawker have nothing to do with the material issues in that case. As clearly shown by the e-mails submitted to the court by Gawker, which are attached as Exhibit "D" to the Declaration of Ashley I. Kissinger dated March 16, 2015 (the "Kissinger Decl."), Davidson Law was involved in a completely unrelated matter regarding the potential sale of certain rights in the Video.

Therefore, the information sought by Gawker, including any e-mails between (a) Davidson and Bollea's counsel regarding the Video, (b) Davidson and law enforcement authorities regarding the Video, and (c) Davidson and media outlets regarding the Video, are completely irrelevant to the material issues in the Florida litigation. Gawker does not even attempt to explain the relevance in its petition. Instead it points to two Florida court orders that have nothing to do with Davidson or his firm and, on their face, are unclear. The specific bases on which the court rendered its rulings is unknown, and it is unclear how the Florida court would have ruled if Davidson and his firm had been allowed to lodge objections in the Florida case.

To the extent that Gawker is arguing that Davidson's testimony and document production could reasonably lead to the discovery of admissible evidence, there is absolutely no indication that this will happen. First, the discovery due date has passed so Gawker is prohibited from conducting additional discovery. Second, the issues involving Davidson Law are so remote to the material issues in the Florida action that even extensive follow-up discovery would yield nothing.

### V.     MANY OF THE REQUESTS ARE OVERLY BROAD, IMPERMISSIBLY COMPOUND, AND SEEK DOCUMENTS THAT ARE CLEARLY PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE AND ATTORNEY WORK PRODUCT DOCTRINE

1    It is unexplainable why Gawker did not attempt to narrow its document requests before filing the petition; perhaps it did not have enough time because of the discovery due date. In any event, if a party wishes to wait until the last minute to conduct discovery on a third-party fact witness in a different state, the discovery should be at least somewhat focused. That did not happen here. Many of document requests are overly broad, impermissibly compound, and seek information clearly protected by the attorney-client privilege and attorney work product doctrine. As shown in Exhibit "C" to the Berra Declaration, Davidson Law timely objected to each of these requests on those grounds and others:

#1    All documents referring or relating to the Sex Tapes. *This request seeks every conceivable document regarding the Sex Tapes, regardless of whether it has anything to do with the material issues in the Florida action, and therefore is therefore overly broad. It also seeks documents involving attorney-client communications and work product.*

#2    All documents reflecting, referring, or relating to communications about the Sex Tapes. *This request suffers from the same problems as request no. 1, although attorney work product is a bit less of a concern because the request focuses on correspondence.*

#3    All documents referring or relating to the Gawker Story. *This request suffers from the same problems as request no. 1.*

#5    For the period from January 1, 2012 through the present, all documents referring or relating to Terry Bollea or Hulk Hogan. *This request suffers from the same problems as request no. 1.*

#6    For the period from January 1, 2012 through the present, all documents referring or relating to one or more of the following: Heather Clem, the Sex Tapes, Bubba Clem, Gawker, or the Gawker Story. *This request seeks documents regarding five individual subjects which makes it impermissibly compound. It also seeks every conceivable document regarding all five subjects, regardless of whether it has anything to do with the material issues in the Florida action, and is therefore overly broad. It also asks for documents involving attorney-client communications and work product.*

\\\

1         #7     All documents reflecting, referring, or relating to your communications with, to, or from Terry Bollea or Hulk Hogan, as well as any agents, representatives, or attorneys representing Terry Bollea or Hulk Hogan concerning one or more of the following: Terry Bollea, Hulk Hogan, Bubba Clem, Heather Clem, the Sex Tapes, Gawker, or the Gawker Story. *This request seeks every communication with multiple people (some of which are undefined and therefore unknown) regarding six individual subjects which makes it impermissibly compound. It also seeks every conceivable document regarding these subjects, regardless of whether it has anything to do with the material issues in the Florida action, and is therefore overly broad. It also asks for documents involving attorney-client communications and work product.*

        #8     All documents reflecting, referring, or relating to your communications with, to, or from David Houston concerning one or more of the following: Terry Bollea, Hulk Hogan, Bubba Clem, Heather Clem, the Sex Tapes, Gawker, or the Gawker Story. *This request seeks every communication with attorney David Houston regarding six individual subjects, regardless of whether it has anything to do with the material issues in the Florida action, and is clearly overly broad and impermissibly compound.*

        #9     All documents reflecting, referring, or relating to your communications with, to, or from K.C. Rosser concerning one or more of the following: Terry Bollea, Hulk Hogan, Bubba Clem, Heather Clem, the Sex Tapes, Gawker, or the Gawker Story. *This request suffers from the same problems as request no. 8.*

        #10    For the period from January 1, 2012 to the present, all documents reflecting, referring, or relating to your communications with any employee or agent of any Media outlet, including, but not limited to TMZ, *The Dirty*, and Gawker, concerning one or more of the following: Heather Clem, the Sex Tapes, Bubba Clem, Gawker, or the Gawker Story. *This request seeks every communication with multiple media outlets regarding six individual subjects, regardless of whether it has anything to do with the material issues in the Florida action, and is clearly overly broad and impermissibly compound.*

        #11    All documents reflecting, referring, or relating to communications with law enforcement authorities and/or prosecutors (whether connected with federal, state, or local

government and including, but not limited to, employees of the Federal Bureau of Investigation, the United States Department of Justice, or the United States Attorney's Office for the Middle District of Florida) relating to the Sex Tapes, Terry Bollea, or Hulk Hogan. ***This request suffers from the same problems as request no. 10.***

It is not the responsibility of the subpoenaed party to attempt to narrow overly-broad and impermissibly compound requests. And it is not the subpoenaed party's responsibility to figure out which document may or may not pertain to material issues in an out-of-state case in which it has had absolutely no involvement.

Gawker's claim that Davidson was not acting as an attorney and therefore he cannot claim attorney-client privilege or attorney work product is incorrect. The e-mails attached as Exhibit "D" to the Kissinger declaration clearly show that Davidson was acting as an attorney. They refer to "representation," "engagement," "a confidential, non-binding mediation," and the negotiation, preparation, and exchange of multiple drafts of a settlement agreement. They also show Davidson's law firm e-mail address and the address of his firm in Beverly Hills, California. Furthermore, there is no evidence that Davidson's client(s), who actually hold the privilege, waived the privilege.

With respect to a privilege log, Davidson Law was not required to provide one to Gawker along with its objections. Best Products, Inc. v. Superior Court, 119 Cal.App.4th 1181, 1188-1189 (2004). And the mere production of information regarding the documents could lead to self-incrimination. *See, e.g.,* Fisher v. United States, 425 U.S. 391, 410 (1975) ("The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena."). Davidson's Fifth Amendment rights against self-incrimination are discussed further below.

## VI. THE CRIME-FRAUD EXCEPTION DOES NOT APPLY

To justify invocation of the crime-fraud exception to the attorney-client privilege and attorney work product doctrine, Gawker has the burden of demonstrating that there is "probable cause to believe that a fraud or crime has been committed and that the communications in question were in

1  furtherance of the crime or fraud." SEC v. Herman, 2004 U.S. Dist. LEXIS 7829, *7 (S.D.N.Y.
2  2004) (citing U.S. v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997)).
3      Because Gawker has not submitted *any* evidence to this court showing that Davidson, his
4  firm, or his client(s) engaged in any wrongful conduct, much less criminal or fraudulent conduct, the
5  crime-fraud exception does not apply. Although Gawker is correct that Davidson's invocation of
6  his right against self-incrimination allows the court to draw an "adverse inference" regarding the
7  conduct at issue, the moving party must produce actual evidence that a crime or fraud was indeed
8  committed. This is clearly shown in the two cases cited by Gawker.
9      In Amusement Industries v. Stern, 293 F.R.D. 420 (S.D.N.Y. 2013), the court did not hold
10 that the crime-fraud exception applied because of an "adverse inference." Instead, it went through
11 each of the elements of the alleged crimes and ultimately found "overwhelming evidence" of a
12 scheme to defraud. Id. at 431. Similarly, in SEC v. Herman, supra, 2004 U.S. Dist. LEXIS 729, the
13 SEC presented the court with substantial evidence that specific acts of fraud were committed. "The
14 evidence proffered by plaintiff adequately supports the inference that defendants were responsible
15 for making knowingly false statements and material omissions in connection with the Millenium
16 offering." Id. at *18. Of course, this reasoning makes sense. If merely an "adverse inference" was
17 required, then the attorney-client privilege and attorney work product doctrine would be obliterated
18 every time someone took the Fifth.

### VII. **DAVIDSON'S FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION WOULD BE VIOLATED IF THE PETITION IS GRANTED**

21     Currently there are unresolved criminal investigations regarding the involvement of Davidson
22 in a transaction pertaining to the Video. Indeed, Gawker openly acknowledges that the Fifth
23 Amendment applies in this case.
24     To somehow get around the Fifth Amendment rights clearly afforded to Davidson, Gawker
25 concurrently served a nearly identical subpoena on Davidson Law and claimed that the Fifth
26 Amendment does not apply to corporations. However, Davidson is, in essence, his law firm. During
27 all relevant times hereto, Davidson Law has been a one-man corporation. (Marshall Decl., ¶ 3.) If
28 the court orders Davidson Law to produce documents sought by Gawker's subpoena, it essentially

would be forcing Davidson to act as the custodian of the production (there is no one else to fulfill that role) and violate his own individual rights against self-incrimination. (Id., ¶ 4.)

While Gawker is correct that corporations normally do not have rights against self-incrimination, it fails to cite to any cases which are similar to the case at bar. The closest, Bellis v. United States, 417 U.S. 85 (1974), concerned the financial books and records of a dissolved partnership that had employed three partners, six employees, two other attorneys associated with the firm, three secretaries, and a receptionist. The records were subpoenaed by a federal grand jury, and the attorney handling the subpoena had left the firm over three years prior thereto. Id. at 86.

The U.S. Supreme Court in the Bellis case held that the law firm at issue did not have Fifth Amendment rights against self-incrimination, however, a close review of the Court's holding demonstrates that it is not applicable to Davidson Law. After explaining that the attorney was merely being ordered to produce the "financial books and records" of the partnership, the Supreme Court noted the following which specifically applies to the case at bar: "*Significantly, the District Court excluded any client files from the scope of its order. A different case might be presented if petitioner had been ordered to produce files containing work which he had personally performed on behalf of his clients, even if these files might for some purposes be viewed as those of the partnership.*" Id. at 98, fn. 9. In the case at bar, Gawker is only seeking documents that would exist in Davidson's client files, and therefore the Bellis decision actually supports Davidson Law's refusal to produce the requested information.

## VIII. VIDEOTAPING OF DEPOSITION

To the extent this issue is not yet moot, Davidson's insistence that his deposition not be videotaped was completely reasonable. The fact that Gawker is insisting upon the videotaping of a California attorney repeatedly taking the Fifth shows just what a "side show" this really is; it has nothing to do with evidence that Gawker really needs.

As a reminder to the court, Gawker felt comfortable enough posting the video of two people engaged in sexual relations on its website. That is what the underlying Florida lawsuit is all about. It does not require a great stretch of the imagination to be concerned that videotaped deposition testimony from this case one day will appear on gawker.com or elsewhere on the internet.

## IX. CONCLUSION

While it is still unknown why Gawker would spend so much time and effort attempting to force Davidson to incriminate himself in a Florida action that has absolutely nothing to do with either him or his firm, it does not matter. The court should deny the petition in its entirety on both procedural and substantive grounds.

DATED: April 20, 2015

BERRA CONNELLY LLP

By: *Paul Berra*
PAUL S. BERRA
Attorneys for Third Parties
KEITH DAVIDSON and KEITH M. DAVIDSON & ASSOCIATES, PLC

**PROOF OF SERVICE**
1013A(3) C.C.P. Revised 5/1/88

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over 18 years of age and am not a party to the within action. My business address is Berra Connelly LLP, 5806 Waring Avenue, Suite #5, Los Angeles, California 90038.

On **April 20, 2015**, I served the foregoing documents described as:

**OPPOSITION OF THIRD PARTIES KEITH DAVIDSON AND KEITH M. DAVIDSON & ASSOCIATES, PLC, TO GAWKER MEDIA, LLC'S PETITION TO ENFORCE SUBPOENA**

on each of the interested parties in this action by placing:
    [X] a true and correct copy -OR- [ ] the original document
thereof enclosed in a sealed envelope addressed as follows:

Ashley I. Kissinger, Esq.                Attorneys for Defendant
Levine Sullivan Koch & Schulz, LLP       GAWKER MEDIA, LLC
1888 Sherman Street, Suite 370
Denver, CO  80203

[ ]   **VIA MAIL:** As follows: On the date above, I deposited the above document with the U.S. Postal Service with the necessary paid postage affixed thereon in Los Angeles, California. I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing.

[X]   **VIA FEDERAL EXPRESS:** As follows: On the date above, I sent via Federal Express, overnight delivery, the above document to each of the above addresses.

[ ]   **VIA E-MAIL:** As follows: On the date above, I sent via e-mail the above document in Adobe Acrobat format to each of the above e-mail addresses.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on **April 20, 2015**, in Los Angeles, California.

_/s/ Paul Berra_
PAUL S. BERRA

**PROOF OF SERVICE**
1013A(3) C.C.P. Revised 5/1/88

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over 18 years of age and am not a party to the within action. My business address is Berra Connelly LLP, 5806 Waring Avenue, Suite #5, Los Angeles, California 90038.

On **April 20, 2015**, I served the foregoing documents described as:

**OPPOSITION OF THIRD PARTIES KEITH DAVIDSON AND KEITH M. DAVIDSON & ASSOCIATES, PLC, TO GAWKER MEDIA, LLC'S PETITION TO ENFORCE SUBPOENA**

on each of the interested parties in this action by placing:
   [X] **a true and correct copy** -OR- [ ] **the original document**
thereof enclosed in a sealed envelope addressed as follows:

Charles J. Harder, Esq.                     Attorneys for Plaintiff
Harder Mirell & Abrams LLP                  TERRY GENE BOLLEA
1925 Century Park East, Suite 800
Los Angeles, CA 90067

[X]   **VIA MAIL:** As follows: On the date above, I deposited the above document with the U.S. Postal Service with the necessary paid postage affixed thereon in Los Angeles, California. I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing.

[ ]   **VIA FEDERAL EXPRESS:** As follows: On the date above, I sent via Federal Express, overnight delivery, the above document to each of the above addresses.

[ ]   **VIA E-MAIL:** As follows: On the date above, I sent via e-mail the above document in Adobe Acrobat format to each of the above e-mail addresses.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on **April 20, 2015**, in Los Angeles, California.

*Paul Berra*
PAUL S. BERRA