# EXHIBIT 7

to the

**DECLARATION OF GREGG D. THOMAS
IN SUPPORT OF PLAINTIFFS' OBJECTIONS**

LOGIN

CITY HALL | ALBANY | MEDIA | POLICY

# Dodging a Hulk Hogan trial (for now), Gawker investigates the F.B.I.



Hulk Hogan and the Gawker offices. (photocomposite)

 By Peter Sterne    5:41 a.m. | Jul. 15, 2015

**MOST POPULAR**

1. The 'Gawker tax' is getting too high, Denton tells his staff
2. Gawker's Denton: 'This is not the company I built'
3. 'Ghost committees' continue to proliferate
4. Transportation secretary calls Hudson tunnel inaction 'almost criminal'
5. The vital lesson in Craggs' and Read's Gawker jeremiads

Gawker Media founder Nick Denton thinks they still have time to avoid Hulk Hogan's legal leg drop.

On the morning of Thursday, July 2, Florida's Second District Court of Appeal ordered that the trial in Hogan's $100 million invasion of privacy suit against Gawker Media be delayed. The trial had been scheduled to start on July 6.

If Hogan wins his case against Gawker and the jury awards him even a part of the $100 million judgment, Gawker could face near financial ruin—or be forced to sell itself, which founder Nick Denton and the site's independent-minded editors have long said they would fight to avoid.

Fighting for its life, Gawker has been willing to go to any lengths to strengthen its legal defense, even suing the F.B.I. in federal court to obtain evidence from an extortion investigation that might be relevant to Hogan's suit.

**MORE ON CAPITAL**

- The 60-second interview; Alexander Klöpping, co-founder of Blendle
- P.M. Media Pro: Trump politics; The N.B.A. goes a la carte
- The 'Gawker tax' is getting too high, Denton tells his staff

"There will be a third act which we believe will center on the real story: the additional recordings held by the FBI, the information in them that is Hulk Hogan's real secret, and irregularities in the recordings which indicate some sort of cover-up," Denton wrote in a blog post on Friday morning. "In the way of so many news stories, the deeper you go, the more

interesting it gets."

Denton told Capital that his speculation is based solely on publicly available court documents and press reports; he's not allowed to read the F.B.I. documents that have been released to his lawyers, which remain under seal.

But how real a possibility is this "third act"?

On July 2, federal judge Susan Bucklew of Florida's Middle District held a hearing to determine whether or not the F.B.I. should be forced to release certain evidence related to the agency's investigation into three sex tapes featuring Hogan. Gawker had filed a Freedom of Information Act request for records concerning that investigation, which involved an alleged attempt to extort money from Hogan in exchange for the suppression of secretly recorded videos of him having sex with the wife of a friend.

This F.B.I. investigation is closely connected to Hogan's suit against Gawker. One of the tapes allegedly used to extort Hogan was later anonymously sent to Gawker in September 2012, and Gawker's publication of a short excerpt of that video is the basis for Hogan's suit against the Manhattan-based blog network.

**Hogan's sting**

On June 24, Bucklew ordered the F.B.I. to release evidence from the investigation to Gawker. The F.B.I. refused to release much of the evidence, claiming that it was exempt from FOIA, so Bucklew held a hearing on July 2 to determine which pieces of evidence were exempt. All of the F.B.I. evidence is currently confidential, but a transcript of the hearing provides some details on the investigation and the evidence that it produced.

Charles Harder, the attorney representing Hogan at the hearing, told the court that the F.B.I. had enlisted Hogan and his lawyer David Houston in a sting operation. The target was an alleged extortionist, who had allegedly obtained three sex tapes that depicted Hogan having sex with Heather Clem, who was then the wife of Hogan's good friend Bubba the Love Sponge Clem.

"The FBI had Mr. Houston communicate with the extortionist and set up a sting and that's what these audio CDs are and that's where these DVDs come from and that's where these alleged transcripts come from," Harder said.

Other court documents disclose the target's identity: Keith Davidson, a Los Angeles-based lawyer who was suspended by the California bar for 90 days for four counts of misconduct in 2010 and has previously been involved in lawsuits over sex tapes featuring celebrities such as model Tila Tequila and actor Verne Troyer.

The *New York Observer* reported last month that one piece of evidence from the F.B.I.'s extortion investigation was a $150,000 check to Davidson from Hogan's lawyer David Houston. This check was returned to Houston after the F.B.I. investigation and was presumably part of the sting operation.

Other evidence from the F.B.I. investigation includes the two audio C.D.s, hundreds of documents, and three DVDs. The DVDs contain footage of Hogan, Heather Clem and Bubba Clem, and reportedly also show Hogan using racial slurs and making derogatory statements about African-Americans.

**Inconsistent testimony**

Gawker believes that the F.B.I. evidence could reveal Hogan's real motivation for bringing the suit, discrepancies in his testimony, and even a possible F.B.I. cover-up.

Heather Dietrick, Gawker's president and general counsel, says that the company's lawyers plan to review all of the documents released by the F.B.I. to see what Hogan told the F.B.I. during the extortion investigation and whether that matches the testimony he's given in his state court case again Gawker.

"We think they're highly relevant to the case and we should be able to see what was Hogan telling the F.B.I. at the time and how does that match up with what he said in our case and what he said under oath in our case and what others have said in the case, especially these three key players—Hogan, Heather and Bubba," Dietrick told Capital.

"Then with regard to the other tapes, who was aware of the taping? What are the circumstances? All of those things are incredibly relevant to our case, so it's helpful to have the extra time in order to sort out this evidence that's been withheld for the last year and a half or more," she added.

Seth Berlin, the attorney representing Gawker, said during the July 2 hearing that there appear to be some discrepancies in Hogan's testimony. Since the F.B.I. evidence is still under seal, he could not get into much detail on the alleged discrepancies, but he still got his point across.

"Turns out, without getting into the specifics, they don't [match], that we have essentially under oath testimony to the FBI and we have under oath testimony in our case directly at odds with one another. So we have a situation ... we have a situation where the key participant, the plaintiff, is telling us one thing under oath and telling the FBI something else," he said.

He did allude to one specific discrepancy. Both Hogan and Houston have testified in the state court case that they have not viewed the DVDs of the sex tapes, he said, but they can be heard on one of the audio C.D.s doing just that.

On that C.D., Berlin said, Hogan and Houston can be heard meeting with Davidson (the alleged extortionist) and watching the three DVDs together. Presumably, this meeting was secretly recorded as part of the F.B.I.'s sting operation against Davidson.

Harder, denies that there are any any discrepancies in testimony given by Hogan, whose real name is Terry Bollea.

"Regarding Mr. Bollea's testimony: it is and always has been fully accurate in all respects. Seth Berlin is making up alleged inconsistencies that do not exist," he told Capital in an email.

**Sideshow or scoop?**

Harder said that the F.B.I. evidence is irrelevant, since Pamela Campbell—the state court judge presiding over Hogan's invasion of privacy suit against Gawker—has ruled that it should be excluded from that trial.

"The whole FBI case is a sideshow. Judge Campbell ruled last week that the 3 tapes produced by the FBI are not admissible at the trial. They are irrelevant, and not reliable due to heavy manipulation (presumably by the extortionist)," he said.

Campbell has ruled that a great deal of evidence about Hogan—including why he brought the suit against Gawker in the first place—will not be allowed in the trial. Even if Gawker discovers some smoking gun in the F.B.I. documents, it might not be admissible as evidence.

Berlin has an inspiring, if self-serving, response to that. Even if Gawker cannot use information from the F.B.I. extortion investigation at trial, he said during the hearing, Gawker is still interested in the information as a potential news story.

"Even apart from Gawker's interest as a litigant, Gawker's interest as a news organization, having spent a lot of money to get to this point, has an interest in understanding, okay, how is the government operating," he said during the hearing.

If the evidence sheds light on the F.B.I.'s extortion investigation, he suggested, then it could make for a good news story on Gawker.

Harder, Hogan's attorney, is skeptical of Gawker's newfound interest in reporting on the context of the sex tape.

"Gawker never asked a single question about the sex tape when it received the tape late Sept. 2012. It had zero journalistic interest in the story. It made not a single phone call or email to find out who was sending it, or why," he told Capital. "Gawker simply wanted to play a secretly-filmed video of Mr. Bollea naked and having sex, and that's what it did."

That may be true, but it doesn't mean that that there isn't a story there.

Gawker is understandably curious about the F.B.I.'s investigation into Davidson's alleged extortion attempt, which Hogan initiated and which succeeded in keeping Hogan's sex tapes from being leaked.

"I didn't know that the FBI was in the business of doing that ... Of trying to—of essentially trying to use arms of the federal government to help people—you know, we've all done or said things that we wished we hadn't. I didn't know you could [go] down to your local FBI office and say hey, can you prosecute this or investigate this to try and keep that from coming out. And that is what I think is going on here and that is wrong," he said.

Hogan does have a history of asking the government to solve his private problems. As Slate's Amanda Hess [reported last month](), Hogan is something of a serial litigant. "When his auto insurance failed to cover the cost of his tipsy teenage son recklessly driving his sports car into a tree, causing permanent brain damage to a passenger, Hogan [sued]() his insurance company; when that didn't work, he sued Linda, too, for not forcing him to be better insured; when Hogan's lawyers sent the bill for their services, he [sued]() them as well," she wrote.

Ostensibly, the F.B.I. investigation was about protecting the public from an extortionist, not just helping Hogan cover up his sex tapes. But the alleged extortionist was never prosecuted; there's some evidence that the extortion case made it to a grand jury, but the U.S. Attorney for Florida's Middle District declined to bring any charges. Years later, when Gawker filed a FOIA request for records related to the defunct investigation, the F.B.I. claimed that it could not release them because another, unnamed law enforcement agency had opened a new investigation into the case.

Thomas Gregg, another attorney representing Gawker, found the timing of this supposed

new investigation a bit suspicious.

"This of course raised the question of whether cronies in local law enforcement initiated an 'investigation' to prevent release of the documents, potentially with the cooperation of sympathetic officials in the FBI," he wrote in a July 1 filing urging Bucklew to order all of the F.B.I. evidence released.

In that filing, Gregg also said that Hogan's lawyers may have tried to prevent the F.B.I. from releasing evidence to Gawker.

"Curiously, one of the few documents that was produced raises further questions about whether Hogan's counsel attempted to prevent the release of the DVDs (or other documents) ordered produced by this Court," he wrote.

**DVD dubbing**

Unsurprisingly, Gawker's suggestion that the F.B.I. was doing Hogan's bidding did not go over too well at the July 2 hearing before Bucklew, especially after Berlin suggested that the F.B.I. may have manipulated the content of Hogan's sex tapes to remove information damaging to Hogan before releasing the tapes.

Berlin took pains to say that he was not necessarily accusing the F.B.I. of doctoring evidence to help Hogan, but the damage was done.

"I'm not suggesting—look, I don't want to impugn anybody at the FBI or in the U.S. Attorney's Office or in Winchester, Virginia where they review them, or anywhere else, right—" he said.

"You are," Bucklew replied.

"Well, I'm not trying to do that deliberately," he said. "I'm just trying to say that at the end of the day we were not getting -- there's a question about the integrity of the documents that we got."

Harder told Capital that Berlin's insinuation that the F.B.I. conspired to help Hogan was both false and defamatory.

"The allegation that Team Bollea is using the FBI to suppress evidence is pure fiction and ridiculous," he said. "Seth Berlin is an officer of the court, and it is disappointing that he would make such an allegation. The allegation also is defamatory and will be addressed with Seth Berlin and his client separately."

What evidence does Berlin have that the F.B.I. altered the DVDs?

Berlin said during the hearing that he had watched the three DVDs alongside Hogan's lawyers on June 30, in the state court judge's chambers.

While watching those three DVDs, he said, he referred to written descriptions of their content that had been prepared by Davidson (the alleged extortionist). He expected the descriptions to match the DVDs, but they did not.

One DVD, which he said appeared to be the same one that Gawker had been sent by an anonymous source back in 2012, contained nothing but one minute and 14 seconds of footage of a bed with no people in it. A second DVD perfectly matched a written description of the second video that had been provided to Gawker by Davidson. The third

DVD had a serious problem.

"The last of the disks, the first 15 minutes matches the transcript of Mr. Davidson exactly. Then at approximately 15 minutes through the transcript, the audio shifts. The video continues to match. So I watch the rest and what's described as happening matches perfectly, but the audio is the audio that is from a portion of the prior disk," he said.

This weird dubbing occurs at a key moment in the tape, he added.

"There is something that is particularly of sensitive and of interest to us in the case and that is the portion that has been overdubbed, if you will, with the audio from the earlier CDs. So we have two CDs with two different video and for a portion of it the audio is the same," Berlin said. (At this point, he mistakenly referred to the DVDs as "C.D.s" but later corrected himself.)

So why don't the DVDs match the descriptions?

It could be that Davidson, the alleged extortionist, manipulated the tapes or lied about what they contained in the descriptions. This is what Harder, Hogan's attorney, suggested during the hearing.

"These DVDs came from an extortionist, someone who is trying to get money out of saying these DVDs contains certain content, a content that you're going to want to make go away with a big check. Well, none of that is reliable," he said.

But there's reason to believe that the DVDs matched Davidson's descriptions before they were seized by the F.B.I.

Recall that on one of the audio C.D.s, Hogan, Houston, and Davidson can be heard playing the three DVDs. According to Berlin, the audio of the DVDs that can be overheard on this recording perfectly matches Davidson's written descriptions of the DVDs. This strongly suggests that the DVDs were not manipulated by Davidson, but were altered after coming into the F.B.I.'s possession.

"I want to understand how it is that between that moment when the FBI took possession of those DVDs and when I saw those tapes in Judge Campbell's anteroom on Tuesday, that audio got changed," Berlin said during the hearing.

The F.B.I. has all but admitted to manipulating the videos. Assistant U.S. Attorney Kenneth Stegeby said during the hearing that the F.B.I. had blurred out faces, muted portions of the audio, and even cut out whole sections of video—all in order to protect the privacy rights of the people who appear on the DVDs.

That still does not entirely explain the strange dubbing on the third DVD. The F.B.I. redacts audio by muting it, not by dubbing unrelated audio over it. It's possible that the F.B.I. made a mistake while redacting certain information from the DVDs, though again, it's difficult to imagine exactly how such a mistake could be made.

In a July 10 court filing, the F.B.I. acknowledged that some of the DVDs had been corrupted and said that it would re-process the videos and release them by July 17.

**Under seal**

There is now a hearing set for Oct. 1 to discuss scheduling a new date for a trial, which gives Gawker plenty of time to figure out what happened to the DVDs and to comb

through all the F.B.I. evidence, looking both for discrepancies in Hogan's testimony and for details on the nature of the F.B.I. investigation itself.

There's a good chance that little, if any, of this evidence will make it into the eventual trial in Hogan's invasion of privacy suit against Gawker. It's also unlikely that Gawker (or anyone else) will publish a big scoop about the inside story of the F.B.I. investigation any time soon. Every piece of evidence that the F.B.I. releases to Gawker must remain under seal for at least 30 days, and Hogan's lawyers can file motions with the state court to keep them confidential indefinitely. In the past, judge Campbell has readily granted these motions, and there's no reason to think she won't continue to do so.

But newsworthy information, even if originally placed under seal by a court, has a way of eventually being made public. Consider what happened last week, when the Associated Press successfully convinced a federal judge that it was in the public interest to unseal 10-year-old confidential court records related to a civil suit brought against Bill Cosby.

Gawker's suit against the F.B.I. is based on a FOIA request, which is fundamentally about releasing information to the public. Even if Hogan's lawyers get the state court to exclude the F.B.I. evidence from trial and to keep it under seal so that Gawker cannot publish it, they still may not be able to prevent the details of the F.B.I. investigation from being made public.

After all, Hogan's lawyers cannot prevent other news organizations from filing FOIA requests with the F.B.I—a fact that Harder, Hogan's attorney, explicitly acknowledged at the end of the July 2 hearing.

"The state court judge doesn't have jurisdiction over the press making inquiries with the federal court, though ... or with the FBI to try to obtain these same materials," he said.

Judge Bucklew said that was not her problem.

"That's between the FBI and the press," she said.

Hogan seems to believe that the courts can take publicly available information and make it confidential.

The clearest example of this may be a July 13 notice to the court that Harder filed. In the notice, Harder said that he intends to file a motion requesting that portions of the transcript from the July 2 hearing be redacted. The full transcript of that hearing has been freely available online for over a week.

MORE:  MEDIA   DIGITAL MEDIA   FBI   GAWKER   GAWKER MEDIA   HULK HOGAN   LAW   LAWSUITS   PRIVACY

 Author: Peter Sterne

## MORE IN MEDIA

The 60-second interview; Alexander Klöpping, co-founder of Blendle

AROUND THE WEB