IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAWKER MEDIA, LLC and
GREGG D. THOMAS,

      Plaintiffs,

v.                                                                          Case No. 8:15-cv-01202-SCB-EAJ

THE FEDERAL BUREAU OF
INVESTIGATION and THE
EXECUTIVE OFFICE OF
UNITED STATES ATTORNEYS,

      Defendants.

_____/

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' OBJECTIONS**

      Defendants, the Federal Bureau of Investigation ("FBI") and the Executive Office of United States Attorneys ("EOUSA"), respectfully file this response in opposition to Plaintiffs' Objections to Defendant Agencies' FOIA Responses, *Vaughn* Indexes, and Declarations ("Objections") [Doc. 54].  In support, defendants state as follows:

**I.      Asserting FOIA Exemption 7(A) does not Preclude the Federal Government from Subsequently Asserting Other FOIA Exemptions**

      Plaintiffs' argument that defendants have waived their right to withhold or redact records based on FOIA exemptions other than 7(A) is meritless.  In support of their position, plaintiff cites to *Ray v. United States Dep't of Justice*, 908 F.2d 1549 (11th Cir. 1990) and *Maydak v. United States Dep't of Justice*, 218 F.3d 760 (D.C. Cir. 2000).  However, those cases are distinguishable from the present case.

      In *Ray*, the district court entered judgment against the defendant on the grounds that

the records redacted by the defendant were not protected by Exemption 6 of the FOIA.  The

defendant subsequently filed a motion to amend the judgment.  *See Ray*, 908 F.2d at 1557.

In its motion, the defendant argued for the first time – (1) after almost two years of litigation

and (2) after the court had entered judgment against the defendant – that the redactions were

appropriate because several other exemptions applied.  *See id*.  The district court denied the

motion on the basis that the agency had waived the exemptions because defendant failed to

raise them in their answer, filed almost two years earlier and, as the Eleventh Circuit noted,

because defendant failed to assert the exemptions "at any time prior to the district court's

judgment."  *Id*. (citation omitted).

On appeal, the defendant in *Ray* argued that its failure to assert the other exemptions

in its answer two years earlier "was the result of pure mistake" and it further argued that

"[the] court should decide these issues because they involve grave concerns of national

security and foreign policy."  *Id*.  The Eleventh Circuit noted that "courts have some

discretion to excuse untimeliness where justice so requires," but it also stated that it did "not

believe that this is such a case."  *Id*.  To the contrary, the Eleventh Circuit found that it was

> difficult to believe that the redacted information implicates
> compelling national security concerns in light of the government's
> failure for almost two full years to bring these concerns to the
> attention of the court or the plaintiffs.

*Id*.  Accordingly, the Circuit Court affirmed the lower court's ruling that defendant had

waived the right to assert other exemptions.

*Ray* has been distinguished based on a legal analysis that is applicable to the present

case.  Fourteen years after the Eleventh Circuit issued *Ray*, a federal court found that "[a]n

agency's failure to assert exemptions during the administrative process does not act as a

waiver in subsequent litigation." *Lawrence v. United States Internal Revenue Serv.*, 355 F. Supp.2d 1307, 1310 (M.D. Fla. 2004). The *Lawrence* court did note that the Eleventh Circuit ruled in *Ray* that an "agency could not assert new FOIA exemptions based on national security where it failed to assert these exemptions for nearly two years." *Id*. (citation omitted). However, the *Lawrence* court observed that federal courts "have some discretion to excuse untimeliness where justice so requires." *Id*. (citing Ray, 908 F.2d at 1557).

In *Lawrence*, plaintiff sought to compel the production of an unredacted version of an agency handbook. *See id*., at 1309. Relying on *Ray*, the plaintiff contended that the defendant had waived its right to assert any exemptions that were not asserted in its answer, which was filed in September 2003. The court rejected the plaintiff's argument because, it said, "the review of the handbook was not complete at the time Defendant answered Plaintiff's amended complaint." *Id*., at 1310. In fact, the review of the handbook was not completed until September 2004. *See id*. Further, the court noted that the defendant informed both the court and the plaintiff early in the case that "it needed to review the handbook and determine which part, if any, could be released." *Id*. The *Lawrence* court distinguished *Ray* on the grounds that the Eleventh Circuit declined to exercise its discretion to excuse the defendant's tardiness for two reasons. First, "the agency waited for nearly two years to raise the new exemptions," and, second, it "raised these exemptions only after a ruling in Plaintiff's favor . . . ." *Id*. (citing *Ray*, 908 F.2d at 1557). Thus, unlike the plaintiff in *Ray*, the plaintiff in *Lawrence* had been informed early in the case that the defendant may redact some information based upon the FOIA's exemptions. *See id*., at 1310-11. Although the defendant raised new claims of exemptions after a one-year delay, unlike the defendant in

*Ray*, but like defendants in the present case, the defendant in *Lawrence* raised the new exemptions before the court entered judgment.  *See id.*, at 1311.  The court found that "[u]nder these circumstances, Defendant's untimeliness in failing to assert the FOIA exemptions in its answer is excused."  *Id*.  The present case is different than *Ray*; rather, it is more like *Lawrence*, and defendants here have not waived the right to assert new exemptions.

To support its argument that the FBI has voluntarily waived its right to assert other exemptions, plaintiffs take one statement by the FBI during the June 24, 2015 hearing – wholly out of context – and claim that the FBI "told this Court at the June 24, 2015 hearing that Exemption 7(A) was the only one that applied.".   Objections, p. 10.  Plaintiffs are misconstruing defendants' statement.  In fact, plaintiffs admitted at the hearing that they knew the FBI was asking the Court for leave to do a bifurcated review of the documents.[1] Generally, an agency reviews each responsive page line-by-line to determine whether information falls under a FOIA exemption and should be redacted.  Each redaction is typically entered into a *Vaughn* index, which may be a declaration or a spreadsheet, in which the agency identifies each redaction and adds a sufficiently detailed explanation so a court and a FOIA requester may determine whether each redaction is appropriate.  *See Stephenson v. Internal Revenue Serv.*, 629 F.2d 1140, 1145 (5th Cir.1980) (citing *Vaughn v. Rosen*, 484

---

[1] At the hearing, plaintiffs admitted that they clearly understood the bifurcation request:

> [W]hat the Government is saying is, "We want to review the documents twice. We want to review them now for purposes of the law enforcement exemption, and we're entitled to do that on a category-by-category basis. Right? Here are the 302's. Here are the emails. And to give you a Vaughn index on that." And then, they are asking for, essentially, another three months to take that same 1100 pages and go through it a second time and see, what are the documents for which there are -- is not a valid law enforcement objection or exemption? Can we assert a separate exemption?

June 24, 2015 Tr., 40:11-22.

F.2d 820 (D.C. Cir.1973)).

It is very time consuming to create a *Vaughn* index, as explained in Section II below, but it is normally done to support a defendant's motion for summary judgment. However, with respect to Exemption 7(A), an agency does not need to file a *Vaughn* index to support a motion for summary judgment. A coded, or categorical, index or declaration is legally sufficient to support a motion for summary judgment for Exemption 7(A). *See*, *e.g.*, *Bilderbeek v. United States Dep't of Justice*, 2010 WL 1049618, *1, *4 (M.D. Fla. Mar. 22, 2010) ("'It is accordingly well-established that [an agency] may justify its withholdings by reference to generic categories of documents, rather than document-by-document.'") (citation omitted). It takes less time both to review the records by categories and to create a categorical index rather than a *Vaughn* index. So, due to the lack of time in this case, the FBI asked the Court to bifurcate this case to allow the FBI to file a motion for summary judgment based on Exemption 7(A) based on the categories of documents in its possession. If the Court would have determined that Exemption 7(A) applied, it would have granted summary judgment. However, if Exemption 7(A) did not apply, the FBI was going to review each page, line-by-line, to apply the other FOIA exemptions and create a full *Vaughn* index or declaration in support of a new summary judgment motion.[2] Accordingly, defendants did not waive its right to raise other FOIA exemptions.

In addition, the FBI raised the issue of bifurcation as early as June 8, 2015 in the declaration by Mr. Hardy, Section Chief of the FBI's Record/Information Dissemination

---

[2] As this case has progressed, the FBI has indeed done a line-by-line review of each page and has redacted each page based on applicable FOIA exemptions other than 7(A). The FBI has not had time to create a full Vaughn index, but it has produced a categorical declaration and index, as explained below. *See* Docs. 37-1 and 38-1.

Section, attached as Exhibit A to defendants response in opposition to plaintiffs' motion for summary judgment. *See* Defendants' Response in Opposition to Plaintiffs' Dispositive Motion for Summary Judgment and Memorandum of Law [Doc. 23], Exhibit A [Doc 23-1]. In his declaration, Mr. Hardy expressly stated that "in the event that Exemption 7(A) would expire during the pendency of this FOIA litigation – or if the Court rejects the FBI's withholdings under Exemption 7(A) – the underlying exemptions would be preserved." *Id.*, at ¶ 31. Mr. Hardy further stated that if the Court were to reject the FBI's invocation of Exemption 7(A), the FBI would need additional time to process the documents for the underlying exemptions because, based on the FBI's experience, the amount of time required to review the records line-by-line to create a full *Vaughn* index or declaration takes twice the time required to conduct a categorical review. *See id.*, ¶ 32.

Additionally, in its answer, filed on June 19, 2015, the FBI asserted as its Second Affirmative Defense that plaintiffs are not entitled to compel the production of records protected from disclosure "by any applicable exemption or exclusions." Defendants' Answer to Plaintiffs' Complaint for Declaratory and Injunctive Relief [Doc. 29], p. 7. Also, by July 6, 2015, the FBI had provided a declaration detailing all of the underlying exemptions as well as all responsive documents to the Court, except the grand jury documents covered by Exemption 3, which the FBI may not disclose. The FBI therefore has provided timely notice to the Court and to plaintiffs of the underlying exemptions and has preserved those exemptions.

There is another important fact here that sets the present case apart from *Ray*: as in

*Lawrence*, the Court has not entered judgment in the case.[3]  *See Ray*, 908 F.2d at 1557; *Lawrence*, 355 F. Supp.2d at 1310-11.

Plaintiffs also cite to *Maydak* in support of their waiver argument.  218 F.3d 760 (D.C. Cir. 2000).  However, *Maydak* was decided by the D.C. Circuit and is not binding on the Court.  In addition, *Maydak*, like *Ray*, is distinguishable from the present case.  In *Maydak*, the D.C. Circuit noted that, "as a general rule, [the federal government] must assert all exemptions at the same time, in the original district court proceedings."  *Id*., at 764.  The reason is that "the delay caused by permitting the government to raise its FOIA exemption claims one at a time interferes both with the statutory goals of efficient, prompt, and full disclosure of information."  *Id*. (citation omitted).  As explained above, the FBI informed the Court and plaintiff within a reasonable time period that additional exemptions besides Exemption 7(A) may apply to the responsive records.  Thus, the concerns regarding delays raised by the *Maydak* court does not apply in the present case.

Moreover, the "general rule" in *Maydak* does not preclude an agency from raising additional FOIA exemptions while a case remains pending in district court.  *See*, *e.g*., *Lawrence*, 355 F. Supp.2d 1307 (explained above); *Sussman v. United States Marshals Serv*., 494 F.3d 1106, (D.C. Cir. 2007) (explaining that a court may consider an exemption first raised in a "subsequent motion for reconsideration" because "[w]e have in the past permitted agencies to escape summary judgment in FOIA cases based on evidence first submitted on motions for reconsideration"); *Lazaridis v. United States Dep't of Justice*, 713 F. Supp. 2d 64, 70 n.7 (D.D.C. 2010) (rejecting the plaintiff's *Maydak* waiver argument when resolution

---

[3] Defendants withdrew their Exemption 7(A) assertion after the other law enforcement agency withdrew their request for the FBI to protect the records.

of a motion to dismiss "d[id] not end the case").

In addition, it was made clear by the court in *Sciba v. Board of Governor of Fed. Reserve Sys*. that a fair reading of *Maydak* leads to the conclusion that any additional exemptions only need to be raised early enough so the district court will have adequate time to consider the applicability of the exemptions.   2005 WL 758260, *1, *1 (D.D.C. Apr. 1, 2005 .  The courts are actively following this reading of *Maydak*.  A recent example is found in the case *Accuracy in Media v. United States Dep't of Defense*, Case No. 1:14-cv-01589 (D.D.C. 2014).  In that case, the Department of Justice ("DOJ") sought permission to brief only the 7(A) Exemption, but also to argue subsequently, if the court did not find the 7(A) Exemption to be properly invoked, for the applicability of other underlying exemptions.  On June 23, 2015, the Honorable Emmet G. Sullivan granted the DOJ's bifurcation motion in a minute order, which reads in part:  "[T]he Court GRANTS the Department of Justice's unopposed motion for an Order permitting it to move for summary judgment based on the applicability of Exemption 7(A) to certain records without waiving any allegation that those records are exempt from release for other reasons. "  *See* Screen Print of Order, attached hereto as Exh. A.  Accordingly, the FBI has not waived its right to assert other exemptions.

## II.    Defendants' Vaughn Indexes and Declarations are Sufficient

In deciding whether information has been properly withheld under a FOIA exemption, a court may rely on indexes or declarations from the agency claiming the exemptions.  *See SafeCard Servs., Inc. v. Securities Exchange Comm'n*., 926 F.2d 1197, 1200 (D.C.Cir. 1991).  In addition, a court "may examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld under any

of the exemptions . . . ."  5 U.S.C. § 552(a)(4)(B); *Miccosukee Tribe of Indians of Florida v. United States Dep't of Justice*, 2015 WL 1649957, *1, *4 (S.D. Fla., Apr. 14, 2015).

There is no set formula for a *Vaughn* index or declaration; rather, it is the function of the index or declaration that is important.  *See Jones v. Federal Bureau of Investigation*, 41 F.3d 238, 242 (6th Cir. 1994).  The sufficiency of a *Vaughn* index or declaration is not determined by the length of its document descriptions.  *See Judicial Watch v. United States Food and Drug Admin.*, 449 F. 3d 141, 146 (D.C. Cir. 2006).  Rather, all that is "required is that the requestor and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." *Manna v. United States Dep't of Justice*, 832 F. Supp. 866, 873 (D.N.J. 1993).

This burden is met where reviews each page line-by-line and creates a *Vaughn* index or declaration that provides "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply."  *Miccosukee Tribe of Indians of Florida v. United States*, 516 F.3d 1235, 1258 (11th Cir. 2008) (citation omitted).  A *Vaughn* index that meets these criteria gets "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Serv.*, 926 F.2d at 1200 (citation omitted).  Categorical, or coded, *Vaughn* declarations or affidavits, such as the declarations filed in this litigation, have also been upheld by the courts.  *See Jones*, 41 F.3d at 242-43 (noting that categorical declarations or affidavits "have become accepted practice" and rejecting plaintiff's argument that "the FBI's affidavits in this case are inadequate . . . .").  Categorical affidavits or declarations are based

on a review of documents, rather than each page, by categories such as emails, 302s, memoranda.  The must then explain the particular nondisclosure rationales for each category and mark the exemption and category on the particular documents at issue, as was done here. *See Morley v. Central Intelligence Agency*, 508 F. 3d 1108, 1122 (D.C. Cir. 2007) (affirming agency's use of a categorical *Vaughn* affidavit because "codes and categories may be sufficiently particularized to carry the agency's burden of proof") (citation omitted).

The FBI's categorical *Vaughn* index provides (1) the type or function of the records within the investigative file, (2) the Bates location of the records, (3) a brief description of the withheld information, (4) the exemptions and use of each exemption by Bates page number and (5) the total number of pages reviewed for each document.  Additionally, for those pages withheld in full as duplicates, a separate category listing was provided for reference to the original pages.  Similarly, the FBI's categorical *Vaughn* declaration identifies each FOIA exemption claimed and explains in detail the rationale for asserting each of the exemptions.   The exemptions are clearly marked on the redacted documents, so the Court and plaintiffs can cross reference the description of the exemption and the rationale for invoking the redactions on the documents.  This satisfies the FBI's burden of presenting a clear explanation of why each redaction is appropriate.

Plaintiffs attempt to show that the codes on the documents are inconsistent, and thereby invalid, by referring to one page of the FBI's production, namely Gawker 12.  *See* Objections, p. 14.  According to plaintiffs, the FBI put several FOIA redaction codes on that page that plaintiffs believe are mutually exclusive because a person cannot be an FBI Special Agent or Support Personnel, a Third Party of Investigative Interest and a Third Party Merely

Mentioned.  *See id.*  The FBI made nine redactions on this page.  Normally, the FBI places each applicable code next to each redaction.  However, due to the time constraints in this case, the FBI did not do so here, so each code on the page may refer to one or more of those nine redactions.  Thus, plaintiffs' claim "mutually exclusive" argument fails.

Even if the FBI's categorical *Vaughn* index and declaration were not legally sufficient, the proper remedy is not, as plaintiffs claim, to order the production of all unredacted records.  Rather, the remedy is to order the FBI to provide an amended declaration and index or to submit unredacted copies of its documents to the Court for an *in camera* review.  *See Twist v. Ashcroft*, 329 F. Supp. 2d 50, 52 (D.D.C. 2004).  To facilitate an *in camera* review, the FBI has produced to the Court an unredacted copy of all its records, except for documents discussing grand jury material, which the FBI is legally prohibited from producing.  Also, the FBI has produced to the Court the redacted documents that plaintiffs' received.  When the Court reviews the records and the FBI's *Vaughn* index and declaration, it will be able to determine whether the exemptions are properly applied.

As for the EOUSA's Vaughn index and declaration, plaintiffs note that the Court found most of the entries in the index to be legally sufficient.  *See* Objections, p. 15.  The Court has stated that a few entries may not be sufficient, but the Court has received an unredacted copy of all documents for an *in camera* review.  That should be sufficient for the Court to determine whether the claimed exemptions are proper.

## III.    The Privacy Exemptions B6 and B7(C) Were Properly Invoked.

The Supreme Court has declared that the privacy interest in FOIA's privacy exemptions belong "to the individual, not the agency holding the information."  *United States*

*Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 763-65 (1989). The Supreme Court has also held that information need not be intimate or embarrassing to qualify for FOIA's privacy exemptions. *See United States Dep't of State v. Washington Post. Co.*, 456 U.S. 595, 600 (1982). Privacy interest cognizable under the FOIA are found to exist in personally identifying information such as a person's name, address, phone number, date of birth and social security number. *See id.*

The privacy interest in an individual's personally identifiable information is even stronger when such information appears in law enforcement records. *See SafeCard Serv.*, 926 F.2d 1197 (D.C. Cir. 1991). Indeed, the "strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity" has been repeatedly recognized. *Fitzgibbon v. Central Intelligence Agency*, 911 F.2d 755, 767 (D.C. Cir. 1990) (citations omitted). Accordingly, courts "have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants." *Touarsi v. United States Dep't of Justice*, 2015 WL 303637, at * 6 (citation omitted). The mere "mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Fitzgibbon*, 911 F.2d at 767. Thus, courts have regularly applied Exemption 7(C) to withhold references to individuals whose names appear in law enforcement files even if they were merely mentioned in the files. *See Shafizadeh v. Bureau of Alcohol, Tobacco and Firearm*, 2000 WL 1175586, *1, *2 (6th Cir. Aug. 10, 2000). Accordingly, the Supreme Court has strongly emphasized the importance of broadly protecting the interests of private citizens whose

names or identities are in records that the government "happens to be storing."  *United States Dep't of Justice v.Reporters Comm. for Freedom of the Press* , 489 U.S. 749, 780 (1989). The Supreme Court has further declared that "it should come as no surprise that in none of our cases construing the FOIA have we found it appropriate to order a Government agency to honor a FOIA request for information about a particular private citizen."  *Id*. at 774-775.

Plaintiffs simply ignore the vast number of cases that hold that the names and other personally identifiable information may, and should, be withheld.[4]  Rather, they make unsubstantiated claims that names and other information should be made available for various reasons.  With respect to law enforcement personnel, they argue, without legal support, that the FBI "redacted the already-public names of the attorneys and special agents in the United States Attorney's Office and FBI who handled the investigation even though they have no personal privacy interest in connection with the performance of their official duties on a routine matter involving no threat of harassment to them."  Objections, p. 16.

Plaintiffs are wrong.  The fact that law enforcement agents are public official does not eliminate their personal privacy interests under the FOIA.  *See Barouch v. United States Dep't of Justice*, 2015 WL 1505965, at *11 (D.D.C. March 31, 2015).  To the contrary, federal employees involved in law enforcement possess, by virtue of the nature of their official duties, protectable privacy interests in their identities.  *See Lahr v. National Transp. Safety Bd*., 569 F.3d 964, 977 (9th Cir. 2009).  Further, as stated by the Fourth Circuit, even if

---

[4] *See*, *e.g*., *Neely v. Federal Bureau of Investigation*, 208 F.3d, 461, 464-66 (4th Cir. 2000); *Blanton v. United States Dep't of Justice*, 64 F. App'x 787, 789 (D.C. Cir. 2003); *Schoenman v. Federal Bureau of Investigation*, 575 F. Supp. 2d 136, 159 (D.D.C. 2008); *Carp v. Internal Revenue Serv*., 2002 WL 373448, *1, *4-*5 (D.N.J. Jan. 28, 2002); *Coolman v. Internal Revenue Serv*., 1999 WL 675319, *1, *5 (W.D. Mo. July 12, 1999); *Schiffer v. Federal Bureau of Investigation*, 78 F.3d 1405, 1410 (9th Cir. 1996); *Fiduccia v. United States Dep't of Justice*, 185 F.3d 1035, 1047-48 (9th Cir. 1999).

the potential for harassment or annoyance would not threaten the life or physical safety:

> One who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties.  Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives.

*Nix v. United States*, 572 F.2d 998, 1006 (4th Cir. 1978).  Accordingly, the identities of law enforcement personnel referenced in investigatory files are routinely withheld.  *See Fabiano v. McIntyre*, 146 F. App'x 549, 550 (3rd Cir. 2005); *Neely*, 208 F.3d at 464.

Plaintiffs here also argue that several non-FBI names should be produced because they are publically known due to the media attention over the alleged sex tapes at issue, as well as due to the civil litigation between plaintiff and Bollea.  However, plaintiffs fail to provide even one legal decision in support for this position, and, frankly, plaintiff's analysis is wrong.  Even if personally identifiable information is publically available, such public availability does not defeat the privacy protection afforded to an individual by the FOIA.  *See Hunt v. Federal Bureau of Investigation*, 972 F.2d 286, 288 (9th Cir. 1992); *Kimberlin v. United States Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998).  To the contrary, courts have found that even if information is known to some in the public, or could be deduced by some in the public, it does not negate the person's privacy interest in preventing dissemination to the public at large.  *See Barnard v. United States Department of Homeland Security*, 598 F. Supp. 2d 1, 11 (D.D.C. 2009).[5]  One reason for protecting that privacy

---

[5] Many courts have rejected the exact argument plaintiff makes here and expressly found that the existence of publicity surrounding events does not eliminate an individual's privacy interest.  *See, e.g.*, *Mueller v. United States Dep't of the Air Force*, 63 F. Supp.2d 738, 743 (E.D. Va. 1999); *Edmonds v. Federal Bureau of Investigation*, 272 F. Supp. 2d 35, 53 (D.D.C. 2003); *Lawyer's Committee for Civil Rights v. United States Dep't of Treasury*, 2008 WL 4482855, *1, *21 (N.D. Cal. Sept. 30, 2008); *Schoenman*, 573 F. Supp.2d at 149;

interest is that, "[w]hile such publicity may well invade personal privacy, its accuracy is not established. . . .  [P]ublicity in the popular media cannot vitiate the FOIA privacy exemption.").  *Bast v. United States Dep't of Justice*, 665 F.2d 1251, 1255 (D.C. Cir. 1981).

Plaintiffs argue "the Agencies' counsel advanced the remarkable proposition that individuals can have a personal privacy interest in their identify even if it has already been made public . . . .That is not the law . . . ."  Objections, p. 16.  Contrary to plaintiffs' assertion, which is made without a single citation to any case law, the cases identified above are but a fraction of all cases that support defendants' position.  The case law establishes beyond debate that personally identifiable information contained in the FBI records is properly withheld under the FOIA even if already known by some in the public.

## IV.    Plaintiffs Fail to Demonstrate a Public Interest in Disclosing the Redacted and Withheld Information

Once a third-party's legitimate privacy interest has been established, a FOIA requestor may overcome such interest only by a wavier signed by the third-party or by showing that the public interest in disclosure outweighs the privacy interest of that party.  *See Pinson v. United States Dep't of Justice*, 61 F. Supp.3d 164, 183.  The requestor bears the burden of asserting a countervailing public interest in disclosure.  *See Fischer v. United States Dep't of Justice*, 596 F.Supp.2d 34, 46 (D.D.C. 2009).  The requestor must "(1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest."  *Id.* (citation omitted).  Moreover, the requestor must show that the

---

*Shores v. Federal Bureau of Investigation*, 185 F. Supp. 2d 77, 83 (D.D.C. 2002); *Thomas v. United States Dep't of Justice*, 531 F. Supp. 2d 102, 109 (D.D.C. 2008).

public interest is "one that focuses on the citizens' right to be informed about what their government is up to."  *Id*.  Plaintiff fails to meet this burden.

Plaintiffs' brief openly states that the records are necessary to advance Gawker's own interests in the underlying civil litigation between itself and Bollea: "In the short term, Gawker seeks unredacted documents to be able to demonstrate to the state court and the jury in its upcoming trial that Hogan's proffered version of events departs in material respects from what he and his counsel David Houston told the FBI and what that investigation reveals."  Objections, p. 18.  Thus, even though Gawker is a media company and provides information to the public, the interest involved here is purely private and pecuniary in nature, and Gawker admit as much when it states that the records are "essential [] to Gawker's defense of the $100 million law suit against it . . . ."  *Id*.  Indeed, plaintiff has requested that this litigation be adjudicated on an emergency basis, and this case has therefore moved much faster than standard FOIA litigation, precisely because plaintiff needs the documents for its defense in the underlying case.  However, courts have made clear that a FOIA requestor's private need for information in connection with litigation does not further any public interest. *See Miccosukee Tribe of Indians*, 2015 WL 1649957, at *14 (citation omitted); *Cappabianca v. Commissioner, United States Customs Serv*., 847 F. Supp. 1558, 1564 (M.D. Fla. 1994). Gawker's personal need for the documents and videos in defending itself in the underlying civil litigation, while such "personal interest is, no doubt, of paramount importance to [it], but it is irrelevant to the FOIA, which by law is sensitive only to a public interest."  *Moore v. United States*, 602 F. Supp. 2d 189, 194 (D.D.C. 2009).

Plaintiffs attempt to cloak Gawker's private interest by stating that disclosure will

serve the public interest in this "high profile case."  Objections, 18.  Further, plaintiffs state

that they are seeking to ensure that the FBI is not using the redactions "to shield the truth."

*Id*.  However, courts will not find any public interest if there is no evidence supporting

plaintiffs' allegations of misconduct.  *See Miccosukee Tribe of Indians*, 2015 WL 1649957,

at *14.  Instead, requesters claiming an interest in public oversight of an agency's actions

must "show compelling evidence that the agency denying the FOIA request is engaged in

illegal activity, and access to the [information] is necessary in order to confirm or refute that

evidence."  *Accuracy in Media, Inc., v. National Park Service*, 194 F.3d 120, 124 (D.C. Cir.

1999) (citation omitted).[6]

Plaintiffs state that they do not intend "to call into question the good faith of the FBI

agents . . . ," yet, shrewdly, they assert that "the public has a right to understand why the

Government elected to use its resources to protect a celebrity's fame and reputation."

Objections, p. 19-20.  Plaintiffs further assert, without any legal support, that the FBI "should

be required to explain under oath how perhaps the most significant audio content on the three

DVDs came to be dubbed over."  *Id.*, p. 9.[7]  Despite raising these aspersions, plaintiffs have

not set forth even a scintilla of evidence supporting their allegation that the FBI is or has

been engaged in any nefarious activities.  Accordingly, plaintiffs clearly cannot establish a

---

[6] Simply "[r]eciting FOIA's general goal of government oversight is insufficient to obtain the names of individuals contained in law enforcement records."  *Touarsi*, 2015 WL 303637 at *7; *see also Schrecker v. United States Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (holding that a general public interest in reviewing government activity is insufficient to justify revealing personal information).  Indeed, a "mere desire to review how an agency is doing its job . . . does not create a public interest sufficient to override the privacy interests protected by Exemption 7(C)."  *McCutchen v. United States Dep't of Health and Human Services*, 30 F.3d 183, 188 (D.C. Cir. 1994).
[7] Plaintiffs' request is absurd.  The FBI is under no obligation to explain its actions related to this case to plaintiffs – such information is merely sought to create sensationalism.  Nevertheless, the FBI has produced a fourth declaration by Hardy that explains the process the FBI went through to redact the three DVDs.  *See* Fourth Declaration of David M. Hardy, attached hereto as Exh. C, ¶¶ 8-11.

public interest.  This is especially true here because courts have held that where the request is for information related to a single investigation, like plaintiffs' request, the minimal amount of information that may be provided does not shed enough light on an agency's conduct to overcome a third-party's privacy interest in the records.  *See Hunt*, 972 F.2d at 289.

Finally, even if the Court were to find a public interest here that outweighs the privacy interests of the third-parties who have not signed any privacy waivers, plaintiffs' attempts to educate the public about the underlying state court case and about how the FBI operates would be in vain because plaintiffs may not distribute any of the records to the public because the records are subject to a protective order issued by the state court.  Thus, plaintiffs cannot establish any public interest here.

## V.     FOIA Exemptions 3, 5 and 7(E) Have Been Properly Invoked by the FBI and the EOUSA

With respect to Exemption 3, if a record "discusses evidence and witnesses presented before a grand jury, discusses investigative details in cases where a grand jury was convened, and includes an excerpt of grand jury testimony," then it is properly withheld or redacted pursuant to Exemption 3.  *Engberg v. United States Dep't of Justice*, 2011 WL 4502079, *1, *3 (M.D. Fla. Aug. 12, 2011), Report and Recommendation adopted in full at 2011 WL 4501388, *1, *1 (M.D. Fla. Sept. 27, 2011); *Sussman*, 494 F.3d at 1113.

Plaintiffs state that both the FBI and the EOUSA reference grand jury proceedings. *See* Objections, p. 21.  However, a review of Tricia Francis's second declaration clearly shows that the EOUSA has not asserted Exemption 3.  *See* Second Declaration For Tricia Francis ("Francis Second Decl.") [Doc. 37-2], ¶¶ 5, 14-17.  The FBI, however, has raised Exemption 3 claims.  *See* Third Declaration of David M. Hardy ("Hardy's Third Decl.")

[Doc. 37-1], ¶¶ 13-14.  Plaintiffs argue that the FBI has not established that the records

withheld pursuant to Exemption 3 are related to grand jury proceedings because "there is no

indication that there were a grand jury proceedings or that anyone testified before a grand

jury . . . ."  Objections, p. 21.  However, in his third *Vaughn* declaration, Hardy clearly states

that the "records responsive to Plaintiffs requests reflect that one or more federal grand juries

were empanelled in relation to the investigation(s) at issue in the records here . . . ."  Hardy's

Third Decl., ¶ 14.  Hardy signed the declaration under penalty of perjury, making his

statement proper evidence.  Hence, it is clear that grand jury proceedings took place during

the FBI's investigation.  Hardy further attested that

> information in the investigative files responsive to Plaintiffs
> requests reveals matters occurring before the grand jury/juries.
> Specifically, the investigative files contain information about the
> names of recipients of federal grand jury subpoenas; information
> identifying specific records subpoenaed by a federal grand jury;
> and copies of specific records provided to a federal grand jury in
> response to federal grand jury subpoenas.

*Id*.  Again, this declaration is as good as sworn testimony and shows that certain

information was withheld to protect material related to grand jury proceedings.  *See id*.  In

addition, the FBI has filed with the Court a categorical *Vaughn* index that provides the

following information: (1) a category number, (2) the bates numbers for the documents

withheld, (3) the date of some of the documents, (4) a description of the documents, (5) the

exemption asserted and (6) the number of pages that were reviewed.  When the *Vaughn* index

is read in conjunction with the FBI's categorical *Vaughn* declaration, it is clear that the vast

majority of records withheld as grand jury material were responses to various grand jury

subpoenas.  *See* FBI's Categorical Vaughn Index ("FBI's Vaughn Index") [Doc. 38-1], pp. 3-

4.  The only records that are not such responses are sealed court records.  *See id*.  These records are therefore protected by Exemption 3.

Exemption 5 exempts from public disclosure any "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Documents that fall under this exemption include documents protected by an attorney-client or work product privilege, or by the deliberate process or the executive privilege.

Plaintiffs argue that defendants have invoked Exemption 5 too broadly.  *See* Objections, pp. 22-23.  Plaintiffs take issue with documents 2 through 4 in the EOUSA's *Vaughn* index.  However, the description of document 2 is "Email chain between AUSA and FBI dated between March 2 and March 4, 2013.  Agent is seeking the AUSA's guidance regarding how to respond to an inquiry regarding the investigation.  Contains handwritten notes by the AUSA regarding steps the AUSA had taken to resolve the issue."  Just because that document was prepared after the USAO Tampa decided not to bring a prosecution, but before this suit was filed, does not mean that the attorney work product cannot attach to the document.  Furthermore, the EOUSA also asserted Exemption 7(C) to that particular document "to protect the names and other identifying information of third parties, witnesses, government personnel who assisted members of the investigative team, and law enforcement personnel whose names appear in these documents, and who provided information to the investigation team . . . ."  EOUSA's *Vaughn* Index, Attachment A to Francis Second Decl. ("EOUSA's *Vaughn* Index") [Doc. 37-2], p. 8 of 20.  The document was properly withheld.

Document 3 is a single page of handwritten notes, dated May 13, 2014, which

contains notes regarding the grand jury investigation that contains the AUSA's thoughts that cannot be disclosed.  *See id.*, pp. 8-9 of 20.  The note also contains the name and telephone number of a third-party.  *See id.*  Those are clearly the types of documents that are protected by the work-product privilege, and Exemption 5 is applicable.  In addition, because it contains personally identifiable information, the document is protected by Exemption 7(C).  As to document 4, it is also a single page of handwritten notes regarding the grand jury investigation, and it was made as a result of a phone call between an AUSA and someone in connection with the FBI's investigation.  *See id.*, pp. 3-4 of 20.  As with Document 3, this is protected by the work-product privilege, and an assertion of Exemption 5 protection is therefore appropriate.  The personally identifiable information in the note assures that Exemption 7(C) also applies.

Plaintiffs argue – without any legal support – that document 5 is not privileged simply because an "outside source" is part of an email chain.  *See* Objections, pp. 22-23.  While that may be true regarding the attorney-client privilege, that is not so with respect to the deliberative process privilege.  A document falls within this privilege if it is both predecisional and deliberative.  *See Moye, O'Brien, O'Rourke, Hogan, & Pickert v. National R.R. Passenger Corp.*, 376 F.3d 1270, 1277 (11th Cir. 2004).  A document is predecisional if it is created to help a decision-maker in the agency to make a decision.  *See id.*  A document is deliberative if "disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and, thereby, undermine the agency's ability to perform its functions."  *Id.*  The goal of the deliberative process privilege is to protect the government agency's decision-making process because

public officials would hesitate to candidly communicate among themselves without this privilege, as their comments could potentially be made public.  *See Engberg*, 2011 WL 4502079, at *3 (citations omitted).  Whether an "outside source" of information is part of an email chain is not an element of the deliberative process privilege.  Document 5 is withheld "because it is a "pre-decisional communication[] among government personnel, specifically between the AUSA and a supervisory AUSA, which, if disclosed, would jeopardize the candid considerations which are necessary for candid decision making in the Government." *Id.*, p. 4.  As plaintiffs note, factual material may be produced if segregable.  *See* Objections, p. 23.  But, Francis states that no information in the documents withheld in full contain any segregeable material.  *See* Francis Second Decl., ¶ 21.  In addition, this document is protected under Exemption 7(C) because it contains the names of third-parties.

Finally, plaintiffs argue that the work-product privilege does not attach to Document 12 because it involves communication with plaintiffs' attorney.  However, the description of the document is that "[t]he first page of the document contains the [grand jury] AUSA's identity and notes on discussions with members of law enforcement about the FOIA request." *See* EOUSA's Vaughn Index, p. 13 of 20.  Such information is protected by the work-product privilege and Exemption 5 is therefore applicable.  In addition, Exemption 7(C) protects the personally identifiable information contained in the document.

With respect to Exemption 7(E), courts have construed it to encompass the withholding of a wide range of law enforcement techniques and procedures, including surveillance tactics and methods.  *See American Civil Liberties Union of Mich. v. Federal Bureau of Investigation*, 2012 WL 4513626, *1, *10-*11 (E.D. Mich. Sept. 30, 2012).

Courts have found that the FOIA sets a "relatively low bar" for withholding under Exemption 7(E). *See Blackwell v. Federal Bureau of Investigation*, 646 F.3d 37, 42 (D.C. Cir. 2011). In asserting Exemption 7(E), courts have permitted agencies to describe law enforcement techniques in only general terms, where necessary, while withholding the full details. *See Judicial Watch, Inc. v. United States Dep't of State*, 650 F.Supp.2d 28, 34 n.6 (D.D.C. 2009). The FBI's declaration shows that, with respect to Exemption 7(E), the FBI met its burden of demonstrating "logically how the release of the requested information might create of risk of circumvention of the law." *Blackwell*, 646 F.3d at 42. Indeed, over 4 pages of the Hardy declaration are devoted towards explaining this harm. *See* Hardy's Third Decl., ¶¶ 36-42.

Finally, if there are concerns about defendants' invocation of any exemptions, as noted above, the Court may conduct an *in camera* review of the documents to determine the appropriateness of the of defendants' claims of exemption. *See PHE, Inc. v. United States Dep't of Justice*, 983 F.2d 248, 252 (D.C. Cir. 1993).

## VI.    Miscellaneous Issues

Plaintiffs state that the three pages that the EOUSA are withholding in part seem to not appear on its *Vaughn* index. *See* Objections, pp. 2-3. Through oversight, those three pages were not included on the EOUSA's *Vaughn* index. *See* Third Declaration For Tricia Francis, attached hereto as Exh. B, ¶ 1. The EOUSA will file separately an amended *Vaughn* index. *See id*. According to plaintiffs, there is also a discrepancy regarding the pages that the EOUSA withheld in full. *See* Objections, p. 3. Initially, the EOUSA said that it withheld 59 pages in full, whereas on June 26, 2015, "the EOUSA only accounted for 54 pages." Objections, p. 3. When the EOUSA reviewed the 59 pages again, it determined that only 54

pages were responsive to plaintiffs' FOIA request.  *See* Exh. B, ¶¶ 2-3.   Two pages were

simply coversheets prepared by the U.S. Attorney's Office for the Middle District of Florida,

Tampa Division, and there were also three duplicate pages.  *See id*.

Plaintiffs also contend that there is confusion regarding how many pages the FBI has

produced.  Objections, pp. 3-5.  The FBI has produced 1040 pages from its files and 138

pages referred by the EOUSA.  *See* Exh. C, ¶ 6.  Finally, the FBI has obtained additional

documents that it had loaned to other law enforcement agencies.  Those documents are being

processed and will be produced no later than August 14, 2015.  *See id*., ¶ 7.

Wherefore, defendants respectfully request that this Court deny plaintiffs' Objections.

**A. LEE BENTLEY, III**
United States Attorney

Respectfully submitted,

By:   *s/ E. Kenneth Stegeby*
**E. KENNETH STEGEBY**
Esquire Assistant U.S. Attorney
USAO No. 112
400 North Tampa Street, Ste. 3200
Tampa, Florida 33602
Telephone:  (813) 274-6087
Facsimile:   (813) 274-6198
Email: kenneth.stegeby@usdoj.gov
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

| | | |
|---|---|---|
| Alia L. Smith | Patrick Kabat | Seth D. Berlin |
| Gregg Darrow Thomas | Rachel E. Fugate | |

*s/E. Kenneth Stegeby*

E. Kenneth Stegeby