# **EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| GAWKER MEDIA, LLC et al, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE FEDERAL BUREAU OF )<br>INVESTIGATION and THE EXECUTIVE )<br>OFFICE OF UNITED STATES )<br>ATTORNEYS, )<br>)<br>Defendant. )<br>_____) | Case No. 8:15-CV-01202-SCB-EAJ |

## FOURTH DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1) I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2) In my official capacity as Section Chief of RIDS, I supervise approximately 221

1

employees who staff a total of ten (10) Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of 2009; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to Plaintiff's request for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of Plaintiff's FOIA requests seeking records pertaining to an investigation concerning recording(s) of Terry Bollea aka "Hulk Hogan" engaged in sexual relations with Heather Clem.

(4)     This declaration incorporates by reference my declarations dated June 8, 2015, June 26, 2015, and June 30, 2015, hereinafter "First Hardy Declaration," "Second Hardy Declaration," and "Third Hardy Declaration," respectively. (Dkt. Nos. 23-1, 35-1, and 37-1). The First Hardy Declaration provided an administrative history of the Plaintiff's FOIA request, a general description of the FBI's recordkeeping system, and a description of the FBI's search efforts in locating responsive records. The Second Hardy Declaration incorporated the First Hardy

2

Declaration, and detailed the FBI's continuing efforts to meet the deadlines set forth in the June 24, 2015 briefing schedule. The Third Hardy Declaration incorporated the First Hardy Declaration and the Second Hardy Declaration, and provided justifications for withholding of information in full or in part from the records responsive to Plaintiff's request pursuant to FOIA Exemptions 3, 5, 6, 7(C), 7(E), 5 U.S.C. §§ 552 (b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

(5) In response to Plaintiff's Objections to Defendant Agencies' FOIA Responses, *Vaughn* Indexes, and Declarations, hereinafter "Objections", of July 24, 2015 (Dkt. No. 54), the FBI submits this declaration to address issues Plaintiff raised regarding the alleged missing or unaccounted-for FBI responsive records and the issues the FBI encountered when it initially processed the video DVDs.

### Alleged Missing or Unaccounted-For FBI Responsive Records Discussed in Paragraph C of Objections

(6) Plaintiff claims that given the FBI's initial estimated page count of 1,168 pages and the 138 pages referred by the EOUSA, it should have accounted for 1,306 pages in its June 30, 2015 release to Plaintiff. By letter dated January 29, 2015, the FBI provided the initial estimated page count of 1,168 responsive pages to Plaintiff based on a preliminary review of the documents it possessed at the time (Dkt. No. 23-1). This notification was only an estimate of the number of potentially responsive pages. Personnel from RIDS conducted a further review and processing of the responsive pages per the Court's June 24, 2015 Order, hereinafter "Order", (Dkt. No. 36) and determined that 1,040 pages of FBI documents were responsive to Plaintiff's request. With the 138 pages referred by EOUSA, the FBI processed and accounted for 1,178 total pages in its June

3

30, 2015 release to Plaintiff.

(7) On or about August 5, 2015, the FBI Tampa Field Division received documents loaned to another law enforcement agency related to the FBI's extortion investigation that is the subject of Plaintiff's FOIA request. Upon review of these records and plaintiff's allegations, the FBI reexamined the investigative file and discovered that some of the physical sub-files processed pursuant to the Court's Order were incomplete, and there could be additional responsive records not originally accounted for in the FBI's production of June 30, 2015. Concerned with this potential discrepancy, I directed an audit of the responsive file to ensure the FBI has processed all responsive records in the pertinent FBI file. RIDS personnel are currently conducting a thorough review of the responsive file to ensure it identifies and accounts for any and all responsive records that were not previously produced. Any additional material identified as a result of this file audit will be processed pursuant to the FOIA and produced to the plaintiff on or before Friday, August 14, 2015.

### Issues Surrounding the FBI's Production of the Three DVDs Depicting Sexual Encounters Between Hogan and Heather Clem in Paragraph D of Objections

(8) Plaintiff references issues with the three DVDs mentioned in the Second Hardy Declaration that the FBI processed and produced to the Court via the Assistant United States Attorney ("AUSA") on June 29, 2015. Plaintiff specifically cites issues with only the second and third DVDs, but no issues with the first DVD. One DVD (hereinafter "DVD 1") "fully corresponded to the transcript (in both audio and video)" (Dkt. No. 54 at D ¶ a). The second DVD, (hereinafter "DVD 2"), "matched the audio and video for the first fifteen minutes; then for most of the balance of the DVD, the video continued to follow the transcript but the audio from the first

4

DVD was dubbed onto the video over its actual audio, including to remove key audio content." (Dkt. No. 54 at D ¶ b) The third DVD, (hereinafter "DVD 3"), "showed no people and no activity and therefore did not correspond to the transcript." (Dkt. No. 54 at D ¶ c)

(9) As stated in the Third Hardy Declaration, the FBI quickly processed and provided the three responsive video DVDs to the United States Attorney's Office for the Middle District of Florida for delivery to the state court Special Discovery Magistrate Hon. James R. Case on June 29, 2015. To comply with the Court's very short production deadline, the FBI condensed a process of at least several days into several hours; therefore, RIDS was unable to conduct its usual quality control reviews of the video recordings prior to final release. As a result and as subsequently brought to my attention, processing issues were indentified with this initial rapid processing and corrected as discussed below. As detailed in the Second Hardy Declaration, there is a more lengthy procedure for processing, reviewing, and producing audio material vis a' vis records in a document format. The procedure for processing, reviewing, and producing video material is identical to audio material. The specific issues with the initial processing of the two video DVDs are as follows.

(10) DVD 2 – The FBI processed this DVD very quickly in response to the Order. When the FBI started to process the video material on this DVD, it inadvertently placed the audio track from the first DVD onto the video track of this second DVD. After identifying this error, the FBI had to utilize software to re-merge the correct audio and video tracks for this DVD prior to reprocessing it. The FBI subsequently reprocessed this DVD with the correct audio track and produced it to the United States Attorney's Office for the Middle District of Florida (hereinafter

5

"USAO-MDFL") for delivery to the state court Special Discovery Magistrate Hon. James R. Case on July 13, 2015. (Dkt. No. 51)

(11) DVD 3 – The DVD provided to RIDS contained a corrupted track making it impossible to retrieve the entire video material from the DVD initially to respond to the short deadline with the equipment available at RIDS in Winchester, VA; therefore, the FBI produced the approximately 1 minute and 14 second video clip from DVD 3 that it could recover at the time. In response to issues Plaintiff raised to the AUSA, the FBI first attempted to use software located at another FBI location to repair the corrupted disk and process any video material it could recover. While the FBI attempted to repair its copy of DVD 3, on approximately July 8, 2015, the AUSA notified the FBI that a copy was located at the USAO-MDL office and forwarded it to the FBI. The FBI confirmed that this copy did not have the corrupted track, and it processed, reviewed, and provided DVD 3 along with DVD 2.

## CONCLUSION

(12) As detailed above, the FBI initially provided the Plaintiff with an estimated page count based on a preliminary review of the documents that the FBI possessed at the time. In response to the Order, the FBI processed and produced approximately 1,040 pages of responsive FBI documents with the 138 pages referred from EOUSA for a total page count of 1,178 on June 30, 2015. Secondly, the FBI received documents it loaned to another law enforcement agency and will determine if these documents are duplicative of the documents it released to Plaintiff. The FBI will also process any documents not previously released to Plaintiff pursuant to the FOIA and produce them to Plaintiff by August 14, 2015. Lastly, the FBI diligently processed the DVDs in

6

rapid fashion to comply with the production Order; however, due to the very short deadline and the labor intensive nature of processing and reviewing the video material, processing errors occurred. The identified errors were immediately corrected.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of August, 2015.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia