## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GAWKER MEDIA, LLC and
GREGG D. THOMAS,

      Plaintiffs,

v.                                    Case No. 8:15-cv-01202-SCB-EAJ

THE FEDERAL BUREAU OF
INVESTIGATION and THE
EXECUTIVE OFFICE OF
UNITED STATES ATTORNEYS,

      Defendants.
_____/

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, the Federal Bureau of Investigation ("FBI") and the Executive Office of United States Attorneys ("EOUSA"), respectfully move the Court for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule") 56. In support of their motion, defendants state as follows:

### MEMORANDUM IN SUPPORT

## I.    UNDISPUTED FACTS

1.    On November 7, 2014, Gawker submitted a Freedom of Information Act ("FOIA") request to the FBI and the EOUSA seeking documents, audio recordings and video footage related to an investigation conducted by the FBI in the fall of 2012. *See* Complaint [Doc. No. 1], ¶ 18.

2.      The investigation concerned a video tape showing Terry Gene Bollea engaging in a sexual affair with Heather Clem, who at the time was the wife of a local radio personality, and the FOIA request included privacy waivers for Mr. Bollea and his attorneys, as well as for Ms. Clem.  *See id.*, ¶¶ 2, 13, 15, 18.

3.      On November 17, 2014, the FBI acknowledged receipt of Gawker's new FOIA request, and, on January 29, 2015, the FBI "informed Gawker that it had located 1,168 pages of responsive records and two CDs containing responsive video material."  *Id.*, ¶ 19.

4.      In its January 29, 2015 letter, the FBI asked Gawker if it would accept the charges that the FBI would incur in processing the records requested by Gawker.  *See* Defendants' Response to Plaintiffs' Dispositive Motion for Summary Judgment and Memorandum of Law ("Response to MSJ"), Exhibit A [Doc. 23-1], pp. FBI030-31.

5.      On February 3, 2015, Gawker responded and agreed to pay up to $500.00. *See* Complaint, ¶ 20.

6.      On or before February 4, 2015, the FBI sent a letter informing Gawker that the responsive records were exempt from production pursuant to FOIA Exemption 7(A) because they "are law enforcement records; there is a pending or prospective law enforcement proceeding relevant to these responsive records, and release of the information in these responsive records could reasonably be expected to interfere with enforcement proceedings."  Response to MSJ, Exh. G, p. FBI038; *Complaint*, ¶ 21.

7.      The FBI did not produce any records.

8.      One month later, on March 4, 2015, Gawker filed an administrative appeal with the Office of Information and Policy ("OIP").  *See* Response to MSJ, ¶ 12.

9.      According to Gawker, it submitted "substantial evidence that there was no ongoing or prospective investigation . . . ," and claimed that there could be no interference with a non-existing investigation.  Complaint, ¶ 22.

10.     However, while Gawker is correct that the FBI's 2012 investigation of the circumstances surrounding the video tape was no longer active, the FBI learned that another law enforcement agency had opened an investigation related to the video tape.  *See* Response to MSJ, ¶¶ 11, 28.

11.     By letter dated March 18, 2015, the Office of Information Policy ("OIP") acknowledged receipt of plaintiffs appeal and assigned it appeal number AP-2015-02411. *See id.*, ¶13.

12.     On May 6, 2015, the OIP affirmed the FBI's determination and also informed Gawker that it was denying Gawker's request that the OIP itemize and justify each item of the information withheld because Gawker was not entitled to that at the administrative stage. *See id.*, ¶ 14.

13.     In addition, the OIP advised plaintiff of its right to file a lawsuit in the federal district court if it was dissatisfied with its action on the appeal.  *See id.*

14.     On May 19, 2015, plaintiffs filed their complaint in the present action.  *See id.*, ¶ 15.

## II.     ARGUMENT

### a.      Legal Standards

Under Rule 56(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), summary judgment is proper "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). Thus, a motion for summary judgment is properly granted "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986) (citation omitted). It is not sufficient for a plaintiff to show a factual dispute between

the parties. Rather, to survive summary judgment, a plaintiff must show the dispute is "both

genuine and material." *Miccosukee Tribe of Indians of Florida v. United States*, 516 F.3d

1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48

(1986)). In short, plaintiff must show that a factual dispute would "affect the outcome of the

suit under the governing law," and that "a reasonable trier of fact could return judgment for

the non-moving party." *Id*.

An agency has the burden of proving it properly invoked the FOIA exemptions when

it decided to withhold information. *See Miccosukee Tribe of Indians of Florida v. United*

*States ("Miccosukee Tribe")*, 516 F.3d at 1258; *Ely v. Federal Bureau of Investigation*, 781

F.2d 1487, 1489-90 (11th Cir. 1986). The Court must view the facts in the light most

favorable to non-movants. *See Mudd v. United States Army*, 2007 WL 4358262, *1, *4

(M.D. Fla. Dec. 10, 2007) (citation omitted). However, the government may meet its

summary judgment burden in a FOIA case by submitting "declarations supplying facts

indicating that the agency has conducted a thorough search and giving reasonably detailed

explanations why any withheld documents fall within an exemption . . . ." *Carney v. United*

*States Dep't of Justice*, 19 F.3d 807, 812 (2nd Cir. 1994). In addition to declarations, an

agency may establish an adequate factual basis for summary judgment through a *Vaughn* index or an *in camera* review.  *See Miscavige v. Internal Revenue Service*, 2 F.3d 366, 368 (11th Cir. 1993); *see also Miccosukee Tribe*, 516 F.3d at 1259. Indeed, "[a]n adequate factual basis can be established in this Circuit by affidavits alone, in lieu of a *Vaughn* Index or an *in camera* review."  *Miccosukee Tribe*, 516 F.3d at 1259; *see also Miscavige*, 2 F.3d at 368 (holding that in certain cases, affidavits can be sufficient for summary judgment purposes in a FOIA case if they provide an accurate basis for a decision).  Furthermore, "[a]ffidavits submitted by an agency 'are accorded a presumption of good faith.'"  *Carney*, 19 F.3d at 812 (citation omitted).  The decision to claim nondisclosure by a law enforcement agency "under Exemption 7 is entitled to deference."  *Bilderbeek v. United States Dept. of Justice*, 2010 WL 1049618, *1, *3 (M.D. Fla. Mar. 22, 2010) (citation omitted).

### b.   The FBI has not Waived its Right to Assert FOIA Exemptions Other Than 7(A)

Plaintiffs argue that the FBI has waived its right to withhold or redact records based on FOIA exemptions other than 7(A).  *See* Plaintiffs' Objection to Defendant Agencies' FOIA Responses, *Vaughn* Indexes, and Declarations ("Objections") [Doc. 54], pp. 9-11. Objections, pp. 9-11.  In support of their position, plaintiffs mainly cite to *Ray v. United States Dep't of Justice*, 908 F.2d 1549 (11th Cir. 1990) and *Maydak v. United States Dep't of Justice*, 218 F.3d 760 (D.C. Cir. 2000).  However, as further explained in Defendants' Response in Opposition to Plaintiffs' Objections ("Response to Objections") [Doc. 61] , pp. 1-8, those cases are distinguishable from the present case.  In both *Ray* and *Maydak*, the federal agencies claimed new and additional exemptions after great delays.  In *Ray*, the delay was almost two years, and in *Maydak*, the delay was even longer, albeit due to the

procedural posture of the case.  Here, the FBI preserved its rights by notifying the Court and plaintiffs, within weeks of the filing of the complaint, that exemptions other than Exemption 7(A) may apply.  *See Lawrence v. United States Internal Revenue Serv.*, 355 F. Supp.2d 1307, 1310 (M.D. Fla. 2004).  Further, in *Ray*, unlike in *Lawrence* and in the present case, the federal agency notified the court and plaintiff of the new exemptions only after the court had already entered an unfavorable judgment against the agency, effectively terminating the case.  Here, the FBI has not waived its right to assert additional exemptions because it has asserted all additional exemptions at once, rather than one-by-one, without delay and before the Court has entered judgment.

### c.    Defendants' *Vaughn* Indexes and Declarations are Sufficient

Plaintiffs claim that defendants' Vaughn indexes and declarations are incomplete. *See* Objections, pp. 11-15.  However, plaintiffs' arguments are unpersuasive, as explained in defendants' response to plaintiffs' objections.  *See* Response to Objections, pp. 8-11.  In deciding whether information has been properly withheld under a FOIA exemption, a court may rely on indexes or declarations from the agency claiming the exemptions.  *See SafeCard Servs., Inc. v. Securities Exchange Comm'n.*, 926 F.2d 1197, 1200 (D.C.Cir. 1991).  In addition, a court "may examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions . . . ."  5 U.S.C. § 552(a)(4)(B); *Miccosukee Tribe of Indians of Florida v. United States Dep't of Justice*, 2015 WL 1649957, *1, *4 (S.D. Fla., Apr. 14, 2015).

An index or declaration satisfies the standard set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), if it specifically identifies the documents withheld and the redactions

made and explains why each particular redaction or withholding falls within the claimed exemptions.  *See Miccosukee Tribe*, 516 F.3d at 1259 (citing *Vaughn*, 484 F.2d at 827).  Of course, an index or declaration need not provide so much information that the requestor can surmise the content of the withheld information.  A *Vaughn* index that meets these criteria gets "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  *SafeCard Serv.*, 926 F.2d at 1200 (citation omitted).  EOUSA's index does satisfy *Vaughn*.

Categorical, or coded, *Vaughn* indexes or declarations, such as the index and declaration filed by the FBI in this litigation, have also been upheld by the courts.  *See Bilderbeek* , 2010 WL 1049618, at *5.  Categorical indexes or declarations are based on a review on a document-by-document basis, by categories such as emails, 302s or internal memoranda, rather than a review of each page, line-by-line.  The agency must then explain the particular nondisclosure rationales for each category and mark the exemption and category on the particular documents at issue, as was done here.  *See Morley v. Central Intelligence Agency*, 508 F. 3d 1108, 1122 (D.C. Cir. 2007) (affirming agency's use of a categorical *Vaughn* affidavit because "codes and categories may be sufficiently particularized to carry the agency's burden of proof") (citation omitted).

The FBI's categorical *Vaughn* index provides (1) the type or function of the records within the investigative file, (2) the Bates location of the records, (3) a brief description of the withheld information, (4) the exemptions and use of each exemption by Bates page number and (5) the total number of pages reviewed for each document.  *See* FBI's Categorical Vaughn Index ("FBI's Vaughn Index") [Doc. 38-1], pp. 1.  Similarly, the FBI's

7

categorical *Vaughn* declaration identifies each FOIA exemption claimed and explains the rationale for asserting each of the exemptions.  *See generally*, FBI's Categorical Vaughn Declaration ("FBI's Vaughn Decl.") [Doc. 37-1].  The exemptions are clearly marked on the redacted documents, so the Court and plaintiffs can cross reference the descriptions of the exemptions and the rationale for invoking the redactions on the documents.  This satisfies the FBI's burden of presenting a sufficiently clear explanation for each redaction.

Even if the FBI's categorical index and declaration were not legally sufficient, the proper remedy is not, as plaintiffs claim, to order the wholesale production of all unredacted records.  Rather, the proper remedy would be to order the FBI to provide an amended index or declaration or to submit unredacted copies of its documents to the Court for an *in camera* review, as has been done here.  *See Twist v. Ashcroft*, 329 F. Supp. 2d 50, 52 (D.D.C. 2004).

As for the EOUSA's Vaughn index and declaration, plaintiffs note that the Court found most of the entries in the index to be legally sufficient.  *See* Objections, p. 15.  The Court has stated that a few entries may be questionable, but the Court has received an unredacted copy of all documents for an *in camera* review.  That should be sufficient for the Court to determine whether the claimed exemptions are proper.

     **d.**     **The Privacy Exemptions B6 and B7(C) Were Properly Invoked**

Plaintiffs also argue that defendants have improperly invoked privacy Exemptions B6 and B7(C).  *See* Objections, pp. 15-18.  However, plaintiffs' reasoning is flawed, as shown in defendants' response.  *See* Response to Objections, pp. 11-15.  The Supreme Court has held that records need not be intimate or embarrassing to qualify for FOIA's privacy exemptions. *See United States Dep't of State v. Washington Post. Co.*, 456 U.S. 595, 600 (1982).  Privacy

interest cognizable under the FOIA are found to exist in personally identifying information such as a person's name, address, phone number, date of birth and social security number. *See id*.  The privacy interest of a third-party is even stronger when such information appears in law enforcement records.  *See SafeCard Serv.*, 926 F.2d 1197 (D.C. Cir. 1991).  The mere "mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Fitzgibbon v. Central Intelligence Agency*, 911 F.2d 755, 767 (D.C. Cir. 1990).

Thus, courts have regularly applied Exemption 7(C) to withhold references to individuals whose names appear in law enforcement files even if they were merely mentioned in the files.  *See Shafizadeh v. Bureau of Alcohol, Tobacco and Firearm*, 2000 WL 1175586, *1, *2 (6th Cir. Aug. 10, 2000).  The Supreme Court has declared that "it should come as no surprise that in none of our cases construing the FOIA have we found it appropriate to order a Government agency to honor a FOIA request for information about a particular private citizen." *United States Dep't of Justice v.Reporters Comm. for Freedom of the Press* , 489 U.S. 749, 774-75 (1989).[1]

Plaintiffs here also argue that the names should be produced because they are publically known.  *See* Objections 17-18.  However, plaintiffs do not provide a single legal

---

[1] Plaintiffs simply ignore the vast number of cases that hold that the names and other personally identifiable information may, and should, be withheld.  *See*, *e.g.*, *Neely v. Federal Bureau of Investigation*, 208 F.3d, 461, 464-66 (4th Cir. 2000); *Blanton v. United States Dep't of Justice*, 64 F. App'x 787, 789 (D.C. Cir. 2003); *Schoenman v. Federal Bureau of Investigation*, 575 F. Supp. 2d 136, 159 (D.D.C. 2008); *Carp v. Internal Revenue Serv.*, 2002 WL 373448, *1, *4-*5 (D.N.J. Jan. 28, 2002); *Coolman v. Internal Revenue Serv.*, 1999 WL 675319, *1, *5 (W.D. Mo. July 12, 1999); *Schiffer v. Federal Bureau of Investigation*, 78 F.3d 1405, 1410 (9th Cir. 1996); *Fiduccia v. United States Dep't of Justice*, 185 F.3d 1035, 1047-48 (9th Cir. 1999).

decision in support for their position.  As explained in its response, defendants show that even if personally identifiable information is publically available, such public availability does not defeat the privacy protection afforded to an individual by the FOIA.  *See* Response to Objections, pp. 14-15; *Hunt v. Federal Bureau of Investigation*, 972 F.2d 286, 288 (9th Cir. 1992); *Kimberlin v. United States Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998).  To the contrary, courts have found that even if information is known to some in the public, or could be deduced by some in the public, it does not negate the person's privacy interest in preventing dissemination to the public at large.  *See Barnard v. United States Department of Homeland Security*, 598 F. Supp. 2d 1, 11 (D.D.C. 2009).[2]  The reason for continuing to protect that privacy interest is that, "[w]hile such publicity may well invade personal privacy, its accuracy is not established. . . .  [P]ublicity in the popular media cannot vitiate the FOIA privacy exemption.").  *Bast v. United States Dep't of Justice*, 665 F.2d 1251, 1255 (D.C. Cir. 1981).  The case law establishes beyond debate that personally identifiable information contained in the FBI's records is properly withheld under the FOIA even if already known by some in the public.

    **e.**    **Plaintiffs Fail to Demonstrate a Public Interest in Disclosing the Redacted and Withheld Information**

The purpose of the FOIA is to ensure that the administrative process may be subject

---

[2] Many courts have rejected the exact arguments plaintiffs make here and expressly found that the existence of publicity surrounding events does not eliminate an individual's privacy interest.  *See, e.g.*, *Mueller v. United States Dep't of the Air Force*, 63 F. Supp.2d 738, 743 (E.D. Va. 1999); *Edmonds v. Federal Bureau of Investigation*, 272 F. Supp. 2d 35, 53 (D.D.C. 2003); *Lawyer's Committee for Civil Rights v. United States Dep't of Treasury*, 2008 WL 4482855, *1, *21 (N.D. Cal. Sept. 30, 2008); *Schoenman*, 573 F. Supp.2d at 149; *Shores v. Federal Bureau of Investigation*, 185 F. Supp. 2d 77, 83 (D.D.C. 2002); *Thomas v. United States Dep't of Justice*, 531 F. Supp. 2d 102, 109 (D.D.C. 2008).

to scrutiny of the press and the general public.  *See Roberts v. Internal Revenue Serv.*, 2014 WL 1724383, *1, *3 (M.D. Fla. Mar. 17, 2014) (citing *Federal Labor Relations Auth. v. United States Dep't of Defense*, 977 F.2d 545, 547 (11th Cir. 1992) (noting that "FOIA' s central purpose is to ensure that the Government's activities be open to the sharp eye of public scrutiny.")).  The legal analysis in *Cappabianca v. Commissioner, United States Customs Service* should apply here as well.  847 F.Supp. 1558 (M.D. Fla. 1994).  In *Cappabianca*, the Court held that a "private interest in obtaining materials for personal reasons plays no part in the required balancing of interests [of public v. private interests]. Indeed, several courts have noted that FOIA is no substitute for discovery practice, nor do private needs for documents affect determination of whether disclosure is warranted."  *Id*., at 1564 (citing *L & C Marine Transport, LTD. v. United States*, 740 F.2d 919 (11th Cir. 1984); *Nix v. United States*, 572 F.2d 998 (4th Cir. 1978)).

Once a third-party's legitimate privacy interest has been established, a FOIA requestor may overcome such interest only by a wavier signed by the third-party or by showing that the public interest in disclosure outweighs the privacy interest of that party.  *See Pinson v. United States Dep't of Justice*, 61 F. Supp.3d 164, 183.  The requestor must "(1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest."  *Fischer v. United States Dep't of Justice*, 596 F.Supp.2d 34, 46 (D.D.C. 2009) (citation omitted).  According to plaintiffs, there is an enormous public interest in disclosure of the unredacted records that outweighs the privacy interest of the third-parties in the records.  *See* Objections, pp. 18-20.  However, plaintiffs fail to meet this

burden and do not show how the public interest outweighs the third-parties' privacy interests.

Even though Gawker is a media company and provides information to the public, the interest involved here is purely private and pecuniary in nature; Gawker admit as much when it states that the records are "essential [] to Gawker's defense of the $100 million law suit against it . . . ." Objections, p. 18. However, courts have made clear that a FOIA requestor's private need for information in connection with litigation does not further any public interest. *See Miccosukee Tribe of Indians*, 2015 WL 1649957, at \*14 (citation omitted); *Cappabianca v. Commissioner, United States Customs Serv.*, 847 F. Supp. 1558, 1564 (M.D. Fla. 1994). Plaintiffs attempt to cloak Gawker's private interest by stating that disclosure will serve the public interest in this "high profile case." Objections, 18. Further, plaintiffs state that they are seeking to ensure that the FBI is not using the FOIA "to shield the truth." *Id*. However, courts will not find any public interest if there is no evidence supporting plaintiffs' allegations of misconduct. *See Miccosukee Tribe of Indians*, 2015 WL 1649957, at \*14. Instead, requesters claiming an interest in public oversight of an agency's actions must "show compelling evidence that the agency denying the FOIA request is engaged in illegal activity, and access to the [requested information] is necessary in order to confirm or refute that evidence." *Accuracy in Media, Inc., v. National Park Service*, 194 F.3d 120, 124 (D.C. Cir. 1999) (citation omitted).[3]

---

[3] Simply "[r]eciting FOIA's general goal of government oversight is insufficient to obtain the names of individuals contained in law enforcement records." *Touarsi*, 2015 WL 303637 at \*7; *see also Schrecker v. United States Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (holding that a general public interest in reviewing government activity is insufficient to justify revealing personal information). Indeed, a "mere desire to review how an agency is doing its job . . . does not create a public interest sufficient to override the privacy interests protected by Exemption 7(C)." *McCutchen v. United States Dep't of Health and Human*

Plaintiffs state that they do not intend "to call into question the good faith of the FBI agents . . . ," yet, duplicitously, they assert that "the public has a right to understand why the Government elected to use its resources to protect a celebrity's fame and reputation." Objections, p. 19-20.  Plaintiffs further assert, without any legal support, that the FBI "should be required to explain under oath how perhaps the most significant audio content on the three DVDs came to be dubbed over." *Id.*, p. 9.[4]  Despite raising these aspersions, plaintiffs have not set forth even a scintilla of evidence supporting their allegation that the FBI is or has been engaged in any nefarious activities.  Accordingly, plaintiffs clearly cannot establish a public interest.  This is especially true here because courts have held that where the request is for information related to a single investigation, like plaintiffs' request, the minimal amount of information that may be provided does not shed enough light on an agency's conduct to overcome a third-party's privacy interest in the records.  *See Hunt*, 972 F.2d at 289.

Finally, even if the Court were to find a public interest here that outweighs the privacy interests of the third-parties who have not signed any privacy waivers, plaintiffs' attempts to educate the public about the underlying state court case and about how the FBI operates would be in vain because plaintiffs may not distribute any of the records to the public because the records are subject to a protective order issued by the state court.  Thus, plaintiffs cannot establish any public interest here.

---

*Services*, 30 F.3d 183, 188 (D.C. Cir. 1994).

[4] Plaintiffs' request is absurd.  The FBI is under no obligation to explain its actions related to this case to plaintiffs – such information is merely sought to create sensationalism. Nevertheless, the FBI has produced a fourth declaration by Hardy that explains the process the FBI went through to redact the three DVDs.  *See* Fourth Declaration of David M. Hardy, attached hereto as Exh. A, ¶¶ 8-11.

### f.  Defendants have Invoked the FOIA Exemptions Properly

### i.  Exemption 3

The government may claim the protection of Exemption 3 if a record "discusses evidence and witnesses presented before a grand jury, discusses investigative details in cases where a grand jury was convened, and includes an excerpt of grand jury testimony." *Engberg v. United States Dep't of Justice*, 2011 WL 4502079, *1, *3 (M.D. Fla. Aug. 12, 2011), Rep't and Recomm. adopted in full at 2011 WL 4501388, *1, *1 (M.D. Fla. Sept. 27, 2011); *Sussman v. United States Marshals Serv.*, 494 F.3d 1106, 1113 (D.C. Cir. 2007).

Plaintiffs state that both the FBI and the EOUSA reference grand jury proceedings. *See* Objections, p. 21.  However, a review of Tricia Francis's second declaration clearly shows that the EOUSA has not asserted Exemption 3.  *See* Second Declaration For Tricia Francis ("Francis Second Decl.") [Doc. 37-2], ¶¶ 5, 14-17.  The FBI, however, has raised Exemption 3 claims.  *See* Third Declaration of David M. Hardy ("Hardy's Third Decl.") [Doc. 37-1], ¶¶ 13-14.  Plaintiffs argue that the FBI has not established that the records withheld pursuant to Exemption 3 are related to grand jury proceedings because "there is no indication that there were a grand jury proceedings or that anyone testified before a grand jury . . . ."  Objections, p. 21.  However, in his third *Vaughn* declaration, Hardy clearly states that the "records responsive to Plaintiffs requests reflect that one or more federal grand juries were empanelled in relation to the investigation(s) at issue in the records here . . . ."  Hardy's Third Decl., ¶ 14.  Hardy signed the declaration under penalty of perjury, making his statement proper evidence.  Hence, it is clear that grand jury proceedings took place during the FBI's investigation.

Hardy further attested that

> information in the investigative files responsive to Plaintiffs
> requests reveals matters occurring before the grand jury/juries.
> Specifically, the investigative files contain information about the
> names of recipients of federal grand jury subpoenas; information
> identifying specific records subpoenaed by a federal grand jury;
> and copies of specific records provided to a federal grand jury in
> response to federal grand jury subpoenas.

*Id*. Again, this declaration is as good as sworn testimony and shows that certain

information was withheld to protect material related to grand jury proceedings. *See id*. In

addition, the FBI has filed with the Court a categorical *Vaughn* index and declaration that

show that records were withheld and redacted because they comprise grand jury material.

*See* FBI's Vaughn Index, pp. 3-4; FBI's Vaughn Decl., ¶ 14. When the FBI's *Vaughn* index

is read in conjunction with its categorical *Vaughn* declaration, it is clear that the vast majority

of records withheld as grand jury material were responses to various grand jury subpoenas.

*See* FBI's Categorical Vaughn Index ("FBI's Vaughn Index") [Doc. 38-1], pp. 3-4. The only

records that are not such responses are sealed court records. *See id*. These records are

therefore protected by Exemption 3.

### ii.       Exemption 5

Plaintiffs also argue that defendants have invoked Exemption 5 too broadly. *See*

Objections, pp. 22-23. Exemption 5 exempts from public disclosure any "inter-agency or

intra-agency memorandums or letters which would not be available by law to a party other

than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court has

made clear that the coverage of Exemption 5 is quite broad, encompassing both statutory

privileges and those commonly recognized by case law. *See United States v. Weber Aircraft*

*Corp.*, 465 U.S. 792, 800 (1984).  Two of the most frequently invoked privileges that have

been held to be incorporated into Exemption 5 are the attorney work-product privilege and

the attorney-client privilege.  *See National Labor Relations Bd. v. Sears, Roebuck & Co.*, 421

U.S. 132, 149 (1975).  To properly justify non-disclosure under Exemption 5 for attorney-

work product privilege or the attorney-client privilege, an agency "must show that the type of

material it seeks to withhold is generally protected in civil discovery for reasons similar to

those asserted by the agency in the FOIA context."  *Burka v. United States Dep't of Health*

*and Human Serv.*, 87 F.3d 508, 516 (D.C. Cir. 1996).  FOIA should not be used to obtain

documents that would otherwise be protected under civil discovery rules.  *See Weber*

*Aircraft*, 465 at 801.

 The attorney work-product privilege protects documents and other memoranda

prepared by an attorney in contemplation of litigation.  *See Adionser v. United States Dep't*

*of Justice*, 811 F. Supp. 2d 284, 297 (D.D.C. 2011); *Judicial Watch, Inc. v. . United States*

*Dep't of Justice*, 800 F. Supp. 2d 202, 212-13 (D.D.C. 2011).  The purpose of the privilege is

to protect the adversarial trial process by insulating the attorney's preparation from scrutiny.

*See Jordan v. United States Dep't of Justice*, 591 F.2d 753, 775 (D.C. Cir. 1978).  Notably,

the Supreme Court's decisions in *Weber Aircraft*, 462 U.S. at 28, afford sweeping attorney

work-product protection to factual materials.

 In particular, plaintiffs take issue with documents 2 through 4, 5 and 12 in the

EOUSA's *Vaughn* index.  *See* Objections, pp. 22-23. However, the description of document

2 is "Email chain between AUSA and FBI dated between March 2 and March 4, 2013.

Agent is seeking the AUSA's guidance regarding how to respond to an inquiry regarding the

investigation.  Contains handwritten notes by the AUSA regarding steps the AUSA had taken to resolve the issue."  EOUSA's *Vaughn* Index, Attachment A to Francis Second Decl. ("EOUSA's *Vaughn* Index") [Doc. 37-2], p. 8 of 20.  Just because that document was prepared after the United States Attorney's Office for the Middle District of Florida, Tampa Division, already had decided not to bring a prosecution – but before this suit was filed – does not mean that the attorney work product cannot attach to the document.  Furthermore, the EOUSA also asserted Exemption 7(C) to that particular document "to protect the names and other identifying information of third parties, witnesses, government personnel who assisted members of the investigative team, and law enforcement personnel whose names appear in these documents, and who provided information to the investigation team . . . ."  EOUSA's *Vaughn* Index, p. 8 of 20.  This document was therefore properly withheld.

Document 3 is a single page of handwritten notes, dated May 13, 2014, that contains notes regarding the grand jury investigation that contains the AUSA's thoughts that cannot be disclosed.  *See id*., pp. 8-9 of 20.  The note also contains the name and telephone number of a third-party.  *See id*.  Those are clearly the types of documents that are protected by the work-product privilege, and Exemption 5 is applicable.  In addition, because it contains personally identifiable information, the document is protected by Exemption 7(C).  As to document 4, it is also a single page of handwritten notes regarding the grand jury investigation, and it was made as a result of a phone call between an AUSA and someone in connection with the FBI's investigation.  *See id*., pp. 3-4 of 20.  As with Document 3, this is protected by the work-product privilege, and an assertion of Exemption 5 protection is therefore appropriate.  The personally identifiable information in the note assures that

Exemption 7(C) also applies.  Plaintiffs also argue that the work-product privilege does not

attach to Document 12 because it involves communication with plaintiffs' attorney.

However, the description of the document is that "[t]he first page of the document contains

the [grand jury] AUSA's identity and notes on discussions with members of law enforcement

about the FOIA request."  *See* EOUSA's Vaughn Index, p. 13 of 20.  Such information is

protected by the work-product privilege and Exemption 5 is therefore applicable.  In

addition, Exemption 7(C) protects the personally identifiable information contained in the

document.

Finally, plaintiffs argue – without any legal support – that document 5 is not

privileged simply because an "outside source" is part of an email chain.  *See* Objections, pp.

22-23.  While that may be true regarding the attorney-client privilege, that is not so with

respect to the deliberative process privilege, which is the exemption the EOUSA claims for

document 5.  *See* EOUSA's *Vaughn* Index, p. 10 of 20.  Documents are protected from

production by Exemption 5 based also on the deliberative process privilege.  In its Vaughn

index, the EOUSA describes this document as "Email between the AUSA and a supervisory

AUSA dated March 8, 2013, in which the AUSA is seeking advice from (b)(5) specifically

between the AUSA and a supervisory AUSA on an issue.  The information contained in this

document contains references to witnesses to the investigation.  This email chain includes an

email from an outside source to the assigned AUSA which identifies a witness in the

investigation by name and discusses the potential cooperation of the witness with the

government."  A document is protected if it is both predecisional and deliberative.  *See Moye,*

*O'Brien, O'Rourke, Hogan, & Pickert v. National R.R. Passenger Corp.*, 376 F.3d 1270,

1277 (11th Cir. 2004).  Predecisional means that it was created to help a decision-maker in the agency to make a decision.  *See id*.  Deliberative means that "disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and, thereby, undermine the agency's ability to perform its functions."  *Id*.

The goal of the deliberative process privilege is to protect the government agency's decision-making process because public officials would hesitate to candidly communicate among themselves without this privilege, as their comments could potentially be made public.  *See Engberg*, 2011 WL 4502079, at *3 (citations omitted).  Whether an "outside source" of information is part of an email chain is not an element of the deliberative process privilege.  Document 5 is withheld "because it is a "pre-decisional communication[] among government personnel, specifically between the AUSA and a supervisory AUSA, which, if disclosed, would jeopardize the candid considerations which are necessary for candid decision making in the Government."  *See* EOUSA's *Vaughn* Index, p. 10 of 20.  As plaintiffs note, factual material may be produced if segregable.  *See* Objections, p. 23.  But, Francis states that no information in the documents withheld in full contain any segregable material.  *See* Francis Second Decl., ¶ 21.  Asserting Exemption 5 is therefore proper.  In addition, this document is protected under Exemption 7(C) because it contains the names of third-parties who have not executed privacy waivers.

     **iii.**       **Exemptions B6 and B7(C)**

Exemption 6 of the FOIA protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of

personal privacy."  5 U.S.C. § 552(b)(6).  This exemption applies to all information related to a particular individual.  *See Bilderbeek*, 2010 WL 1049618, at *6; *Office of Capital Collateral Counsel, Northern Region of Florida ex rel. Mordenti v. Dep't of Justice*, 331 F.3d 799, 802 (11th Cir. 2003) ("Exemption 6 applies broadly to detailed Government records on an individual which can be identified as applying to that individual.") (citation omitted).

Exemption 7(C) also contains a privacy component.  *See Cappabianca*, 847 F. Supp. at 1565-66 ("Once the law enforcement purpose is established [for purposes of Exemption 7(C)], the focus of inquiry turns to a balancing of public interest against the individual privacy interests.  Those interests are the same as the interests weighed under Exemption 6.").  Exemption 7(C) "protects from disclosure a broader range of records than Exemption 6, namely those compiled for a law enforcement purpose, to the extent a disclosure 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'"  *See Bilderbeek* , 2010 WL 1049618, at *6 (citing 5 U.S.C. § 552(b)(7)(C)).

Plaintiffs agree that the FBI and the EOUSA are law enforcement agencies and that the records sought were collected for law enforcement purposes.  As such, the records only need to satisfy the "reasonably be expected to constitute an unwarranted invasion of personal privacy" standard of Exemption 7(C), and they do not need to meet the more stringent "clearly unwarranted" standard of Exemption 6.  *See Bilderbeek*, 2010 WL 1049618, at *6; *Cappabianca*, 847 F. Supp. At 1565-66 ("However, there is one important difference between Exemptions 6 and 7 . . . .  While Exemption 6 requires that the government show that the production of the information 'would be clearly unwarranted,' Exemption 7 obligates the government to show only that such production 'could reasonably be unwarranted.'")

(citation omitted).

When withholding information pursuant to Exemptions 6 and 7(C), agencies are required to balance the privacy interests of the individuals identified in the records against any public interest in disclosure. For purposes of this balancing analysis, a public interest exists when disclosure of the information would shed light on the agency's performance of its mission. *See Engberg*, 2011 WL 4502079, at *5. The public's sole interest under FOIA is in shedding light on the actions of the federal government and its agencies so the public has an opportunity to scrutinize the government's actions. *See id*. (citation omitted). Conversely, a public interest does not exist merely because the FOIA requester has a personal interest in the records. *See id*. (noting that, in "weighing the public interest, the particular interest of the requesting party is irrelevant.") (citation omitted).

Plaintiffs here have requested records that contain personally identifiable information of third-parties who have not executed privacy waivers. The information requested contains video footage and voice recordings. These third-parties have privacy interests not only in the visual content of the recordings but also in their recorded voices because someone in possession of those recordings could potentially identify the third-parties based on their looks and voices. *See David J. Elkins v. Federal Aviation Administration*, Case No. 8:12-CV-2009, (M.D. Fla. Aug. 22, 2014), attached hereto as Exhibit A, pp. 30-31; *New York Times Co. v. National Aeronautics and Space Admin*., 782 F. Supp. 628, 631 (D.D.C. 1991) (denying access to a voice recording because the "intimate detail" that underlies the privacy interest in this tape is the sound of the astronauts' voices.").[5] This is particularly true where it

---

[5] *See also Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992);

is necessary to protect law enforcement officers while they are engaged in official investigations.  The disclosure of any records, including video or audio, related to the effected third-parties could subject them to harassment and other hostile actions, and that information is therefore properly withheld or redacted under Exemptions 6 and 7(C).

### iv.        Exemption 7(E)

With respect to Exemption 7(E), courts have construed it to encompass the withholding of a wide range of law enforcement techniques and procedures, including surveillance tactics and methods.  *See American Civil Liberties Union of Mich. v. Federal Bureau of Investigation*, 2012 WL 4513626, *1, *10-*11 (E.D. Mich. Sept. 30, 2012). Courts have found that the FOIA sets a "relatively low bar" for withholding under Exemption 7(E).  *See Blackwell v. Federal Bureau of Investigation*, 646 F.3d 37, 42 (D.C. Cir. 2011).  In asserting Exemption 7(E), courts have permitted agencies to describe law enforcement techniques in only general terms, where necessary, while withholding the full details.  *See Judicial Watch, Inc. v. United States Dep't of State*, 650 F.Supp.2d 28, 34 n.6 (D.D.C. 2009). The FBI's declaration shows that, with respect to Exemption 7(E), the FBI met its burden of demonstrating "logically how the release of the requested information might create of risk of circumvention of the law."  *Blackwell*, 646 F.3d at 42.  Indeed, over 4 pages of the Hardy declaration are devoted towards explaining this harm.  *See* Hardy's Third Decl., ¶¶ 36-42.

Finally, if there are concerns about defendants' invocation of any exemptions, as noted above, the Court may conduct an *in camera* review of the documents to determine the

---

*Bilderbeek*, 2010 WL 1049618 at *6; *Del Rio v. Miami Field Office of the Federal Bureau of Investigations*, 2009 WL 2762698 at *4 (S.D. Fla.); *Lair v. United States Dep't of Treasury*, 2005 WL645228 at *5 (D.D.C. Mar. 21, 2005 ) by Exemption 7(C)").

appropriateness of the defendants' claims of exemption. *See PHE, Inc. v. United States Dep't of Justice*, 983 F.2d 248, 252 (D.C. Cir. 1993).

## III.    CONCLUSION

Based on the foregoing, defendants respectfully request that the Court grant this motion for summary judgment.

**A. LEE BENTLEY, III**
United States Attorney

Respectfully submitted,

By:   *s/ E. Kenneth Stegeby*
**E. KENNETH STEGEBY**
Esquire Assistant U.S. Attorney
USAO No. 112
400 North Tampa Street, Ste. 3200
Tampa, Florida 33602
Telephone:  (813) 274-6087
Facsimile:   (813) 274-6198
Email: kenneth.stegeby@usdoj.gov
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Counsel of Record:

| | |
|---|---|
| Alia L. Smith | Rachel E. Fugate |
| Gregg Darrow Thomas | Seth D. Berlin |
| Patrick Kabat | *Plaintiffs' Counsel* |

*s/E. Kenneth Stegeby*
E. Kenneth Stegeby