UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAWKER MEDIA, LLC and GREGG D.
THOMAS,

             Plaintiffs,

                                 Case No.:  8:15-cv-01202-SCB-EAJ

vs.

THE FEDERAL BUREAU OF
INVESTIGATION and THE EXECUTIVE
OFFICE OF UNITED STATES ATTORNEYS

             Defendants.
_____/

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT MOTION**

       Plaintiffs Gawker Media, LLC and Gregg Thomas (collectively "Gawker") respectfully submit this brief in opposition to Defendants' Motion for Summary Judgment (Dkt. 62).  To obtain summary judgment, the Agencies must establish that:  (a) they have produced or accounted for the full universe of responsive documents, (b) they have properly and timely asserted exemptions, including in declarations and a satisfactory *Vaughn* index, and (c) the substance of those exemptions is valid for each document.  Gawker addresses each in turn.

**I.**       **NOT ALL DOCUMENTS HAVE BEEN PRODUCED OR ACCOUNTED FOR.**

       **A.**       **Missing or Unaccounted-For FBI Documents**

       This Court repeatedly **ordered** the FBI to "turn over to Plaintiffs all non-exempt documents."  Dkt. 31 ¶ 2; *see also* Dkt. 36.  In purported compliance with those orders, the FBI produced 1178 pages and represented that its production was complete.  *See* Dkt. 37-1 (Third Hardy Decl.) ¶ 6 (reciting production of 1178 pages), ¶ 44 ("The FBI has . . . released all reasonably segregable non-exempt information . . . .  After extensive review of the documents at issue, I have determined that there is no further non-exempt information that can be reasonably

1

segregated and released. . . ."). Yet, some six weeks later, the FBI located 408 additional pages, produced 238 additional pages (most with redactions), and withheld the remaining pages in full. Smith Decl. ¶ 7. This new production raises a number of new issues, including missing documents, duplication of bates numbers from the prior production, and no *Vaughn* index. *Id.*[1]

Despite this supplemental production, almost all of the issues previously identified by Gawker remain. First, Gawker pointed out the significant discrepancy between the 1306 pages that the FBI had identified as responsive (1168 of its own plus 138 referred by the EOUSA) and the 1178 it actually accounted for. Dkt. 54 at 4-5. The agency asserts that only 1040 of its 1168 documents are responsive, and the reference to 1168 responsive pages was just an estimate included in its January 29, 2015 correspondence. Dkt. 61-3 ¶ 6. Putting aside that both of David Hardy's first two declarations repeated that figure to justify further production delays, Dkt. 23-1 ¶¶ 9, 30-32; Dkt. 35-1 ¶¶ 12-14, this vague explanation makes no sense. While sometimes an agency needs to search across a number of files and may then determine that some of the search results are not responsive, here that is not the case. The FBI's search identified a single file for this investigation "located in the Tampa Field Office." Dkt. 23-1 (First Hardy Decl.) ¶ 25 (referencing investigation file 9B-TP-2534791). The FBI has offered no explanation for why more than ten percent of the documents initially identified are not responsive when all of them come from the investigative file for the very matter at issue in Gawker's FOIA request.

Second, in their Objections, at 5-7, Gawker identified seven categories of documents referenced in the FBI's production that had not been produced. The Agencies' papers simply do

---

[1] The FBI advised that it discovered new documents after local Tampa authorities returned documents the FBI had loaned them. Dkt. 61-3 (Fourth Hardy Decl.) ¶ 7. The FBI has not explained whether it kept copies of the loaned documents. Even if it did not, the FBI has apparently always retained authority to recall those documents, and has not explained why it did not do so until well after the deadline for producing documents. *See* Smith Decl. ¶ 5 & Ex. 1.

not address these documents at all.  While the FBI now appears to have produced the Form FD-302 for a significant witness (item 7), it has still not produced any of the other six items.[2]

Third, the FBI has not provided a satisfactory explanation for producing two materially defective DVDs to the state court and wasting significant amounts of its time.  For the DVD that contained only a minute or so of content, the FBI concedes that the U.S. Attorney's Office had a full copy in its files.  (That the EOUSA had a full copy, but did not produce it or include it on its *Vaughn* index, raises additional concerns about the completeness of the EOUSA's production.)  As to the other DVD with the substantial irregularities in the audio track, the FBI asserts that it "inadvertently placed the audio track from the first DVD onto the video track of [the] second DVD."  Dkt. 61-3 ¶ 10.  But this brief statement does not explain why the audio for that DVD had the correct audio for the first fifteen minutes; incorrect audio for the middle portion, dubbing out audio particularly embarrassing to Bollea; and then the correct audio at the end.  Given the circumstances, this highly unusual pattern of editing requires further explanation.

### B.      Missing or Unaccounted-For EOUSA Documents

First, although the EOUSA represented it would file an updated *Vaughn* index to include previously omitted documents, Dkt. 61 at 23; Dkt. 61-2 ¶ 1, weeks later it has not done so.  Second, Gawker noted discrepancies in the number of pages between (a) the EOUSA's initial denial, (b) its June 26, 2015 production, and (c) its June 30, 2015 *Vaughn* index.  Although the EOUSA has offered some explanation for the discrepancy between items (a) and (b), *see* Dkt. 61 at 23-24; Dkt. 61-2 ¶¶ 2-3, it has not addressed the discrepancy between its June 26 transmittal

---

[2] The Agencies also did not respond to Gawker's objection to their practice of identifying but not producing documents that they claim are duplicates, particularly given missing versions of otherwise-similar documents.  *See* Dkt. 54 at 6; Smith Decl. ¶ 10.  Courts have rejected the FBI's practice of "carv[ing] out its own exception" and "withhold[ing] production of . . . duplicates" based on the claim that "nothing in them 'suggested additional information would be revealed.'"  *Negley v. FBI*, 658 F. Supp. 2d 50, 59 (D.D.C. 2009).

correspondence and its June 30 *Vaughn* index (items (b) and (c)) as to the number of pages withheld entirely.  And, the EOUSA has not addressed missing documents that it certainly had in its files – *e.g.*, the declination letter, *see* Dkt. 54 at 6 – or the full copies of the DVDs it had.

At the end of the day, the Agencies bear the burden of establishing that they conducted a proper search and have either produced or accounted for all responsive documents.  Because they have not met that burden, they are not entitled to summary judgment.  *See, e.g.*, *Richardson v. United States*, 2015 WL 709118, at *3 (D.D.C. Feb. 19, 2015) (denying summary judgment motions because "'positive indications of overlooked materials' may create 'substantial doubts . . . about the caliber of [the agency's] search'" or production).  In that regard, the Agencies contend that there is "no legal support" for Gawker's request that, to ensure a complete production, they be required to submit declarations from persons with actual knowledge of the investigative files at issue, claiming that the "request is absurd."  Dkt. 62 at 13 & n.4; Dkt. 61 at 17 & n.7.  But they are incorrect, as both the Court and Gawker are entitled to declarations based on personal knowledge.[3]  Indeed, their repeated production irregularities and serial declarations would also entitle Gawker to discovery on these issues.  *See, e.g.*, *Citizens for Responsibility &*

---

[3] *See, e.g.*, *Rosenfeld v. Dep't of Justice*, 2008 WL 3925633, at *12 (N.D. Cal. Aug. 22, 2008) ("The court is concerned about Hardy's conclusory assertion of personal knowledge. Indeed, the declaration merely makes a legal conclusion without specifying how this personal knowledge was acquired. . . .  Consequently, his declaration with respect to searches conducted at the field offices [is] inadmissible."); *Bright v. Ashcroft*, 259 F. Supp. 2d 494, 501 (E.D. La. 2003) (granting motion to strike declaration and denying it summary judgment because Hodes' [the government declarant's] "affidavit fails to establish his personal knowledge. . . .  Hodes is an attorney in Washington, D.C.; the Court will not infer that Hodes has personal knowledge of [law enforcement matters] in Louisiana six years ago."); *Prison Legal News v. Lappin*, 603 F. Supp. 2d 124, 128 (D.D.C. 2009) (ordering agency to "provide the Court with an affidavit (or affidavits) from which the Court can find that the affiant has personal knowledge"); *Nat'l Res. Def. Council v. Dep't of Def.*, 388 F. Supp. 2d 1086, 1105 (C.D. Cal. 2005) (declarant's "generalized descriptions of 'categories' of withheld information do not cure the index's defects, especially where there is no indication [he] had any personal knowledge of the withheld 1,600 documents outside of the thirty-five documents withheld from his own office").

*Ethics in Wash. v. Dep't of Veterans Affairs*, 828 F. Supp. 2d 325, 330-34 (D.D.C. 2011)

("*CREW I*") (permitting discovery because court was "deeply troubled" by discrepancies in

"evolving declarations" from the agency declarant).  In an attempt to streamline things, Gawker

is limiting its request to declarations from Ms. Sweeney and Mr. Shearn, or other officials with

personal knowledge of the contents of each agency's file.

## II.     THE AGENCIES HAVE NOT PROPERLY ASSERTED EXEMPTIONS.

### A.     The Agencies' *Vaughn* Indexes and "Codes" Are Inadequate.

The Agencies concede that, under governing Eleventh Circuit law, a *Vaughn* index and

accompanying declaration is sufficient only where it "specifically identifies the documents

withheld and the redactions made and explains why each particular redaction or withholding falls

within the claimed exemptions."  Dkt. 62 at 6-7 (citing *Miccosukee Tribe of Indians of Fla. v.

United States*, 516 F.3d 1235, 1259 (11th Cir. 2008)); *see also* Dkt. 61 at 9 (conceding that,

under *Miccosukee*, an index must provide "a relatively detailed justification, specifically

identifying the reasons why a particular exemption is relevant").

While the Agencies contend in a conclusory fashion that their *Vaughn* indexes and

declarations are sufficient, they do not (a) respond to the specific concerns enumerated by

Gawker in its Objections, including that the declarations and indexes do little more than parrot

back the exemptions' statutory language and provide none of the required "detail" or

"explanation," Dkt. 54 at 12-15; (b) address the two charts attached to Gawker's Objections

identifying specific issues over individual entries on each agency's *Vaughn* index, Dkts. 54-1 &

54-2; or (c) explain why some eight weeks after the Court ordered them to provide *Vaughn*

indexes, the EOUSA still has not provided a complete *Vaughn* index, and the FBI has provided

no index for documents withheld in part from the first production and no index at all for

documents withheld either in full or in part from its second production.  Instead, they argue that they have done all that is required.  They are wrong.

First, the Agencies assert that they have "satisfie[d]" their burden because agency declarations and submissions are entitled to a presumption of "good faith."  Dkt. 62 at 7; Dkt. 61 at 9-10.  But their sole authority addresses the *factual* question of whether an agency's *search* was adequate, Dkt. 62 at 7 (citing *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)), and creates no presumption of validity for its *legal* assertion of exemptions, *see, e.g.*, *King v. Dep't of Justice*, 830 F.2d 210, 223-24 (D.C. Cir. 1987) ("*Vaughn*'s call for specificity imposes on the agency the burden of demonstrating applicability of the exemptions.").  Indeed, even putting aside his lack of personal knowledge, courts around the country have repeatedly rejected similarly vague declarations of the type Mr. Hardy submitted on behalf of the FBI here.[4]

Second, the FBI asserts that its practice of not including each document on the *Vaughn* index and instead coding multiple exemptions, by number, on redacted documents, is sufficient. The only authority offered in support of this approach, *Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) (Dkt. 62 at 7), actually holds the opposite.  In language virtually identical to the Eleventh

---

[4] *See, e.g.*, *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 746 F.3d 1082, 1102 (D.C. Cir. 2014) ("*CREW III*") (Hardy's "near-verbatim recitation of the statutory standard is inadequate."); *Johnson v. FBI*, 2015 WL 4630227, at *9 (E.D. Pa. Aug. 4, 2015) ("The Hardy Declaration" recites only "vague, general, and patently conclusory language that gives the Court no sense of which documents or categories of documents were withheld."); *Sciacca v. FBI*, 23 F. Supp. 3d 17, 30 (D.D.C. 2014) ("[T]he Hardy Declaration is manifestly insufficient as a matter of law to allow the Court to assess the applicability of the FOIA exemptions."); *Elec. Frontier Found. v. CIA*, 2013 WL 5443048, at *22 (N.D. Cal. Sept. 30, 2013) ("The FBI declaration fails to provide a sufficiently detailed and particularized explanation of the basis for the agency's nondisclosure. . . .  The FBI has made no effort to tailor its explanation for nondisclosure on a document by document basis.  Instead, the FBI has proffered generalized and conclusory reasons for redacting."); *El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285, 304-05, 313 (D. Conn. 2008) (concluding that Hardy's declaration "fails to meet the 'relatively detailed and nonconclusory' standard," and finding that FBI's filing of repeated supplemental affidavits "leaves the court with little faith that the agencies will timely submit comprehensive and sufficiently detailed affidavits, even if specifically ordered to do so").

Circuit's cases, *Morley* makes clear that (a) an agency "must provide 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply'"; (b) "'[c]ategorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate'"; (c) while references to common justifications applicable to multiple documents may be used, the *Vaughn* index in *Morley* actually "identif[ied] the exemptions claimed for *each individual document*"; and (d) a proper index and declaration must "convey enough information for [the Requestor] and the court to identify the records referenced and understand the basic reasoning behind the claimed exemptions." *Id.* at 1122-23 (citations omitted; emphasis added).  Applying this standard, the Court in *Morley* concluded that the government's invocation of exemptions 5 and 6 in its *Vaughn* index and declaration was insufficient.  *See id.* at 1128 (agency "failed even to articulate the privacy interest in the records, let alone demonstrate that such privacy interests meet the standard for an agency's withholding"); *id.* at 1127 (same for deliberative process privilege).[5]

    Third, both Agencies contend that any failings can be cured by *in camera* review.  Dkt. 62 at 8; Dkt. 61 at 11.  But in the only case they cite, *Twist v. Ashcroft*, 329 F. Supp. 2d 50, 52, 54-55 (D.D.C. 2004), the Court actually refused to conduct *in camera* review, noting that it is "certainly not to be done routinely" because it "consumes judicial resources, may have little

---

[5] The Agencies contend that Gawker tried "to show that the codes on the documents are inconsistent, and thereby invalid, by referring to one page of the FBI's production, namely Gawker 12."  Dkt. 61 at 10.  In fact, Gawker explained that this indecipherable coding was not an isolated problem, and that its examples were just a few of many.  Dkt. 54 at 14 (citing Conf. Thomas Obj. Decl. Ex. 65-C at Gawker 315, 325, 363, 422, 462, 930, 1101, 1130).  In any event, the Agencies concede that listed codes "may refer to one or more . . . redactions," but argue that this should be excused "due to the time constraints in this case."  Dkt. 61 at 11.  Even if those "time constraints" were not the result of the Agencies' own delays, they have not explained why, six weeks later, they still have not produced a supplemental index to correct these problems.

precedential value, and creates a disincentive to preparing a detailed *Vaughn* index" (citing *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998)). As *Spirko* in turn explains, while a district court obviously has discretion to conduct *in camera* review where there are a small number of documents, a "district court should not undertake *in camera* review of withheld documents as a substitute for requiring an agency's explanation of its claimed exemptions in accordance with *Vaughn.*" *Id.* (citations omitted); *see also Halpern v. FBI*, 181 F.3d 279, 294 (2d Cir. 1999) ("shifting to the courts the burden to wade through pages of material in search of contextual support for the government's own redactions" is improper). Moreover, conducting *in camera* review instead of requiring a proper *Vaughn* index also "'deprives the FOIA requester of an opportunity to present his interpretation of the withheld documents,'" and, "absent some 'adversary testing,' the district court may be at a disadvantage in evaluating the government's characterizations of the withheld documents." *Spriko*, 147 F.3d at 997 (citations omitted); *Elec. Frontier Found.*, 2013 WL 5443048, at *22 ("Absent a particularized explanation of why [the exemption] applies to information withheld from a document, Plaintiff does not have a meaningful opportunity to contest, and the Court does not have an adequate foundation to assess, whether the claimed exemption applies."). At bottom, *Vaughn* indexes "permit adequate *adversary* testing of the agency's claimed right to an exemption" and hold government agencies to FOIA's promise of broad disclosure with exemptions construed narrowly. *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 950 (D.C. Cir. 1998) (emphasis added).

Because the Agencies have repeatedly failed to submit sufficient *Vaughn* indexes and accompanying declarations, including in response to court orders and the Court's articulated concerns at the July 2 hearing, the Court should find that that they have not met their burden of establishing the claimed exemptions, and should order the documents produced. *See, e.g.*, *Maine*

8

*v. Dep't of Interior*, 298 F.3d 60, 73 (1st Cir. 2002) (affirming denial of summary judgment and ordering disclosure of documents where agency failed to justify exemptions in *Vaughn* index and summary judgment motion); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 870 (D.C. Cir 1980) (affirming order requiring disclosure where agency failed "to meet its burden").

      **B.**    **The FBI Waived Its Exemptions.**

      The FBI concedes that it asserted only exemption 7(A) in its FOIA response, in its denial of Gawker's administrative appeal, in its opposition to Gawker's summary judgment motion, and at the June 24, 2015 hearing.  *See* Dkt. 62 at 1-3 (Stmt. of Undisputed Facts).  Although the FBI contends it was justified in deferring assertion of any other exemptions until the applicability of the law enforcement exemption was adjudicated, that exemption was sufficiently weak that the EOUSA concluded it did not merit asserting at all.  *See* Dkt. 35-2 ¶ 12.

      When the FBI belatedly asserted other exemptions on July 1, 2015, it purported to do so by submitting a patently insufficient *Vaughn* index for withheld documents and submitting no index for redacted documents, instead coding them generically and often unintelligibly.  When the FBI belatedly processed hundreds of additional pages of documents in mid-August – six weeks after this Court's deadline – the agency gave an exceedingly vague explanation for its late production, produced no *Vaughn* index for either documents withheld in full or in part, and again simply noted vague codes on the redacted documents.  At bottom, there are certain basic steps that federal agencies are required to take to assert discretionary exemptions.  Taken together, the FBI has so completely failed to follow those steps that it has waived those exemptions.

      In arguing otherwise, the FBI cites one sentence from an unpublished minute order in another FOIA case granting an *unopposed* motion for bifurcation.  *See* Dkt. 62-1.  Here, the FBI made no such motion; it instead included that request in passing in the First Hardy Declaration; that request was opposed by Gawker at the June 24 hearing; and this Court ultimately rejected

the FBI's proposed two-step process.  *See* June 24, 2015 Hrg. Tr. at 40:8 – 44:11; July 2, 2015 Hrg. Tr. at 37:1-7.  The FBI argues that Gawker understood the nature of its request, but simply sidesteps the important point that the Court rejected it, ruling that "the only exemption the Court finds to be at issue with respect to the FBI is the law enforcement exemption."  Dkt. 31 at 2 n.1.

Second, the FBI attempts to distinguish governing Eleventh Circuit authority, *Ray v. Dep't of Justice*, 908 F.2d 1549 (11th Cir. 1990), *rev'd on other grounds*, 502 U.S. 164 (1991), as well as a widely-followed D.C. Circuit decision, *Maydak v. Dep't of Justice*, 218 F.3d 760 (D.C. Cir. 2000), on the grounds that they involved longer delays.  *See* Dkt. 62 at 5-6; Dkt. 61 at 1-8.  In so doing, it relies principally on a brief opinion in a *pro se* case seeking release of various IRS documents, all of which had been produced except for an internal IRS handbook. *Lawrence v. IRS*, 355 F. Supp. 2d 1307 (M.D. Fla. 2004).  There, the Court concluded that *Ray* did not govern because the agency was not asserting new exemptions, but had instead requested and obtained additional time to review the handbook.  *Id.* at 1310-11.[6]  Ultimately, the key point of *Ray* and *Maydak* is that FOIA requires an agency to provide a prompt response (the statute provides 20 days), in which the agency may either produce records or assert exemptions.  These and many other courts are justifiably resistant to allowing an agency to assert exemptions *seriatim*, effectively turning the statutory timelines – and FOIA's purpose of timely disclosure – on their head.  *See, e.g.*, *Maydak*, 218 F.3d at 764-66 (rejecting "the DOJ's view" that "after the government or the courts conclude that Exemption 7(A) is inapplicable, then the government should be allowed to start back at the beginning in assessing the applicability of and satisfying its

---

[6] The other cases cited by the FBI, Dkt. 61 at 7-8, are likewise inapplicable.  *See, e.g.*, *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106 (D.C. Cir. 2007) (concerning agency's motion for reconsideration seeking to present additional *evidence* on exemptions it had asserted *before litigation*, not new exemptions); *Lazaridis v. Dep't of Justice*, 713 F. Supp. 2d 64, 70 n.7 (D.D.C. 2010) (no waiver where agency had not yet even "address[ed] the merits of the complaint").

burden under other exemptions"); *Ray*, 908 F.2d at 1557 (agency violated "fundamental rule" that all applicable exemptions must be asserted by filing of first responsive paper).[7]

Here, this is not some technicality:  Given the FBI's assertion of a meritless exemption, its substantial delay in asserting other exemptions, its production issues, its failure to properly assert exemptions in *Vaughn* indexes, and its belated processing of 400 pages – with most of this conduct violating this Court's orders – the Court should rule that the FBI waived its exemptions.

## III.   THE AGENCIES FAIL TO JUSTIFY THEIR ASSERTED EXEMPTIONS.

### A.   The Agencies' Position that Every Redacted Name Is Private Has No Merit.

As an initial matter, the Agencies make no showing responding to the substantial factual record Gawker submitted confirming that the identities of the key participants in the investigation, and the details of their involvement, are simply not private.  Dkt. 55 ¶¶ 10-40 & Exs. 4-34; Dkt. S-59 ¶¶ 39-43 & Exs. 59-C – 64-C.  That evidence is unrebutted and now constitutes the universe of undisputed material facts for purposes of the parties' cross-motions for summary judgment.  As a result, it is undisputed that the involvement of each of those people is publicly known, including, for example, that: (a) Keith Davidson has been publicly identified as the target of the investigation by the Government (including in its public filings in this case), by the press, and by Davidson himself; (b) Bubba the Love Sponge Clem has repeatedly discussed on both his radio show and on Howard Stern's nationally-broadcast radio show his

---

[7] Indeed, even the Agencies' own FOIA directives caution that "failure to raise an exemption in a timely fashion in litigation at the district court level may result in its waiver." Dep't of Justice Guide to the Freedom of Information Act at 817, available at http://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/litigation-considerations_0.pdf. Here, the Agencies claim that they did so by including an affirmative defense in their Answer asserting that Gawker is not entitled to records protected from disclosure "'by any applicable exemption.'"  Dkt. 61 at 6 (quoting Defendants' Answer (Dkt. 29) at 7).  This assertion illustrates the fundamental error in the Agencies' position:  a generalized reservation of all exemptions that might apply is precisely what is *not* allowed.  Rather, the Agencies are required to assert specific exemptions, which they decidedly did not do their answer.

participation in the videos at issue, including in his on-air apology to Hogan, and (c) AUSA Sara Sweeney, FBI Agent Jason Shearn, and other government officials have been publicly identified as those handling this matter. *Id.*; *see also* Dkt. 23-1 at 72, 73, 75, 77-79 (Agencies' public court filings reflecting same); Dkt. 37-2 at 19 (identify Robert Mosakowski as supervising AUSA); July 2 Hrg. Tr. at 69:20 – 70:10, 76:10-22 (court agreeing names already public).

Instead of contesting Gawker's extensive factual showing, the Agencies instead advance only legal argument, contending they are entitled to redact *every single piece* of identifying information because disclosure would constitute an *unwarranted* invasion of *personal* privacy. *See, e.g.*, Dkt. 62 at 9; Dkt. 61 at 12 (asserting that "mere mention" of individual's name in investigatory file justifies withholding). That is not the law. Indeed, where, as here, the names of the relevant individuals are publicly known because of significant media attention, prior disclosure by the government and/or the public disclosure by the individuals themselves, courts have found that there is no significant privacy interest justifying withholding. *See, e.g.*, *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 840 F. Supp. 2d 226, 233 (D.D.C. 2012) ("*CREW II*") ("One can have no privacy interest in information that is already in the public domain, especially when the person asserting his privacy is himself responsible for placing that information into the public domain"); *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (where subject of request had "effectively waive[d]" privacy by making "several public statements" about matter, redaction "would not serve any useful purpose in protecting his privacy"); *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999) (rejecting agency's withholding letter on privacy grounds because, by his own account, author "had been telling the story of what [he] saw . . . to colleagues and friends for many months"); *Showing Animals Respect & Kindness v. Dep't of Interior*, 730 F. Supp. 2d 180, 191 (D.D.C.

2010) ("presumption" that names in investigatory files are private "does not apply where an individual has voluntarily disclosed his involvement in the records at issue").

In response, the Agencies offer several arguments that do not change the fundamental rule that information that is already widely known is not considered private.  First, the Agencies cite a host of authorities that stand only for the unremarkable proposition that the names of individuals *may* be redacted or withheld where they are in fact private and not otherwise overcome by a public interest.  *See* Dkt. 62 at 8-10, 19-21 & n.1; Dkt. 61 at 12-14 & n.4.  But Gawker has never contended otherwise.  Gawker's point is that, before an agency redacts, it must analyze whether (a) the information is private, (b) disclosure would constitute an *unwarranted* invasion of privacy, and (c) any privacy interest is overcome by a *public interest* in how the agency is functioning.  Where that test is met, an agency may of course redact information.  *See, e.g.*, *Bilderbeek v. Dep't of Justice*, 2010 WL 1049618, at *6 (M.D. Fla. Mar. 22, 2010), *aff'd on other grounds*, 416 F. App'x 9 (11th Cir. 2011) (Dkt. 62 at 20) (redacting names of alleged informants, confidential sources, and DEA agents).  But where it is not, disclosure is required. *See, e.g.*, *News-Press v. Dep't of Homeland Sec.*, 489 F.3d 1173, 1199 (11th Cir. 2007) ("whether disclosure of a list of names is a significant or a *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue").[8]  Applying those principles *here*, there is no meaningful privacy interest to protect.

Second, the Agencies contend that just because information has been disclosed does not mean there is no privacy interest to protect.  But the cases they cite involve much more limited

---

[8] *See also* Dkt. 54 at 16-17; *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 153 (D.C. Cir. 2006) ("[FOIA] does not categorically exempt individuals' identities . . . because the privacy interest at stake may vary depending on the context in which it is asserted.") (citation omitted); *Nation Magazine*, 71 F.3d at 894-95 ("[T]he mere fact that records pertain to an individual's activities does not necessarily qualify them for exemption."); *Bast v. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981) (Dkt. 62 at 10) (there is no "per se" rule against disclosing names).

disclosures in which the information remains "practically obscure."  These cases emanate from *Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763-65 (1989), which found that an individual's "rap sheet" was protected by Exemption 7(C), even though it included information scattered in public records.  The Court relied on the fact that other information on the rap sheet was private; even the public information had a "practical obscurity"; and rap sheets were specifically designated by Congress not to be public.  *Id.* at 764-65 (noting the "web of federal statutory and regulatory provisions that limits the disclosure of rap-sheet information").  *See ACLU v. Dep't of Justice*, 655 F.3d 1, 9 (D.C. Cir. 2011) (distinguishing *Reporters Committee* because it involved information that was "technically public" but "practically obscure," and concluding in the case before it that the "fact that information [is] readily available to the public reduces . . . the incursion on privacy resulting from disclosure").

Even without the unique statutory provisions applicable to rap sheets, the case here is the exact opposite of *Reporters Committee*:  There, the requestor had the *name* of an individual and sought extensive *details* that were not generally known, while here the FBI has already disclosed the full details of its investigation and should not engage in a charade pretending that redacted names are private when, it is now undisputed, they are widely known.  The other authorities relied on by the Agencies likewise involve either (a) a request for unknown details, rather than, as here, a request to unredact the identity of a widely-known person connected to details that have already been disclosed,[9] and/or (b) information that was previously disclosed only in a much more limited fashion (for example, to a convict in connection with his criminal case).[10]

---

[9] *See, e.g.*, *Hunt v. FBI*, 972 F.2d 286 (9th Cir. 1992) (undisclosed details of investigation of agent involved in witness protection program); *Kimberlin*, 139 F.3d at 949 (AUSA had publicly acknowledged investigation by Office of Professional Responsibility but details had not been disclosed); *Bast*, 665 F.2d at 1254 (although existence of investigation was known, exemption applied to protect "names of third parties who had some role in an investigation" but

At bottom, the Agencies are effectively attempting to extend law protecting information that is not meaningfully public to the circumstances here, where the individuals themselves and/or the government have publicly disclosed their identities and their involvement in this matter is widely known.  Courts addressing *these* circumstances have repeatedly reached the obvious conclusion that something that is indeed public is not private.  *See, e.g.*, *Showing Animals Respect & Kindness*, 730 F. Supp. 2d at 192 (no cognizable privacy interest where "the cat is out of the bag"); *Lazaridis*, 934 F. Supp. 2d at 35 (otherwise "exempt information loses its protection if it was previously disclosed").

Finally, the Agencies separately argue that they are not required to unredact the names of government officials.  But officials understandably have a diminished privacy interest in how they perform their duties.  *See, e.g.*, *Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984) ("the status of the individuals . . . as [public] employees diminishes their privacy interests . . . because of the corresponding public interest in knowing how public employees are performing their jobs").  While the Agencies correctly note law enforcement officials enjoy some protection, they involve (a) undercover or previously-unidentified agents, and (b) investigations of violent crimes where

---

whose identities were not known); *Lawyer's Comm. for Civil Rights v. Dep't of Treasury*, 2008 WL 4482855 (N.D. Cal. Sept. 30, 2008) (although names on OFAC's Specially Designated Nationals List were public, details of delisting petitions were not publicly known); *Mueller v. Dep't of Air Force*, 63 F. Supp. 2d 738, 743 (E.D. Va. 1999) (although incident had received press attention, "details of the investigation" had not been publicly disclosed).

[10] *See Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 11 (D.D.C. 2009) (identities of persons known to requestor not public); *Thomas v. Dep't of Justice*, 531 F. Supp. 2d 102, 109 (D.D.C. 2008) (information known only to requestor was not public); *Shores v. FBI*, 185 F. Supp. 2d 77, 83 (D.D.C. 2002) (same).  *See also Schoenman v. FBI*, 575 F. Supp. 2d 136, 159 (D.D.C. 2008) (requestor simply asserted he "can guess the individual's identity").

the agents are likely to have reasonable concerns for their safety.[11]  With respect, unredacting the names of officials previously identified by the Agencies, in a case involving a celebrity sex tape, is not likely to cause the officials to be subject to "harassment, intimidation or physical harm," and the Agencies have made no contrary showing as required.  *See United Am. Fin., Inc. v. Potter*, 667 F. Supp. 2d 49, 60 (D.D.C. 2009) (agencies "must at least explain the ground for concluding that there is some factual basis for concerns about 'harassment, intimidation, or physical harm'"); *see also* July 2, 2015 Hrg. Tr. at 70:2-10 (court agreeing it "doesn't make sense" to redact names of agents who have already been disclosed).

B.   **The public interest in disclosure outweighs any privacy interest.**

As the Agencies concede, even were there an actual privacy interest, it can be overcome upon a "showing that the public interest in disclosure outweighs the privacy interest."  Dkt. 62 at 11.  The Agencies then contend that the only reason Gawker seeks the requested information is to "advance [its] own interests in the underlying civil litigation."  Dkt. 61 at 16.  But, Gawker's supposed motives are irrelevant to the analysis.  *See Reporters Committee*, 489 U.S. at 772 ("whether an invasion of privacy is *warranted* cannot turn on the purposes for which the request for information is made") (emphasis in original); *Cameranesi v. Dep't of Def.*, 941 F. Supp. 2d 1173, 1188 (N.D. Cal. 2013) ("The requesting party's intended use for the information is irrelevant to the analysis."); July 2, 2015 Hrg. Tr. at 72:19 – 73:1 (THE COURT:  "I'm not sure that it's my job at this point to evaluate why you make a FOIA request.").

---

[11] *See, e.g.*, *Lahr v. NTSB*, 569 F.3d 964 (9th Cir. 2009) (unknown agents investigating TWA Flight 800 explosion); *Fabiano v. McIntyre*, 146 F. App'x 549 (3d Cir. 2005) (names and code names of FBI agents involved in online child pornography sting); *Hunt*, 972 F.2d at 288 (FBI agent involved with person in witness protection program); *Barouch v. Dep't of Justice*, --- F. Supp. 3d ----, 2015 WL 1505965 (D.D.C. Mar. 31, 2015), *appeal docketed* No. 15-5124 (D.C. Cir. Apr. 29, 2015) (unidentified agents who investigated inmate serving ten-year sentence for possession of "unregistered destructive device"); *Touarsi v. Dep't of Justice*, 2015 WL 303637 (D.D.C. Jan. 23, 2015) (investigation of requestor's possible connection to terrorist plot).

Moreover, there is a clear public interest in understanding the Agencies' actions here, including: (a) whether the FBI was justified in launching an investigation and sting operation to shield an international celebrity, as well as a prominent "shock jock" and his wife, from embarrassing disclosures, (b) whether the U.S. Attorney's Office properly concluded that no prosecution for the claimed extortion should proceed, (c) whether, in responding to Gawker's FOIA request, the FBI tried to shield information that would be particularly detrimental to Hogan, including, for example, key audio on one of the DVDs, video footage of the sting operation, or other documents damaging to his claims, (d) whether the FBI's serial and often inconsistent declarations from Mr. Hardy, of the type regularly criticized by courts, contributed to that effort, (e) why the FBI asserted a law enforcement exemption for eight months when EOUSA concluded it was not warranted, only to later abandon it, (f) the FBI's connection to the Tampa Police Department's sudden decision to investigate nearly three years after the events at issue (and eight years after the DVDs at issue were recorded), *see* Smith Decl. ¶¶ 5-6 & Exs. 1-2, and (g) what, if anything, the Agencies have done about the documented perjury by Hogan and one of his lawyers that has now been brought to their attention through the confidential filings in this proceeding.  *See* S-59 ¶¶ 5-38, 49-66; *see also* Dkt. 54 at 18-20.  While the Agencies' conduct may have been entirely appropriate, the whole point of FOIA is to allow the public to answer those questions for itself, rather than accepting any agency's say-so.

Unlike the cases the Agencies cite, in which requestors made vague and speculative assertions of public interest, the substantial – and now unrebutted – factual record Gawker submitted raises issues which are inherently in the public interest.  "The relevant public interest [is] to find out . . . how the FBI and the DOJ carried out their respective statutory duties to investigate and prosecute criminal conduct."  *CREW III*, 746 F.3d at 1093 (finding public interest

in handling of investigation of Tom DeLay); *see also Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 978 F. Supp. 2d 1, 12 (D.D.C. 2013) ("*CREW IV*") (public interest in investigation of John Ensign's affair with staffer was "substantial" because disclosure "would shed light on the conduct of the DOJ and the FBI in conducting in the investigation . . . and in its decision to close the investigations without bringing charges"); *Showing Animals Respect & Kindness*, 730 F. Supp. 2d at 195 ("public has an interest in obtaining records that reveal the manner in which the government investigates and prosecutes criminal activity").

This is especially true where there is the possibility that the government may have failed to discharge its obligations, such as prosecuting crimes like extortion or perjury,[12] or where the request raises questions about whether prominent individuals received preferential treatment.[13] Both the FBI investigation and the irregularities in responding to Gawker's request have already received substantial press attention, *see, e.g.*, Dkt. 56 Exs. 6-7, further confirming the public interest in scrutinizing the Agencies' conduct. *See, e.g.*, *CREW IV*, 978 F. Supp. 2d at 13 ("widespread media attention, an ongoing public policy discussion, and the public profile of the subject of the investigation all contribute to the public's interest in disclosure," even for a "single decision whether to prosecute") (citing *ACLU*, 655 F.3d at 12; *Kimberlin*, 139 F.3d at 949).

Finally, the Agencies argue that "even if the Court were to find a public interest here that outweighs the privacy interests," disclosure "would be in vain" because Hogan has designated

---

[12] *See, e.g.*, *Bennett v. DEA*, 55 F. Supp. 2d 36, 42-43 (D.D.C. 1999) (government failure to address perjury a valid public interest); *Common Cause v. Nat'l Archives & Records Servs.*, 628 F.2d 179, 185 (D.C. Cir. 1980) (public interest may be served by disclosure where "information was provided under oath and subject to perjury sanctions").

[13] *See, e.g.*, *CREW III*, 746 F.3d at 1094 ("significant" public interest in treatment of "prominent" individuals); *Lissner v. Customs Serv.*, 241 F.3d 1220, 1223 (9th Cir. 2001) (public interest in "integrity of investigations" and possible "preferential treatment"); *Showing Animals Respect & Kindness*, 730 F. Supp. 2d at 195 ("public has an interest" in whether "certain individuals receive preferential treatment from government investigators and prosecutors").

the documents as confidential under a protective order in the state court.  Dkt. 62 at 13; Dkt. 61 at 18.  Given that the three things Hogan wanted to keep confidential are now public (*i.e.*, the FBI investigation, that there were three DVDs, and that one of them included racist and homophobic rants), Gawker has filed motions in the state court to unseal the Confidential Thomas Declaration and to challenge Hogan's confidentiality designations for the documents produced by the Agencies.  In any event, Hogan's confidentiality designations in state court do not provide any basis to find that disclosure is outside the public interest in this action.

### C.      The Agencies Have Not Met Their Burden on the Other Claimed Exemptions.

To properly invoke Exemption 3 for matters "occurring before a grand jury," the Agencies must show that disclosure would "elucidate the inner workings of the grand jury" that was actually empaneled.  *Puerto Rico Senate v. Dep't of Justice*, 823 F.2d 574, 582-84 (D.C. Cir. 1987) (documents presented to grand jury cannot be withheld without "affirmative demonstration of a nexus between disclosure and revelation of a protected aspect of the grand jury's investigation"); *see also Butler v. Dep't of Justice*, 1994 WL 55621, at *8 (D.D.C. Feb. 3, 1994) ("mere fact that a document was requested by a grand jury does not reveal the inner workings of that tribunal").  With no declaration based on personal knowledge, no transcripts of any grand jury proceedings, and no detailed *Vaughn* index explaining how the withheld materials would reveal a grand jury's workings, the FBI has not met its burden to invoke this exemption. *See Wash. Post Co. v. Dep't of Justice*, 863 F.2d 96, 100 (D.C. Cir. 1988) (documents "subpoenaed by the grand jury" and "used by government lawyers" not properly withheld).

The EOUSA does not address Gawker's objection to Exemption 5 in connection with Documents 1, 6 and 7.  *Compare* Dkt. 54-2 (addressing Docs. 1-7, 12) *with* Dkt. 62 at 15-19 (addressing only Docs. 2-5 and 12).  For the others, the EOUSA has not met its burden of showing that the documents are protected by work-product (Docs. 2-4 & 12), including that they

were prepared "in anticipation of litigation," *Hickman v. Taylor*, 329 U.S. 495, 508-09 (1947), or

that the deliberative process privilege applies (Doc. 5), including that segregable factual material

has been produced, *see Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260-62 (D.C.

Cir. 1977), or that communications with an "outside source" somehow do not abrogate the

privilege, *see Chilivis v. SEC*, 673 F.2d 1205, 1212 (11th Cir. 1982).

With respect to Exemption 7(E), the FBI contends that its declaration meets "its burden

of demonstrating logically how the release of the requested information might create a risk of

circumvention of the law."  Dkt. 62 at 22.  But the declaration contains generic information that

fails to establish that disclosure of the redacted information on routine law enforcement forms

would compromise secret law enforcement techniques.  Dkt. 54 at 23-24.

## CONCLUSION

Because the Agencies have failed to meet their burden of demonstrating that they have

(a) produced or accounted for all responsive documents, (b) timely and properly asserted their

exemptions, including in proper declarations and *Vaughn* indexes, and (c) asserted legally valid

exemptions, including the basis for asserting them, summary judgment should be denied.

August 28, 2015

Seth D. Berlin (pro hac vice)
Alia L. Smith (pro hac vice)
Patrick Kabat (pro hac vice)
LEVINE SULLIVAN KOCH
  & SCHULZ, LLP
1899 L Street, NW, Suite 200
Washington, DC 20036
Tel.: (202) 508-1122; Fax: (202) 861-9888
sberlin@lskslaw.com
asmith@lskslaw.com
pkabat@lskslaw.com

Respectfully submitted,

THOMAS & LOCICERO PL

By:   */s/ Gregg D. Thomas*
     Gregg D. Thomas
     Florida Bar No.: 223913
     Rachel E. Fugate
     Florida Bar No.: 0144029
601 South Boulevard
P.O. Box 2602 (33601)
Tampa, FL 33606
Tel.: (813) 984-3060; Fax: (813) 984-3070
gthomas@tlolawfirm.com
rfugate@tlolawfirm.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 28th day of August 2015 a true and correct copy of the

foregoing is being electronically filed and served via CM/ECF on the following:

Kenneth Stegeby
Office of the United States Attorney for the Middle District of Florida
400 North Tampa Street, Suite 3200
Tampa, FL 33602
Kenneth.Stegeby@usdoj.gov

*Counsel for Defendants*


    */s Gregg D. Thomas*
          Attorney