UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAWKER MEDIA, LLC, and
GREGG D. THOMAS,

                Plaintiffs,                         CASE NO.: 8:15-cv-1202-T-24EAJ

vs.

THE FEDERAL BUREAU OF
INVESTIGATION and THE EXECUTIVE
OFFICE OF UNITED STATES ATTORNEYS,

                Defendants,

vs.

TERRY GENE BOLLEA professionally known as
HULK HOGAN,

                Intervenor Defendant.

_____/

## ORDER

       This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. 62) and Plaintiffs' Responses thereto (Dkt. 65).  On October 29, 2015, the Court held a hearing on the motion for summary judgment.  Based on the following findings, the Court grants in part, denies in part, and reserves ruling in part on Defendants' Motion for Summary Judgment.

## I.       BACKGROUND AND PROCEDURAL HISTORY

       This Freedom of Information Act case relates to a very public dispute between Gawker Media, LLC ("Gawker") and Terry Bollea that has played out in this Court, in Florida state court, and in the national news media since October 2012 when Gawker published a sex tape involving Mr. Bollea and Heather Clem, the then-wife of radio personality Bubba the Love Sponge Clem,

on its website.  Relevant to this case, shortly after Gawker published the sex tape, the FBI began an investigation into a possible extortion attempt of Mr. Bollea regarding the sex tapes.  After investigation, the United States Attorney declined to prosecute.  Mr. Bollea sued Gawker in state court for invasion of privacy.  That case is still pending and is set for trial in March 2016.

Gawker submitted its initial FOIA request to the FBI on November 8, 2013 seeking records related to the FBI's investigation into the source and distribution of the sex tape.  Because of privacy concerns, the FBI requested that Gawker obtain records authorizations from Bollea and his counsel, David Houston.  They initially refused to sign the authorizations, but ultimately provided signed authorizations for the release of records.  Heather Clem also provided a records authorization release.  With those authorizations in hand, on November 7, 2014, Gawker renewed its FOIA request to the FBI and submitted an identical FOIA request to the EOUSA.  On January 29, 2015, the FBI informed Gawker that it had located 1,168 pages of responsive records and two CDs with responsive video material.  On February 3, 2015, Gawker agreed to pay the duplication charges for the materials and requested that the FBI provide them to Gawker.  On February 4, 2015, the FBI denied Gawker's FOIA request and declined to produce any materials citing FOIA exemption 7(A)[1], which provides an exemption to FOIA if the release of records that were compiled for law enforcement purposes could reasonably be expected to interfere with law enforcement proceedings.

On March 4, 2015, Gawker filed an administrative appeal from the FBI's denial of its FOIA request.  On May 6, 2015, the Department of Justice affirmed the FBI's decision not to disclose the responsive materials.  Gawker then filed the instant case against the FBI and the EOUSA on May 19, 2015 (Dkt. 1) and filed its motion for summary judgment based on the 7(A) law

---

[1] 5 U.S.C. § 552(b)(7)(A).

enforcement exemption on May 20, 2015 (Dkt. 5).  Gawker also requested that the Court order the FBI and EOUSA to produce Vaughn Indexes in order to provide a detailed list of the documents they were withholding and the basis for doing so.  (Dkt. 20).

The Court held its first hearing on June 24, 2015 and the FBI maintained its position that it was not going to produce any documents based on the 7(A) law enforcement exemption.  The Court ordered the FBI and the EOUSA to each (1) produce to Gawker all non-exempt documents, (2) file a Vaughn Index that was to include general categories of documents, the number of pages pertaining to each category, the claimed FOIA exemption, and the reason why the documents were subject to the FOIA exemption, (3) file a declaration in support of the Vaughn Index which was to provide a more particularized explanation as to why a particular exemption applied to each category of documents and was to be sufficiently specific and contain a sufficient amount of information so that the Court could rule on the claimed exemptions, and (4) turn over to the state court Special Discovery Magistrate the CDs containing responsive video footage.  (Dkt. 31).

The FBI and the EOUSA filed Vaughn Indexes and supporting declarations on June 30, 2015.  (Dkts. 37-1, 37-1, 38-1).  Notably, the FBI no longer claimed that the 7(A) law enforcement exemption applied, but rather asserted that other FOIA exemptions applied to an unspecified number of withheld documents, including: (b)(3) for grand jury information; (b)(5) for privileged information; (b)(6) and (b)(7)(C) for invasion of personal privacy; and (b)(7)(E) for law enforcement investigative techniques and procedures.  Dkt. 38-1.  The FBI submitted the declaration of David Hardy in support of its Vaughn Index.  Dkt. 37-1.  Hardy explained the exemptions relied on by the FBI in withholding documents from Gawker and the process by which the FBI processed and produced the remaining documents.  The FBI turned over an unspecified number of documents to Gawker, many of which were redacted.  The EOUSA submitted a Vaughn

Index for 18 documents (with each document containing between one and sixteen pages) and withheld or redacted information based on exemption (b)(5) for attorney work product or deliberative process material and (b)(7)(C) for unwarranted invasion of personal privacy.  Dkt. 37-2.  In support of the Vaughn Index, the EOUSA submitted the declaration of Tricia Francis.  Dkt. 37-2.  The EOUSA also turned over documents to Gawker.  Ms. Francis explained why the EOUSA relied on exemptions (b)(5) and (b)(7)(C) in withholding and redacting documents.  The FBI also turned over to the state court Special Magistrate three videos with redactions.

This Court held a second hearing on July 2, 2015 regarding the FOIA exemptions claimed by the FBI and the EOUSA.  Dkt.  45.  At the hearing, Gawker notified the Court that the three videos produced to Gawker appeared to be incomplete.  The FBI was directed to review the videos and produce a more accurate and complete version if necessary.  Dkt. 46.  The FBI stated it fixed the production problems and produced more complete videos to the state court Special Magistrate.  One or more of the videos were redacted to remove the identity of a third party's voice and presence (a party other than Terry Bollea and Heather Clem).  This Court also scrutinized the Vaughn Indexes filed by the FBI and the EOUSA – especially the one filed by the FBI – and determined that it could not make meaningful rulings on all of the claimed exemptions based on the Vaughn Indexes and supporting declarations alone because they lacked specificity and contained insufficient information to allow for a meaningful ruling.  Thus, the Court ordered the FBI and the EOUSA to turn over the withheld documents to the Court so that it could conduct an *in camera* review.[2]  The Court has received most of the withheld documents but is still waiting on

---

[2] FOIA permits, but does not require, an *in camera* inspection of the documents the government agency claims exempt. 5 U.S.C. § 552(a)(4)(B). The decision to conduct an *in camera* review of the documents the government claims are exempt is within the broad discretion of the trial judge. *Lam Lek Chong v. United States DEA,* 929 F.2d 729, 735 (D.C. Cir. 1991).  *In camera* inspection may be appropriate if agency affidavits insufficiently detail the justification for nondisclosure, thereby preventing a meaningful review

the withheld grand jury documents from the FBI and certain other documents from the EOUSA

before it can finish its *in camera* review of the withheld documents (*see* Dkt. 72).

Gawker filed its Objections to the claimed FOIA exemptions, the Vaughn Indexes, and

Declarations on July 24, 2015 and filed declarations in support of its objections.  Dkts. 54, 55, 59.

The FBI and EOUSA responded to the objections (Dkt. 61) and also filed a motion for summary

judgment (Dkt. 62), to which Gawker filed a response in opposition (Dkt. 65).  During the course

of the briefing, the FBI located and produced additional documents and the Court ordered that the

FBI file an amended Vaughn Index to reflect any documents withheld by the FBI in its second

production.  The FBI filed the amended Vaughn Index on October 20, 2015.  The Court held a

third hearing on October 29, 2015 to address Gawker's FOIA objections and the FBI and the

EOUSA's motion for summary judgment.  (Dkt. 71).

## II.    <u>FBI AND EOUSA'S MOTION FOR SUMMARY JUDGMENT</u>[3]

"FOIA cases typically and appropriately are decided on motions for summary judgment."

*Defenders of Wildlife v. U.S. Border Patrol,* 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  In deciding a

motion for summary judgment, the Court assumes the truth of the non-movant's evidence and

draws all reasonable inferences in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 255, 106 S.Ct. 2505 (1986).  Although FOIA "strongly favors prompt disclosure, its nine

enumerated exemptions are designed to protect those legitimate governmental and private interests

that might be harmed by release of certain types of information."  *Light v. Dep't of Justice*, 968 F.

Supp. 2d 11, 26 (D.D.C. 2013) (quoting *August v. FBI*, 328 F.3d 697, 699 (D.C.Cir.2003)).  "It is

clear that 'disclosure, not secrecy, is the dominant objective of the Act.'" *Id.* (quoting *Dep't of the*

---

of the cited exemptions, or if evidence of agency bad faith is before the court.  *Id.*  In this case, the Vaughn Indexes and supporting declaration insufficiently detail the justification for nondisclosure.

[3] The FBI and EOUSA's motion for summary judgment contains the same arguments set forth in their response to Gawker's objections to the claimed FOIA exemptions.

*Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592 (1976)). The exemptions are narrowly construed. *Id.* The government bears the burden to establish that the claimed exemptions apply to each document for which they are invoked. *Am. Civil Liberties Union v. DOD,* 628 F.3d 612, 619 (D.C. Cir. 2011).

In the motion for summary judgment, the FBI and the EOUSA argue that summary judgment should be granted in their favor because:

(1) The FBI and the EOUSA have properly invoked new FOIA exemptions after withdrawing claimed FOIA exemption 7(A) for ongoing law enforcement investigation;

(2) The FBI and the EOUSA's Vaughn Indexes and supporting declarations are sufficient;[4]

(3) The FBI and the EOUSA have properly invoked the privacy exemptions (b)(6) and (b)(7)(C);

(4) Gawker fails to demonstrate a public interest in disclosing the redacted and withheld information;

(5) The FBI has properly invoked exemption (b)(3) for grand jury information;

(6) The FBI and the EOUSA have properly invoked exemption (b)(5) for privileged information; and

(7) The FBI has properly invoked exemption (b)(7)(E) for law enforcement investigative techniques and procedures.

The Court will address each argument.

---

[4] The Court has already found that the Vaughn Indexes (especially the FBI's) are insufficient and has found that an *in camera* review of the withheld documents is necessary for the Court to rule on the claimed FOIA exemptions.

### A.    <u>Waiver</u>

While the FBI originally withheld all records under the 7(A) law enforcement exemption, it subsequently withdrew exemption 7(A) and instead asserted particularized exemptions including those for privacy, privileged information, grand jury materials, and law enforcement techniques and procedures.  The FBI argues that it has not waived its right to withhold or redact records based on exemptions other than 7(A) because it invoked the additional exemptions early on in the case before the Court has entered judgment.  Gawker argues that the FBI has waived its right to assert exemptions other than 7(A) because it failed to do so at the outset.

The Court has previously stated that it will permit the FBI to assert FOIA exemptions other than 7(A).  As soon as the FBI no longer claimed that their entire investigative file was being withheld under exemption 7(A), the FBI identified more specific exemptions in its Vaughn Index and supporting declaration.  Gawker has had an opportunity to object to those exemptions and the Court has had an opportunity to consider the exemptions along with Gawker's objections.  Gawker's objections and response to summary judgment does not change the Court's decision to consider the additional exemptions.

### B.    <u>Privacy Exemptions (b)(6) and (b)(7)(C)</u>

As to the privacy exemptions claimed by the FBI and the EOUSA, exemptions (b)(6) and (b)(7)(C), exemption (b)(6) protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  "Exemption 6 is designed to protect personal information in public records, even if it is not embarrassing or of an intimate nature." *Touarsi v. United States Dep't of Justice*, 78 F. Supp. 3d 332, 346 (D.D.C. 2015) (citations omitted).  Exemption (b)(7)(C) similarly protects "information compiled for law enforcement purposes" to the extent it "could reasonably be

expected to constitute an unwarranted invasion of personal  privacy."  5 U.S.C. § 552(b)(7)(C). Although the privacy language in Exemption 7(C) is broader than the privacy language in Exemption 6, the courts employ a similar analysis to decide whether a FOIA request may be categorically denied on either ground.  *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 840 F. Supp. 2d 226, 230-31 (D.D.C. 2012) ("*CREW II*").   Under both exemptions, the court must first assess whether the third-party has more than a *de minimis* privacy interest in the requested material.  *Id.* (citation omitted).  If such an interest exists, the court must then determine whether the third-party's privacy interest is outweighed by the public interest in disclosure.  *Id.*; *Touarsi*, 78 F. Supp. 3d at 347.

The FBI claims both (b)(6) and (b)(7)(C), while the EOUSA limits its privacy claim to exemption (b)(7)(C).  The Court does not have all of the EOUSA's withheld documents, so to the extent that the EOUSA's withheld documents are not covered by the privacy ruling herein, the Court will rule on the EOUSA's claimed privacy exemption once it has completed its *in camera* review.  As to the FBI's claimed privacy exemptions, the FBI has redacted the name of all of the key participants in this case, other than those who signed records authorizations (Terry Bollea, David Houston, Heather Clem) based on the privacy exemptions.  The FBI maintains that the individuals whose names appear in the FBI's investigation file should remain private, whether or not those individuals have been previously disclosed or are otherwise known.  Thus, the FBI argues that the mere mention of any individual's name in a law enforcement file justifies withholding. Gawker asserts that all or most of the key participants in this "incredibly public dispute" have no right to privacy because they have been identified in public court filings in this case, have identified themselves in other courts, and/or have identified themselves in the media.  Thus, according to Gawker and the many cases cited in its response to summary judgment, because the identities of

key players are already known, there can be no legitimate claim that their identities are private. *See, e.g., CREW II*, 840 F. Supp. 2d 226 (D.D.C. 2012) ("One can have no privacy interest in information that is already in the public domain, especially when the person asserting his privacy is himself responsible for placing that information into the public domain."); *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (where subject of a FOIA request "made several public statements" about the matter, the court found that he had "effectively waive[d]" his right to privacy and redaction "would not serve any useful purpose in protecting his privacy"); *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999) (rejecting agency's withholding letter on privacy grounds because the author himself admitted that he "had been telling the story of what he saw that night to colleagues and friends for many months"); *Showing Animals Respect & Kindness v. Dep't of Interior*, 730 F. Supp. 2d 180, 191 (D.D.C. 2010) (stating that "the presumption [that names in investigatory files are private] does not apply where an individual has voluntarily disclosed his involvement in the records at issue").

This case is unique in that the events surrounding the release of the Bollea sex tape, including the names and roles of those involved, have been heavily documented in the media and in court filings in this Court, in the Florida state court, and in the California state court since October 2012. With this in mind, the Court notes that FOIA "does not categorically exempt individuals' identities, though, because the privacy interest at stake may vary depending on the context in which it is asserted." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 153 (D.C. Cir. 2006). The Court will address whether the identity of certain individuals identified by Gawker in their objections and supporting declaration may remain private, or whether they enjoy no such privacy right. The FBI and EOUSA do not address each individual, but continue to assert that all names (with the exception of Terry Bollea, Heather Clem, and David Houston) in the law

enforcement files—whether publically available or not—should remain private.  The Court notes that if it orders the FBI and EOUSA to unredact an individual's name in the documents, any addresses, birth dates, social security numbers, telephone numbers, and other such private identifiers shall remain redacted and are not subject to disclosure.

### i.     Keith Davidson

Gawker asserts that the largest number of redactions relate to the target of the FBI investigation: Keith Davidson.  Gawker objects to the redactions of Mr. Davidson's name because "he has been repeatedly identified as the target of an FBI investigation into an alleged extortion scheme against [Bollea] involving the sex tapes."  Dkt. 55, ¶ 15.  In support, Gawker attaches papers filed by Davidson (an attorney based in Los Angeles, California) in California state court related to subpoenas served on him by Gawker.  Dkt. 55-4.  In those public filings, Davidson wrote that he "was involved in a transaction regarding the potential sale of certain rights in the Video which led to criminal investigations in Florida."  Dkt. 55-4.  Bollea also filed papers in that California action and stated that "Davidson was involved in an FBI investigation relating to an attempt to extort money from Mr. Bollea by threatening to release recordings depicting Mr. Bollea if Mr. Bollea did not pay money."  Dkt. 55-5.  The filing went on to discuss the sting operation that was set up by the FBI, in which Mr. Davidson represented certain parties involved in the sting. *Id.*  In this case, the government has filed documents that identify Mr. Davidson as the target of the FBI's investigation.  *See* Defendants' Response to Plaintiffs' Motion for Summary Judgment Dkt. 23-1 at 78-79 (letter from Assistant United States Attorney Sara Sweeney to David Houston with the subject line "Re: Keith M. Davidson, USAO No. 2012R02418" and indicating that the FBI was holding evidence from the above-slated investigation); *Id.* at 77 (email from FBI agent Jason Shearn to David Houston, copy to Sara Sweeney, with the subject line "Davidson

investigation"). News reports have also identified Mr. Davidson as having been the target of an FBI investigation into an extortion attempt against Bollea in connection with the sex tapes. *See* June 23, 2015 *New York Observer* report at Dkt. 55-6; July 15, 2015 *Capital New York* news story at Dkt. 55-7. Finally, at the July 2, 2015 hearing, Bollea's attorney, Charles Harder, referred to the FBI's investigation of "the extortionist" and then identified "Mr. Davidson." Dkt. 48 at 87-88, 90.

Based on this uncontroverted evidence, the Court finds that Keith Davidson's name shall be unredacted because Mr. Davidson does not have a privacy interest where Mr. Davidson himself has voluntarily disclosed his role in this investigation, the government has identified Mr. Davidson in public filings in this case, and Mr. Davidson has been identified in the media as being involved in the Bollea sex tape investigation.

### ii.    Bubba the Love Sponge Clem

Bubba the Love Sponge Clem ("Bubba Clem") is a widely known radio personality and the then-husband of Bollea's sex tape partner, Heather Clem. Gawker asserts that Bubba Clem's role in the sex tape controversy is a matter of public record and that his name should be unredacted. In support, Gawker offers the following uncontroverted evidence. On October 4, 2012, Gawker published the Bollea sex tape and reported that the video depicted Bollea's sexual relations and that a voice appearing to be Bubba Clem's can be heard on the video giving his blessing to the sexual encounter. Dkt. 55-8. The video footage posted by Gawker supported the contention that it was Bubba Clem's voice on the tape. Bollea subsequently gave a series of interviews confirming that Heather Clem was the woman in the video and stated that Bubba Clem encouraged Bollea to have sex with his wife. Dkt. 55-9 (October 9, 2012 TMZ article discussing Bollea's appearance on the Howard Stern Show; Dkt.55-10 (October 9, 2012 article published on The Today Show's

website discussing Bollea's appearance on the show).  TMZ further reported that Bubba Clem can

be seen and heard on the tape.  Dkt. 55-12.  Bubba has discussed his role in the sex tape controversy

at length on his own nationally syndicated radio show as well as on Howard Stern's radio and

television shows.  Bubba Clem has stated that the recording was made using his home surveillance

system and that the sexual relations between Bollea and Heather Clem occurred with his

permission.  Dkts. 55-13, 55-14 (clips from Bubba Clem's October 16 and 17, 2015 morning radio

show).  Bollea also initially sued Bubba Clem (amongst others, including Heather Clem and

Gawker) over the release of the sex tape.  Bubba Clem and Bollea settled and the settlement was

widely publicized.  *See* Dkt. 55-17 (October 29, 2012 *New York Daily News* article summarizing

the settlement); Dkt. 55-18 (October 29, 2012 *Tampa Bay Times* article on the settlement,

including the full text of Bubba Clem's on-air apology to Bollea).

Based on these facts, the Court finds that Bubba Clem has publicly identified himself as

being involved in the Bollea sex tape investigation and his involvement has also been reported in

the national news media.  Bubba Clem's name, image, and voice shall be unredacted from the

documents, videos and audio files.  This includes the documents withheld by the FBI and bates

numbered 1174, 1176, 1178 (initial release: twitter account screenshots), 563 (initial release:

image of CD containing apology), 1169, 1170 (supplemental release: twitter account screenshots).

### iii.       Attorneys for Bubba the Love Sponge Clem and Heather Clem

Gawker asserts that the FBI and the EOUSA have redacted the names of Bubba Clem's

attorneys, specifically Stephen Diaco, and that because it is widely known that Mr. Diaco

represented Bubba Clem in the sex tape controversy, his name should be unredacted.  Diaco was

publicly identified as Bubba Clem's attorney in the matter in an October 29, 2012 *Tampa Bay*

*Times* article.  Dkt. 55-18.  It has also been widely reported that Diaco represented Bubba Clem in another unrelated case that also played out in the public media.  *See* Dkts. 55-22, 55-23, 55-24.

The Court finds not only that it is publicly known that Mr. Diaco is Bubba Clem's attorney, but also that an attorney does not have a privacy interest in his identity remaining private if that attorney openly represents their client in a court proceeding.  The FBI and the EOUSA shall unredact Stephen Diaco's name from the documents.

Gawker also asserts that the names of Heather Clem's attorneys in this matter should be unredacted.  Those attorneys appearing on behalf of Ms. Clem in the Florida state court litigation were Barry A. Cohen and Michael W. Gaines of The Cohen Law Group.[5]  They are both listed on the docket sheet in that case, which is a publically available court record.  Dkt. 55-27.  Like Bubba Clem's attorney, the names of the attorneys that represented Heather Clem in open court in connection with this matter shall be unredacted.  The FBI and the EOUSA shall unredact the names of Barry A. Cohen and Michael W. Gaines and references to The Cohen Law Group from the documents.

### iv.    FBI Investigators and Assistant United States Attorneys

"[T]he status of the individuals . . . as [public] employees diminishes their privacy interests . . . because of the corresponding public interest in knowing how public employees are performing their jobs."  *Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984).  "While it is true that Government officials may have a somewhat diminished privacy interest 'they do not surrender all rights of personal privacy when they accept a public appointment.'"  *CREW II*, 840 F. Supp. 2d at 232 (quoting *Quinon v. F.B.I.,* 86 F.3d 1222, 1230 (D.C. Cir. 1996)).  However, as in the *CREW II*

---

[5] The Cohen Law Group, including Barry A. Cohen and Michael W. Gaines, represented Heather Clem in this Court in *Bollea v. Clem, Gawker, et al*, Case No. 8:13-cv-1-T-27AEP, which is also a matter of public record.

case, these very important general principles of privacy have less force when the information –
namely, the fact that there was an investigation into Davidson's possible extortion of Bollea – is
already a matter of public record.  Here, the FBI and the EOUSA have made no showing that
unredacting the names of government officials, who have been previously identified in public
filings in this case, would result in harassment, intimidation, or physical harm other than stating
as much.  "A bare conclusory assessment that public disclosure of a [government] employee's
name would constitute an invasion of personal privacy is insufficient to support the existence of a
privacy interest."  *United Am. Fin., Inc. v. Potter*, 531 F. Supp. 2d 29, 47 (D.D.C. 2008); *see
Stonehill v. I.R.S.*, 534 F. Supp. 2d 1, 12 (D.D.C. 2008) (holding that agency affidavit stating that
disclosure of a government employee's name "could cause harassment and/or undue
embarrassment or could result in undue public attention" was too conclusory to support
withholding under Exemptions 6 and 7(C)).

Documents filed by the government in this case have identified Jason Shearn as one of the
FBI agents involved in the sex tape investigation.  *See* Dkt. 23-1 at 75 (July 23, 2013 email from
Jason Shearn to David Houston); Dkt. 23-1 at 77 (September 3, 2013 email from Jason Shearn to
David Houston, copy to Sara Sweeney regarding "Davidson investigation").  The FBI and the
EOUSA have also redacted the name of the Assistant United States Attorney involved in the Bollea
investigation, who the government has identified by public filings in this case as Sara Sweeney.
*See* Dkt. 23-1 at 72, 73, 77-79.  Gawker asserts that it is also a matter of public record that Ms.
Sweeney's supervisor is Robert Mosakowski and his name appears to be redacted in the FBI's
production as well.  Plaintiff Gregg Thomas states in his declaration in support of Gawker's
objections that both Ms. Sweeney and Mr. Mosakowski spoke with him and his co-counsel freely
about their involvement in the matter on multiple occasions.

While the Court acknowledges that not all government officials in every case act in the public domain, in this case, because the government has identified Ms. Sweeney as being involved in the investigation and Mr. Mosakowski freely identified himself as also being involved, the redactions of their names serve no privacy purpose. Even if there is a privacy interest in the identity of government officials remaining private, the public interest in understanding how its government makes decisions is present and requires disclosure, especially in this case where the government chose not to prosecute an alleged extortionist. The FBI and the EOUSA shall unredact the names of Sara Sweeney, Robert Mosakowski, and Jason Shearn from the documents.

### v.    TMZ personnel (Mike Walters, Harvey Levin) and Howard Stern

The names of TMZ personnel and Howard Stern are redacted despite the fact that they appear on a public platform (radio, television, internet) as their occupation. On October 9, 2012, Bollea and his counsel, David Houston, participated in an on-air interview on TMZ regarding the sex tape and Bubba Clem's involvement with it. Dkt. 55-29. The TMZ personnel involved with the interview and appearing on television were Harvey Levin and Mike Walters. As for Howard Stern, both Bollea and Bubba Clem appeared on his nationally broadcast radio show and discussed the sex tape matter.

The Court finds that Harvey Levin, Mike Walters, and Howard Stern do not have a privacy interest such that their names should remain redacted. The FBI and the EOUSA shall unredact the names of Harvey Levin, Mike Walters, and Howard Stern.

### vi.    Terry Bollea's family, including his ex-wife, current wife, and children

Gawker also points to certain instances in the documents produced by the FBI where the names of Bollea's family members have been redacted where they are mentioned in passing and where their identity is obvious because they are otherwise identified by their familial relationship

to Bollea (such as Bollea's son, [redacted]).   However, unlike other individuals involved in this matter that have either publicly identified themselves as being involved or have been identified by the government in public filings in this case, Gawker does not point to anything specific in this matter that would result in a diminished privacy interest for Bollea's family members.   The Court finds that Bollea's family members have a privacy interest in this matter, and it is not outweighed by the public's interest in disclosure.   Gawker has not shown how the public's need-to-know regarding the identities of Bollea's family members outweighs their privacy interests.   The Court grants summary judgment in favor of the FBI and the EOUSA as to its claimed privacy exemptions for Bollea's family members.

### vii.   David Houston's Business Manager, Kristy ("K.C.") Rosser

David Houston (Mr. Bollea's attorney) signed a records authorization release in this case. As revealed in the documents, his business manager, K.C. Rosser, frequently acted on Houston's behalf by sending emails and other correspondence for Mr. Houston.   Ms. Rosser's name appears on the firm's letterhead and the FBI and the EOUSA have not shown that her identity as Mr. Houston's business manager is an otherwise private matter.   Because Ms. Rosser acted on Houston's behalf, and Houston signed a records authorization, the Court finds that Ms. Rosser does not have a right to privacy here.   The FBI and the EOUSA shall unredact Ms. Rosser's name from the documents.

### viii.   Nicknames for Terry Bollea

At the October 29, 2015 hearing, the FBI conceded that redacting nicknames for Terry Bollea, such as "Hootie," was a mistake because Bollea had provided a records authorization.   The FBI and the EOUSA shall unredact nicknames for Bollea from the documents.

As stated above, because the Court does not have all of the EOUSA's documents withheld on the basis of (b)(7)(C), the Court will issue a ruling on the EOUSA's claimed privacy exemption once it has all of the withheld documents and can complete its *in camera* review.  In the meantime, to the extent that the names discussed herein are ordered to be unredacted, the EOUSA shall unredact those names from the documents previously turned over to Plaintiffs.

Accordingly, the Court grants in part and denies in part the FBI and the EOUSA's Motion for Summary Judgment as it relates to privacy exemptions.

### C.       Law Enforcement Investigative Techniques and Procedures Exemption (b)(7)(E)

Exemption 7(E) protects law enforcement records that "would disclose techniques and procedures for law enforcement investigations ... if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  "A highly specific burden of showing how the law will be circumvented is not required; instead, exemption 7(E) only requires that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Touarsi*, 78 F. Supp. 3d at 348 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).  "While Exemption 7(E)'s protection is generally limited to techniques or procedures that are not well-known to the public, even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness." *Touarsi*, 78 F. Supp. 3d at 348 (quoting *Am. Immigration Lawyers Ass'n v. U.S. Dep't of Homeland Sec.*, 852 F. Supp. 2d 66, 78 (D.D.C. 2012)).

The FBI has claimed exemption 7(E) as to a number of withheld documents, which the Court has inspected *in camera*.  The Court finds that the documents withheld on the basis of 7(E) are exempt from disclosure and grants summary judgment in favor of the FBI as to exemption 7(E).

### D.     Privileged Information Exemption (b)(5)

FOIA Exemption 5 covers "inter-agency or intra-agency memorandums or letters which would not be available by law ... in litigation with the agency." 5 U.S.C. § 552(b)(5).  This means, in effect, privileged documents that originated with the agency.  *Touarsi*, 78 F. Sup. 3d at 344 (citing *U.S. Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).

The FBI has asserted the attorney-client privilege to withhold materials containing legal advice from Assistant United States Attorneys to government agents and employees concerning investigation strategies and a potential prosecution.   "On its face, this type of information is protected by the privilege." *Touarsi*, 78 F. Supp. 3d at 345.  Because the FBI's Vaughn Index was not sufficient for the Court to rule on the FBI's claimed exemption under (b)(5), the Court conducted an *in camera* review of the withheld documents and finds that the FBI has sufficiently invoked exemption (b)(5).   The Court grants summary judgment in favor of the FBI as to exemption (b)(5).

The EOUSA has also invoked exemption (b)(5), but the Court is waiting on the EOUSA to turn over to the Court some of the withheld documents.  Once the EOUSA provides the Court with the withheld documents, the Court will conduct an *in camera* review of the withheld documents and issue a ruling as to whether the claimed exemption is proper as to the EOUSA.

### E.     Grand Jury Proceedings Exemption (b)(3)

The FBI has also claimed that exemption (b)(3) applies to documents relating to grand jury proceedings in this matter.   Under this exemption, information "specifically exempted from disclosure by statute" is protected from disclosure provided that the statute (1) requires the matters be withheld from the public in such a manner as to leave no discretion or (2) establishes specific criteria for withholding or refers to particular types of matters to be withheld. 5 U.S.C. §

552(b)(3)(A).  Pursuant to Rule 6, Federal Rule of Criminal Procedure, matters occurring before a grand jury are prohibited from disclosure except in rare instances.  Fed. R. Crim. P. 6(e).  For purposes of FOIA Exemption 3, Rule 6 qualifies as a statute.  *Engberg v. U.S. Dep't of Justice*, No. 8:10-CV-1775-T-23MAP, 2011 WL 4502079, at *3 (M.D. Fla. Aug. 12, 2011) *report and recommendation adopted*, No. 8:10-CV-1775-T-23MAP, 2011 WL 4501388 (M.D. Fla. Sept. 27, 2011).

Gawker challenges whether a grand jury was ever actually convened such that the exemption would apply.  The third declaration of David Hardy states that "records responsive to Plaintiffs' request reflect that one or more federal grand juries were empanelled in relation to the investigation(s) at issue in the records here."  Dkt. 37-1 at 8.  The Court has ordered the FBI to turn over to the Court the documents withheld on the basis of exemption (b)(3) so that it may review those materials in camera.  Once the Court conducts its *in camera* review of the withheld documents, it will rule on the claimed exemption.

III.   **CONCLUSION**

Based on the foregoing, the Court rules as follows:

(1) Grants the FBI and the EOUSA's Motion for Summary Judgment on the FBI's claimed privacy exemptions (b)(6) and (b)(7)(C) as to Terry Bollea's family members, including his ex-wife, current wife, daughter, and son;

(2) Grants the FBI and the EOUSA's Motion for Summary Judgment on the FBI's claimed exemption 7(E) for law enforcement records and techniques;

(3) Grants the FBI and the EOUSA's Motion for Summary Judgment on the FBI's claimed exemption (b)(5) for privileged information;

(4) Denies the FBI and the EOUSA's Motion for Summary Judgment on the FBI's claimed privacy exemptions (b)(6) and (b)(7)(C) for Keith Davidson, Bubba the Love Sponge Clem, Bubba Clem's attorney Stephen Diaco, Heather Clem's attorneys Barry A. Cohen, Michael W. Gaines, and The Cohen Law Group, FBI Agent Jason Shearn, AUSA Sara Sweeney, AUSA Robert Mosakowski, Harvey Levin (TMZ), Mike Walters (TMZ), Howard Stern, Kristy "K.C." Rosser, and nicknames for Terry Bollea including "Hootie", and orders that the FBI and EOUSA shall unredact those names from the documents;

(5) Reserves ruling on the FBI's claimed grand jury exemption (b)(3);

(6) Reserves ruling on the EOUSA's claimed privacy exemption (b)(7)(C) to the extent the Court's ruling on the privacy exemptions discussed herein do not cover the documents withheld by the EOUSA on that basis;

(7) Reserves ruling on the EOUSA's claimed privilege exemption (b)(5) to the extent that the Court's ruling on the privilege exemption does not cover the documents withheld by the EOUSA on that basis.

**DONE AND ORDERED** at Tampa, Florida, this 4th day of November, 2015.

SUSAN C. BUCKLEW
United States District Judge

**Copies furnished to:**
Counsel of Record