UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAWKER MEDIA, LLC and GREGG D. THOMAS,

Plaintiffs,

vs.

Case No.: 8:15-cv-01202-SCB-EAJ

THE FEDERAL BUREAU OF INVESTIGATION and THE EXECUTIVE OFFICE OF UNITED STATES ATTORNEYS

Defendants.
_______________________________________/

**PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES**

Gawker Media, LLC and its counsel Gregg D. Thomas, Esq. (together, "Gawker"), respectfully move the Court for an order finding that Gawker is entitled to an award of attorneys' fees and costs from Defendants the Federal Bureau of Investigation ("FBI") and the Executive Office of United States Attorneys ("EOUSA") (together, the "Agencies") and directing the parties to participate in mediation to resolve the specific amount of fees and costs to which Gawker is entitled.

**PRELIMINARY STATEMENT**

FOIA requires agencies to perform their statutory duties *without* judicial intervention. Unfortunately, agencies sometimes ignore FOIA requests until sued, and this is a particularly egregious example of such a case. The statutory remedy Congress provided for such agency conduct is a requestor's entitlement to recover its attorneys' fees and costs. *See* 5 U.S.C. § 552(a)(4)(E)(i). Indeed, Congress amended FOIA in 2007 to ensure that attorneys' fees would be available whenever litigation became necessary to obtain agency compliance with FOIA, whether through a "voluntary" post-litigation production or by court order. *See* OPEN

Government Act of 2007, Pub. L. No. 110–175, 121 Stat. 2524; 5 U.S.C. § 552(a)(4)(E)(ii). As Congress recognized, if government agencies suffered no consequences for ignoring FOIA requests in the hope that requestors would prove unwilling or unable to front the cost of litigation, and could exacerbate those costs with impunity, our public records regime would become a nullity.

This case provides a textbook illustration of why fee awards are such a critical part of FOIA litigation. Not only did the Agencies fail to comply with their statutory obligations before Gawker filed this action, but even after litigation commenced, the Agencies exponentially expanded Gawker's fees and costs again and again, including through serial noncompliance with this Court's Orders. Ironically, the Agencies now balk at paying those fees and costs, and in the process are multiplying those costs further by requiring Gawker to respond to new and baseless arguments that they should not be required to pay *any* fees or costs *at all*. But the Agencies have it precisely backwards: FOIA provides fee-shifting so that *requestors* do not balk at incurring fees and costs to enforce their rights under the statute. Such an award is particularly warranted here, where there is substantial public interest in the records at issue and where a large portion of the fees and costs directly resulted from the Agencies' failure to comply with this Court's orders.

**<u>MOTION FOR ATTORNEYS' FEES AND COSTS</u>**

1. Before this case commenced, neither Agency had produced a single document to Gawker. Indeed, despite a statutory requirement to respond within twenty days, the EOUSA failed to respond to Gawker's FOIA request at all for eight months. For its part, the FBI first asserted a law enforcement exemption even though it (a) failed to disclose that its own investigation was over and that it was asserting the exemption ostensibly to protect an investigation by a non-federal law enforcement agency (which itself quickly and publicly

confirmed its investigation), and (b) the EOUSA (when ultimately compelled to respond) concluded no such law enforcement exemption applied. The FBI then changed course and asserted a number of other exemptions, notably those related to personal privacy interests.

2. Through a series of orders, and at four hearings, this Court directed the Agencies to produce more than 2,000 pages of documents as well as multiple audio and video files. The Court also required the Agencies to unredact the names of numerous individuals, rejecting the Agencies' contention that a privacy interest prevented their disclosure. *See, e.g.*, *Gawker Media, LLC v. FBI*, --- F. Supp. 3d ----, 2015 WL 6736800 (M.D. Fla. Nov. 4, 2015) (Dkt. 75). By the time the last of the improperly withheld documents was finally produced in early December, more than a year had passed since Gawker submitted the FOIA requests at issue.

3. Throughout, the Court was repeatedly required to issue orders addressing the Agencies' non-compliance on all manner of things,[1] including, for example, the failure to provide documents and adequate *Vaughn* indexes as ordered and the repeated submission of declarations representing to this Court under oath that the Agencies had no further documents – only to later "find" them and file a new declaration. *See* Dkts. 23-1, 35-1, 37-1, 61-3, and 79

[1] *See, e.g.,* Order, June 24, 2015, Dkt. 31 (ordering Defendants to release various documents and video files by date certain); Order, June 29, 2015, Dkt. 36 (granting Defendants additional time to produce required materials, after they failed to comply with the deadlines in Dkt. 31); Order, Oct. 30, 2015, Dkt. 72 (finding that "[a]fter three hearings on this matter, the FBI and EOUSA have not been able to definitively represent to the Court" whether they have fully complied with its orders, and thus directing the Agencies to provide such information); Order, Nov. 4, 2015, Dkt. 75 (ordering FBI to "un-redact" substantial swaths of information it had produced only in redacted form); Order, Nov. 12, 2015, Dkt. 78 (ordering EOUSA to "un-redact" certain documents); Order, Nov. 17, 2015, Dkt. 83 (requiring Agencies to account for "missing and unaccounted-for documents"); Order, Dec. 2, 2015, Dkt. 86 (ordering compliance with Dkt. 83, after Agencies failed do as directed in that order); and Order, Dec. 2, 2015, Dkt. 87 (again requiring Agencies to comply with earlier orders, noting: "The Court has entered numerous orders directing Defendants to produce documents, videos, and audio recordings to Plaintiffs, to produce those same documents, videos, and audio recordings in unredacted form, to submit declarations, and to submit Vaughn Indexes. The FBI and EOUSA have failed to comply with almost all of the Court's orders in this matter.").

(five declarations of D. Hardy); Dkts. 35-2, 37-2, 61-2, and 81 (four declarations of T. Francis). The Court summarized its frustration with the Agencies' conduct in both its December 2, 2015 Order, and at the December 8, 2015 hearing, its *fourth* lengthy hearing in this matter. *See, e.g.*, Order, Dec. 2, 2015, Dkt. 87 (questioning whether "Defendants are incompetent or intentionally disregarding the Court's Orders"); Hrg. Tr. at 5:3-4, Dec. 8, 2015, Dkt. 97 (summarizing Agencies' conduct throughout matter as "wasting all of our time. Not just my time, plaintiffs' time.").

4. From this record, there are two inescapable conclusions. First, by any objective measure, Gawker substantially prevailed in this action (to be clear, it does not seek an award of fees and costs with respect to the few issues on which it did not prevail). Second, the fees and costs Gawker incurred resulted in *significant* part from the Agencies' failure to comply both with their statutory obligations *and* with repeated orders of this Court.

5. As to the issue of fees, the Agencies' counsel (accompanied by both the Chief of the Civil Division and counsel from FBI headquarters) initially represented to this Court that they "in principle. . . have no problems" with "informally resolving" the issue. Hrg. Tr. at 59:14-15, Dec. 8, 2015, Dkt. 97. However, five weeks later, on the morning of the deadline set by the Court, the Agencies advised that, even though Gawker had "substantially prevailed," it was entitled to no fees at all because it had requested the documents for use in a lawsuit. *See* Pls.' Status Report, Jan. 15, 2016, Dkt. 99; Defs.' Notice Regarding Attorneys' Fees, Jan. 15, 2016, Dkt. 100. In response, Gawker explained that the lone authority cited by the Agencies (*Dorsen v. SEC*, 15 F. Supp. 3d 112, 116 (D.D.C. 2014)) was inapplicable here, where (a) there is substantial public interest in this matter, and (b) the Agencies' conduct throughout had dramatically increased the fees and costs Gawker was required to incur.

6. In light of the Agencies' newly-minted objection, this Court concluded that it would need to decide the issue of Gawker's entitlement to fees, reserving the amount of fees either for mediation or a later proceeding . Order, Jan. 21, 2016, Dkt. 102. Gawker therefore files this motion seeking an order confirming that Gawker is entitled to fees under the statute, and referring the issue of the amount of those fees to mediation.

**MEMORANDUM OF LAW**

The history of the Agencies' responses to Gawker's FOIA Requests embodies the very problem Congress sought to solve when it included a fee provision in the FOIA statute, and when it then amended the law in 2007, providing for the award of attorneys' fees whenever a lawsuit was the "catalyst" for the production of improperly withheld records. *See* OPEN Government Act of 2007, Pub. L. No. 110–175, 121 Stat. 2524. As the Agencies concede, *see* Dkt. 100 at 2, attorneys' fees and costs are available under FOIA to plaintiffs who (1) have "substantially prevailed" in litigation that spurs the release of previously withheld public records, and (2) are otherwise "entitled" to fees based upon consideration of various factors, including the public's interest in the requested materials, the plaintiff's interest in the requested materials, and the agency's conduct. *See* 5 U.S.C. § 552(a)(4)(E); *see also e.g., Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008); *Bory v. U.S. R.R. Ret. Bd.*, 2013 WL 5408309, at *3 (M.D. Fla. Sept. 25, 2013). The balancing of factors is a matter for the district court's discretion.

Here, Gawker has clearly "substantially prevailed." It is likewise "entitled" to recover its attorneys' fees because (a) its lawsuit resulted in the release of thousands of previously withheld documents in a highly-public matter, (b) those documents shed light on the Agencies' conduct (including that the FBI conducted a full extortion investigation and the U.S. Attorney's Office

declined to prosecute), and (c) the Agencies have conducted nearly every aspect of this litigation in violation of the duties imposed upon them by FOIA *and* by a series of this Court's orders.

## I. Gawker Is Eligible To Recover Its Attorneys' Fees Because It Has Substantially Prevailed In This FOIA Litigation.

Gawker is eligible for a fee award because it has substantially prevailed in this litigation, and the Agencies concede as much – at least for the purpose of the "notice" that prompted this latest round of briefing. Dkt. 100 at 2. In light of the Agencies' history of eleventh-hour changes in position, however, Gawker addresses this issue briefly.

A requestor has "substantially prevailed" under FOIA when it obtains "relief through . . . a judicial order," among other methods. 5 U.S.C. § 552(a)(4)(E)(ii). Here, Gawker "substantially prevailed" by obtaining orders from this Court that forced the Agencies to comply with their statutory responsibilities to process its requests and to produce responsive records. *See Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 370 (D.C. Cir. 2008) (requestors eligible for fees where court orders disclosure of records); *Edmonds v. FBI*, 417 F.3d 1319, 1326 (D.C. Cir. 2005) (requestor "'prevailed' in her FOIA action by obtaining court-ordered, expedited processing of her request, which culminated in the release of 343 nonexempt pages"); *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 820 F. Supp. 2d 39, 44 (D.D.C. 2011) (even scheduling order requiring production by a specified date qualifies plaintiff as eligible for fees). Specifically, Gawker obtained orders (a) securing the release of more than two thousand pages of records, (b) requiring the Agencies to unredact numerous names, and (c) obtaining numerous audio and video files.[2] In these circumstances, it cannot be seriously disputed that Gawker has

[2] Gawker reiterates that it is not seeking (and did not seek in its informal efforts to resolve this issue) fees and costs incurred in connection with the few issues on which it did not prevail (including the Agencies' assertion of Exemptions 3, 5 and 7(E)).

substantially prevailed in this FOIA litigation and is therefore eligible to recover its fees and costs.

## II. Gawker Is Entitled To Recover Its Attorneys' Fees and Costs.

District courts typically consider four factors in determining whether an eligible requestor is entitled to recover its attorneys' fees and litigation expenses: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Davy*, 550 F.3d at 1159; *Bory*, 2013 WL 5408309, at *3. "No one factor is dispositive," and the list is not exhaustive. *Davy*, 550 F.3d at 1159. Rather, district courts assess these factors, and any other relevant considerations, "against the backdrop" of the policies undergirding FOIA's fee provision, which include "deterring the government from opposing justifiable requests" and "punishing the government where such opposition is unreasonable." *Batton v. IRS*, 718 F.3d 522, 527 (5th Cir. 2013). Here, each factor weighs in favor of awarding fees and costs to Gawker.

### A. The Public Derives Benefit From The Documents At Issue Here.

Throughout this litigation, and most recently in their Notice, Dkt. 100 at 2, the Agencies have argued that the public interest in this case is inconsequential, attempting to depict this lawsuit as involving purely the private affairs of a litigant, Gawker, seeking to defend itself. This is wrong as a matter of both law and logic. *See Piper v. DOJ*, 339 F. Supp. 2d 13, 21 (D.D.C. 2004) (for purposes of FOIA fee awards, "the notion that a private interest and public interest 'must be mutually exclusive is not supportable'"). A private litigant may secure records under FOIA that serve both its own interests *and* the public's. Consistent with the overarching goals of FOIA, this first factor focuses on the latter, *i.e.*, the significance to the public. *Davy*,

550 F.3d at 1159 (the first factor "requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought").

The public does not cease to benefit from information about how law enforcement agencies discharge their statutory duties or investigate extortion attempts against celebrities simply because one of those celebrities sues a news organization for reporting and commenting on his conduct. Indeed, courts have repeatedly awarded attorneys' fees in FOIA cases where the records were principally sought for litigation or other private use but where the public nevertheless benefited from the requests. *See, e.g.*, *Bory*, 2013 WL 5408309, at *3 (plaintiffs' "persistence in this litigation, involvement with the railroad retiree community, and communications about the lawsuit confer a public benefit, in addition to a private one"); *Negley v. FBI*, 818 F. Supp. 2d 69, 75 (D.D.C. 2011) (although documents were sought for personal reasons, fees were warranted because of the public benefit in understanding "how the FBI maintains its records and the baseline method by which it will search for and respond to FOIA requests"); *Ajluni v. FBI*, 947 F. Supp. 599, 611 (N.D.N.Y. 1996) (request for plaintiff's own record conferred substantial public benefit, in addition to private benefit, where "[p]laintiff asserts that he plans to use the information that has been disclosed in connection with this litigation to speak on issues of public concern"); *Landano v. DOJ*, 873 F. Supp. 884, 892 (D.N.J. 1994) ("although [plaintiff] has a strong private interest in the information, this interest furthers the public's concern with the criminal justice system," warranting fee award); *Whalen v. IRS*, 1993 WL 532506, at *6 (N.D. Ill. 1993) (awarding fees despite plaintiff's litigation interest in documents, including because documents would shed light on operation of IRS).

The Agencies continue to proffer the litigation-interest red herring because they cannot credibly dispute that the "potential public value of the information sought" by the Requests is

substantial. *Davy*, 550 F.3d at 1159. The requests sought information at the very heart of FOIA, which exists to serve the public's powerful interest in "shedding light" on agencies' performance of their duties. *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). For the reasons explained in earlier briefing, *see, e.g.*, Pls.' Obj. to Defs.' FOIA Responses at 18-20, July 24, 2015, Dkt. 54; Pls.' Opp. toDefs.' Summ. J. Mot. at 17-19, Aug. 28, 2015, Dkt. 65, and in this Court's Order, Nov. 4, 2015, Dkt. 75, there is clearly significant public interest in, among other things, the FBI's investigation into the alleged extortion of Hulk Hogan, the U.S. Attorney's Office's subsequent decision not to prosecute the alleged extortionist, and the Agencies' tortured response to Gawker's FOIA requests and litigation. *See Gawker Media, LLC*, 2015 WL 6736800, at *7 (ordering release of names of government agents based on "the public interest in understanding how its government makes decisions. . ., especially in this case where the government chose not to prosecute an alleged extortionist") (Dkt. 75).

Moreover, courts have recognized that obtaining information for a related civil suit may itself further a valid public interest. *See United Am. Fin., Inc. v. Potter*, 667 F. Supp. 2d 49, 60 (D.D.C. 2009) ("the potential use of these documents in a potential civil suit" advances a public interest). Where, as here, the records produced conclusively demonstrate that Bollea told the FBI one version of events and is providing different testimony to a state court, *see* Conf. Decl. of G. Thomas, Dkt. S-59, the release of those records also serves the public interest in the truth and in the fair and orderly administration of justice. *See, e.g.*, *Aguilera v. FBI*, 941 F. Supp. 144, 152 (D.D.C. 1996) (public has an interest in litigant's access to documents necessary for a "full adjudication of the merits"); *Cleaver v. Kelley*, 427 F. Supp. 80, 82 (D.D.C. 1976) (recognizing public interest in "complete and thorough adjudication"). As a result, this case presents materially different circumstances from those present in *Dorsen*, the only case cited by the

Agencies in support of their position, *see* Dkt. 100 at 2-3, or the handful of other cases that reject or limit fee awards where there is no larger public value to the records and the only benefit is to the requestor's private interest in a lawsuit or otherwise.[3]

While the Agencies have in the past pointed to the fact that the records may not yet be released pursuant to a state court protective order, the circumstances in that state case actually prove Gawker's point. There, a consortium of news organizations has intervened to gain access to sealed records with a particular focus on the records the Agencies produced under FOIA. *See* Ex. 1 (Media Intervenors' Motion). Then, in late November, the media intervenors challenged, in the District Court of Appeal, the trial court's refusal to unseal various court records, including a number that attach and discuss the records produced by the Agencies. Ex. 2 (Petition). While that petition remains pending, the appeals court has both directed a response, *see* Exs. 3-5 (responses, including Gawker's public redacted version and Bollea's, and Petitioners' reply), and issued a series of orders suggesting that it intends to carefully scrutinize Bollea's claims that the judicial records at issue, including the records produced by the Agencies here, must remain sealed, *see* Ex. 6 (orders dated Dec. 3, 2015, Jan. 8, 2016, Jan. 22, 2016). And the trial court has stated that, even if such materials are covered by the protective order for purposes of discovery,

[3] *See Dorsen*, 15 F. Supp. 3d at 121 (no public interest where documents were "highly particularized" and specific to a private person who was not in the public eye); *see also, e.g., Bryant v. CIA*, 818 F. Supp. 2d 153, 158 (D.D.C. 2011) (denying fees where plaintiff seeking records of government awareness of alien spacecraft obtained five pages of records because "there is no indication . . . either in the plaintiff's briefs or his declarations that the records obtained as a consequence of this litigation are of any public value"); *Dasilva v. U.S. Citizenship & Immigration Servs.*, 2014 WL 775606, at *4 (E.D. La. Feb. 24, 2014) (denying fees where plaintiff sought records for use in deportation proceedings presented "minimal" public value and plaintiff's interest was purely personal); *Kaye v. Burns*, 411 F. Supp. 897, 905 (S.D.N.Y. 1976) (denying fees where government had withheld documents pertaining to corporate litigation because there was "little, if any, benefit to the public by virtue of plaintiff's action").

it intends to have open proceedings when the trial commences in early March. *See* Ex. 7 at 15:12-19 (Jan. 13, 2016 Hrg. Tr. before Hon. Pamela A.M. Campbell).

At bottom, there is perhaps no better yardstick of the "public value of the information sought" than the fact that the records at issue have been the subject of countless news reports, and access petitions in both the trial and appellate courts by a consortium of news organizations. Given both the substance of the records, their role in ensuring the integrity of a state court proceeding, and the substantial public interest in them beyond just that lawsuit, the first factor powerfully favors Gawker.

**B. The Second Factor Favors Gawker Because Its "Commercial" And Litigation Interests Derive Wholly From The Pursuit And Defense Of Its Newsgathering Interests.**

The next factor is whether Gawker derives any "commercial" benefit from the documents obtained. It is universally recognized that determinations of "commercial benefit," "commercial use," and "commercial purpose" are made differently in the context of news organizations, because the actions they take as profit-seeking businesses are necessarily pursued in their capacity as surrogates for the public in obtaining and disseminating information about matters of public concern. Well-settled law recognizes that, while news organizations charge money to fund their operations, their journalistic activities are a quintessential public good that operate differently under the law than other types of for-profit businesses. As the D.C. Circuit has explained:

> If newspapers and television news shows had to show the absence of commercial interests before they could win attorney's fees in FOIA cases, very few, if any, would ever prevail. Yet their activities often aim to ferret out and make public worthwhile, previously unknown government information – precisely the activity that FOIA's fees provision seeks to promote.

*Davy*, 550 F.3d at 1160 (internal citation and quotations omitted). For this reason, the appeals court affirmed, "'news interests,' *regardless of private incentive*, generally 'should not be

considered commercial interests' for purposes of the second factor." *Id.* (emphasis added) (citation omitted).

Here, the Agencies have contended that the benefit to Gawker is primarily "commercial" because of the documents' potential use in the state court litigation. Dkt. 100 at 2-3. But in fact, the interests here are different in kind, and this factor is therefore not properly weighed against Gawker. Specifically, Gawker's interests here are not simply private commercial interests, but are those of an organization trying to get at the truth, including: (1) to avoid a punishing money judgment in a case challenging a report and controversy that another member of this Court and a unanimous panel of the District Court of Appeal have held addresses a matter of public concern;[4] (2) to ensure that testimony in that highly publicized matter is truthful, and not at odds with official statements given to the FBI; and (3) to understand the conduct of the FBI and U.S. Attorney's Office in their handling of the investigation, the decision not to prosecute, and their handling of Gawker's FOIA requests.

Indeed, the litigation in which Gawker is supposedly benefitting is in defense of the very "kind of endeavor for which a public subsidy makes some sense," rather than the prosecution of purely private lawsuits by plaintiffs "that benefit only themselves." *Davy*, 550 F.3d at 1160. Though the Agencies have argued that this factor favors them because civil litigants are sufficiently incentivized to litigate FOIA disputes without the promise of recovering attorneys' fees, they neglect a deep and undisputed body of case law under FOIA and the First Amendment that recognizes that, when a news organization goes to court on behalf of the public's interest in access to information, or in defense of its right to publish newsworthy information, the

---

[4] *See Bollea v. Gawker Media, LLC*, 2012 WL 5509624 (M.D. Fla. Nov. 14, 2012); *Bollea v. Gawker Media, LLC*, 913 F. Supp. 2d 1325 (M.D. Fla. 2012); *Gawker Media, LLC v. Bollea*, 129 So. 3d 1196, 1200-02 (Fla. 2d DCA 2014).

"commercial benefits" it may receive are subordinate to its role as a surrogate for the public. Significantly, the Agencies have not cited a single case – and Gawker is aware of none – in which this second factor has weighed against a news organization in these circumstances.

Moreover, even if the benefit to Gawker were primarily commercial (which it is not, as discussed above and in Part II.A), that fact would not *preclude* an award of fees, it would simply be one consideration among many. *See, e.g.*, *Negley*, 818 F. Supp. 2d at 75-77 (awarding fees even though information was for personal use and this factor did not weigh in plaintiff's favor). Indeed, even outside of this context, courts have routinely awarded fees to requestors whose FOIA requests stemmed from an underlying litigation interest. *See, e.g.*, *Cazales v. DOJ*, 709 F.2d 1051, 1054-55 (5th Cir. 1983) (fee award appropriate despite fact that plaintiff sought records for use in separate litigation); *Bory*, 2013 WL 5408309, at *2-3 (balancing the factors, and determining plaintiffs were entitled to fees even though they sought the information for "personal" reasons in connection with administrative proceedings); *Williams v. Dep't of Army*, 1993 WL 372245, at *4 (N.D. Cal. 1993) (awarding fees where other interests and factors "overshadow[] and outweigh[] any potential commercial benefit to Plaintiff from pursuing a lawsuit").

**C. The Third Factor Favors Gawker Because Its Primary Interest Was To Obtain Newsworthy Government Information.**

The third factor – the nature of the complainant's interest in the information – is closely related to the second factor. *See Elec. Privacy Info. Ctr. v. FBI*, 72 F. Supp. 3d 338, 347 (D.D.C. 2014). Here, as explained, Gawker's overriding interest is in the dissemination of information about matters of public concern to the public.

The Agencies rely on *Dorsen* for the notion that where a FOIA requestor seeks information for "personal" or "commercial" use, factors two and three favor the government.

Dkt. 100 at 2-3 (citing *Dorsen*, 15 F. Supp. 3d at 116). But *Dorsen* is utterly inapplicable here. There, the requestor sought and obtained a small amount of "highly particularized" information from the SEC. The district court found that the second and third factors favored the SEC because the documents were *only* sought for use in a private lawsuit *and for no other reason.* Here, Gawker's interest (and the public's interest) in the requested information goes far beyond simply defending a lawsuit. And even if that were not the case, the nature of the state court litigation itself – which concerns a news organization's defense of its First Amendment freedoms and has drawn a significant amount of public attention across the country – sets it apart from an ordinary private dispute of the type at issue in *Dorsen*. *See also Williams v. FBI*, 17 F. Supp. 2d 6, 9 (D.D.C. 1997) (third factor may favor requestor where disclosure advances a public purpose, including encouraging fuller defense of similar cases where constitutional rights are at stake, even if request was made for purposes of private litigation). Thus, in these circumstances, factor three, like factors one and two, clearly favors an award of fees to Gawker.

**D. The Agencies' Withholding Was Not Reasonable.**

As this Court has observed, the fourth factor – the reasonableness of the agency's conduct – is often the "most significant, if not potentially determinative factor, justifying an award of fees and costs." *Bory*, 2013 WL 5408309, at *2-3. "This factor seeks to discourage obdurate behavior on the part of the government and weed out those cases where the government was recalcitrant in its opposition to plaintiff's FOIA request." *Piper*, 339 F. Supp. 2d at 22.

The Agencies suggest that this factor favors them because some of their withholdings have been upheld, but that is irrelevant to the fourth factor, particularly given that Gawker does not seek an award of such fees. Rather, courts focus on "the reasonableness of the [withholding of] documents that were ordered released," *id.* at 23 (finding requestor entitled to attorneys' fees

despite partial upholding of agency withholdings), and the degree of recalcitrance found in the agencies' conduct. Here, unlike in *Dorsen* – where no court ever adjudicated the merits of the claimed exemption because the records were produced shortly after the complaint was filed – this Court has repeatedly held that the Agencies improperly withheld documents, improperly redacted documents, improperly failed to provide adequate *Vaughn* indexes, improperly delayed responses, improperly failed to comply with court orders and otherwise behaved in a clearly "recalcitrant" and "obdurate" manner. As this Court observed:

> The Court has entered numerous orders directing Defendants to produce documents, videos, and audio recordings to Plaintiffs, to produce those same documents, videos, and audio recordings in unredacted form, to submit declarations, and to submit Vaughn Indexes. *The FBI and EOUSA have failed to comply with almost all of the Court's orders in this matter*. It is unclear to the Court whether Defendants are incompetent or intentionally disregarding the Court's orders. Because of Defendants' inability to comply with the Court's orders, judicial time and resources, in addition to Plaintiffs' time and resources, have been expended in an effort to gain compliance and resolve this case.

Dkt. 87 at 1-2 (emphasis added). At its most recent hearing, the Court again expressed its exasperation over the unnecessary effort required to secure production of roughly 2,000 pages of documents, seven audio files and five DVDs, noting that "is not an inordinate number of documents" and stating:

> I don't know whether the defendants are just simply incompetent or that you're just glossing over this and disregarding what we are doing here. So I'm just fed up. And I've spent a lot of time on this. We have had a lot of hearings, and I don't want to keep doing this. It's wasting all of our time. Not just my time, plaintiffs' time.

Hrg. Tr. at 4:23-5:4, Dec. 8, 2015, Dkt. 97.

The Agencies' pattern of such conduct reaches back to the very beginning of this matter. It includes (a) the FBI's invocation of the law enforcement exemption – requiring an

administrative appeal,[5] complaint and full round of summary judgment briefing – only to abandon that exemption, one that was never asserted by the EOUSA, (b) privacy assertions on behalf of well-known people whose connection to the investigation was already public, (c) repeated, evolving declarations from Mr. Hardy and Ms. Frances, (d) inadequate and incomplete *Vaughn* indexes and "batch" cover sheets that did not match the documents produced, and (e) repeated violations of this Court's orders, rules and deadlines. Taken in combination, it should not have required anywhere near as much work by plaintiffs and their counsel to extract 2,000 or so pages of documents, and the audio and video files. *See, e.g.*, Hrg. Tr. at 45:20-46:8, Dec. 8, 2015, Dkt. 97 (the Court's expressing frustration about the extensive and unnecessary effort required: "I just don't understand how this could have been as difficult to do as it has been."). Because no FOIA requestor, even one involved in other litigation, has an incentive to subject itself to a pattern of such conduct, this is precisely the type of case in fees are especially warranted. *See, e.g., Sikes v. U.S.*, 987 F. Supp. 2d 1355, 1375 (S.D. Ga. 2013) (awarding fees where "Defendants' inconsistent and varying justifications for withholding the materials requested . . . suggests that Defendants withheld the materials in bad faith"); *Negley*, 818 F. Supp. 2d at 77 (finding that this factor favored plaintiff, and awarding fees because "the FBI has stonewalled, has delayed, has repeatedly 'found' responsive documents long after it should have, and on numerous occasions failed to meet its obligation under FOIA," and because its overall "conduct 'was exactly the kind of behavior the fee provision was enacted to combat'")

[5] Fees are appropriately assessed for administrative appeals. *Ctr. For Biological Diversity v. U.S. Fish & Wildlife Serv*., 703 F. Supp. 2d 1243, 1248-49 (D. Colo. 2010); *see also McCoy v. Fed. Bureau of Prisons*, 2005 WL 1972600, at *4 (E.D. Ky. Aug. 16, 2005) (awarding fees incurred on plaintiff's administrative appeal because it "was necessary to exhaust administrative remedies").

(internal citations and quotations omitted); *Whalen*, 1993 WL 532506, at *9 (awarding fees where Agency's compliance was "dilatory").

**GOOD FAITH CERTIFICATION**

Gawker's counsel has spoken repeatedly with counsel for the Agencies, Kenneth Stegeby of the United States Attorneys' Office for the Middle District of Florida, both prior to and since this Court's January 21 Order directing the parties to brief the issue of Gawker's entitlement to attorneys' fees and costs. To date, Mr. Stegeby has advised that the Agencies' position is that they are not required to pay fees in this case.

**CONCLUSION**

For these reasons – particularly the extraordinary public interest and the Agencies' conduct that exponentially multiplied the fees and costs incurred – Gawker is entitled to recover its attorneys' fees and litigation expenses. Recognizing that the parties also disagree on the appropriate sum to be awarded, Gawker respectfully requests the appointment of a mediator as the most efficient way to resolve that second issue, including because it would hopefully avoid another round of briefing and adjudication.

January 29, 2016

Respectfully submitted,

THOMAS & LOCICERO PL

By: */s/ Gregg D. Thomas*

Gregg D. Thomas
Florida Bar No.: 223913
Rachel E. Fugate
Florida Bar No.: 0144029
601 South Boulevard
P.O. Box 2602 (33601)
Tampa, FL 33606
Tel.: (813) 984-3060
Fax: (813) 984-3070
gthomas@tlolawfirm.com
rfugate@tlolawfirm.com

Seth D. Berlin (pro hac vice)
Alia L. Smith (pro hac vice)
Patrick Kabat (pro hac vice)
LEVINE SULLIVAN KOCH & SCHULZ, LLP
1899 L Street, NW, Suite 200
Washington, DC 20036
Tel.: (202) 508-1122
Fax: (202) 861-9888
sberlin@lskslaw.com
asmith@lskslaw.com
pkabat@lskslaw.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of January 2016 a true and correct copy of the foregoing is being electronically filed and served via CM/ECF on the following:

Kenneth Stegeby
Office of the United States Attorney for the Middle District of Florida
400 North Tampa Street, Suite 3200
Tampa, FL 33602
Kenneth.Stegeby@usdoj.gov

*Counsel for Defendants*

*/s Gregg D. Thomas*
Attorney