# EXHIBIT 2

To

PLAINTIFFS' MOTION FOR
AN AWARD OF ATTORNEYS' FEES

### IN THE SECOND DISTRICT COURT OF APPEAL
### STATE OF FLORIDA

**TIMES PUBLISHING COMPANY,**
**FIRST LOOK MEDIA, INC.,**
**WFTS-TV and WPTV-TV,**
**SCRIPPS MEDIA, INC., WFTX-TV,**
**JOURNAL BROADCAST GROUP, and**
**THE ASSOCIATED PRESS,**

        **Petitioners,**

**vs.**                                    **Case No._____**

**TERRY GENE BOLLEA,**
**professionally known as**
**HULK HOGAN, GAWKER MEDIA, LLC**
**aka GAWKER MEDIA; NICK DENTON; and**
**A.J. DAULERIO,**

        **Respondents.**
_____/

### PETITION FOR WRIT OF CERTIORARI TO
### REVIEW ORDER SEALING JUDICIAL RECORDS

       Petitioners Times Publishing Company, First Look Media, Inc., WFTS-TV

and WPTV-TV, Scripps Media, Inc., WFTX-TV, Journal Broadcast Group, and

The Associated Press, by and through their undersigned counsel and pursuant to

Article V, Section 4 of the Florida Constitution and Rules 9.030 and 9.100(d) of the

Florida Rules of Appellate Procedure, petition this Honorable Court for a writ of

certiorari to review an Order entered October 27, 2015 and rendered October 28,

2015, as amended by an Order entered November 18, 2015, and a second Order

entered November 18, 2015, all of which seal judicial records.  The Orders were entered by the Honorable Pamela A.M. Campbell, Circuit Judge for the Sixth Judicial Circuit in and for Pinellas County, Florida.   The Orders permanently seal approximately two dozen judicial records, including hearing transcripts, motions, and materials that already have formed, and will continue to form, the basis on which the Circuit Court has decided numbers of the parties' motions related to both procedural and substantive issues.

Because of the Orders, and previous sealing requirements the Circuit Court has imposed, the parties continue to file document-after-document under seal related to numerous pretrial issues and the trial itself, now set to begin on March 7, 2016.  As a result, a significant portion of this litigation is being conducted in secret with no public oversight, in contravention to the First Amendment to the United States Constitution and Florida law.

As this Court already has found previously in this litigation, certiorari jurisdiction is warranted.  This Court's intervention is especially important here given the Circuit Court's serious departures from well-established law regarding transparency of the courts.

## I.  <u>JURISDICTION</u>

Under Article V, Section 4 of the Florida Constitution and Rules 9.030 and 9.100(d) of the Florida Rules of Appellate Procedure, Florida district courts of

appeal have jurisdiction to issue writs of certiorari and to review lower court orders excluding the news media and public from access to judicial proceedings and records. *Media General Operations, Inc. v. State*, 933 So. 2d 1199, 1201 (Fla. 2d DCA 2006)(where petition brought under Rule 9.100(d), "[w]e must determine whether the trial court … departed from the essential requirements of law"); *Sarasota Herald-Tribune v. State,* 916 So.2d 904, 908 (Fla. 2d DCA 2005)("A district court reviews a trial court order under its [Rule 9.100(d)] certiorari jurisdiction to determine whether the trial court violated procedural due process or whether its order departed from the essential requirements of law"); *Carnegie v. Tedder*, 698 So. 2d 1310, 1312 (Fla. 2d DCA 1997) (granting writ of certiorari because "trial court's order of closure departs from the essential requirements of the law"); *Times Publishing Co. v. Penick,* 433 So.2d 1281, n.1 (Fla. 2d DCA 1983)(court has jurisdiction to review closure order under Rule 9.100).

Thus, this Court has jurisdiction to review those portions of the Circuit Court's October 28, 2015 and November 18, 2015 Orders On Motions to Determine Confidentiality that permanently sealed court records, including filed transcripts of court proceedings.

Rule 9.100(d)(3) provides that review of such orders "shall be expedited." The "intent of . . . Rule 9.100(d) . . . is to assure prompt access to judicial records

3

and proceedings." *Lifecare Int'l, Inc. v. Barad*, 573 So. 2d 1044, 1046 (Fla. 3d DCA 1991).

Petitioners note this Court previously has observed that an order excluding the press and public reviewed under Rule 9.100(d) "is arguably a final, appealable order." *Sarasota Herald-Tribune v. State,* 924 So.2d 8, n.1 (Fla. 2d DCA 2005). To facilitate expeditious review of the serious concerns in this ongoing litigation, Petitioners have not provided extensive argument directed toward appealability or a possible differing standard of review. Whether reviewed by way of certiorari or direct appeal, the Circuit Court's rulings in this matter fail under the substantive law of public access to its courts.

## II. <u>FACTS ON WHICH PETITIONERS RELY</u>

### <u>Introduction</u>

This petition arises from a civil lawsuit brought by worldwide celebrity Terry Bollea, better known as "Hulk Hogan," against publishers and employees of the Internet news and entertainment website Gawker.com. Gawker published an excerpt of a video allegedly depicting Bollea engaged in an extra-marital affair with Heather Clem, then-wife of well-known radio shock jock Bubba "the Love Sponge" Clem. The case has been before this Court on multiple occasions. *See Gawker Media, LLC v. Bollea* ("*Bollea I*"), 129 So. 3d 1196, 1198-1203 (Fla. 2d DCA 2014); *Blogwire Hungary Szellemi Alkotast Hasznosito, KFT v. Bollea*

4

("*Bollea II*"), 162 So. 3d 1116, 1117 (Fla. 2d DCA 2015); *Gawker Media, LLC v. Bollea* ("*Bollea III*"), 170 So. 3d 125, 127 (Fla. 2d DCA 2015). Bollea has framed his complaint as an important effort to preserve principles of privacy in the Internet age. Gawker has countered that its publication is protected by the First Amendment and does not constitute a tort under Florida law.

Given the high profile of the litigants, the nature of the claims, and each party's allegations, the case has garnered substantial public attention in the United States and worldwide over the past three years. Significant portions of the Circuit Court's file, wholly apart from the subject videotape, are under seal. The wholesale sealing of so many court records, regardless of the identities of these parties and the precise nature of their dispute, is an overriding concern for the Petitioners and the public. The lower court's orders effectively prevent the public from observing the administration of justice.

The Petitioners are members of the news media who were granted leave by the Circuit Court to intervene and be heard in opposition to requests by Plaintiff Bollea to prohibit public and press access to records and proceedings in the case. Times Publishing Company is the locally and independently-owned publisher of Florida's largest daily newspaper, the *Tampa Bay Times,* and its affiliated news website www.tampabay.com. First Look Media, Inc., is a digital journalism company and publisher of the Internet magazine The Intercept. WFTS-TV, the

5

ABC affiliate television station that serves the Tampa Bay area, operates the web site abcactionnews.com, and is owned by Scripps Media, Inc. WPTV-TV is the NBC affiliate television station based in West Palm Beach, Florida, operates the web site wptv.com, and is owned by Scripps Media, Inc. WFTX-TV is the FOX affiliate in Ft. Myers, Florida, operates the web site fox4now.com, and is owned by Journal Broadcast Group, a Scripps Media, Inc., company. The Associated Press is a not-for-profit news cooperative whose members are U.S. newspapers and broadcasters, operating from more than 280 locations worldwide and on any given day reaching more than half of the world's population.

All of the Petitioners rely on access to judicial records and proceedings to provide their readers and viewers, on a timely basis, with information about matters occurring in Florida's courts. The public, on whose behalf the Petitioners act to secure access to judicial records, is the unnamed, fundamentally interested party in all court proceedings.

## BACKGROUND AND PROCEDURAL HISTORY

The general background of this litigation is set forth in this Court's prior opinion reversing the trial court's entry of a temporary injunction at the outset of the case. *Bollea I*, 129 So. 3d at 1198-1203; *see also Bollea III*, 170 So. 3d at 127-28 (vacating trial order and providing additional background). Given the Court's

familiarity with the litigation, the following section is limited to providing the facts and procedural history germane to this Petition.

**A.     The Broad Protective Order Governing Discovery
Leads to the Sealing of Court Records and Transcripts**

As is relatively common in modern civil litigation, the parties sought and the trial court entered an Agreed Protective Order governing discovery. *See* Appendix A (hereinafter "App.___"). That order allowed each party to designate, on a provisional basis, certain categories of information as "confidential," which, unless challenged, could be "used solely for the purpose of preparation and trial of this litigation," and could only be disclosed to "Qualified Persons," such as the parties and their lawyers. *Id.* at ¶¶ 1, 3, 4, 7. Of most significance to this Petition, the order also directed any party seeking to file with the court information designated "confidential" to file it under seal pursuant to Florida Rule of Judicial Administration 2.420. *Id.* at ¶ 10; *see* Fla. R. Jud. Admin. 2.420(e)(1) (requiring party to file a "Motion to Determine Confidentiality of Court Records"). If challenged, "the burden of proving that discovery material has been properly designated as Confidential Information" lay exclusively "with the designating party." App. A ¶ 10. In a later oral ruling, the trial court also allowed Bollea to designate certain documents as "Attorney's Eyes Only." *E.g.*, App. B ¶¶ 2, 3, 4.

Consistent with these Protective Orders, both parties were required to file many motions, briefs, and supporting documents provisionally under seal, with an

7

accompanying "Motion to Determine the Confidentiality of Court Records" as required under Rule 2.420. The transcripts of several hearings were also ultimately sealed in whole or in part, apparently as a result of involvement of information designated by a party as "confidential."

Although the Motions to Determine Confidentiality filed by the parties and the lower court's docket reveal scant detail, it appears that the filings and transcripts addressed a broad scope of issues leading to numerous significant rulings in the case, including on:

(a) Gawker's and Heather Clem's summary judgment motions;

(b) Various discovery motions, motions for protective orders and motions *in limine*, including, for example, Bollea's motion to require redaction of any "offensive language" from documents produced in discovery and from witness testimony, App. C, D.;

(c) Bollea's motion to sever then-defendant Kinja, KFT and to set the case for trial (the order at issue in this Court's most recent ruling, *see Bollea III*, 170 So. 3d at 127), as well as Gawker's motion for a continuance to allow time to address production of documents by the Federal Bureau of Investigation ("FBI") in response to a separate lawsuit brought in federal court by the Gawker defendants under the federal Freedom of Information Act ("FOIA");

8

(d)  Bollea's request for a court-appointed expert to take electronic discovery from the Gawker Defendants (and Gawker's general counsel) to investigate whether they leaked the information that Bollea used racist language on one of the tapes, which Bollea had designated as confidential under the protective orders; and

(e)  Gawker's motion for sanctions alleging that Bollea made material misrepresentations to the Court and testified falsely under oath, as well as a later confidential declaration by Gawker's counsel, Gregg D. Thomas, attaching voluminous exhibits Gawker claims relevant to that contention.

Significantly, the Confidential Thomas Declaration was initially filed in the federal FOIA lawsuit.  But Gawker was apparently required to file that declaration under seal in *federal* court because Bollea has designated all documents produced by the FBI as "Confidential – Attorneys' Eyes Only" under the protective orders in *this* case.  (The Confidential Thomas Declaration was then filed in the court below and, as indicated above, is one of the sealed records at issue in this Petition.)  Since the federal court is effectively trying to honor the Circuit Court's protective order, the refusal of the Circuit Court to unseal records has left the public without access not only to the proceeding below, but to key filings in federal court as well as

9

documents obtained under a federal statute designed to promote government transparency.

Thus, each of the sealed records and transcripts addresses significant issues that were then adjudicated by the trial court in rulings that, both individually and collectively, have shaped the scope of this high profile case, as well as the federal FOIA lawsuit.

### B.   The Trial Court's Adjudication of the Parties' Sealing Motions

According to the docket, the parties first filed sealed court records in May 2014, each accompanied by a "Motion to Determine the Confidentiality of Court Records" pursuant to Florida Rule of Judicial Administration 2.420. Although that rule required the trial court to hold a hearing on each such motion within 30 days, *see* Fla. R. Jud. Admin. 2.420(e)(2), it did not address them for more than a year.

At a hearing principally on other matters on July 1, 2015, as a result of news media organization motions, the trial court allowed news media to intervene and be heard through counsel on closure/access issues. The court ruled that a few records relating to motions in limine should remain sealed, but unsealed a few others upon withdrawal of requests for confidentiality. A hearing on the bulk of the Motions to Determine Confidentiality was noticed by the Gawker defendants for October 1, 2015. Bollea objected to an additional motion and memorandum of law filed by news media intervenors on the grounds that there was insufficient time to prepare a

response to it.  However, the Court notified the parties and intervenors by email that it intended to take up the "various Motions to Determine Confidentiality of various court records and transcripts" at the October 1 hearing.  *See* App.  E.

At the October 1 hearing, the Circuit Court heard from the parties' counsel as well as counsel for the intervenors.  At the outset, the trial court recognized that the burden of establishing the necessity of sealing rested "on the plaintiff," who had designated the information as "confidential."  App. F at 83:18.  Nevertheless, the court ruled, without the particular findings the law specifically requires – or even argument by Bollea to support his burden to demonstrate a basis to seal any specific record or information, as the law also requires – that nearly all of the closed records and all of the transcripts from the closed proceedings should remain sealed.

The court began its discussion of the sealing issue by stating that although "Mr. Bollea is a public figure," his status did not negate his "privacy claim" because he does not hold any position of "public trust."  *Id.* at 83:10-15.  The court continued by simply listing the seven interests justifying sealing under Rule 2.420(c)(9) and reciting the Rule's requirement that "no less restrictive measures are available to protect th[ose] interests."  App. F at 84:8 – 86:3.

Then, consulting two large notebook binders containing the roughly two dozen confidential filings and their voluminous exhibits, the court then briefly

11

addressed each of the items by using a number – i.e., "Confidential Filing 1,"

"Confidential Filing 2," etc. The intervenors were given a copy of the index to one

of the binders, but were not provided with the materials themselves and have not

seen the myriad confidential filings.

The principal arguments advanced by Gawker and counsel for the media

intervenors in support of public access to the sealed records and transcripts

included that (1) the sealed filings concerned matters inhering in the proceedings,

served as the basis for court rulings, or included information that was already

public, and (2) that the blanket sealing of the records was not narrowly tailored or

the least restrictive means of protecting any legitimate interests that may have been

advanced in its favor.  *See, e.g.*, App. F at 50:24 – 72:12, 88:1-4, 89:20 – 90:3,

90:15 – 91:2, 93:5-11, 94:17-25, 96:21 – 97:3, 97:10 – 99:4, 99:16-25, 102:9 –

103:4, 103:15 – 105:23, 108:10 – 109:1, 111:7-19.  When offered the chance to

address each sealed filing and argue for that filing's continued closure, Bollea's

counsel declined to present any argument.  *See id.* at 87:18-20, 89:15-19, 90:12-13,

92:9-11, 93:16-19, 96:12-14, 97:4-8, 99:12-15, 100:11-12, 102:2-7, 103:8-13,

107:24 – 108:8, 109:5-12, 110:22 – 111:5 (repeatedly responding "No, Your

Honor," when asked by court if plaintiff would like to make "additional argument"

concerning each sealed filing).

Although the court purported to analyze each of the records individually, it made no findings with respect to individual records or specific information, concluding that 19 of the 21 court filings (including their voluminous exhibits) and all three of the transcripts should be sealed. *See, e.g.*, App. F at 87:12 – 89:6, 90:5-6, 91:4-5, 92:19-20, 93:12-15, 97:4-6, 99:9-11, 100:1-2, 100:13-15, 103:5-7, 107:22-23, 109:3-4, 111:20-22. When asked which interests identified in Rule 2.420(c)(9) provided the basis for its rulings, the Circuit Court stated, "I think they are the ones – the ones that are applicable were either five, six, seven. . . ." *Id.* at 88:21-23; *see also id.* at 93:14-15 ("that's the same rules that we have talked about before"); *id.* at 99:11 ("the same bases I articulated earlier"). The court below did not state which of those interests applied to which sealed filing or transcript, what information in each filing or transcript it deemed confidential pursuant to those interests, or why their wholesale sealing was narrowly tailored or the least restrictive means to serve that interest.

The court ruled, with no objection from Bollea, that a few portions of documents should be filed publicly: a court order that had been entered publicly but attached as an exhibit to a motion filed under seal; a motion by Gawker and some of the exhibits to that motion (which had not been designated as confidential by Bollea); and two letters that Bollea plans to use at trial, but had designated as confidential even though they had been posted on the Internet for several years.

*See* App. F at 92:12-20, 93:16 – 94:14, 100:16 – 102:1; App. G. The Court

reserved ruling on one of the 21 items which, as discussed below, it later

determined should also be sealed.

As the only justification for retaining the seal on the bulk of the records and

transcripts, the Circuit Court announced that its rulings were based on "the way the

pleadings stand currently." *Id.* at 106:16. In that regard, the court suggested that

whether information already was publicly available was irrelevant to the question

of closure: "It may be that some are out there in the public domain, but I have no

way to control what's out there in the public domain. And so whether or not the

things that are applicable are specifically to this case or to confirm that it

specifically is what I'm ruling on, I can't control that. So all I can control is what's

here." *Id.* at 88:24 – 89:6. The court reduced its oral rulings to a written order

entered on October 27, 2015 and rendered on October 28, 2015. App. G.

At the October 1 hearing, the trial court also denied a motion by the Gawker

defendants to reconsider its oral ruling from July 1, 2015 sealing records relating to

motions *in limine*. App. F at 112:6-19, 113:8-25; 114:8-21. The original July 1

rulings sealing certain motions *in limine,* and the October 1 ruling refusing to

reconsider that earlier ruling, were rendered in the Court's October 28 order. App.

G at ¶8C.

14

On November 6, 2015, expressly concerned about the possibility of appeal of the trial court's earlier order, Bollea filed a Stipulation and Motion agreeing to the unsealing of some additional exhibits to certain motions. App. H at ¶ 4. On November 18, 2015, the trial court amended its October 28, 2015 Order, entering the proposed amended order submitted by Bollea. It appears that, under the court's amended order, the parties' motions and briefs themselves, as well as the bulk of the exhibits, remain sealed. App. I.

Also on November 18, 2015, the trial court entered a second, and separate, Order on Motion to Determine Confidentiality, ruling on the one item reserved at the October 1, 2015 hearing. App. J. Citing the same three interests, this Order perpetuates the sealing of three exhibits attached by the Gawker defendants to their motion challenging Bollea's designation of the heightened "Attorneys Eyes Only" confidentiality for documents produced by the FBI in the FOIA litigation. Gawker's underlying motion challenging that designation, filed in August 2015, remains unheard and pending before the trial court as of the date of this Petition.

### III.   THE NATURE OF THE RELIEF SOUGHT

The Petitioners themselves lack access to the sealed materials and are therefore limited in their ability to discern what caused the trial court to depart from fundamental Florida jurisprudence. Petitioners have therefore requested the parties to provide to this Court for *in camera* review the circuit court filings and

15

transcripts at issue. Petitioners request that this Court review and reverse the Circuit Court's orders sealing nearly two dozen separate motions, exhibits and hearing transcripts.

Petitioners respectfully submit that the lower court's sealing orders are so fundamentally flawed that they depart from the essential requirements of law.  As such, the orders also necessarily fail under the standard applicable on direct appeal of a final order.

## IV.    ARGUMENT

### A.    PROPONENTS OF CLOSURE BEAR A HEAVY BURDEN TO OVERCOME THE STRONG PRESUMPTION IN FAVOR OF OPEN COURT RECORDS AND PROCEEDINGS.

The Florida Supreme Court has emphasized that "'[i]n this country, it is a first principle that people have a right to know what is done in their courts.'" *Barron v. Florida Freedom Newspapers, Inc.*, 531 So. 2d 113, 117 (Fla. 1988) (citation omitted).  Consequently, Florida law "strongly disfavors court records that are hidden from public scrutiny." *In re Amendments to Fla. Rule 2.420*, 954 So. 2d 16, 17 (Fla. 2007).

As the Supreme Court has further explained, the public's right of access is fundamental to the fair administration of justice and "essential to the judicial system's credibility in a free society." *Barron*, 531 So. 2d at 116.  For instance, the public's ability to review court filings and observe court proceedings serves as

16

a check on litigants and their attorneys by serving a truth-seeking function: Open court records and proceedings "'improve[] the quality of testimony,'" provide a "'disinclination to falsify,'" and "'induc[e] the fear of exposure of subsequent falsities through disclosure.'" *Id.* (citation omitted). Thus, if a litigant comes to court on false pretenses, the public can learn that fact and "'scorn a demonstrated liar.'" *Id.*

Public access also serves as an important check on the judiciary. It provides a strong incentive for judges' "'strict conscientiousness in the performance of duty'" and prevents the "'abuses'" associated with "'secret tribunals.'" *Id.* (citation omitted). Access gives the public and press the opportunity to scrutinize judicial conduct and ensures "'the greatest publicity to the acts of those holding positions of public trust.'" *Id.* (citation omitted). Ultimately, for each of these reasons, public proceedings increase "respect for the law" and ensure "strong confidence in judicial remedies." *Id.*

Thus, a "strong presumption of openness" applies to court proceedings and records in this state. *Id.; see also* Letter from Chief Justice Canady dated November 17, 2010 regarding closure issues in the context of civil foreclosure cases (App. K)("The courts of Florida belong to the people of Florida. The people of Florida are entitled to know what takes place in the courts of this state.")

Florida law places a "heavy burden on the party seeking closure." *Barron,* 531 So.

2d at 118.  To meet that burden, a party asking to seal court proceedings and

records must establish that "closure is necessary to protect a recognized interest."

*Carter v. Conde Nast Publ'ns*, 983 So. 2d 23 (Fla. 5th DCA 2008).  The law,

however, only protects certain limited interests.  *See* Fla. R. Jud. Admin.

2.420(c)(9)(A).  Here, the trial court's ruling implicates three of those interests:  an

asserted need (1) to "avoid substantial injury to a party by disclosure of matters

protected by a common law or privacy right," (2) to "comply with established

public policy set forth in the Florida or United States Constitution or statutes or

Florida rules or case law," and (3) to "avoid substantial injury to innocent third

parties."  *See id.* 2.420(c)(9)(A)(v), (vi), (vii); *see also* App. G at ¶¶ 7, 8B, D, F;

App. I at ¶¶ 9, 10B, D, F (trial court orders citing these provisions of rule).

      In assessing whether an asserted privacy interest justifies closure, the closure

cannot be premised on a litigant's mere desire for confidentiality.  *See Rocket*

*Group, LLC v. Jatib*, 114 So. 3d 398, 400-01 (Fla. 4th DCA 2013) (citation

omitted) ("denial of access 'may not be based solely upon the wishes of the parties

to the litigation'").  Whether a litigant has a protectable privacy interest is

determined based on "the content of the subject matter" he seeks to seal, *Barron,*

531 So. 2d at 118, but, in general, a litigant has "no reasonable expectation of

privacy with regard to trial proceedings and court files." *Carnegie v. Tedder*, 698 So. 2d 1310, 1312 (Fla. 2d DCA 1997).

Thus, sealing is permissible only if information that is otherwise private is "not generally inherent in the specific type of civil proceeding sought to be closed." *Barron,* 531 So.2d at 119; *Carnegie*, 698 So.2d at 1312.; *see also* Fla. R. Jud. Admin. 2.420(c)(9)(A)(vi) (information is protected as private only if it is "not generally inherent in the specific type of proceeding sought to be closed").

In other words, closure is appropriate only for information that is *both* private *and* "peripheral to the litigation." *Carnegie*, 698 So. 2d at 1312 (quashing order that sealed court file to protect party from public disclosure of allegedly "defamatory and damaging" counterclaim); *see also, e.g.*, *Baker v. Batmasian*, 42 Med. L. Rptr. 2554 (Fla. Cir. Ct., Palm Beach County 2014) (rejecting request to seal exhibits that "directly bear on matters inherent in this proceeding"); *Gonzalez v. Anthony*, 40 Med. L. Rptr. 1026 (Fla. Cir. Ct., Orange County 2011) (explaining in civil litigation against Casey Anthony that, "[b]ecause the parties' arguments will rely upon the transcript and the court's ruling will require review of the transcript, the court finds that the public has a right to review the transcript upon which the court's ruling will be based"). (Copies included in App. L for ease of reference).

If a litigant is able to show that he has a reasonable expectation of privacy in particular information and that information is peripheral to the proceedings, he bears another significant burden.  He must show that "no reasonable alternatives to closure are available" and that "the level of closure imposed is the least restrictive means necessary to accomplish its purposes."  *Barron,* 531 So. 2d at 118; *Carnegie*, 698 So. 2d at 1312; *accord* Fla. R. Jud. Admin. 2.420(c)(9)(C) (requiring showing that "no less restrictive measures are available to protect the interests").

If a court finds that a party has met every one of these burdens and orders records to be sealed, then it must state "with as much specificity as possible" the basis for its ruling.  Fla. R. Jud. Admin. 2.420(e)(2).  A circuit court must articulate "[t]he particular grounds . . . for determining that the information is confidential" and identify "[t]he particular information that is determined to be confidential."  Fla. R. Jud. Admin. 2.420(e)(2)(B), (E).  In addition, the law requires the court to explain why "the degree, duration, and manner of confidentiality ordered by the court are no broader than necessary" and why "no less restrictive measures are available to protect the interests."  *Id.* 2.420(e)(2)(G); *see also Barron*, 531 So. 2d at 118 (requiring a showing that "no reasonable alternative is available" and "the least restrictive closure necessary").  In fulfilling that requirement, "[t]o the extent reasonably practicable, restriction of access to confidential information shall be

implemented in a manner that does not restrict access to any portion of the record that is not confidential."  Fla. R. Jud. Admin. 2.420(b)(4).

## B.   THE WHOLESALE SEALING OF NUMEROUS COURT RECORDS WAS NOT JUSTIFIED.

In this case, the trial court did not, as required by Rule 2.420(e)(2), explain any of its reasons or make any findings beyond reciting the provisions of the rule. It did not identify what information it considered to be confidential, did not explain why that information fit within the protected interests set forth in Rule 2.420(c)(9)(A), and did not explain why the across-the-board sealing of two dozen records and transcripts was the least restrictive means to serve a protected interest. Those failures alone reflect departures from essential requirements under the law and merit granting this Petition.  Yet, even if the lower court had complied with these requirements, Bollea did not – and could not – meet his heavy substantive burden to establish that the court records should be sealed.

### 1.   The Sealed Records Appear to Concern Matters Inhering in the Case.

At the hearing on the motions to determine confidentiality, the trial court explained its sealing ruling by saying that it had "considered what the nature of the complaint is in the first place."  App. F at 85:13-14; *see also id.* at 85:19-25 (explaining that "if the plaintiff changes their – amends their pleadings, changes their theory of the case in such a way that they are amending their pleadings, that

puts everybody on notice at that point in time some of these issues may become at issue in the case"). The court rejected the argument that filings relevant to both Gawker's defense theories and to plaintiff's allegations beyond those in his complaint should also be public, reiterating that "if the plaintiff changed their pleadings and made that an issue of the case, then perhaps that would be different. But the way the pleadings stand currently, that's the ruling." App. F at 106:13 – 107:23. ).

The trial court's cramped view of what qualifies for public access was wrong. The precise wording of a plaintiff's claims does not define the parameters of the public's right of access to court records. Under settled law, records and transcripts that are inherent to various aspects of the actual proceedings below are presumptively open. Here, the records at issue were each submitted by the parties and considered by the lower court when making key rulings, including orders: (a) denying both Gawker's and Heather Clem's motions for summary judgment; (b) adjudicating various discovery motions, motions for protective orders, and motions *in limine*; (c) requiring the alteration of evidence and testimony where it reflected "offensive language" used by Bollea; (d) granting Bollea's motion to sever defendant Kinja and set a trial date, and denying Gawker's motion for a continuance of the trial; and (e) granting Bollea's motion to have a court-appointed forensic expert conduct electronic discovery in pursuit of an alleged leak that

defied the court's protective order.  The Circuit Court also has required the sealing of key documents related to Gawker's contentions that Bollea and his counsel have violated court orders, misrepresented key facts and given false testimony under oath, as well as Gawker's pending motion challenging the state court's ability to seal records produced under the federal FOIA statute.

Each of these motions and rulings has shaped and reshaped the contours of these proceedings and also generated substantial public interest and news coverage of this closely-watched litigation.  The public is entitled to understand and evaluate the parties' respective contentions and the basis for the trial court's orders.  For example, there can be no serious question that orders adjudicating dispositive summary judgment motions are inherent to the proceedings and are properly subject to public scrutiny.  The same is true with respect to rulings about the scope of evidence that can be discovered or admitted at trial, or a ruling requiring documents and testimony to be altered to remove "offensive language" by Bollea, even though his comments have obviously now become a matter of public knowledge.

Bollea appeared to contend below that because the trial court provisionally ruled that certain evidence was inadmissible, the motions *in limine* that led to those rulings and any other references to that evidence are properly sealed.  That basis is entirely insufficient to seal these records.  Even if the jury may not see certain

23

evidence, the public's right to know what happens in its courts, and the basis for judicial rulings including motions to admit or exclude evidence, is fundamental under the First Amendment and Florida law.  *See, e.g., Miami Herald Pub. Co. v. Lewis*, 426 So.2d 1, 8 (Fla. 1982)(emphasizing that proceedings on motions to suppress must be open, whether allegations of wrongdoing founded or unfounded, "so that all who care to see or read about the case may evaluate for themselves the propriety of" evidence exclusion).

Likewise, the order severing Kinja and setting the case for trial ultimately resulted in two rulings by this Court reversing the trial court, including a lengthy published opinion, and the public should be able to see the parties' filings before the trial court.  Separate and apart from that significant appellate ruling, the public should also be able to see the parties' arguments on, and the basis for the trial court's ruling denying, Gawker's motion to continue the trial based on the production of new evidence by the FBI in response to Gawker's federal FOIA lawsuit.

The same is true with respect to the parties' competing allegations of misconduct, with: (a) Bollea, on the one hand, publicly contending that Gawker violated a court order by leaking information to the *National Enquirer* about Bollea's racist and homophobic comments; and (b) Gawker, on the other hand, denying that allegation and contending that Bollea has violated court orders, made

24

material misrepresentations to the court and given false testimony under oath.  In response to these competing allegations, the court below entered an order about the alleged leak by Gawker designating a court-appointed forensic expert to conduct electronic discovery from its computer systems, and has denied Gawker's sanctions motions.

Given the seriousness of the allegations by both sides, the public should be able to see and to evaluate the parties' arguments and the basis for the court's rulings.  For example, the public should be able to evaluate the basis for Bollea's arguments that all of the material received from the FBI should be designated as "Confidential – Attorneys' Eyes Only," its accusation that Gawker leaked the material to the *National Enquirer*, and Gawker's public contention that the material published does not match what it had (evidence that is now sealed).  The same is true with respect to Gawker's contentions that Bollea misled the Circuit Court, lied under oath, and engaged in other significant misconduct.  The public should be able to judge whether these serious allegations have any weight, and to assess how the court below is addressing them.  But, again, those records and transcripts are all sealed.

Finally, the trial court's sealing orders are limiting public access to federal court proceedings and records.  Through its federal FOIA lawsuit, Gawker has apparently obtained the production of a substantial number of documents from the

25

FBI and Executive Office for the United States Attorneys about their investigation into the tapes at issue.  But, apparently, Bollea has designated every single one of those documents "Confidential – Attorneys' Eyes Only" under the protective order governing discovery entered by the court below.  As a result, the public cannot see documents that a federal judge has declared, under a federal statute, are public record, even when they are included in circuit court filings in this case or in federal court filings in the FOIA case.  The Confidential Thomas Declaration, which apparently discusses a number of those documents, is not only sealed in the court below, but it is also now sealed on the docket of the federal court, such that the public's ability to understand what is going on in the FOIA case is being limited as well.  *See Gawker Media, LLC v. FBI*, 2015 WL 6736800, at *7 (M.D. Fla. Nov. 4, 2015) ("the public interest in understanding how its government makes decisions is present and requires disclosure, especially in this case where the government chose not to prosecute an alleged extortionist").

Access to court records and transcripts allows the press to report to the public what is happening in the court system. Yet, during the hearing on the sealing motions here, the court below commented that "much of what the media has reported is flat not right . . . it's incorrect according to what we have."  App. F at 86:21-23.  Although the court did not mention any specific reports, it is ironic that the trial court criticized the press for reporting things incorrectly while at the

26

same time keeping many of the records in the case hidden from public view and making it far more difficult to report accurately about both this case and the federal FOIA case. *See Barron*, 531 So. 2d at 117 (emphasizing public respect for law, confidence in remedies, and "intelligent acquaintance … with methods of government" as values underlying openness).

## 2.   There is No Reasonable Expectation of Privacy In The Sealed Records.

In his written submission to the trial court seeking to justify closure, Bollea's argument rested on general assertions of a "privacy right" and a "risk of substantial injury." App. M at 5. He did not point to any specific information for which he had a reasonable expectation of privacy and did not explain how he could be injured by the public disclosure of any particular piece of information. The most specific argument he made was at the October 1, 2015 hearing on the sealing motions, where his lawyer told the trial court that Gawker is "asking you to make illegally and secretly recorded footage of Mr. Bollea naked and having sex and files relating to his efforts to stop someone from extorting him with that and threatening to make them public." App. F at 73:6-11; *see also id.* at 75:22-25 ("The public has no interest whatsoever, none, in seeing illegally recorded footage and investigative files about that footage of someone naked and having sex."). However tawdry Bollea tries to paint the Petitioners' and the public's interest in court transparency, this Petition addresses the voluminous sealed motions, exhibits

27

and hearing transcripts in the Circuit Court file, not videotape of anyone having

sex.  Gawker's counsel represented at the October 1 hearing that none of the sealed

records contains DVDs depicting Bollea having sex.  App. F at 63:17-25.

In addition, to the extent that there is information in the sealed records

relating to the FBI's investigation, Bollea has no reasonable expectation of privacy

in that information.  The FBI's investigation has been the subject of widespread

public discussion in the media and in court, and has been ordered disclosed by a

federal judge interpreting a federal statute in a federal lawsuit.  *See Gawker Media,

LLC v. FBI*, 2015 WL 6736800, at *7 (ordering disclosure based on "the public

interest in understanding how its government makes decisions").

For instance, Bollea himself publicly filed papers explaining that Keith

Davidson, the man he accused of extortion, "was involved in an FBI investigation

relating to an attempt to extort money from Mr. Bollea by threatening to release

recordings depicting Mr. Bollea if Mr. Bollea did not pay money."  App. N at Ex. 9

at 2.  That public filing further explained that:  "During Fall 2012, Mr. Bollea

participated in an FBI sting operation relating to persons who claimed to have

recordings of Mr. Bollea engaged in sexual relations, and who were attempting to

extort money from Mr. Bollea in exchange for the delivery of those recordings.

Attorney Davidson . . . represented certain parties involved in that FBI sting."  *Id.*

at 4.

28

Similarly, the federal government has publicly filed documents in the federal FOIA action that disclose details of its investigation. *See* App. N at Ex. 10, at Ex. 4 at 78(describing evidence being held in connection with Davidson investigation, including; (a) settlement documents; (b) a check "in the amount of $150,000 made out to Keith Davidson from David R. Houston [one of Bollea's attorneys]"; and (c) three DVDs); *see also id.* at Ex. 10, at Ex. 4 at 77 (additional public filing by federal government, including emails from AUSA and FBI agent relating to "Davidson investigation").

In addition, the FBI's investigation into an alleged extortion attempt and its seizure of three sex tapes from the alleged extortionist has been repeatedly discussed in open court both in the lower court and in the federal FOIA proceeding. *See, e.g.*, App. O at 199:15 – 206:1, 246:21 – 247:3; App. P at 9:15-23, 11:21 – 12:6, 13:6-12, 42:20-22,73:21-24; App. Q at 46:1 – 55:8, 87:16 – 88:3, 90:23. Those facts, in turn, have been the subject of substantial news reporting. *See, e.g.*, App. R at Exs. 34-37. For instance, *Capital New York* published an article about the FOIA proceedings, which reported the following:

> Charles Harder, the attorney representing Hogan at the hearing, told the court that the F.B.I. had enlisted Hogan and his lawyer David Houston in a sting operation. The target was an alleged extortionist, who had allegedly obtained three sex tapes that depicted Hogan having sex with Heather Clem, who was then the wife of Hogan's good friend Bubba the Love Sponge Clem.

> "The FBI had Mr. Houston communicate with the extortionist and set up a sting and that's what these audio CDs are and that's where these DVDs come from and that's where these alleged transcripts come from," Harder said.
>
> Other court documents disclose the target's identity: Keith Davidson, a Los Angeles-based lawyer who was suspended by the California bar for 90 days for four counts of misconduct in 2010 and has previously been involved in lawsuits over sex tapes featuring celebrities such as model Tila Tequila and actor Verne Troyer.

App. N at Ex. 11 at 2.

To the extent that Bollea is attempting to conceal records from the investigation because they may relate to the racist and homophobic comments he made on one of the tapes recovered by the FBI, Bollea has publicly admitted that he made those statements and so sealing court records and transcripts on that basis to shield his privacy is futile. *See* App. R at Exs. 26, 28 (*People Magazine* article in which Bollea admitted the accuracy of the *National Enquirer*'s report); App. P at 32:6-10 (counsel for Bollea stating that "there is an audio file that was produced by the FBI that was a surveillance tape that had audio footage from the bedroom sex incident which had offensive language on it").

In light of these numerous public disclosures, Bollea simply does not have a credible argument that such information should remain private. *See, e.g.*, *Washington Post v. Robinson*, 935 F.2d 282, 291-92 (D.C. Cir. 1991) (sealing was improper where the information already had been made public); *Constand v.*

30

*Cosby*, 2015 WL 4071586, at *5 (E.D. Pa. July 6, 2015) (unsealing records in litigation involving Bill Cosby where information is "already in the public domain").   A party's claim to possible further embarrassment simply is not a legitimate basis for sealing.  *See, e.g.*, *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983) (explaining that "harm to reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records"); *Cosby*, 2015 WL 4071586, at *5 (rejecting Bill Cosby's argument that he would be embarrassed if court files, including excerpts from his deposition transcript, were unsealed).

Although the lower court also found that sealing records and transcripts was necessary to "avoid substantial injury to innocent third parties," it did not identify any third parties mentioned in the sealed records or explain how any third parties could be harmed.  *See* App. G. In advocating for closure, Bollea did not actually make any argument about third parties.  *See*  App. F at 72:15 – 80:13.

The filings and transcripts that remain under seal appear to relate to issues arising from Bollea's claims and Gawker's defenses, and thus issues and matters inherent in the proceedings.  Therefore, they should be open to public inspection. *See Carnegie*, 698 So. 2d at 1312 ("in order to protect our respected system of open courts, litigants cannot have a reasonable expectation of privacy with regard to matters that are inherent to their civil proceedings"); *John Doe-1 Through John*

31

*Doe-4 v. Museum of Science & History*, 1994 WL 741009, at \*5, 6-7, 22 Med. L.

Rptr. 2497, 2502-03 (Fla. Cir. Ct. Volusia County 1994) (declining to close civil

trial in case brought by minors who had been sexually abused, emphasizing that "a

system of public trials must insist that litigants abandon qualms about disclosure of

private facts when they place them in contest in the court"; "a litigant has no

reasonable expectation of privacy in the subject matter of a case").

> [A] litigant's preference that the public not be apprised of the
> details of his litigation is not grounds for closure. [] Were it
> otherwise, we suggest that a large percentage of court proceedings
> in this nation would be closed. … [T]he "open court" concept is an
> indispensable part of our system of government and our way of
> life.[] Whenever litigants utilize the judicial process they place
> themselves in the position where the details of their difficulties will
> invariably be made public.  It is sometimes felt that this is too high
> a price to pay for living in a civilized society, particularly when
> measured against a person's right to privacy. … But every right is
> not absolute to the point of inflexibility; some rights must bend and
> give way to other rights in certain instances.

*Goldberg v. Johnson*, 485 So.2d 1386, 1389-90 (Fla. 4th DCA 1986)(reversing trial

court order sealing court records to protect privacy and minor child from

"harassment" by media in reporting of guardianship proceedings).

### 3. The Blanket Sealing Is Not Narrowly Tailored And Less Restrictive Means Are Available.

The lower court's sealing order is not narrowly tailored or the least

restrictive means needed to protect any proffered or legitimately recognized

confidentiality interests: The court's order does not close only specific

"confidential" information.  Rather, it seals entire motions, briefs, affidavits, exhibits, transcripts, and evidentiary submissions.

This blanket sealing runs directly counter to well-established law and readily available alternatives.  For example, if any information is truly confidential, the parties could be directed to redact that limited information and leave the remaining portion of the record or transcript open to public inspection.  *See* Fla. R. Jud. Admin. 2.420(b)(4) (providing that, "[t]o the extent reasonably practicable," sealing should "not restrict access to any portion of the record that is not confidential"); *see also, e.g.*, *Application of N.Y. Times Co.*, 585 F. Supp. 2d 83, 87, 91 (D.D.C. 2008) (blanket sealing was not appropriate where "simply redacting the identity and personal identifiers" of individuals would achieve the compelling interest).

## C.   **THIS COURT'S INTERVENTION IS NECESSARY AND APPROPRIATE.**

The Circuit Court's broad sealing orders work an immediate harm that cannot be adequately remedied in a post-trial appeal.  As this Court knows, much like the rest of the public who must make hard choices about where to expend time and other resources, modern day news media simply are not able to attend every court proceeding at the moment it happens. Moreover, limitations on judicial time and resources make it unrealistic to expect that all issues, arguments and supporting exhibits will be addressed at live hearings. These realities underscore

33

the importance of the public availability of the courts' files as key sources of

information about the contentions, evidence and events in cases before them well

before any case reaches its first day of trial. Informed, knowledgeable reporting

about pre-trial proceedings educates and informs the public and protects the

public's confidence in and respect for the integrity of the court system as a whole.

> Freedom of the press is not, and has never been a private property
> right granted to those who own the news media.  It is a cherished
> and almost sacred right of each citizen to be informed about current
> events on a timely basis so each can exercise his discretion in
> determining the destiny and security of himself, other people, and
> the Nation.

*See, e.g.*, *State ex rel. Miami Herald Publ'g Co. v. McIntosh*, 340 So. 2d 904, 910

(Fla. 1976).

This is serious case, and the public should be able to scrutinize the

proceedings – including the parties' competing contentions in their papers and in

hearings before the court – so that however the court rules and whatever a jury

decides, the public will have a meaningful understanding of the judicial processes

carried out in its name.

## **CONCLUSION**

The Petitioners respectfully request that this Honorable Court review and

reverse the November 18, 2015 Amended Order, the November 18, 2015 Order,

and the October 28, 2015 Order of the Circuit Court, direct the Circuit Court to

34

unseal the materials presently under seal, and to grant such other relief as it deems

appropriate under the circumstances.

Respectfully submitted,

**/s/ Alison Steele**
Fla. Bar No. 701106
Rahdert, Steele, Reynolds & Driscoll, P.L.
The Alexander Building
535 Central Avenue
St. Petersburg, Florida 33701-3703
Telephone: (727) 823-4191
Facsimile: (727) 823-6189
Email: amnestee@aol.com

/s/ Charles D. Tobin
 Florida Bar No. 816345
 Holland & Knight LLP
 800 17th St., N.W., Suite 1100
 Washington, D.C. 20006
 Telephone: (202) 955-3000
 Facsimile: (202) 955-5564
 E-mail: charles.tobin@hklaw.com

/s/ Timothy J. Conner
Florida Bar No. 767580
Holland & Knight LLP
50 North Laura Street , Suite 3900
Jacksonville, Florida 32202
Telephone:  (904) 353-2000
Facsimile:   (904) 358-1872
E-mail: timothy.conner@hklaw.com

*Attorneys for Petitioners T i m e s
P u b l i s h i n g  C o m p a n y ,  First Look
Media, Inc., WFTS-TV and WPTV-TV,
Scripps Media, Inc., WFTX-TV, Journal
Broadcast Group, a n d The Associated
Press*

## CERTIFICATE OF COMPLIANCE

Counsel hereby certifies that this Petition is submitted in Times New Roman 14-point font and otherwise complies with the requirements of Rule 9.100(l), Fla. R. App. P.

**/s/ Alison M. Steele**
Alison M. Steele
Fla. Bar No. 701106

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of November, 2015, I caused a true and correct copy of the foregoing to be served via the Florida Courts' E-Filing Portal on the following counsel of record:

| | |
|---|---|
| Gregg D. Thomas | Kenneth G. Turkel |
| Rachel E. Fugate | Shane B. Vogt |
| THOMAS & LOCICERO PL | BAJO CUVA COHEN & TURKEL |
| 601 South Boulevard | 100 N. Tampa, Street, Suite 1900 |
| P.O. Box 2602 | Tampa, FL 33602 |
| Tampa, FL 33601 | kturkel@BajoCuva.com |
| gthomas@tlolawfirm.com | shane.vogt@BajoCuva.com |
| rfugate@tlolawfirm.com | Attorneys for Terry Gene Bollea |
| Attorneys for Gawker Media, LLC, Nick Denton, and A.J. Daulerio | |
| | |
| Seth D. Berlin | Charles J. Harder |
| Michael D. Sullivan | Douglas E. Mirell |
| Michael Berry | Sarah Luppen |
| Alia L. Smith | HARDER MIRELL & ABRAMS |
| Paul J. Safier | 1925 Century Park East, Suite 800 |
| LEVINE SULLIVAN KOCH & SCHULZ LLP | Los Angeles, CA 90067 |
| | charder@HMAfirm.com |

1899 L. Street, NW, Suite 200
Washington, DC 20036
sberlin@lskslaw.com
msullivan@lskslaw.com
mberry@lskslaw.com
asmith@lskslaw.com
psafier@lskslaw.com
Attorneys for Gawker Media LLC,
Nick Denton and A.J. Daulerio

dmirell@HMAfirm.com
sluppen@HMAfirm.com
Attorneys for Terry Gene Bollea

David Houston
Law Office of David Houston
dhouston@houstonlaw.com
432 Court Street
Reno, NV 8951
Tel: (775) 786-4188
Attorney for Terry Gene Bollea

**/s/ Alison M. Steele**
Alison M. Steele
Fla. Bar No. 701106