# EXHIBIT 3

To

PLAINTIFFS' MOTION FOR
AN AWARD OF ATTORNEYS' FEES

IN THE SECOND DISTRICT COURT OF APPEAL
STATE OF FLORIDA

————————

CASE NO. 2D15-5044

TIMES PUBLISHING COMPANY, et al.,

Petitioners

v.

TERRY GENE BOLLEA,
professionally known as HULK HOGAN, et al.,

Respondents.

ON REVIEW FROM THE CIRCUIT COURT FOR THE SIXTH JUDICIAL
CIRCUIT IN AND FOR PINELLAS COUNTY, FLORIDA
(Case No. 12012447-CI-011)

**RESPONSE OF GAWKER DEFENDANTS TO PETITION FOR WRIT OF
CERTIORARI TO REVIEW ORDERS SEALING JUDICIAL RECORDS**

SETH D. BERLIN
Pro Hac Vice No.: 103440
MICHAEL BERRY
Pro Hac Vice No.: 108191

LEVINE SULLIVAN
KOCH & SCHULZ, LLP
1899 L Street, NW, Suite 200
Washington, DC 20036
Telephone: (202) 508-1122
Facsimile: (202) 861-9888

GREGG D. THOMAS
Florida Bar No.: 223913
RACHEL E. FUGATE
Florida Bar No.: 0144029

THOMAS & LoCICERO PL
601 South Boulevard
P.O. Box 2602 (33601)
Tampa, FL 33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070

*Attorneys for Respondents
Gawker Media, LLC,
Nick Denton and A.J. Daulerio*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iii

INTRODUCTION .................................................................................... 1

JURISDICTION ....................................................................................... 3

BACKGROUND AND PROCEDURAL HISTORY ................................. 3

ARGUMENT .......................................................................................... 10

I. THE TRIAL COURT'S SEALING ORDERS VIOLATE
GAWKER'S RIGHT TO PUBLIC PROCEEDINGS ................................. 11

II. THE SEALED MATERIALS ARE NOT PRIVATE AND ARE
INHERENT IN THE UNDERLYING PROCEEDING ............................... 16

    A.    The Trial Court Improperly Sealed Material In Which
Bollea Has No Legitimate Privacy Interest ......................................... 17

    B.    The Sealed Materials Are Inherent In The Underlying
Proceeding ................................................................................... 21

        1.    The Denial of Gawker's and Heather Clem's
Motions for Summary Judgment
(Sealed Appendix 14, 15, & 16) ................................................ 23

        2.    The Decisions to Grant Bollea's Severance Motion
and to Order the Case to Trial (Sealed Appendix 12) ................. 24

        3.    The Denial of Gawker's Request for a Continuance
to Receive FBI Records (Sealed Appendix 17) .......................... 25

        4.    The Decision to Allow Bollea to Redact "Offensive
Words" (Sealed Appendix 6, 7, 9, 10 & 22) and
Decisions in Bollea's Favor on Motions *in Limine*
(Sealed Appendix 2, 3, 4 & 5) ................................................... 27

        5.    The Denial of Gawker's 2014 Sanctions Motion
(Sealed Appendix 8, 11, 13 & 22) ............................................. 30

6.   The Decision Regarding Bollea's Motion Accusing Gawker of Leaking Sealed Materials (Sealed Appendix 18, 19 & 20) .................................................................32

7.   The Ruling to Allow FBI Documents to Be Designated "Attorneys' Eyes Only" and Gawker's Motion to Challenge Bollea's Wholesale Designations (Sealed Appendix 21 & 23) ...................................34

CONCLUSION ......................................................................................36

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barron v. Florida Freedom Newspapers, Inc.*,
  531 So. 2d 113 (Fla. 1988) ..............................................................11, 12, 13, 21

*Blogwire Hungary Szellemi Alkotást Hasznosító, KFT v. Bollea*,
  162 So. 3d 1116 (Fla. 2d DCA 2015) ("*Bollea II*") ...........................................4

*Bollea v. Clem*,
  151 So. 3d 1241 (Fla. 2d DCA 2014)................................................................26

*Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*,
  710 F.2d 1165 (6th Cir. 1983) ...........................................................................14

*Carnegie v. Tedder*,
  698 So. 2d 1310 (Fla. 2d DCA 1997).......................................................3, 21, 23

*Craig v. Harney*,
  331 U.S. 367 (1947)............................................................................................11

*Gannett Co., Inc. v. DePasquale*,
  443 U.S. 368 (1979)............................................................................................13

*Gawker Media, LLC v. Bollea*,
  129 So. 3d 1196 (Fla. 2d DCA 2014) ("*Bollea I*")...................................4, 15, 24

*Gawker Media, LLC v. Bollea*,
  170 So. 3d 125 (Fla. 2d DCA 2015) ("*Bollea III*") .......................................4, 25

*Gawker Media, LLC v. FBI*,
  No. 8:15-CV-01202-SCB-EAJ (M.D. Fla.).......................................................20

*Miami Herald Publ'g Co. v. McIntosh*,
  340 So. 2d 904 (Fla. 1976) ................................................................................12

*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court*,
  980 P.2d 337 (Cal. 1999)...................................................................................14

*Presley v. Georgia*,
  558 U.S. 209 (2010)............................................................................................13

*Pritchett v. State,*
    566 So. 2d 6 (Fla. 2d DCA 1990) .......................................................................13

*Publicker Indus., Inc. v. Cohen,*
    733 F.2d 1059 (3d Cir. 1984) .........................................................................13

*Richmond Newspapers, Inc. v. Virginia,*
    448 U.S. 555 (1980)........................................................................................13

*Sentinel Commc'ns Co. v. Watson,*
    615 So. 2d 768 (Fla. 5th DCA 1993)..............................................................16

*Thornton v. State,*
    585 So. 2d 1189 (Fla. 2d DCA 1991) .............................................................13

*Waller v. Georgia,*
    467 U.S. 39 (1984)..........................................................................................13

## Other Authorities

Fla. Constitution, Art. V, § 4 ....................................................................................3

FLA. R. APP. P. 9.100(d) ............................................................................................3

Fla. R. Jud. Admin. 2.420 ...................................................................5, 7, 8, 17, 21

## INTRODUCTION

Respondents Gawker Media, LLC, Nick Denton and A.J. Daulerio (collectively, "Gawker") file this response to the Petition for Writ of Certiorari to Review Orders Sealing Judicial Records. That Petition was filed by multiple local and national media organizations ("Media Petitioners") seeking review of the trial court's orders sealing close to two dozen separate court filings (many including voluminous briefs, affidavits, and exhibits) and transcripts of closed proceedings. As the Media Petitioners explained in their Petition, each of the court filings and closed hearings should be unsealed because (a) there was no showing or findings justifying sealing and (b) the records involve matters that are both inherent in the underlying proceeding and already public.

Gawker agrees with the Media Petitioners that the trial court's decision to seal vast portions of the record is contrary to well-established law governing the public's constitutional and common law right of access to court proceedings and records, and that it should be reversed. Gawker adopts the thorough factual recitations and arguments on those issues articulated in the Petition and, in the interests of judicial economy, attempts not to duplicate them, focusing instead on two points. First, Gawker provides additional detail about the sealed records and transcripts not available to the Media Petitioners from the public docket (compounding the error below, Gawker is forced to redact those descriptions from

the public version of this brief).[1]  Second, Gawker focuses on the particular structural protection that public access to court proceedings provides to *litigants*, separate and apart from the interest all citizens have in knowing what their courts are up to.

Simply put, for Gawker's own protection, it should not be forced to litigate this case in private.  Bollea has publicly proclaimed his entitlement to $100 million in damages in press releases and has described his purported emotional pain in scores of press interviews, but he has asked for large swaths of his lawsuit to be conducted behind closed doors.  The lower court acceded to Bollea's wishes. Gawker respectfully submits that ensuring public access to these proceedings provides Gawker, like all litigants, with a fundamental protection.  Restoring public access would subject the parties' respective positions to public scrutiny, thereby allowing the public to review the factual contentions and legal arguments that the trial court has accepted when repeatedly ruling in Bollea's favor.  Thus, public access not only informs the public, but it serves as a vital check on parties, counsel and courts, and is therefore critical to the fair administration of justice. The secrecy that has pervaded the proceedings below should end.  This very public litigation should actually be public.

---

[1] Gawker is contemporaneously filing a motion for leave to file an unredacted version of this brief so that the Court will have complete information about the nature of the sealed records when it adjudicates the Petition.

2

## JURISDICTION

Gawker agrees that this Court has jurisdiction to adjudicate the Petition because the trial court's sealing orders infringe on the public's right to contemporaneous access to court proceedings and records, a right that cannot be adequately remedied on a post-trial appeal.  *See* Pet. at 2-4 (citing, *inter alia*, Fla. Constitution, Art. V, § 4; Fla. R. App. P. 9.100(d); and numerous cases granting certiorari review from denials of public access to court proceedings and records). In addition, as explained *infra*, public access not only serves the interests of all citizens in observing the workings of the judicial system carried out in their name, but it also provides a fundamental protection for litigants like Gawker by imposing important structural checks on the conduct of both judicial officers and opposing litigants.  That essential safeguard is separate from the merits and, if infringed, works an immediate harm that cannot be remedied on a post-trial appeal.  *See Carnegie v. Tedder*, 698 So. 2d 1310, 1311 (Fla. 2d DCA 1997) (granting litigant's petition for certiorari and quashing trial court order improperly sealing court records).  For this reason as well, this Court can and should properly exercise its jurisdiction to adjudicate the Petition and to issue a writ.

## BACKGROUND AND PROCEDURAL HISTORY

As this Court is well aware, this litigation arises from the publication on gawker.com of commentary about a sex tape, accompanied by excerpts from the

tape, depicting Respondent Terry Bollea, a/k/a Hulk Hogan, engaged in an extra-marital affair with Heather Clem, the then-wife of radio shock jock Bubba the Love Sponge Clem.  *See, e.g.*, *Gawker Media, LLC v. Bollea*, 129 So. 3d 1196 (Fla. 2d DCA 2014) ("*Bollea I*"); *Blogwire Hungary Szellemi Alkotást Hasznosító, KFT v. Bollea*, 162 So. 3d 1116 (Fla. 2d DCA 2015) ("*Bollea II*"); *Gawker Media, LLC v. Bollea*, 170 So. 3d 125 (Fla. 2d DCA 2015) ("*Bollea III*").  Given the Court's familiarity with this litigation, the following section is intended to highlight key facts pertinent to this Response.

Discovery in the underlying proceeding has been governed by a series of protective orders, which allow the parties to unilaterally designate discovery materials and deposition testimony as "Confidential" or "Attorneys' Eyes Only" on a provisional basis.  Pet. Appx. A, B.[2]  Throughout the course of the litigation, Bollea placed these confidential designations on thousands of pages of discovery materials, numerous written discovery responses, and hundreds of pages of

---

[2] Citations to the Media Petitioners' Appendix are designated as "Pet. Appx. __."  Gawker is filing an additional public Appendix with this Response, with included items designated as "Gawker Appx. __."  Pursuant to this Court's December 3, 2015 Order, the Respondents have jointly filed under seal a "Sealed Appendix" that includes a copy of each of the documents that remain under seal under the trial court's sealing orders.  For the Court's convenience and reference, Gawker has prepared a chart, found at Gawker Appx. A, that includes (a) each of the documents in the Sealed Appendix, (b) a citation to the trial court's order sealing each item, and, (c) where applicable, the "Confidential Filing" number used by the court below and reflected in the transcript of the October 1, 2015 hearing, Pet. Appx. F, as described in the Petition at 11-12.

deposition transcripts, including both his own and other witnesses' testimony.[3]  As

a result of these designations, both parties were required to file many motions,

briefs, and supporting documents provisionally under seal, with an accompanying

"Motion to Determine the Confidentiality of Court Records" as required under

Florida Rule of Judicial Administration 2.420.

These motions were permitted to accumulate for more than a year, in part

because of Bollea's extraordinary emphasis on confidentiality for certain aspects of

the discovery he produced and obtained from third parties.  For example, Bollea

sought to expand the initial protective order he agreed to so that he could designate

certain documents as "Attorneys' Eyes Only" rather than as merely "Confidential."

Sealed Appendix 21 (Apr. 23, 2014 Hrg. Tr.) at 6:14 – 7:25 (oral ruling

authorizing same); Pet. Appx. B at 2 ¶ 2 (order reciting same).  He then sought an

order directing that any references to certain "offensive" language – ███████████

███████████████████████████████████████████████████████████████

████████████ – be redacted from discovery documents and deposition transcripts.

Sealed Appendix 6 (motion); Sealed Appendix 22 (sealed hearing transcript) at

124:6 – 160:18; Pet. Appx. C, D (rulings).  And, he sought to close an entire

hearing addressing whether he and ███████████ had engaged in serious misconduct

---

[3] Gawker also designated certain documents, mostly those reflecting indisputably confidential financial information, as "Confidential."  It has not used the "Attorneys' Eyes Only" designation so often used by Bollea.

and made numerous misrepresentations to the court below and to this Court.

Sealed Appendix 22 (sealed transcript of two-hour hearing).[4]

By the time the trial court finally considered the collected motions to

determine confidentiality, the ████████████████████████████████████

████████████ had become public, including that (a) the FBI had conducted an

extortion investigation and sting operation, (b) they involved three sex tapes, not

just the one tape provided anonymously to Gawker in 2012, (c) one of those other

tapes involves Bollea making racist and homophobic statements; and (d) there

were questions about whether the records produced by the FBI contradicted sworn

testimony by Bollea and his counsel in this case, as well as representations

Bollea's counsel made on his behalf to the court below and to this Court.  Gawker

Appx. C at 7-9, Exs. 9-11; Gawker Appx. D at Exs. 26, 28, 34; *see also* Pet. at

27-32.  Thus, by the time the trial court heard the confidentiality motions on

October 1, 2015, the information at issue was, in material respects, already public

and, as explained in greater detail *infra*, was inherent in the proceeding in any

---

[4] When the Special Discovery Magistrate suggested that the hearing occur at
the court reporter's office, Gawker's counsel asked whether the hearing could be
held at the courthouse.  Gawker Appx. B (June 19, 2014 Hrg. Tr.) at 8:12 – 9:16.
The Special Discovery Magistrate responded to that request by explaining that,
"given the confidential nature of the material and the pleadings and everything
else, if we put ourselves in the courthouse, you're putting yourselves subject to the
public and the press walking in the courtroom, where at a court reporter's office,
you can control that."  *Id.* at 9:8-13.  Bollea's counsel concurred, saying "we prefer
to control that."  *Id.* at 9:14-15.

event.  *See also* Gawker Appx. E at Exs. 1-5 (recent Tampa Police Dept. report publicly disclosing details of records it had received from the FBI, and press reports of same, further disclosing details of FBI investigation, including statements on the tapes and to investigators).

As the Media Petitioners explain, Pet. at 12, Bollea presented no arguments either in his opposition papers or at the October 1 hearing attempting to justify the sealing of any specific record or information.  Despite that, the Court ruled that roughly two dozen court filings and transcripts should be sealed.  Pet. Appx. I. Rather than make any specific findings about the thousands of pages of briefs, affidavits, exhibits and transcripts at issue, the trial judge recited in boilerplate fashion that all the records were protected by three provisions of Rule 2.420 authorizing sealing: to avoid substantial injury to a privacy right, to comply with established federal or state public policy, or to avoid substantial injury to innocent third parties.  *Id.* (citing Fla. R. Jud. Admin. 2.420(c)(9)(A)(v), (vi) (vi)).

Although binders of every record at issue were submitted to the trial judge, she made no findings with respect to individual records or specific information. Pet. Appx. I.  The judge did not state "with as much specificity as possible" the basis for her ruling, and did not identify "[t]he particular grounds . . . for determining that the information is confidential" or "[t]he particular information that is determined to be confidential."  Fla. R. Jud. Admin. 2.420(e)(3).

In addition, other than citing the language of the rule, the trial court did not explain why "the degree, duration, and manner of confidentiality ordered . . . are no broader than necessary" or why "no less restrictive measures are available." *Id.* The court simply made no effort to separate out information that is not confidential, as required.  For example, over the Media Petitioners' and Gawker's objections, in the trial court's initial order (issued October 27, 2015), it sealed many unquestionably public documents, including, just to name a few examples:

- Bollea's public complaint against Gawker in federal court, *see* Pet. Appx. G ¶ 8(B)(1); Gawker Appx. F;

- The transcript of a press conference held by Bollea's counsel regarding the lawsuit, which was posted on [www.wtsp.com](www.wtsp.com), *see* Pet. Appx. G ¶ 8(B)(1); Gawker Appx. G;

- Newspaper articles and web posts, including an article published in *The New York Times*, concerning the underlying litigation, *see* Pet. Appx. G ¶ 8(B)(3); Gawker Appx. H;

- An excerpt from an interview Bollea gave to *TMZ Live* concerning the sex tape and an excerpt of the Bubba the Love Sponge show where Bubba Clem discussed the contents of the sex tape with Howard Stern, *see* Pet. Appx. G ¶ 8(B)(1); Gawker Appx. I; and

- A *Tampa Bay Times* article and blog posts related to disputes between Bubba the Love Sponge and a local blogger, *see* Pet. Appx. G ¶ 8(D)(15); Gawker Appx. J.

After the trial court issued its first sealing order, Bollea's counsel – rightfully concerned about a possible appeal of a facially overbroad order – asked the court to unseal some of the exhibits that were the most obviously public.  Pet. Appx. H at 2 ¶¶ 4-5 (Bollea's motion to amend order, expressing concern about an "appeal [of] the October 27, 2015 Order" and stating that he would "not oppose the unsealing of several exhibits to confidential filings, as long as these exhibits are unsealed **without** unsealing the confidential filings themselves").  Although the confidentiality motions had been pending for up to a year, were noticed for hearing in mid-August, were heard on October 1, and were ruled on in the October 27 Order, Bollea advised that he had been unable to complete the process of reviewing the records for this purpose until November 6, 2015, "due to the volume of the materials at issue and other time constraints."  *Id.* at 2 n.1.

For its part, despite having sealed all of those exhibits in its October 27, 2015 Order, the trial court once again went along with Bollea's request and adopted in full his proposed amended order on November 18, 2015.  Pet. Appx. I. While unsealing a fraction of the voluminous exhibits at issue, that amended order still effectively left under seal *all* of the motion papers and briefs, *most* of the

9

exhibits, and *all but one* of the transcripts that had originally been sealed – again, with nothing other than boilerplate findings.  *Id.*  In a second November 18, 2015 Order, the trial judge sealed three additional exhibits on which she had reserved at the October 1 hearing.  Pet. Appx. J.

The Petition and this Response are obviously focused on records that remain sealed.  However, the fact that, over Gawker's and the Media Petitioners' objections and with a full set of the records before it, the trial court originally sealed thousands of pages of court records in their entirety – including some 75 news articles, public court filings, public court orders, and the like – illustrates the blunderbuss approach that has permeated the resolution of the confidentiality motions that are at issue in this proceeding.  Indeed, even after the trial court adopted an amended order in which it purported to take a second look at the sealed material, thousands of pages improperly remain under seal.  As a result, the public and press are unable to understand the basis for the court's many substantive rulings emanating from these sealed filings – rulings that have uniformly been decided against Gawker, and in favor of Bollea.

## ARGUMENT

As a news organization, Gawker joins in the arguments of the Media Petitioners.  But, in this case, Gawker is also a litigant, and its right to a fair process fostered by public access is separately jeopardized by the trial court's

closure orders.  While the Media Petitioners were limited in their ability to address in detail why the sealed materials should be public because they did not have access to those materials, Gawker has no such limitation, as it has witnessed first-hand the effect that secrecy has had on the proceedings below.

## I.   THE TRIAL COURT'S SEALING ORDERS VIOLATE GAWKER'S RIGHT TO PUBLIC PROCEEDINGS.

Florida has traditionally served as a model for open government and courts. It is well-settled in this State that civil court proceedings are presumptively open to the public.  The Florida Supreme Court has emphasized that "[a] trial is a public event [and] [w]hat transpires in the court room is public property." *Barron v. Florida Freedom Newspapers, Inc.*, 531 So. 2d 113, 116 (Fla. 1988) (quoting *Craig v. Harney*, 331 U.S. 367, 374 (1947)).  The reason for openness is that "[p]ublic trials are essential to the judicial system's credibility in a free society." *Id.*

As the Media Petitioners explained, the right to open courts ensures that the public is kept fully informed of judicial proceedings.  But, that is not the only principle underpinning the right of access to court records and proceedings.  Public access also provides essential protections for litigants.  As the Florida Supreme Court has emphasized, transparency is essential to "testimonial trustworthiness" because it "produces in the witness' mind a disinclination to falsify" by stimulating an "instinctive responsibility to public opinion" and "inducing fear of exposure" of

11

falsehoods.  *Barron*, 531 So. 2d. at 117 (citation omitted).  In short, open courts "'induc[e] the fear of exposure of subsequent falsities through disclosure.'"  *Id.*

An analogous effect is produced upon counsel and, just as importantly, the court.  "[I]n acting under the public gaze, they are more strongly moved to a strict conscientiousness in the performance of duty."  *Id.* (citation omitted).  Allowing the public to observe court proceedings and review court records underlying judges' decisions ensures proper performance of that duty and prevents the "'abuses'" associated with "'secret tribunals.'"  *Id.* (citation omitted).  Indeed, public access guarantees "'the greatest publicity to the acts of those holding positions of public trust.'"  *Id.* (citation omitted).  Thus, maintaining open court records and proceedings serves a prophylactic function against bias, proffering false or inconsistent testimony, due process violations, and errant legal rulings.  As the Florida Supreme Court has observed, "[t]o prevent star-chamber injustice the public should generally have unrestricted access to all proceedings."  *Miami Herald Publ'g Co. v. McIntosh*, 340 So. 2d 904, 910 (Fla. 1976).  *See also Barron*, 531 So. 2d at 117 ("In all experience, secret tribunals have exhibited abuses which have been wanting in courts whose procedure was public.") (citation omitted).

This is so because those who stand accused of wrongdoing can raise defenses and offer supporting evidence publicly, taking solace in the knowledge that the public too will be able to fully analyze – and potentially critique – all

evidence and rulings that impact a case.  It is indeed for these reasons that courts

have recognized the value public access plays in helping to ensure parties in both

criminal and civil proceedings receive a fair trial.  *See, e.g.*, *Barron*, 531 So. 2d at

116 (noting that public trials improve the quality of testimony and ensure "strict

conscientiousness in the performance of duty"); *Publicker Indus., Inc. v. Cohen*,

733 F.2d 1059, 1069-70 (3d Cir. 1984) (recognizing same).  Safekeeping this right

is of such importance that this Court has overturned criminal convictions when a

defendant's Sixth Amendment right to a public trial was not upheld.  *See Thornton

v. State*, 585 So. 2d 1189 (Fla. 2d DCA 1991) (citing *Waller v. Georgia*, 467 U.S.

39 (1984)); *Pritchett v. State*, 566 So. 2d 6 (Fla. 2d DCA 1990) (same).  *See also

Presley v. Georgia*, 558 U.S. 209 (2010) (ruling that defendant's Sixth Amendment

was violated when public was excluded from *voir dire* of prospective jurors).

These protections are no less compelling in the civil context.  *See, e.g.*,

*Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 386 n. 15 (1979) ("Indeed, many

of the advantages of public criminal trials are equally applicable in the civil trial

context.  While the operation of the judicial process in civil cases is often of

interest only to the parties in the litigation, this is not always the case. . . .  Thus, in

some civil cases the public interest in access, and the salutary effect of publicity,

may be as strong as, or stronger than, in most criminal cases") (citations omitted);

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 596 (1980) ("[M]istakes of

13

fact in civil litigation may inflict costs upon others than the plaintiff and defendant. Facilitation of the trial factfinding process, therefore, is of concern to the public as well as to the parties") (Brennan, J., concurring); *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1178-79 (6th Cir. 1983) (noting that the U.S. Supreme Court's rationales upholding public access to criminal trials apply equally to civil trials and that "[t]he concern of Justice Brennan that secrecy eliminates one of the important checks on the integrity of the system applies no differently in a civil setting. In either the civil or the criminal courtroom, secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption"); *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court*, 980 P.2d 337, 354, 358-59 (Cal. 1999) (emphasizing that open civil trials ensure "that justice is meted out fairly" and stating that the court was aware of no case that has rejected the application of the right of access to courts, as articulated by the U.S. Supreme Court, to civil proceedings).

Because this litigation has implications for the First Amendment rights of all citizens and every member of the press, including because Bollea is seeking $100 million in damages in retaliation for the exercise of such rights, this is certainly a case where the public has an enormous interest in the outcome. Yet, on numerous occasions, Bollea and the trial court have stripped away Gawker's fair trial protections, routinely forcing it make arguments in its defense in secret. As a

14

result, Gawker has been denied the fair trial protections that naturally flow from public scrutiny of both the parties' arguments and the court's rulings.

Indeed, Gawker is frequently left defending itself in the dark. For example, most recently, it has been forced to refute through sealed filings Bollea's very public – and wholly baseless – allegations that it was the source of an alleged leak to the *National Enquirer*. While Bollea filed his papers publicly, and then trumpeted them to the press, the public was never able to fully see the evidence submitted by Gawker disproving this baseless charge. Thus, the public will ultimately be left to wonder what the trial court relied upon in ordering an extraordinarily intrusive forensic examination of every computer and device Gawker or any one of its employees uses. *See* No. 2D15-5035.

Similarly, Gawker could take no solace in the fact that the public would be able to fully review the complete factual record before the court when it denied Gawker's summary judgment motion, with part of Gawker's submission and all of Bollea's still under seal. That secrecy has left the public unable to assess why, in adjudicating that summary judgment motion, the trial court disregarded this Court's temporary injunction decision holding that the publication at issue related to a matter of public concern and thus was protected by the First Amendment. *See Bollea I*, 129 So. 3d at 1200-02. The public could not assess the evidence – or any of Bollea's legal argument – that supposedly swayed the trial court to rule

15

differently than this Court on the exact same issue.  This is of added concern given that Gawker had contended that the record amassed by the time its summary judgment motion was heard offered substantial additional factual support for this Court's initial conclusion.  *See, e.g.*, Gawker Appx. K at ¶¶ 33-112 (previously sealed by the trial court's initial sealing order, Pet. Appx. G ¶ 8(D)(13), and unsealed in its amended sealing order, Pet. Appx. ¶ 10(E)(14)).

These examples illustrate why allowing the public to access records and proceedings helps ensure fairness and justice for the litigants who come before the courts of this State.  When officers of the court and judges are not accountable to the public through scrutiny of their actions, it invites error and can severely prejudice one of the parties.  As discussed below, Gawker submits that is precisely what has happened in this case.

## II.    THE SEALED MATERIALS ARE NOT PRIVATE AND ARE INHERENT IN THE UNDERLYING PROCEEDING.

When considering a request to close court proceedings or to seal judicial records, the court's "analysis must begin with the proposition that all civil and criminal court proceedings are public events, records of court proceedings are public records and there is a strong presumption in favor of public access to such matters." *Sentinel Commc'ns Co. v. Watson*, 615 So. 2d 768, 770 (Fla. 5th DCA 1993).  Not only did the trial court fail to abide by the basic procedural safeguards (failing to state the basis for its ruling "with as much specificity as possible," to

16

articulate the "[t]he particular grounds . . . for determining that the information is confidential," or to specify "[t]he particular information that is determined to be confidential," Fla. R. Jud. Admin. 2.420(e)(3)(B), (E)), but on the substance the court below improperly acceded to Bollea's overly broad requests for closure.

Indeed, Bollea did not satisfy the demanding burden he faces to establish that the court records and transcripts should be sealed, and he cannot do so here. Specifically, there is no protectable privacy interest in the sealed materials and all of the materials are inherent in the underlying proceedings in any event.

### A.    The Trial Court Improperly Sealed Material In Which Bollea Has No Legitimate Privacy Interest.

Bollea never established any legitimate interest that would warrant closure of the court records.  In his written submission seeking to justify closure, Bollea's argument rested on general assertions of a "privacy right" and a "risk of substantial injury."  *See* Pet. Appx. M at 4-5.  He did not point to any specific information for which he had a reasonable expectation of privacy and did not explain how he could be injured by the public disclosure of any particular piece of information.  As the Media Petitioners rightfully argue, Bollea has no reasonable expectation of privacy in the sealed materials.

The trial court sealed materials in which Bollea does not have even an arguable privacy interest.  For example, it sealed documents and testimony reflecting the fact that he ███████████████████████████████████████

17

████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

████████████████ *See* Sealed Appendix 14 ¶¶ 4, 5 & Ex. 108 (Gawker's Confidential

Statement of Undisputed Material Facts on summary judgment).  Similarly, the

trial court sealed ████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████.  *See* Sealed Appendix 8, Ex. 32 (Gawker's

Confidential Statement of Violations of Court Orders and Misrepresentations);

Sealed Appendix 15, Ex. 53 (Plaintiff's Opp. to Gawker's Motion for Summary

Judgment).

Other rulings simply make no sense.  For example, in one paragraph of the

Amended Sealing Order, the trial court unsealed a portion of a transcript from a

hearing held on April 23, 2014, while sealing the very same transcript in two other

paragraphs of that order.  *Compare* Pet. Appx. I ¶ 10(E)(7) (Amended Order

unsealing Exhibit 4, which contains transcript) *with id.* ¶ 10(D)(3) (sealing same

transcript) *and id.* ¶ 10(F)(1) (sealing same transcript attached as Exhibit 2 to filing

governed by that paragraph of the order).  In any event, even before the trial

court's ruling, all of the information discussed in that transcript – which included █

████████████████████████████████████████████ –

was public.  Similarly, the trial court also sealed correspondence from counsel to

the Special Discovery Magistrate ███████████████████████████████████

████████████████████████, none of which is confidential or in any way secret.

*See* Sealed Appendix 12 (Exhibits 2 and 3 to the Gawker Defendants' Opp. to

Bollea's Severance Motion).

        In addition to these rulings that are obviously flawed on their face, the trial

court expressed an unwillingness to consider what was actually public at the time

of its ruling, and then sealed a vast amount of material that was already decidedly

public.  For example, the trial court sealed documents showing that ████

███████████████████████████████████████████████████████████

████.  *See* Sealed Appendix 2, Exs. 1, 10 (Gawker's Motion *in Limine*); Sealed

Appendix 18 ¶¶ 13, 14 & Exs. 38, 39 (Confid. Thomas Decl.).  The trial court also

sealed documents that show that ████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████.  *See* Sealed Appendix 8, Exs.

6, 7 (Gawker's Confid. Statement of Violations of Court Orders and

Misrepresentations); Sealed Appendix 2, Exs. 19, 21 (Gawker's Motion *in Limine*).

Indeed, the supposedly "confidential" document confirming ████████████████

████████ had already been included as an exhibit to one of the declarations

19

publicly filed by the FBI in the federal FOIA case.  *See* Gawker Appx. C, Ex. 10

(Declaration of FBI's David Hardy in *Gawker Media, LLC v. FBI*, No. 8:15-CV-

01202-SCB-EAJ (M.D. Fla.), Dkt. 23-1) at Ex. H, Sub-Ex. 4; *see also* Gawker

Appx. L (Suppl. Decl. of D. Hardy in FOIA Action, Dkt. 35-1) ¶¶ 8-10 (publicly-

filed declaration further describing three DVDs).

 The court below took a similar approach with respect to Bollea's motion *in

limine* to prevent Gawker from introducing ████████████████ at trial.

The Court acceded to his request to seal that entire motion, even though all of the

information in it is now public – and even though the motion was premised on a

series of misrepresentations.  *See* Sealed Appendix 3.  Indeed, sealing Bollea's

motion papers is particularly troubling because they include false statements that

the public cannot see, including that ████████████████████

████████████████████████████████

████████████████, *id.* at 3 n.1, and describing his ████████████

████████████ *id.* at 5.  *See* Sealed Appendix 18 ¶¶ 5-22 & Exs. cited

therein (demonstrating falsity of such statements since █████████████

████████████████████████).

 In sum, at the time the court below ruled, the information Bollea sought to

protect was simply not private.  There was no justification for the trial court to seal

20

it on that basis, particularly given that the result has been to prevent the public from knowing whether Bollea is telling the truth.

### B.   The Sealed Materials are Inherent in the Underlying Proceeding.

Even if Bollea could establish a protectable privacy interest, sealing is permissible only if otherwise private information is "not generally inherent in the specific type of civil proceeding sought to be closed." *Barron*, 531 So. 2d at 118 (ordering public access to a party's medical information in divorce proceeding where it was relevant to the proceeding); *see also* Fla. R. Jud. Admin. 2.420(c)(9)(A)(vi); *Carnegie*, 698 So. 2d at 1312.

As an initial matter, Bollea has sought to seal all manner of things that directly address the parties' claims and defenses in this action, averring that they are private.  But he had to realize that when he brought claims involving a sex tape filmed in the bedroom of Bubba and Heather Clem, and Gawker's publication of brief excerpts, that information related to those events would be subject to public scrutiny in court.  For example, in the trial court, he has sought to bolster his case by alleging that he did not know about the recording, was unaware the Clems had cameras in their house, and suffered emotional distress from Gawker's publication. Likewise, he has claimed that Gawker derived astronomical commercial value by posting the brief excerpts.  And, he has claimed that the trial court should exclude

21

evidence at trial of his and his counsel's contemporaneous statements to the FBI and to Bubba Clem about footage of him having sex with Heather Clem.

But the records Bollea persuaded the lower court to seal contain information about these very issues, including (a) his relationship with Heather Clem,[5] (b) his knowledge of the taping and the number of tapes known to exist,[6] (c) his communications with Bubba Clem about the taping and the tapes themselves,[7] (d) Bollea's concern about what material was on those tapes and what was causing his distress,[8] (e) when he learned information about the content of the tapes and how he learned that information,[9] (f) the reason other people thought the tapes had monetary value,[10] (g) what Bollea and his lawyer told the FBI and others about those issues before he first filed his lawsuits against Gawker and the Clems,[11] and (h) what he and his counsel said in connection with the federal investigation while

---

[5] *See, e.g.*, Sealed Appendix 8, Ex. 14; Sealed Appendix 14 ¶¶ 24, 25 & Exs. 108, 111, 112; Sealed Appendix 15 ¶¶ 24, 25, 28, 29, 167-69 & Exs. 41, 42; Sealed Appendix 16 at 2-6 & Exs. 3, 4.

[6] *See, e.g.*, Sealed Appendix 8 at 8-10 & Exs. 11, 14; Sealed Appendix 15 ¶¶ 168, 169 & Exs. 41, 42; Sealed Appendix 18 ¶¶ 59, 61, 64 & Exs. 57, 69, 75.

[7] *See, e.g.*, Sealed Appendix 18 ¶ 15, Ex. 40; Sealed Appendix 2, Ex. 12; Sealed Appendix 5, Exs. 2, 3.

[8] *See, e.g.*, Sealed Appendix 18 ¶¶ 14-17 & Exs. 39-42; Sealed Appendix 2, Ex. 12.

[9] *See, e.g.*, Sealed Appendix 18 ¶¶ 14-15, 19-21, 50, 53, 54 & Exs. 39-40, 43, 45, 48, 64, 69.

[10] *See, e.g.*, Sealed Appendix 8, Ex. 3.

[11] *See, e.g.*, Sealed Appendix 18, Exs. 39, 40, 75.

he continued to pursue this case.[12]  This factual information, and the legal arguments and representations made by the parties about these topics, cannot be described as "peripheral to the litigation."  *Carnegie*, 698 So. 2d at 1312.  They are inherent to the allegations Bollea has made in his complaint, the facts relating directly to those allegations, and the parties' competing contentions in the litigation.

Just as importantly, all of the records and transcripts that have been sealed are inherent to the actual proceedings below for an additional reason.  They were each considered by the lower court when making key rulings that have greatly affected the course of this litigation:

### 1. The Denial of Gawker's and Heather Clem's Motions for Summary Judgment (Sealed Appendix 14, 15, & 16)

When Gawker moved for summary judgment, including on the ground that its posting was constitutionally protected because it related to a matter of public concern, it had to make substantial portions of its evidentiary filings under seal because of Bollea's confidentiality designations.  Sealed Appendix 14.  Bollea's opposition to Gawker's summary judgment motion is under seal, including his entire brief and all of his legal arguments, as well as supporting affidavits and most of the exhibits.  Sealed Appendix 15.  (The court unsealed a handful of exhibits at

---

[12] *Id.*

Bollea's request in its amended sealing order.  *See* Pet. Appx. I ¶ 10(E)(13).)  After

considering those sealed filings, the trial court denied Gawker's dispositive motion

without elaboration, Gawker Appx. M (order); Gawker Appx. N (May 29, 2015

Hrg. Tr. (afternoon session)) at 107:21-22 (stating only that "defendant Gawker's

motion for summary judgment is going to be denied"), even though this Court

previously had held that the Gawker posting addressed a matter of public concern

and was protected by the First Amendment.  *See Bollea I*, 129 So. 3d at 1200-02.

The court below similarly sealed Bollea's opposition to Heather Clem's

motion for summary judgment, including his entire brief and a number of the

exhibits.  Pet. Appx. I ¶ 10(D)(11); Sealed Appendix 16.  Defendants' dispositive

motions for summary judgment, the denial of which propelled this case towards

trial, are unquestionably inherent in the proceedings.  Allowing the public to see

the briefs and the evidence submitted is crucial both to its understanding of the

process and, just as importantly, to ensuring the fairness of that process for Gawker

(and for Heather Clem).  The trial court's conclusion to the contrary was error.

### 2. *The Decisions to Grant Bollea's Severance Motion and to Order the Case to Trial (Sealed Appendix 12)*

When Bollea asked the Court to sever his claims against then-defendant

Kinja, KFT (f/k/a Blogwire Hungary Szellemi Alkotást Hasznosító, KFT) and to

set a trial date against the other defendants, portions of Gawker's opposition were

required to be filed under seal because Bollea had designated as confidential

descriptions of discovery that remained to be conducted.  Sealed Appendix 12.

After reviewing those records, the trial court granted Bollea's motion for severance

and set the case for trial, decisions that this Court subsequently reversed.  *See*

Gawker Appx. O (May 7, 2015 Order in Nos. 2D14-5591 & 2D15-1259);

*Bollea III*, 170 So. 3d at 133.  The public should be able to see the basis for

granting a motion that led to a reversal and a published opinion by this Court,

postponing trial in this highly-watched case.

### 3. *The Denial of Gawker's Request for a Continuance to Receive FBI Records (Sealed Appendix 17)*

Shortly before trial was to commence in July (but before this Court vacated

the second order setting the case for trial, *Bollea III*, 170 So. 2d at 133), Gawker

moved for a continuance because it had not yet received documents from the FBI

relating to its investigation – documents that have turned out to include key

information, including, *inter alia*, ███████████████████████████

████████████████████████████████████████████████████

████████████████████████, Sealed Appendix 18 (Conf. Thomas Decl.)

¶¶ 59-64; and evidence showing that Bollea's claims against Gawker do not match

the concerns he articulated to the FBI (██████████████████████████

████████████████████████████), *id.* at ¶¶ 5-22, 47-61, 64.  Gawker filed

exhibits to its continuance motion under seal because Bollea had designated the

information they contained as "Attorneys' Eyes Only."  Sealed Appendix 17.  The

trial court received and reviewed those exhibits and then denied that motion.  Pet.

Appx. O (July 1 Hrg. Tr.) at 207:7 – 209:5.

The exhibits themselves were simply correspondence in which there is no

conceivable privacy interest.  They contain multiple communications that █████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████.  Sealed Appendix 17.[13]  While Gawker

obviously believes the trial court's denial of the continuance motion was improper,

the public should be able to view these papers and to understand the basis for that

ruling.  In addition to the public's own interest, Gawker should enjoy the added

structural protection of that public scrutiny in █████████████████████████████

█████████████████████████ and in holding the trial judge

---

[13] *See, e.g.*, Sealed Appendix 17 Ex. G (email from Bollea's counsel to ████████████████████████████████████ asserting that ██████████████████████████████████████████████████████████ and stating that ████████████████████████████████; Ex. B (letter from Gawker's counsel to Bollea's counsel ██████████████████████████████████████████████████████████████████████████████████████).  It was particularly troubling to Gawker that, given its lengthy efforts to secure waivers facilitating the production of the FBI's records, Bollea and his counsel ████████████████████████████████████████████████████████████████.  *See Bollea v. Clem*, 151 So. 3d 1241 (Fla. 2d DCA 2014).

accountable for a decision to proceed to trial knowing that key evidence, that had

diligently been sought for 18 months, was still forthcoming.

> **4.  The Decision to Allow Bollea to Redact "Offensive Words" (Sealed**
> **Appendix 6, 7, 9, 10 & 22) and Decisions in Bollea's Favor on**
> **Motions in Limine (Sealed Appendix 2, 3, 4 & 5)**



In a sealed filing, Bollea requested that discovery material with "offensive

words" be redacted.  Bollea argued that

(even though we now know, based on Bollea's own

admissions to the national press, that assertion was false and knowingly so).

Sealed Appendix 6 at 3; *see also* Sealed Appendix 7 ¶ 6 (affidavit from Bollea's

counsel stating that

); Sealed Appendix 18 ¶¶ 5-22, 47-58

(Confid. Thomas Decl.).  Gawker was required to file its entire opposition to that

motion, including its legal argument, under seal, *see* Sealed Appendix 9, and

Bollea's entire reply was filed under seal as well and marked "Highly Confidential

– Attorneys' Eyes Only," *see* Sealed Appendix 10.

The Special Discovery Magistrate then heard Bollea's motion in secret in a

proceeding that was completely closed to the public and deliberately held at a court

reporter's office to prevent members of the press or public from attending.  Sealed

Appendix 22; *see* note 4 *supra*.  Following that hearing, the Special Discovery

Magistrate accepted Bollea's arguments and recommended that all documents and

transcripts that contained "offensive language" or even referred to it – including

██████████████████ – be redacted from all documents produced in

discovery (including from third parties) and all transcripts of deposition testimony

(including by third parties).  Pet. Appx. C.  The trial judge later approved those

recommendations and memorialized them in an order.  Pet. Appx. D; *see also*

Sealed Appendix 19, Exs. 3, 21 (examples of transcripts of third parties'

depositions redacted pursuant to same).  As discovery proceeded, this ruling also

had the effect of shaping what discovery Gawker was permitted to pursue and, in

fact, prevented Gawker from even asking Bollea about the ███████████

contained in the discovery he had produced and which his counsel had argued were

nothing more then unauthenticated hearsay.  *See, e.g.*, Sealed Appendix 19, Ex. 22

at 818:2 – 831:5 (excerpts from Bollea's deposition).

Continuing on this theme, Bollea filed a motion *in limine* seeking to exclude

any evidence relating in any way to ████████████████████

██ or ██████████████████████.  Sealed Appendix 3.

Gawker in turn filed its own motion *in limine* arguing that this evidence was

relevant because, *inter alia*, ██████████████████████

████████████████████████

████████████████████████████

████████████████████████████

28



███  Sealed Appendix 2.  *See also* Pet. Appx. O (July 1, 2015 Hrg. Tr.) at

200:13-17; 214:14-20.  As Bollea himself explained to Bubba Clem shortly before

filing suit against Gawker (in a text withheld from Gawker for more than a year):

████████████████████████████████████████████

████████████████████████████████████  Sealed

Appendix 2 at 6 ¶ 11 & Ex. 12.

For his part, Bollea argued at the hearing that the evidence concerning the

additional videos and "offensive language" should not be admitted because his

motivation for filing the lawsuit was irrelevant, and (falsely) asserted that the audio

on the videos might have been "manipulate[ed]" by an extortionist and "through an

impersonator," and "there is nobody around to testify about what these DVDs are."

Pet. Appx. O (July 1, 2015 Hrg. Tr.) at 200:13-17, 201:5-11.[14]  The court ruled

provisionally to exclude the evidence at issue.  *Id.* at 217:4-8 (ruling without

---

[14] Of course, we now know from the FBI records ultimately produced that
████████████████████, that ██████████████████████, that
████████ (as he has publicly admitted) and that
████████████████████████.  *See* Sealed
Appendix 18 ¶¶ 5-22, 47-61 (Conf. Thomas Decl.) (explaining, in part, relevance
of ████████████████ and detailing ████████████████████
██████████████); *see also* Gawker Appx. P (email from AUSA
confirming that tapes conform to summary prepared by Keith Davidson).

prejudice because the FBI had not yet produced its documents relating to its investigation into the tapes).

Gawker believes that it was improper to order redaction of language from documents and transcripts, to prevent discovery into this issue, to provisionally exclude related evidence, and, as discussed below, to allow Bollea to misrepresent the facts on those subjects. Gawker also believes that whether Bollea is concerned about █████████████████████████████████████████ █████████ is a fact issue properly resolved by a jury (it also believes that this case should never reach a jury since the speech involves a matter of public concern and is protected by the First Amendment). But the Court need not resolve any of those issues here to address the right of access to these materials. Rulings about the scope of evidence at trial or the alteration of evidence and testimony, and the parties' respective contentions in briefs and at hearings about those issues, are things that the public should see. Even if the evidence were ultimately excluded from trial, public scrutiny of that decision both informs the public *and* affords a structural protection to Gawker.

### 5. *The Denial of Gawker's 2014 Sanctions Motion (Sealed Appendix 8, 11, 13 & 22)*

After Bollea produced his records relating to the FBI's investigation in May 2014, Gawker moved for sanctions based on a series of material misrepresentations and other misconduct known by that time, involving: (a) ██████████████

30



Sealed Appendix 8 at 2-25.  Both parties' papers concerning the substance of that

motion, *see* Sealed Appendix 8, 11, were required to be filed under seal because of

Bollea's designations.  The Special Discovery Magistrate conducted a lengthy

hearing on that motion in the closed proceeding at the court reporter's office.

Sealed Appendix 22; *see* note 4 *supra*.  The Special Discovery Magistrate

recommended that Gawker's sanctions motion be denied, based in significant part

on Bollea's counsel's representations that ████████████████████████████

███████████████.  Sealed Appendix 22 at 51:23 – 52:17 ("██████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████"); Gawker Appx. Q (Oct. 20, 2014 Report and Recommendation

on Defendants' Motion for Sanctions).  Following Gawker's exceptions, some of

which also had to be filed under seal, *see* Sealed Appendix 13, the trial court

adopted that recommendation.  Gawker Appx. R.

        Since that motion was adjudicated, the FBI documents have confirmed that

Bollea's counsel's representations to the Special Discovery Magistrate were false,

and that Bollea, who was attending in person, knew that.  *See, e.g.*, Sealed Appendix 18 ¶¶ 5-22, 47-61 (Confid. Thomas Decl.).  And, the underlying information at issue – ████████████████████████████████████████ ████████████████████████████████ – have all become a matter of public record.  Thus, by the time the court below sealed the records pertaining to this motion, their contents were already public and they were inherent in the proceeding, both because they formed the basis of the trial court's decision *and* because that ruling was procured by fraud and remains uncorrected.  That is precisely the kind of thing that the public is entitled to see, both to serve its own interest and to protect litigants like Gawker from misconduct by opposing parties as well as judicial officers' refusal to police such misconduct.

### 6.  *The Decision Regarding Bollea's Motion Accusing Gawker of Leaking Sealed Materials (Sealed Appendix 18, 19 & 20)*

Bollea filed a motion seeking a court-appointed expert to seize the computers and electronic devices of Gawker and its counsel based on his allegation that they leaked a "sealed transcript" to the *National Enquirer*.  In response, Gawker was forced to file the factual evidence central to its opposition under seal because Bollea had designated it as confidential.  *See* Sealed Appendix 19.  Those documents show that what the *Enquirer* reported does not match the information in Gawker's counsel's possession, and that numerous other people had access to what the *Enquirer* actually published.  *See, e.g.*, *Id.* Exs. 3, 4, 11, 30.  After the FBI

produced additional records further confirming that fact, Gawker filed a supplemental opposition to Bollea's "Leak" Motion, the entire substance of which it was required to file under seal.  Sealed Appendix 20.

At the hearing on the "Leak" Motion, Gawker's counsel explained that, in addition to deflecting public attention from his racist and homophobic statements that had recently become public, Bollea's allegations against Gawker and its counsel were an effort to deflect attention away from litigation misconduct by Bollea and his counsel revealed in the just-produced FBI documents.  Pet. Appx. P (July 30, 2015 Hrg. Tr.) at 49:1 – 53:15.  Gawker's filing supporting that argument, a declaration of Gregg Thomas documenting the numerous material misrepresentations by Bollea and his counsel (including under oath), is also under seal, along with almost all of its exhibits.  Sealed Appendix 18.  That declaration, which had originally been filed in federal court in response to questions posed by the presiding judge in the FOIA action (Hon. Susan C. Bucklew), was also filed under seal in *federal* court to comply with the *state court's* protective order. Gawker Appx. S (federal court order directing declaration to be filed under seal based on state court protective order).  The public is therefore also unable to see key documents in a federal case – ironically one premised on a federal statute designed to promote government transparency.

With no basis for doing so, *see* No. 2D15-5035, the court below granted Bollea's "Leak" Motion, directing a court-appointed forensic computer expert to search the computers and other devices of every Gawker employee.  Although the court was concerned about the possibility that Gawker or its employees might have engaged in misconduct (even though there was no evidence to support such a conclusion, and a substantial body of evidence negating it), the court simply ignored substantial, documented evidence of Bollea's and his counsel's misconduct, including as it related to their purpose in filing that very motion.

After the trial court granted Bollea's motion, Gawker filed a Petition for Writ of Certiorari with this Court.  *See* No. 2D15-5035.  Many of the filings with respect to the petition had to be filed under seal pursuant to the trial court's confidentiality order.

As a result of the lopsided sealing of these records, the public can see Bollea's claims of serious misconduct against Gawker and its counsel, but is simply unable to see their response, whether in the court below or in this Court, or to see papers submitted to Judge Bucklew in the FOIA action.

### 7. *The Ruling to Allow FBI Documents to Be Designated "Attorneys' Eyes Only" and Gawker's Motion to Challenge Bollea's Wholesale Designations (Sealed Appendix 21 & 23)*

As described above, the initial protective order agreed to by the parties allowed them to designate documents as "Confidential."  Pet. Appx. A.  When

Bollea was ordered to produce his own communications with the FBI, he requested and was authorized to designate them as "Highly Confidential – Attorneys' Eyes Only."  *See* Pet. Appx. B ¶ 2; *see also* Sealed Appendix 21 at 6:14 – 7:24.  As noted above, the portion of the transcript in which he made that request and in which it was orally granted by the court below is given conflicting treatment in the sealing order at issue, being adjudicated as both sealed and unsealed in the same order.  *Compare* Pet. Appx. I ¶ 10(E)(7) *with id.* ¶¶ 10(D)(3) & 10(F)(1).  Either way, it should not be sealed since its general description of ███████████████ ████████████ is now public.

More recently, Gawker challenged in the trial court Bollea's designations of specific materials as "Attorneys' Eyes Only."  Although that motion challenges Bollea's designations on a wide range of documents, it is particularly significant with respect to the records produced by the FBI in the FOIA action.  Those designations are at the heart of the trial court's order, now before this Court, *see* No. 2D15-4565, removing Gawker's General Counsel from the "Attorneys' Eyes Only" category and prohibiting Gawker's litigation counsel from sharing or discussing with her the FBI records received in that FOIA action.  Likewise, the Media Petitioners' own motion below focused on the trial court's treatment of the FOIA records as "Attorneys' Eyes Only," effectively preventing the public from access to records ordered produced by a federal judge under a federal statute.

35

Gawker was required to file certain exhibits to its motion challenging Bollea's "Attorneys' Eyes Only" designations under seal (including transcripts of two court proceedings, as well as a chart generally describing the records and noting where the FBI had withheld documents).  Sealed Appendix 23; Pet. Appx. J (order sealing same).  There is no basis to shield from public scrutiny materials addressing Bollea's request for this heightened level of protection or Gawker's request to de-designate the documents.  This is particularly true since Bollea has used those designations as the basis for his leak allegations against Gawker, *see* No. 2D15-5035, and for keeping from the public numerous records in this case, including more than 2,000 pages of FBI documents that a federal judge has determined are "something the public 'is entitled to.'"  Pet. Appx. Q (July 2, 2015 FOIA Hrg. Tr.) at 91:21-22.

In sum, each of the records and transcripts at issue includes information that is already public and, even if it were not already public, that is inherent in the proceeding.  There is simply no legitimate basis for sealing these filings and transcripts.

## **CONCLUSION**

Gawker should not be forced to litigate this case under a cloud of secrecy. The public should be permitted to review all of the parties' evidence and arguments so that it can evaluate their respective claims and the lower court's

rulings in assessing the numerous significant issues they raise.  Not only does the

public have its own interest in seeing these records and transcripts, but this access

is essential to Gawker's ability to receive a fair trial, to the court's credibility and

to public confidence in the outcome.  The only disinfectant that can possibly

cleanse this case is sunlight.  This Court should grant the Media Petition and unseal

the closed court records and transcripts.

Dated: December 22, 2015                    Respectfully submitted,

                                            THOMAS & LOCICERO PL

Seth D. Berlin                              By: */s/ Gregg D. Thomas*
Pro Hac Vice No.: 103440                        Gregg D. Thomas
Michael Berry                                   Florida Bar No.: 223913
Pro Hac Vice No.: 108191                        Rachel E. Fugate
LEVINE SULLIVAN KOCH                            Florida Bar No.: 0144029
   & SCHULZ, LLP                             601 South Boulevard
1899 L Street, NW, Suite 200                P.O. Box 2602 (33601)
Washington, DC 20036                        Tampa, FL 33606
Telephone: (202) 508-1122                   Telephone: (813) 984-3060
Facsimile: (202) 861-9888                   Facsimile: (813) 984-3070
sberlin@lskslaw.com                         gthomas@tlolawfirm.com
mberry@lskslaw.com                          rfugate@tlolawfirm.com

*Attorneys for Respondents Gawker Media, LLC,*
*Nick Denton and A.J. Daulerio*

37

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the font requirements set forth

in Fla. R. App. P. 9.210.

<u>*/s/ Gregg D. Thomas*</u>
*Attorney*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 22nd day of December, I caused a true

and correct copy of this Response to be served by mail on The Honorable Pamela

A.M. Campbell, 545 First Avenue North, Room 300, St. Petersburg, FL 33701,

and via the Florida Courts' E-Filing Portal on the following counsel of record:

Alison Steele, Esq.
amnestee@aol.com
Rahdert, Steele, Reynolds
    & Driscoll, P.L.
The Alexander Building
535 Central Avenue
St. Petersburg, Florida 33701-3703
Tel: (727) 823-4191
Fax: (727) 823-6189

Charles D. Tobin, Esq.
charles.tobin@hklaw.com
Holland & Knight LLP
800 17th St., N.W., Suite 1100
Washington, D.C. 20006
Tel: (202) 955-3000
Fax: (202) 955-5564

Timothy J. Conner, Esq.
timothy.conner@hklaw.com
Holland & Knight LLP
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
Tel: (904) 353-2000
Fax: (904) 358-1872

*Attorneys for Petitioners and Amici*

Kenneth G. Turkel, Esq.
kturkel@BajoCuva.com
Shane B. Vogt, Esq.
shane.vogt@BajoCuva.com
Bajo Cuva Cohen & Turkel, P.A.
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Tel: (813) 443-2199
Fax: (813) 443-2193

Charles J. Harder, Esq.
charder@HMAfirm.com
Harder Mirell & Abrams LLP
132 S. Rodeo Drive, Suite 301
Beverly Hills, CA 90212
Tel: (424) 203-1600
Fax: (424) 203-1601

David Houston, Esq.
dhouston@houstonatlaw.com
Law Office of David Houston
432 Court Street
Reno, NV 89501
Tel: (775) 786-4188
Fax: (775) 786-5573

*Attorneys for Plaintiff/Respondent*

*/s/ Gregg D. Thomas*
*Attorney*