# EXHIBIT 4

To

PLAINTIFFS' MOTION FOR
AN AWARD OF ATTORNEYS' FEES

IN THE FLORIDA SECOND DISTRICT COURT OF APPEAL
_____

Fla. 2d DCA Case No. 2D15-5044
L.T. Case No. 12012447-CI-011
_____

TIMES PUBLISHING COMPANY,  FIRST LOOK MEDIA, INC., WFTS-TV
AND WPTV-TV, SCRIPPS MEDIA, INC., WFTX-TV, JOURNAL
BROADCAST GROUP, and THE ASSOCIATED PRESS,

Petitioners,

v.

TERRY GENE BOLLEA professionally known as HULK HOGAN, GAWKER
MEDIA, LLC aka GAWKER MEDIA; NICK DENTON and A.J. DAULERIO,

Respondents.
_____

**TERRY GENE BOLLEA'S RESPONSE TO MEDIA PARTIES' PETITION
FOR WRIT OF CERTIORARI TO REVIEW ORDER SEALING
JUDICIAL RECORDS**
_____

Kenneth G. Turkel, Esquire, and Shane B. Vogt, Esquire
Bajo Cuva Cohen & Turkel, P.A.
100 North Tampa Street, Suite 1900, Tampa, Florida 33602

David M. Caldevilla, Esquire, de la Parte & Gilbert, P.A.
P.O. Box 2350, Tampa, Florida 33601-2350

Charles J. Harder, Esquire, Harder Mirell & Abrams, LLP
1925 Century Park East, Suite 800, Los Angeles, California  90067

**COUNSEL FOR RESPONDENT TERRY GENE BOLLEA**

{BC00080061:1}

## I.      INTRODUCTION

The central issue in this proceeding is whether the media is entitled to access confidential discovery materials which the trial court has determined to be irrelevant, prejudicial and protected by constitutional privacy rights, on the eve of a trial where the widespread dissemination of such documents could taint the jury pool, simply because the Defendants below chose to dump these materials in the trial court file.  The answer is no, because the sealed discovery at issue has no bearing on the substantive issues that will be tried in this case.

Where discovery materials are concerned, the press's and general public's access is governed by a "good cause" standard, which Petitioners failed to establish.  *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310 (11th Cir. 2001).  Specifically, where "a third party seeks access to material disclosed during discovery and covered by a protective order, the constitutional right of access, like Rule 26, requires a showing of good cause by the party seeking production." *Id*.

Here, the trial court correctly balanced the competing interests involved, and made factual findings establishing good cause to seal the confidential discovery at issue.  The trial court also found that the discovery materials at issue are peripheral to the case.

The context in which the trial court made its decision is particularly important. The Defendants below tried to misuse the "transparency of the courts" as pretense to absolve themselves from what could be a very serious violation of a protective order. Facing Mr. Bollea's motion to permit discovery to determine whether the Defendants/Respondents, Gawker Media, LLC, Nick Denton and A.J. Daulerio (collectively, "Gawker Defendants"), were the source of sealed discovery leaked to *The National Enquirer*, Gawker Defendants needlessly filed and sought to unseal "confidential" and irrelevant discovery about collateral issues as a pretext to try to render the leak moot. Now, the various other media company Petitioners herein are (perhaps unwittingly) helping the Gawker Defendants execute their strategy to let the tail wag the dog, and in the process further destroy Mr. Bollea outside the courtroom by publicly reporting the details of an extortion investigation involving **other** illegally recorded videos of Mr. Bollea that have no bearing upon the salient issues in this case.

The trial court considered these facts, and after correctly and carefully balancing the privacy rights and public interests involved, sealed only irrelevant and highly confidential discovery materials which the Gawker Defendants dumped in the court file in mass in hopes that they might become public. Characterizing the sealing orders as "wholesale" and "blanket" is misleading; and seems to be exactly what Gawker Defendants wanted when they set 21 motions to determine

confidentiality for hearing at one time. Ultimately, the sealed discovery materials all relate to the same irrelevant issues, and should not be disclosed because there is no good cause to justify yet another violation of a victim's[1] privacy rights.

At its core, this case only involves the one "highlight" reel of a single illegally recorded video of Mr. Bollea naked, engaged in sexual intercourse in a private bedroom, which Gawker Defendants decided to post online. It is _not_ about an extortion investigation. It is _not_ about other illegally recorded videos, nor the contents of those videos. It is _not_ an excuse for media outlets to gain access to these irrelevant and private materials, to which they would otherwise _never_ be able to gain access.

Mr. Bollea understands and agrees that openness serves an important role in our judicial system. However, this proceeding has nothing to do with any bona fide principles of public access to the judicial process. The media parties want access to materials protected by constitutionally recognized privacy rights that have no bearing on the outcome of this case. Ultimately, Petitioners (like Gawker Defendants) are merely trying to exploit and expand well-intentioned openness laws to once again violate Mr. Bollea's privacy rights with illegally recorded video.

---

[1] Regardless of how the media and Gawker Defendants may perceive Mr. Bollea and the mistakes he made during a very difficult time in his life, the fact remains that he has now been victimized several times with illegally recorded footage.

Indeed, public access to judicial proceedings should be restricted when sought for "illegitimate purposes [such] as to promote scandal." *Rossbach v. Rundle*, 128 F.Supp.2d 1348, 1352 (S.D. Fla. 2000) (citing *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983). Courts have an obligation to insure that their records are not used to gratify private spite or promote public scandal, nor used as reservoirs of salacious facts for press consumption. *Id*.

As recognized in *Barron v. Florida Freedom Newspapers, Inc.*, public access is limited to matters inherent in the case being tried, not matters peripheral to the litigation. The trial of this case on the salient legal and factual issues will be held in the sunshine. The proceedings below have not been and will not be a "secret trial." The public will have ample opportunity to observe and learn about the facts germane to this case, and the trial court's handling of the proceedings. The public knows what has happened thus far in this case, and will know what happens at trial. Importantly, the aspects of Mr. Bollea's private life that are actually relevant at trial (such as how the sexual encounter that was depicted in the Gawker Sex Video came to occur) have not been sealed, as those issues are inherent in the proceeding. Rather, this writ proceeding is about documents relating to other recordings, other sexual encounters, and an extortion investigation, which are not inherent in the proceeding and thus remain protected by the right to privacy.

The Petitioner media companies seek to vastly expand the Sunshine laws by contending that even the most confidential, private, and scandalous discovery materials automatically become "public" as soon as one litigant decides to needlessly dump them in a court file, even when those materials are completely irrelevant to the case. This logic eviscerates the purpose and function of protective orders by allowing any unscrupulous litigant to file confidential materials and ask for a ruling, thereby rendering such materials automatically public and the order protecting them from disclosure meaningless. This logic also ignores the law, which clearly provides that just because documents are filed with the Court does not mean they are "judicial records." *Chicago Tribune Co.*, 263 F.3d 1304, 1312.

Even though the trial of this case will be highly publicized, the trial court has the authority and an affirmative obligation to protect Mr. Bollea's privacy and due process rights by preventing irrelevant discovery materials from being released to the public just before trial. As a practical matter, the Petition asks this Court to strip the trial court of this power and discretion, by using the appellate process to micromanage the imminent trial of an invasion-of-privacy lawsuit. The trial court should not be forced to revisit its orders provisionally sealing irrelevant, private and prejudicial discovery materials because the Court wants this case to be fairly tried on its merits in the courtroom, and not in the press. Florida openness laws

have never been a vehicle to allow non-party media companies to dictate trial procedures and relevancy determinations.

The media parties' petition fails to carry the burden of demonstrating that the trial court's "Amended Order on Motion to Determine Confidentiality" of November 18, 2015 (Pet. App. I)[2], which contains legal and factual findings that expressly acknowledge and more than fully satisfy the requirements of Fla. R. Jud. Admin. 2.420 and the standard set forth in *Barron v. Florida Freedom Newspapers, Inc.*, 531 So.2d 113 (Fla. 1988), is in any manner flawed.  *See* App. I, ¶¶ 6-10.  The November 18 Order reflects the trial court's careful, document-by-document *in camera* consideration, and then reconsideration, of the propriety of retaining 221 separate judicial records (that Gawker Defendants dumped in the court file in the hopes of making them "public") under seal.  Though one would never suspect this from reading the petition, 78 of these 221 records were formally unsealed as a result of the November 18 Order.  The trial court – which, of course, is most intimately familiar with all of the many proceedings occurring to date – properly elected to exercise its discretion to provisionally retain the remaining records under seal.  Since there is no indication that the trial court abused its discretion in rendering its ruling and since no exceptional circumstances exist to

---

[2]  Mr. Bollea has filed concurrently with this response an Appendix (references to which are made as "Bollea App.") and a Confidential Appendix (references to which are made as "Bollea Conf. App.")   References made to Petitioner's Appendix are made using "Pet. App."

invoke the extraordinary remedy of certiorari, this writ petition should be denied as procedurally improper on the grounds that it is not "supported by a sound factual and legal basis." *See* Fla. R. App. P. 9.100(d)(2).

The media parties' petition also ignores a second order issued by the trial court on October 28, 2015. That Order, denominated "Amended Order Permitting Limited Discovery on Potential Violation of Protective Order and Appointing Electronic Forensic Expert" (hereinafter "10/28/15 Discovery Order")[3], reaffirms that the Honorable James Case, as Special Magistrate, is to continue supervising the discovery process in the underlying action. Accordingly, at the very least, this writ petition is premature since the media parties have yet to ask the discovery magistrate to review those records to which they seek access in order to determine which, if any, should be partially or wholly unsealed.

Aside from being premature, the media companies' petition is also legally unsupported since the sealed discovery they are seeking is wholly peripheral to the underlying litigation. The subject materials have no bearing on Gawker Defendants' unauthorized exploitation of the secretly recorded sex tape that forms the gravamen of Mr. Bollea's complaint, nor on Gawker's First Amendment defense against this egregious invasion of Mr. Bollea's personal privacy. Rather, the confidential discovery at issue concerns the circumstances under which the

---

[3] A copy of the 10/28/15 Discovery Order is included in Bollea's concurrently filed Appendix (Bollea App. Tab. 1).

inflammatory and legally inadmissible content of *other* tapes were used to extort Mr. Bollea, and whether the Gawker Defendants misused limited access to the extortion investigation files in order to leak irrelevant, prejudicial discovery to the press in violation of the trial court's pre-existing protective orders. Simply stated, Mr. Bollea did not lose his privacy rights when he stopped someone from extorting him with videos that are not at issue in this case. Likewise, he did not open the floodgates for public access to confidential discovery by seeking relief for the leaking of sealed discovery (which Gawker Defendants conceded below is a "collateral" issue). Bollea App. Tab 28 (October 28 Transcript, at 5:14—18).

While such matters may have prurient and/or "inside baseball"-type appeal to the media parties who have filed this proceeding, these matters are nevertheless entitled to be treated as provisionally confidential since their disclosure is "protected by a common law or privacy right not generally inherent in the specific type of proceeding sought to be closed" within the meaning of Florida Rule of Judicial Administration 2.420(c)(9)(A)(vi). If it is finally determined that the Gawker Defendants were the source of this leak, and sanctions are imposed, the evidence upon which that decision is based would need to become public. However, the trial court's proceedings have yet to reach that stage.

The media companies' writ petition is likewise bereft of any acknowledgment that the trial court's decision to provisionally seal the subject

records is necessary in order to protect against the unfair prejudice that would arise from the disclosure of these documents at a point in time when trial is imminent. In ruling that the underlying subject matter of these sealed records is inadmissible, the trial court has already found that this unfair prejudice clearly outweighs any probative value within the meaning of Florida Evidence Code Section 90.403.

The media companies' petition also fails to acknowledge or address the trial court's finding that its provisional sealing order is required in order to protect innocent third parties from suffering substantial injury within the meaning of Fla. R. Jud. Admin. 2.420(c)(9)(A)(v).

In short, the media parties' certiorari petition is without merit, and should be dismissed or denied. However, if this Court nevertheless elects to entertain this petition, Mr. Bollea respectfully requests that this matter be remanded to the trial court for further consideration of whether there are any additional records that should be either partially or wholly unsealed, with directions for any specific factual findings this Court deems necessary.

## II.    STATEMENT OF FACTS

### A.    Introduction

Because this is the 11th appellate proceeding arising from the underlying lawsuit,[4] the members of this Court are likely familiar with the general factual background of this case.  Gawker Defendants published portions of an illegally and secretly recorded video of Mr. Bollea engaged in a sexual encounter, including explicit footage of Mr. Bollea naked, aroused, and having sexual intercourse (the "Sex Video").  *See Gawker Media, LLC v. Bollea*, 129 So.3d 1196, 1198 (Fla. 2d DCA 2014).  Mr. Bollea has sued for invasion of privacy and related claims, and Gawker Defendants' defenses center around the claim that the Sex Video was protected by the First Amendment as a "matter of public concern."  *Id*.  Each of the documents sealed by the trial court were properly sealed.  The vast majority are highly irrelevant to the lawsuit, prejudicial and likely to taint the jury pool for the upcoming trial.  Of the remainder, significantly fewer number of the documents, while potentially relevant to this lawsuit, they impact so  heavily on the privacy rights of non-parties (for example, by providing un-redacted listings of telephone numbers) that the documents should remain sealed.

---

[4] The other appellate proceedings arising from the underlying lawsuit are Case Nos. 13-1951, 13-2278, 14-1079, 14-2630, 14-3230, 14-5591, 15-1259, 15-2857, 15-4565, and 15-5035

## B.      The Extortion Attempt and Subsequent Investigation

The Gawker Defendants posted the Sex Video on October 4, 2012.  Shortly after, a California attorney, Keith Davidson, acting on behalf of an unnamed client, contacted Mr. Bollea's personal attorney, David Houston, and attempted to extort Mr. Bollea with additional DVDs containing more illegally recorded footage and audio of Mr. Bollea.  (*See* Bollea Conf. App. Tab A (Thomas Conf. Dec. ¶ 6; Exs. 38-C, 39-C, 41-C, 42-C))  It is accepted between Mr. Bollea and the Gawker Defendants that the DVD's Mr. Davidson's client possessed included footage separate and apart from that excerpted and published by Gawker Defendants.  In response to Mr. Davidson's contact, Mr. Houston and Mr. Bollea spoke with the FBI and, with their assistance, set-up a "sting" operation to catch the extortionist. (*Id*.)

After learning of these facts, the Gawker Defendants sent a Freedom of Information Act ("FOIA") request to the FBI and the Executive Office of the U.S. Attorney ("EOUSA").  Bollea App. Tab 3 (FOIA Complaint ¶ 5).  The FBI and EOUSA refused to release the records based on privacy grounds.  (*Id*. ¶ 16)  The Gawker Defendants moved to compel Mr. Bollea to provide FOIA authorizations; asking the trial court to force Mr. Bollea to make a limited waiver of his right to privacy in the materials held by the FBI and the EOUSA, because Gawker Defendants represented to the trial court that they needed the FBI's files to

determine whether Mr. Bollea knew he was being recorded or consented to it.  *Id*. ¶ 17; Bollea App. Tab 4 (Motion to Compel).  The trial court accepted this argument, and ordered Mr. Bollea to sign limited FOIA authorizations.  Bollea App. Tab 5 (Order).  Mr. Bollea signed the authorization, under the trial court's order with the strict understanding that the waiver was being provided solely for the purpose of confidential discovery for this litigation.  Subsequently, the parties executed a Stipulated Protocol memorializing the strict confidentiality protections for any FOIA materials provided by the FBI and EOUSA.  Bollea App. Tab 6 (Stipulated Protocol).

Armed with the FOIA authorizations, the Gawker Defendants sent new FOIA requests to the FBI and EOUSA.  Bollea App. Tab 3 (FOIA Complaint ¶ 18).  However, the FBI and EOUSA again refused production—this time based on the law enforcement investigative privilege.  (*Id*. ¶ 21).  Contrary to the Gawker Defendants' repeated assertions about Mr. Bollea's alleged "misrepresentations" about a pending investigation, there was in-fact an active law enforcement investigation until only very recently.  *See* Bollea App. Tab 7 (FBI's Opposition to Gawker Media, LLC's FOIA Motion for Summary Judgment).  (Indeed, the Gawker Defendants' insinuations about "misrepresentations" do not make any sense—clearly the law enforcement agencies to which they directed their FOIA requests were in a position to know whether any investigations were being

conducted.)  This ongoing investigation was the reason why the FBI and EOUSA opposed disclosure of their files under FOIA, even after receiving the FOIA authorizations.  (*Id*.)

Unrelenting, the Gawker Defendants then sued the FBI and EOUSA in federal court to obtain their files (the "FOIA Litigation").  Bollea App. Tab 3 (FOIA Complaint).  In that lawsuit, the Gawker Defendants represented to the U.S. District Court that the sole reason they needed and were entitled to the files was for discovery purposes in the state trial court case.  *See* Bollea App. Tab 3 (FOIA Complaint ¶ 4, 15, 17);  Bollea App. Tab 8 (Gawker Media LLC's FOIA Motion for Summary Judgment, p. 3) ("Gawker seeks relief in this Court to obtain documents that are critical to is defense of its First Amendment rights in the underlying case.")  The U.S. District Court ultimately ordered the FBI and EOUSA to produce documents, DVDs and audio files, pursuant to the parties' Stipulated Protocol and under the state trial court's protective order.  Bollea App. Tabs 9—12 (Orders of Judge Bucklew (FOIA litigation) on May 27, 2015, June 24, 2015, June 29, 2015, and July 2, 2015).  As of today, the Gawker Defendants have obtained all of the materials to which they are entitled in the FBI and EOUSA files.  Given the confidential information within those files, particularly private information relating to Mr. Bollea and various third parties, Mr. Bollea designated all such documents as "Confidential—Attorneys' Eyes Only" as he was permitted to do under the

Stipulation.  As of today, the trial court has yet to determine that any of the federal government's files are relevant in this case.

### C.   <u>The Leak of the Offensive Statements</u>

The Gawker Defendants' main defense to the underlying litigation is that their publication was a matter of "public concern," protected by the First Amendment.   Indeed, when this Court previously reversed the trial court's temporary injunction, this Court concluded that "[A.J. Daulerio's] written report and video excerpts are linked to a matter of public concern—Mr. Bollea's extramarital affair and the video evidence of such."  Gawker Media, 129 So.3d at 1202.  This Court noted that "Gawker Media reported on Mr. Bollea's extramarital affair [with Heather Clem] and complimentary thereto posted excerpts from the video."  *Id*.   However, these conclusions were based on the limited evidentiary record (affidavits executed without the benefit of any discovery or cross-examination) put before this Court, and subsequent discovery has refuted these arguments.

Specifically, Gawker Media's then Editor-in-Chief, and author of the original post, A.J. Daulerio ("Daulerio"), testified under oath that his post was **not** about the "affair:"

> Q   Was the news hook here with respect to this story, the Hulk Hogan sex tape story, was the news hook that Hogan was taped having sex with his best friend's wife?

A       I wouldn't say that was particularly the true news hook.

Bollea App. Tab 13 (Daulerio Trans. 195:9-13)

Instead, Daulerio revealed that this **only** purpose in posting the Sex Tape was to **expose** Mr. Bollea naked and engaged in sex to the world:

Q       What was the news hook?

A       The news hook was essentially what I stated in the headline itself which was my own personal commentary about the Hulk Hogan sex tape that was in existence and me watching it.

(*Id.*)

Daulerio's testimony and other evidence is extremely relevant given the Eleventh Circuit's ruling in *Toffoloni v. LFB Publ'g Group*, 572 F.3d 1201 (11th Cir. 2009). In the words of the Eleventh Circuit, Daulerio's open invitation to be a "voyeur" and "deviant" by watching Mr. Bollea naked and having sex was nothing more than "a morbid and sensational prying into private lives for its own sake" on an issue (uncensored video of Mr. Bollea naked and having sex) in which the public had no interest "beyond the **voyeuristic** thrill of penetrating the wall of privacy that surrounds a stranger." *Toffoloni*, 572 F.3d at 1210-11 (emphasis added). Moreover, Daulerio's testimony combined with the content of his "play-by-play" recap of the sexual encounter made it clear that Daulerio's "article" was merely incidental to the video. *Toffoloni*, 572 F.3d at 1209.

Further, discovery and continuing research by Mr. Bollea has revealed numerous admissions by the Gawker Defendants that their conduct directed toward

Mr. Bollea was improper.   Before and after Daulerio's post, Gawker Media characterized posting illegally or improperly obtained nude images of people (even celebrities) to be "wrong" and an "invasion of privacy."  For example:

- On August 8, 2012, Max Read (who subsequently became Editor-In-Chief of Gawker.com) posted a story concerning "fusking" – the practice of finding nude photos of people by exploiting the privacy settings on Photobucket.com, and then posting them on-line.  Read calls the practice "wrong, even if it isn't illegal."  Bollea App. Tab 14 (Exhibit 15 to Bollea's Motion for Punitive Damages)

- On July 16, 2014, Gawker Media posted a story condemning Tumblr for refusing to take down uncensored, illegally obtained photos of people in a public restroom, in reference to a national news story about the former police officer who obtained the photos with a hidden camera and then posted them on a porn site. Gawker Media calls this "clearly an invasion of people's privacy."  Bollea App. Tab 14 (Exhibit 24 to Bollea's Motion for Punitive Damages)

- On September 27, 2014, writing about a national news story about the recent hacking and publishing of numerous nude photos of celebrities on the Internet (known as the "Fappening"), Gawker Media acknowledges that everyone is "violated" when nude pictures of celebrities and successful people are "posted on the internet for public consumption against their will."  Bollea App. Tab 14 (Exhibit 25 to Bollea's Motion for Punitive Damages)

Bollea App. Tab 14 (Bollea's Motion for Punitive Damages)

In light of this evidence, the trial court denied the Gawker Defendants' exhaustive summary judgment motion, granted Mr. Bollea leave to assert punitive damages claims, and re-set the case for trial.  Bollea App. Tabs 14—18 (Bollea's

Motion for Punitive Damages; Gawker Media, LLC's Motion for Summary Judgment; Order Denying Gawker Media, LLC's Motion for Summary Judgment; Order Granting Bollea's Motion for Punitive Damages; Second Order Setting Jury Trial).

Contrary to the media parties' bald assertion, the materials that have been sealed had no bearing on the trial court's rulings on the summary judgment motions. This fact is self-evident from the operative pleadings and summary judgment filings and arguments – which relate exclusively to the single "highlight reel" Gawker Defendants posted.

The Gawker Defendants know, then, that in March 2016, when the underlying litigation finally goes to trial, the jury will be asked to apply the *Toffoloni* standard and decide, in accordance with community standards, whether the voyeuristic thrill of seeing the illegally obtained, uncensored images and audio that the Gawker Defendants posted of Mr. Bollea naked and having sex constitutes a matter of legitimate public concern. The Gawker Defendants apparently believe that they cannot win this argument.

Given this, it is not surprising that from the moment the Gawker Defendants learned of the extortion attempt and the possibility that Mr. Bollea may have used offensive language on one of the surreptitiously recorded videos, they have tried to inject it into the litigation. The Gawker Defendants questioned a number of

witnesses about the issue at depositions (Bollea Conf. App. Tabs B and C (Deposition Testimonies of Tony Burton and Richard Pierce))  and then filed a motion in limine on the issue, arguing that the offensive content was Mr. Bollea's "motivation" for filing suit, and not because the Gawker Defendants obtained and published a unlawful video of Mr. Bollea, recorded and published without his knowledge or consent, that depicted him engaged in sexual activity.  Bollea Conf. App. Tab D (Motion in Limine).  Both the trial court and Discovery Magistrate Case repeatedly ruled that the offensive language and other videos and materials are irrelevant. Bollea Conf. App. Tabs B and C  (Deposition Testimonies of Tony Burton and Richard Pierce);  Bollea App. Tab 19 (July 1, 2015, Transcript at 212:1-217:8).

Specifically, the trial court ruled that the Gawker Defendants could not introduce evidence at trial[5] of Mr. Bollea using offensive language in **another** surreptitiously recorded video (notably, **not** the Sex Video received, excerpted and published by the Gawker Defendants).[6]  Bollea App. Tab 19 (July 1 Transcript at 216:25–217:08)  This excluded evidence included a purported "transcript" of the

---

[5]  This evidence was properly excluded in light of extensive Florida law that such evidence is inadmissible, and in light of the fact that it did **not** appear in the illegally recorded Sex Video Gawker Defendants received and published.

[6]  During discovery in this case, documents were discovered purporting to show that in **another** recording (i.e., **not** the Sex Video), Mr. Bollea purportedly used racially offensive language.

contents of this **other** illegal recording, which was prepared by the California lawyer orchestrating an extortion attempt against Mr. Bollea.  Bollea Conf. App. Tab D (Defendant's Motion in Limine).  This "transcript," designated as "Highly-Confidential-Attorney's Eyes Only," was filed under seal by the Gawker Defendants in June 2015.  Bollea Conf. App. Tab D (Exhibit 19 to Defendant's Motion).

The Gawker Defendants were then in a tough position: facing a newly-set jury trial in Pinellas County, which they apparently wish to avoid at all costs,[7] and having just lost their "ace in the hole"—the offensive language card.  Unable to use it in court, the Gawker Defendants had an incentive to use it outside the courtroom to taint the jury pool and publicly destroy Mr. Bollea.

The full context of Mr. Bollea's repeated victimization with illegally recorded video and audio is critically important to understanding why the trial court correctly sealed discovery materials.  Mr. Bollea's lawsuit seeks to protect privacy rights and poses a very serious threat to Gawker and their business model. Mr. Bollea seeks to draw a very clear line that even the press cannot cross – the threshold of a private bedroom.  Gawker Defendants don't want that line to be drawn, so they are using any means necessary to accomplish their ultimate goal of

---

[7] Peter Sterne, *Gawker President: 'More Likely Than Not' We'll Lose Hogan Case*, Capital New York (Oct. 27, 2015) (at*http://www.capitalnewyork.com/article/media/2015/10/8580814/gawker-president-more-likely-not-well-lose-hogan-case*).

turning walls into windows.  In this instance, Gawker Defendants tried to use completely irrelevant, inflammatory and prejudicial materials to try to publicly destroy Mr. Bollea heading into trial.  These materials emanated from an extortion attempt using the fruits of the original criminal acts of recording Mr. Bollea naked, having sex and engaged in private conversations in a bedroom.

Gawker Defendants have repeatedly admitted their ulterior motives.  At a hearing held on July 2, 2015 in the FOIA litigation, the Gawker Defendants' counsel advised the federal court that although the Gawker Defendants originally sought, and represented that they were seeking, the government's records for the sole purpose of discovery in the state trial court litigation, that the Gawker Defendants actually wanted to **publish stories** about the records.  Bollea. App. Tab 20 (July 2, 2015 Transcript at 71:7–13).  Eight days later, on July 10, 2015, Nick Denton (Gawker's founder and CEO) posted a story titled "Hulk v. Gawker, the story so far" in which he stated that Mr. Bollea's "real secret" was within the FOIA files, and would be revealed in the instant lawsuit's "third act."  Nick Denton, *Hulk v. Gawker, The Story So Far* (Jul. 10, 2015) at *http://nick.kinja.com/hulk-v-gawker-the-story-so-far-1716479711*. Further, Gawker Defendants' counsel made comments accusing Mr. Bollea's "team" of colluding with the FBI to conceal evidence.  Bollea App. Tab 20 (July 2, 2015 Transcript at 57:16—58:03).  Mr. Bollea therefore had legitimate concern that the sealed, irrelevant and highly-

prejudicial discovery which the trial court excluded from trial was in danger of becoming public. This prompted Mr. Bollea, on July 13, 2015, to file his Emergency Motion for Clarification, to try to prevent this from happening (that motion resulting in an order which the Gawker Defendants have sought to reverse in a yet another pending separate writ proceeding: Case No. 2D15-4565).

Unfortunately, Mr. Bollea's actions were not enough. Soon thereafter, the highly-prejudicial and irrelevant information concerning offensive language, contained within the sealed transcript was reported on in the *National Enquirer* and *Radar Online*. Dylan Howard & Lachlan Cartwright, *World Exclusive: Hulk's N-Word Racist Rants Caught on Tape- Foul, Disgusting Tirade Leaks*, National Enquirer (Jul. 24, 2015) at *http://www.nationalenquirer.com/celebrity/hulk-hogan-racist-scandal-wrestling-caught-on-tape-saying-n-word-daughter-brooke-exclusive*. The *National Enquirer*/*Radar Online* story contained quotes they stated were obtained from a sealed transcript in the trial court case. *Id.* ("Radar and The ENQUIRER has [sic] learned explosive **transcripts** of the loathsome conversation have been filed in a Florida court, **under seal**, in a bid to prevent them from being publicly released.") (emphasis added). About 14 minutes later, Daulerio, tweeted a link to the story and tagged Mr. Bollea's Twitter account followed by "xoxoxoxo" (understood to be common parlance for "hugs and kisses"). Bollea App. Tab 22 (Plaintiff's Reply and Exhibit A to same). At that

time, Mr. Daulerio (Gawker's former Editor-in-Chief, who posted the Sex Video) no longer worked for "Gawker."[8] Bollea App. Tab 13 (Deposition of AJ DAulerio at 25:6—9). Rather, Mr. Daulerio was operating his own, new celebrity gossip website, Ratter.com, which was funded with a $500,000 investment by Gawker Media, LLC. Jeremy Barr, *A.J. Daulerio's Ratter Has Raised More than a Million*, Capital New York (Jan. 13, 2015) at http://www.capitalnewyork.com/article/media/2015/01/8559991/aj-daulerios-ratter-has-raised-more-million.

On July 29, 2015, based on this and other significant circumstantial evidence, Mr. Bollea filed his Emergency Motion for Leave to Conduct Discovery Concerning Potential Violation of Protective Order (the subject of a separate writ proceeding before this Court). Bollea App. Tab 23 (Plaintiff's Motion). The relief Mr. Bollea sought included discovery and requiring the Gawker Defendants to turn over transcripts and audio files to Magistrate Case to prevent further dissemination. *Id*. At a hearing on July 30, 2015, the trial court heard argument from the parties and took the motion under advisement; also permitting the Gawker Defendants to file a formal written opposition. Pet. App. P. On August 11, 2015, the Gawker Defendants filed their opposition. Pet. App. R. On October 1, 2015, the trial court heard additional argument on Mr. Bollea's emergency motion. Notably, the

---

[8] For this reason, the story's author's tweet that "Gawker" wasn't the source of the leak is meaningless.

Gawker Defendants never filed any affidavits or sworn testimony denying any involvement in the leak.[9]

On October 28, 2015, after the additional hearing, the trial court entered the Order. The trial court based its decision on several factual findings, which include: the timeline of events between June 26, 2015[10] and August 6, 2015; the events[11] surrounding the Gawker Defendants at the time; the **"motive and opportunity for leaking said irrelevant and inflammatory information which was excluded from this trial by court order;"** and misrepresentations[12] that the Gawker

---

[9] The Gawker Defendants' statements regarding the leak have consisted entirely of careful misdirection. Rather than swearing under oath that they did not leak the sealed transcripts, the Gawker Defendants have instead tried to change the subject, casting aspersions on Mr. Bollea for suggesting that they may have done so. Further, the Gawker Defendants' counsel have relied on their status as officers of the court, saying of course they would not leak anything that was under seal. With all due respect to the Gawker Defendants' honorable counsel, none of this is competent evidence, it would have been appropriate for the Gawker Defendants to put such competent evidence into the record, and their failure to do so is telling.

[10] This is the date the Gawker Defendants obtained FOIA records from the federal government. Bollea App. Tab 24 (Letter from K. Stegeby to G. Thomas) (The cover letter received by the Gawker Defendants from the Department of Justice includes a typographical error in the date—it is uncontested that the documents were produced on June 26, 2015).

[11] The Gawker Media faced substantial adverse publicity and an exodus of key employees, writers, and editors after gawker.com published a controversial piece claiming that a married media executive had arranged a sexual encounter with a gay porn star and escort, a story which Gawker Media had to quickly remove from the site after the firestorm of criticism. Bollea App. Tab 23 (Plaintiff's Motion and Exhibits J and L to same).

[12] The Gawker Defendants misrepresented to the trial court that they needed these materials because they would show that Mr. Bollea consented to being recorded.

Defendants made in order to convince the trial court to allow them access to the FOIA files protected by Mr. Bollea's privacy interests.

Facing now not only the prospect of losing this high-profile litigation but also discovery to confirm whether they were the source of the leak, the Gawker Defendants threw another "Hail Mary" pass. They sought to make public the very records leaked to the press—after the fact of their leaking. The Gawker Defendants set 21 motions to determine confidentiality for hearing, while duplicitously arguing that Mr. Bollea had waived the confidentiality of the documents as a result of his own public statements and that the production of documents by the federal government in response to Gawker's FOIA request deemed such a designation futile. Bollea App. Tab 25 (Notice of Hearing). The motions, required to be filed under Fl. R. Jud. Admin. 2.420 whenever a filing contains confidential information, covered a multitude of confidential information relating not only to the offensive language and the FBI investigations, both of which remained highly prejudicial to instant litigation and irrelevant to same (particularly because, as noted, both concerned surreptitiously recorded footage of Mr. Bollea **other than** what is at issue in the lower court), but also to documents concerning Mr. Bollea's private life, separate and irrelevant to this lawsuit,

---

Bollea App. Tab 26 Transcript (January 31, 2014 at 4:21—6:09). Now, their use is the offensive language and expressed desire to publish stories about them.

including, for example, his cell phone records, and documents that affect the privacy of third persons, not parties to the instant lawsuit.[13]

The trial court heard the confidentiality motions on October 1, 2015. (Bollea App. Tab 2 (Transcript, at 49:9)), where counsel for the Petitioner media companies were heard by the trial court. Petitioners focused their argument on the documents released pursuant to the FOIA request (*Id.* at 51:6-8). The trial court also heard argument from the Gawker Defendants and from Mr. Bollea, and considered the applicable legal standards. (*Id.* at 82—86). The trial court reviewed the relevant documents *in camera*, and then, motion by motion, heard argument from the parties, and made a ruling based on the legal authorities. (*Id.* at 87—111). The trial court's Order, enacting those rulings, was entered on October 27, 2015. Pet. App. G.

On November 6, 2015, Mr. Bollea filed his Stipulation and Motion to Amend/Modify the October 27, 2015 Order. Pet. App. H. In an effort to restrain the already-soaring legal fees in this litigation and prevent yet another appeal from the Gawker Defendants,[14] Mr. Bollea's Stipulation permitted the unsealing of various documents that Mr. Bollea believed could properly be made public without

---

[13] For example, the confidential documents contain the telephone numbers and contact details for various high profile individuals, as well as concerning the private and sex lives of persons not parties to the lawsuit.

[14] Indeed, while the current Petition was filed by the media parties, the Gawker Defendants had threatened to file the same.

prejudicing the trial, despite the fact that the majority of the documents remained highly irrelevant. Mr. Bollea's Stipulation however requested that various confidential documents remained sealed, including documents relating to the offensive language, non-public documents released by the FBI and EOUSA, documents impacting the privacy rights of non-parties. The trial court entered the Amended Order based on Mr. Bollea's Stipulation on November 18, 2015, unsealing almost 80 of approximately 225 documents previously sealed in the trial court's October 27, 2015 Order. Pet. App. I.

## III.   THERE IS NO JURISDICTION TO CONSIDER THIS PETITION

### A.   Principles of Certiorari Jurisdiction.

The "exceptional circumstances" required to invoke the extraordinary remedy of certiorari are simply not present in this petition. *Reeves v. Fleetwood Homes of Fla., Inc.,* 889 So.2d 812, 822 (Fla. 2004); *Martin-Johnson v. Savage*, 509 So.2d 1097, 1098 (Fla.1987); *Brooks v. Owens*, 97 So.2d 693, 695 (Fla. 1957). Petitioners effectively seek "piecemeal review" of a provisional court order, which will serve only to "impede the orderly administration of justice and serve only to delay and harass." *Reeves*, 889 So.2d at 822; *Jaye v. Royal Saxon, Inc.*, 720 So.2d 214, 215 (Fla. 1988).

A non-final order for which no appeal is provided by Florida Rule of Appellate Procedure 9.130 may be reviewable by petition for a writ of certiorari,

"but only in very limited circumstances."  To invoke this limited and exceptional jurisdiction under Art V, § 4(b)(3) of the Florida Constitution and Rule 9.130, the petitioning party must demonstrate that the otherwise non-appealable non-final order: (1) constitutes a departure from the essential requirements of the law; (2) results in material injury for the remainder of the case; and (3) cannot be corrected on post-judgment appeal.  *Reeves*, 889 So.2d at 822.  As Florida's appellate rules committee commented, in describing the interaction between Fla. R. App. P. 9.030 and 9.130, the certiorari writ "provides a remedy only if the petitioner meets the heavy burden of showing that a clear departure from the essential requirements of law has resulted in otherwise irreparable harm. . . .  It is anticipated that because the most urgent interlocutory orders are appealable under this rule, there will be very few cases in which common law certiorari will provide relief."   Fla. R. App. P. 9.130 (Committee Notes, 1977 Amendment).

These same exceptional circumstance requirements apply equally to cases brought under Fla. R. App. P. 9.100(d), and the media companies' petition does not assert otherwise.

Should this Court nevertheless conclude that the media parties' desired review of the trial court's provisional sealing order is procedurally appropriate, their petition nevertheless fails to satisfy the fundamental requirements of writ review.  A finding that the petitioning party has "suffered an irreparable harm that

cannot be remedied on direct appeal" is a "condition precedent to invoking a district court's certiorari jurisdiction." *Board of Trustees of Internal Improvement Trust Fund v. American Educational Enterprises, LLC*, 99 So.3d 450, 454-455 (Fla. 2012), *quoting Jaye*, 920 So.2d at 215; and also *citing Williams v. Oken*, 62 So.3d 1129, 1132 (Fla. 2011) ("The last two elements are jurisdictional and must be analyzed before the court may even consider the first element"). *Martin-Johnson*, 509 So.2d at 1099; *McDonald v. Johnson*, 83 So.3d 889, 891 (Fla. 2d DCA 2012) ("This court considers the second and third prongs first because they are used to determine jurisdiction").

"If the party seeking review does not demonstrate that it will suffer material injury of an irreparable nature, then an appellate court may not grant certiorari relief from a non-appealable non-final order." *Board of Trustees*, 99 So.3d 455, *citing Capital One, N.A. v. Forbes*, 34 So.3d 209, 212 (Fla. 2d DCA 2010). "Similarly, if the alleged harm can be remedied on appeal, the harm is not considered irreparable, and thus certiorari relief is not merited." *Board of Trustees*, 99 So.3d at 455, *citing Pepsi Bottling Grp., Inc. v. Underwood*, 8 So.3d 1260, 1262 (Fla. 1st DCA 2009).

Even when certiorari is properly invoked, "time and again Florida courts have reiterated that certiorari relief is an 'extremely rare' remedy that will be

provided in 'very few cases.'"   *Board of Trustees*, 90 So.3d at 455 (citing numerous appellate decisions).

In this case, the alleged deprivation of "public access" about which the media companies complain is purely temporary and provisional. The trial court's November 18 Order makes clear that the limited number of records that have yet to be unsealed shall remain sealed only "until further order of this Court." App. I, ¶ 10(B), (D) and (F). Thus, once the prejudice that will flow to Mr. Bollea from the public dissemination of these inflammatory and inadmissible records has dissipated, and no longer imperils his right to a fair trial, Petitioners are perfectly free to re-apply to the trial court to have these remaining records unsealed. The danger posed to Mr. Bollea's fair trial rights is neither conjectural nor insubstantial. The local print and broadcast media have been extensively covereing the trial court proceedings and presumable will continue to do so as trial approaches.Indeed, the media companies' own petition notes that this litigation has "garnered substantial public attention in the United States and worldwide over the past three years" (Petition at 5) and "generated substantial public interest and news coverage of this closely-watched litigation" (Petition at 23). Accordingly, the danger inherent in unsealing records involving peripheral, but highly inflammatory evidence that the trial court has ruled inadmissible, will inevitably result in prejudicial pretrial publicity that runs the serious and immediate risk of tainting the

pool of potential jurors, as well as exposing those jurors who are ultimately selected to evidence that they are obligated to refrain from considering.

The records that remain sealed contain precisely the kind of evidence whose exclusion is warranted under Fla. Evid. Code § 90.403 and by abundant case law. *See, e.g., MCI Express, Inc. v. Ford Motor Co.* 932 So.2d 795, 801-02 (Fla.3d DCA 2001) (trial court committed reversible error when it did not exclude testimony that executive of plaintiff used derogatory language about Cubans); *Simmons v. Baptist Hosp. of Miami, Inc.,* 454 So.2d 681, 682 (Fla. 3d DCA 1984) (same; "We think these unfair character assassinations could have done nothing but inflame the jury against these witnesses, who were so essential to the plaintiff's case, and in so doing, denied the plaintiff the substance of a fair trial below"); *State v. Gaiter,* 616 So.2d 1132, 1133 (Fla. 3d DCA 1993) (trial court redacted racial slurs even though probative).

A mere showing of legal error is insufficient to support relief because, as shown, review is limited to trial court orders which depart from the essential requirements of law. This standard is limited to errors which are "equally fundamental" as jurisdictional errors. *Chicken'N'Things v. Murray*, 329 So.2d 302, 304 (Fla. 1976). "An error must be so flagrant and of such magnitude that a party has been effectively denied his day in court before our certiorari jurisdiction will be invoked. Even though a nonfundamental error should cause reversal in the

circuit court it will not prompt our certiorari jurisdiction." *City of Winter Park v. Jones*, 392 So.2d 568, 571 (Fla. 5th DCA 1980).

When analyzing fundamental error in common law certiorari proceedings such as this, "findings of fact in the lower court are ordinarily conclusive." *Chicken'N'Things*, 329 So.2d at 304. "The authorities make it clear that a District Court of Appeal may not on certiorari sought to a circuit court in the exercise of its appellate jurisdiction reevaluate or weigh the evidence." *Ford Motor Co. v. Edwards*, 363 So.2d 867, 869 (Fla. 1st DCA 1978) cost shifting order in discovery dispute which comprehensively balanced the interests of the parties could not be reviewed on certiorari). In an appeal, a trial judge's findings of fact are insulated against attack to a significant extent, but they are insulated to an even greater extent in a certiorari proceeding. *Chicken'N'Things*, 329 So.2d at 305. So long as there is "any evidence at all" to support the trial court's factual determinations, they may not be reviewed, even for sufficiency of the evidence." *Id.* In the case of the challenged November 18th Order, it is clear that the trial court understood and correctly applied the governing law (App. I, ¶ 6) to the facts which it explicitly found – *i.e.*, "[T]he Court find that the information being sealed is CONFIDENTIAL on the grounds that that confidential is required to: avoid substantial injury to innocent third parties; avoid substantial injury to a party by disclosure of matters protected by a common law or privacy right not generally

inherent in this proceeding; and, to comply with the established public policy set forth in the Florida and United States constitution, statutes, rules and case law" (App. I, ¶ 9).

### B. Independently, Petitioners Have Failed To Establish Irreparable Harm That Cannot Be Remedied On Appeal.

Assuming arguendo that certiorari review is appropriate, the Petitioner media companies fail to establish that – in the face of an imminent trial and the potential prejudice to Mr. Bollea's fair trial rights – any of them will suffer irreparable harm by the trial court's order temporarily and provisionally sealing a limited number of records whose underlying content has already been found to be inadmissible.

The media companies' petition correctly notes that "the case has garnered substantial public attention in the United States and worldwide over the past three years" and "also generated substantial public interest and news coverage of this closely watched litigation" (Petition at 5 and 23). Importantly, the public interest in this lawsuit centers upon the First Amendment implications it may have – not offensive language or extortion investigations.

Petitioners blithely ignore the impact that such saturation coverage, with its attendant prejudicial pretrial publicity, can have upon the fair trial rights of Mr. Bollea. Indeed, the only party who will suffer irreparable harm from the pretrial release of the records that the trial court has sealed is Mr. Bollea himself. Weighed

against this clear and present danger is an interim order that only temporarily seals a limited number of judicial records on matters that are wholly peripheral to the invasion of privacy claim that lies at the heart of Mr. Bollea's forthcoming trial.

## IV.  IF THE MERITS ARE REACHED, THE WRIT PETITION SHOULD STILL BE DENIED

### A.  The Writ Petition Is Premature Since the Media Parties Have Failed To Present Their Challenge To The Sealing Of Judicial Records to the Special Magistrate.

Since 2013, the Honorable James Case has served continuously as the Special Magistrate responsible for handling all discovery-related proceedings. Bollea. App. Tab 27 (Order).   That role was most recently reaffirmed in the 10/28/15 Discovery Order.  That Order provides that Judge Case "shall continue to serve as Special Magistrate, and shall supervise the electronic discovery process, written discovery, depositions and any Court-permitted access to audio and video recordings ordered herein."  *See* Bollea App. A, at 6.

A significant portion of the records whose sealing is being challenged by the Petitioner media companies consists of documents whose disposition is clearly subject to Special Magistrate Judge Case's continuing jurisdiction.  *See, e.g.,* Petition at 23-24 ("adjudicating various discovery motions, motions for protective orders" and "granting Bollea's motion to have a court-appointed forensic expert conduct electronic discovery in pursuit of an alleged leak that defied the court's protective order").  Thus, it is obvious that the media companies' first resort should

have been to present their arguments for unsealing to the judicial officer responsible for these matters.  Since that did not happen, the media companies' certiorari petition to this Court is premature and should be dismissed.

**B.    The Sealed Materials Are Confidential Discovery That Is Both Private And Peripheral To The Underlying Litigation.**

All parties and the trial court acknowledge and accept the principles outlined by the Florida Supreme Court in *Barron v. Florida Freedom Newspapers, Inc.*, 531 So.2d 113, 118 (Fla. 1988).  *See* App. I, ¶¶ 6 and 9.  Those principles have been codified in Fla. R. Jud. Admin. 2.420.  However, the media companies ignore the *Barron* Court's cautionary note that "under appropriate circumstances, the constitutional right of privacy established in Florida by the adoption of article I, section 23, could form a constitutional basis for closure [sealing]."  *Barron,* 531 So.2d at 118.  In this case, Mr. Bollea's constitutional right of privacy is both clearly implicated and clearly endangered by the media companies' attempt to unseal the subject discovery materials.  Equally important, *Barron* holds that material which is of only peripheral relevance may be appropriately sealed.  *Id.* (protecting "matters . . . not generally inherent in the specific type of civil proceeding sought to be closed").  In the marital dissolution proceeding that was at issue in *Barron*, the "undisclosed matter primarily concerns medical reports regarding one party's physical condition." *Id.* at 119.  But the reason why such ordinarily private information was ordered disclosed was because the Supreme

Court found such reports to be "no longer protected when the medical condition becomes **an integral part of the civil proceeding**, particularly when the condition is asserted as an issue by the party seeking closure.  The sealed findings of fact here clearly establish that the medical records were **an integral part of this case**." *Id.* (emphasis added).  As the *Barron* Court further explained: "In dissolution proceedings, it is not unusual for a party's medical condition to be relevant in determining appropriate alimony, child support, or property disposition. Accordingly, we conclude that the medical information is **an inherent part of these proceedings** and cannot be utilized as a proper basis for closure."  *Id.* (emphasis added).

In this case, the media companies' petition identifies not a single document or other record that that is either "inherent" in Mr. Bollea's invasion-of-privacy lawsuit or "integral" to its resolution.  Instead, the media companies appear primarily interested only in irrelevant and inadmissible salacious materials that will appeal to the prurient interests of their readers and viewers – materials they themselves characterize as "tawdry."  Petition at 27.  "Courts have long declined to allow public access simply to cater "to a morbid craving for that which is sensational and impure."  *In re Caswell*, 29 A. 259, 259 (R.I. 1893).  Indeed, the Eleventh Circuit concluded that the public has no interest in "a morbid and sensational prying into private lives for its own sake," nor in the mere "voyeuristic

thrill of penetrating the wall of privacy that surrounds a stranger." *Toffoloni*, 572 F.3d at 1210-11.  And this is still the law today.

Notably, the "right to inspect and copy judicial records is not absolute, however, and a judge's exercise of discretion in deciding whether to release judicial records should be informed by a 'sensitive appreciation of the circumstances that led to… [the] production [of the particular document in question].'" *Chicago Tribune*, 263 F.3d at 1311 (citing *Nixon v. Warner Comm. Inc.*, 435 U.S. 589, 598 (1978)).  This requires a balancing of competing interests involved, within the context of how the discovery at issue was obtained and its role in the case.

"Simply stated, the purpose of discovery is to resolve legal disputes between the parties, not to provide newsworthy material." *Id*. at 1316.  Nevertheless, the media companies seek access to confidential discovery involving the investigation surrounding Mr. Bollea's attempts to stop third parties from extorting him using illegally and secretly recorded footage of him naked and having sex.  *See* Petition at 27; App. F at 73-75.   Those investigate efforts are clearly private under FOIA and are entirely peripheral to the issues at trial – the propriety, and damages suffered by Mr. Bollea as a consequence, of Gawker's unauthorized, worldwide dissemination of a surreptitiously recorded sex tape.  The media companies cannot

get access to these investigative files under FOIA because Mr. Bollea has continued privacy rights in their contents.

The media companies also seek to unseal records concerning the trial court's denial of Gawker Defendants' summary judgment motion.  However, such a ruling merely postpones a final determination of substantive legal rights; as such, the public interest in access "is not as pressing."  *United States v. Amodeo*, 71 F.3d 1048, 1049 (2d Cir. 1995), *citing In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1342 n.3 (D.C. Cir. 1985) (Wright, J., concurring in part and dissenting in part); *see also, Chicago Tribune*, 263 F.3d 1304, 1312-13 (documents filed in connection with summary judgment motions must still be examined for disclosure based on the good cause balancing test). As for records that are merely "passed between the parties in discovery," there is no presumption of access. *Amodeo*, 71 F.3d at 1050; *Chicago Tribune*, 263 F.3d 1304, 1310.  Likewise, "documents having no relevance to the adjudication are not subject to a presumptive right of access even though they have been filed with a substantive motion." *Luzzi v. ATP Tour, Inc.*, 2011 WL 2693542, *2 (M.D. Fla. 2011).

It bears emphasis that this is **not** a proceeding to determine whether or not a particular record should be sealed *ab initio*.  "The Florida Supreme Court has recognized that seeking to open records that have already been closed by a court is a substantially different task than seeking to close records in the first place."

*Carter v. Conde Nast Publications*, 983 So.2d 23, 25 (Fla. 5th DCA 2008), *reh'g denied, citing Times Publishing Co. v. Russell*, 615 So.2d 158, 159 (Fla. 1993). Once entered, sealing orders such as the November 18 Order, carry with them a "presumption of correctness." *Carter*, 983 So.2d at 26, *citing Scott v. Nelson*, 697 So.2d 207, 209 (Fla. 1st DCA 1997). Consequently, it is the media companies who bear the burden of demonstrating that each record[15] they seek to unseal is neither private nor peripheral to the underlying litigation. "[W]hen records of court proceedings have been properly sealed the party seeking to unseal the records has the burden to establish good cause." *Carter*, 983 So.2d at 25, *citing Russell v. Times Publishing Co.*, 392 So.2d 808, 809 (Fla. 5th DCA 1992). Since they have failed to meet that burden, Petitioner's certiorari petition must be denied. This holds particularly true in situations involving confidential discovery subject to protective orders. *Chicago Tribune*, 263 F.3d 1304, 1310.

---

[15] In this regard, there is an important distinction between "material filed with discovery motions" that is *not* "subject to the common-law right of access" and "discovery material filed in connection with pretrial motions that require judicial resolution of the merits." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*. 263 F.3d 1304, 1312 (11th Cir. 2001). Needless to say, the media parties draw no such distinction in their blunderbuss "unsealing" motion.

**C.   Unsealing These Judicial Records Prior To The Conclusion Of Mr. Bollea's Imminent Trial Would Jeopardize His Fair Trial Rights Since They Contain Material That The Trial Court Has Found Legally Inadmissible.**

The U.S. Supreme Court has long recognized that the mere fact a document may qualify as a "judicial record" does not mean that access to it cannot be restricted.   "[I]t is uncontested . . . that the right to inspect and copy judicial records is not absolute.  Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Communications*, 435 U.S. 589, 602 (1978).  The Court in *Nixon* identified as examples of properly protectable records those that might be "used to gratify private spite or promote public scandal" as well as those which might "serve as reservoirs of libelous statements for press consumption." *Id.* at 598. *See also Rossbach v. Rundle,* 128 F.Supp.2d 1348, 1352 (S.D. Fla. 2000), *citing Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983) (access restrictions warranted where judicial records may be used for "illegitimate purposes [such] as to promote scandal"); *Amodeo*, 71 F.3d at 1048-1049 ("Unlimited access to every item turned up in the course of litigation would be unthinkable.  Reputations would be impaired, personal relationships ruined, and businesses destroyed."); *Rossbach*, 128 F.Supp.2d at 1352 ("it is appropriate to seal certain records when those particular records contain highly sensitive and potentially embarrassing personal information about individuals").  All of these

dangers are manifest in the so-called "judicial records" that the media companies now seek to unseal.

Under Article I, § 9 of the Florida Constitution, all civil litigants have a due process right to a fair trial. *See, e.g.*, *Engel v. Liggett Group, Inc.*, 946 So.2d 1246, 1271 (Fla. 2006). If granted, the media companies' petition threatens to effectively undermine that constitutional guarantee. "When the . . . right to receive a fair trial conflicts with the media's statutory right of access, it is the media's right to access which must yield." *WESH Television, Inc. v. Freeman*, 691 So.2d 532, 534 (Fla. 5th DCA 1997); *citing Palm Beach Newspapers, Inc. v. Burk*, 504 So.2d 378, 380 (Fla.), *cert. denied*, 484 U.S. 954 (1987). It is well established that access to court records can be limited – whether temporarily or permanently – "to minimize the danger of an unfair trial by adverse publicity." *In re Nat'l Broadcasting Co.*, 653 F.2d 609, 613 (D.C. Cir. 1981).

In the 10/28/15 Discovery Order (Bollea App. Tab. 1), the trial court reiterated its earlier finding that the media leaks currently being investigated relate to "irrelevant and inflammatory information which was excluded from this trial by court order." *See* Bollea App. Tab. 1, ¶ 1(e); Bollea App. Tab. 19 (July 1 Transcript at 216:25—217:08). Accordingly, a significant portion of the judicial records sought by the media companies contain information that has already been judicially determined to be either wholly irrelevant or whose probative value is

outweighed by its unfair prejudice under Section 90.403. Thus, not only are these sealed records not an "inherent" part of the forthcoming invasion-of-privacy trial or "integral" to its resolution, they are affirmatively *inadmissible*. The only purpose to be served by unsealing these records at a point in time before trial commences is to taint the potential pool of jurors who may be called upon to adjudicate this dispute by exposing them to information that they are forbidden from considering. Not only would the unsealing of these records render it exceedingly more difficult to select an unbiased jury, but the presence of such records and media reports about their contents run the real risk of contaminating the unsequestered panel of jurors ultimately chosen to hear this case.

Rule Regulating the Florida Bar 4-3.6 is the ethical rule governing trial publicity, and it prohibits a lawyer from counseling or assisting "another person" (such the media) to make an "extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding due to its creation of an imminent and substantial detrimental effect on that proceeding." Publicizing information that the trial court has already adjudicated to be inadmissible is precisely the kind of material prejudice that is substantially likely to have an imminent and substantial detrimental effect upon Mr. Bollea's forthcoming trial.

In this regard, the Comment that accompanied the adoption of Rule 4-3.6 is prescient: "Preserving the right to a fair trial necessarily entails some curtailment of the information that may be disseminated about a party prior to trial, particularly where trial by jury is involved.  If there were no such limits, the result would be the practical nullification of the protective effect of the rules of forensic decorum and the exclusionary rules of evidence."  In this case, the Petitioner media companies are embarking on a course to nullify Mr. Bollea's right to a fair trial.

>    **D.    The Trial Court's Provisional Sealing Order Is Necessary To Protect Innocent Third Parties.**

The November 18 Order provisionally sealing a limited category of documents was further supported by the trial court's finding that confidentiality is required to "avoid substantial injury to innocent third parties."  App. I, ¶ 9.  That finding was recently bolstered by a recent federal court order in connection with related Freedom of Information Act litigation.  In that case, U.S. District Judge Susan Bucklew rejected Gawker's request to unredact the names of ten individuals from the FBI's production on the grounds that those persons "have not been identified in public filings in this Court and have not otherwise publicly identified themselves as being involved in the investigations.  The ten individuals maintain a privacy interest that is not outweighed by the public interest in disclosure." "Order" in Case No. 8:15-cv-1201-T-24EAJ, filed December 14, 2015 (the "FOIA

Order").[16]   These same third-party privacy interests support the state trial court's orders under review.[17]

### E.   If the Sealing Orders Are Erroneous, They Should Only Be Quashed Without Prejudice.

If this Court concludes that the trial court committed reversible error, Mr. Bollea respectfully requests that the orders under review be quashed without prejudice to the trial court conducting further proceedings.  *Media General Operations, Inc. v. State*, 933 So.2d 1199, 1201 (Fla. 2d DCA 2006).  Moreover, in the interests of due process, judicial economy and the parties' respective rights and interests in preparing for the impending trial, Mr. Bollea requests that any such further proceedings this Court deems necessary be stayed until after the trial is completed.  This effectively and fairly balances the rights of the litigants and those of the press and public.

### V.   CONCLUSION

Mr. Bollea has fought vigilantly over the past three years to protect his privacy rights and to stop people from exploiting them.  The press should not be permitted to thwart Mr. Bollea's efforts to stop people from victimizing him with illegally recorded video, by using "public access" as a pretext to see confidential,

---

[16] A copy of the FOIA Order is included as Exhibit "B" to Bollea's concurrently filed Respondent's Appendix.

[17]   Imperiling the privacy rights of third parties is a well-recognized ground for denying a motion to unseal documents.  *See, e.g., Luzzi, supra.*

irrelevant discovery.  There is no good cause to violate Mr. Bollea's privacy rights again, nor to unseal properly protected discovery that has no bearing on the resolution of this lawsuit on its merits.

Petitioners have demonstrated no basis to invoke certiorari jurisdiction. They seek relief from an interim ruling which merely took temporary steps, explicitly subject to further modification, to ensure that certain discovery which contains private, sensitive and currently inadmissible matters be maintained as confidential.  This ruling does not depart the essential requirements of law.  The "exceptional circumstances" necessary to invoke the extraordinary certiorari remedy are not present in this petition.

Even if this Court does not find this petition to be procedurally improper, it should nevertheless be dismissed or denied on the grounds that it is premature because the media companies have simply disregarded their obligation to pursue their claims before Special Magistrate Judge Case.

Since the records sought to be unsealed fall within the four corners of Fla. Admin. R. Jud. Admin. 2.420(c)(9)(A), the trial court's findings to this effect should not be disturbed.  These records are largely private, wholly peripheral to the underlying litigation and implicate the substantial privacy rights of Mr. Bollea and other innocent third parties.   Moreover, since much of the information contained within these records has been found to be inadmissible at trial, granting the relief

requested by the media parties would seriously jeopardize Mr. Bollea's constitutional right to a fair trial by an impartial jury that has not been tainted by prejudicial pretrial publicity.

Should this Court elect not to summarily dismiss or deny this certiorari petition, Mr. Bollea respectfully requests that this matter be remanded to the trial court with instructions to, after the trial, further consider whether there are any additional judicial records should be either partially or wholly unsealed.

Respectfully submitted,

*/s/ Kenneth G. Turkel*
Kenneth G. Turkel, Esq.
Florida Bar No. 867233
Shane B. Vogt
Florida Bar No. 0257620
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel:  (813) 443-2199
Fax: (813) 443-2193
Email:  kturkel@bajocuva.com
Email:  svogt@bajocuva.com

David M. Caldevilla, Esq.
Florida Bar No. 654248
de la PARTE & GILBERT, P.A.
P.O. Box 2350
Tampa, FL  33601-2350
Tel: (813)229-2775
Email: dcaldevilla@dgfirm.com
Email: serviceclerk@dgfirm.com

Charles J. Harder, Esq.
PHV 102333
Douglas E. Mirell, Esq.
PHV 109885
HARDER MIRELL & ABRAMS LLP
132 South Rodeo Drive—Suite 301
Beverly Hills, CA  92012
Tel: (424) 203-1600
Fax: (424) 203-1601
Email: charder@hmafirm.com
Email: dmirell@hmafirm.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing is being electronically filed and will be furnished via CM/ECF via e-mail this 22nd day of December, 2015 to the following:

Michael Berry, Esquire
Levine Sullivan Koch & Schultz, LLP
1760 Market Street, Suite 1001
Philadelphia, PA  19103
mberry@lskslaw.com
*Pro Hac Vice Counsel for*
*Gawker Defendants*

Gregg D. Thomas, Esquire
Rachel E. Fugate, Esquire
Thomas & LoCicero PL
601 S. Boulevard
Tampa, Florida 33606
gthomas@tlolawfirm.com
rfugate@tlolawfirm.com
kbrown@tlolawfirm.com
abeene@tlolawfirm.com
*Counsel for Gawker Defendants*

Seth D. Berlin, Esquire
Paul J. Safier, Esquire
Alia L. Smith, Esquire
Michael D. Sullivan, Esquire
Levine Sullivan Koch & Schulz, LLP
1899 L. Street, NW, Suite 200
Washington, DC 20036
sberlin@lskslaw.com
psafier@lskslaw.com
asmith@lskslaw.com
msullivan@lskslaw.com
*Pro Hac Vice Counsel for*
*Gawker Defendants*

Timothy J. Conner
Holland & Knight LLP
50 North Laura Street, Suite 3900
Jacksonville, FL  32202
timothy.conner@hklaw.com


David R. Houston, Esquire
Law Office of David R. Houston
432 Court Street
Reno, NV 89501
dhouston@houstonatlaw.com

Charles D. Tobin
Holland & Knight LLP
800 17th Street N.W., Suite 1100
Washington, D.C.  20006
charles.tobin@hklaw.com
*Attorneys for Amici Curiae*

Allison M. Steele
Rahdert, Steele, Reynolds & Driscoll, P.L.
535 Central Avenue
St. Petersburg, FL  33701
amnestee@aol.com
asteele@rahdertlaw.com
ncampbell@rahdertlaw.com
*Attorneys for Amici Curiae*

*/s/ Kenneth G. Turkel*
Attorney