IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAWKER MEDIA, LLC and
GREGG D. THOMAS,

    Plaintiffs,

v.                                    Case No. 8:15-cv-01202-SCB-EAJ

THE FEDERAL BUREAU OF
INVESTIGATION and THE
EXECUTIVE OFFICE OF
UNITED STATES ATTORNEYS,

    Defendants.
_____/

**DEFENDANT FBI'S RESPONSE TO PLAINTIFFS'
MOTION FOR AN AWARD OF ATTORNEYS' FEES**

      Defendant, the Federal Bureau of Investigation ("FBI"), respectfully submits its response in opposition to Plaintiffs' Motion for Attorneys' Fees ("Motion") [Doc. 106] and respectfully submits that Plaintiffs' Motion must be denied in its entirety both generally against both Department of Justice components named and specifically with respect to FBI on the grounds that:

      (1)  Plaintiffs have not established that they are entitled to attorneys' fees from FBI because (a) Plaintiffs have admitted that they were seeking the information from Defendants to defend against a $100 million lawsuit filed by Mr. Terry Bollea in state court, and there is no public benefit flowing from this information;  (b) Plaintiffs' status as requestors who are using the results of this FOIA request for a commercial

benefit prevents them from recovering attorney fees; (c) Plaintiffs' interests in the requested documents are entirely private and not public; and/or (d) FBI's bases for its withholdings and redactions were entirely reasonable and well-founded in law.

Thus, FBI respectfully submits that Plaintiffs' Motion for Fees must be denied in its entirety, addressing each grounds for denial as follows:

## **MEMORANDUM OF LAW**

For purposes of this motion only, Defendant FBI will assume that Plaintiffs will be able to show that they were the prevailing parties and are therefore eligible for attorneys' fees. However, applications for an award of fees under the Freedom of Information Act ("FOIA") are subject to a two-step inquiry. Even if a party can show it is eligible for an award of attorneys' fees, the requester must nevertheless show he or she is "entitled" to the award. *See Weisberg v. Department of Justice*, 745 F.2d 1476, 1495 (D.C. Cir. 1984); *Dorsen v. United States Sec. & Exch. Comm'n*, 15 F. Supp. 3d 112, 116 (D.D.C. 2014).

### I.     **Plaintiffs Cannot Establish They are Entitled to Fees Against FBI**

Even if the Court were to determine that Plaintiffs are eligible for attorneys' fees, they must also show that they are entitled to such fees. To determine whether Plaintiffs are entitled to attorneys' fees, the Court must consider at least four factors: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the withholdings by the agencies. *See Weisberg v. Department of Justice, 745 F.2d 1476, 1498 (D.C. Cir. 1984); Dorsen v. United States Sec. &*

*Exch. Comm'n*, 15 F. Supp. 3d 112, 117 (D.D.C. 2014).

### A. Plaintiffs Cannot Demonstrate That The Purpose and/or Results Of This Lawsuit Produced Any Public Benefit

The public benefit factor "does not particularly favor attorneys' fees where the award would merely subsidize a matter of private concern; this factor rather speaks for an award where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Muffoletto v. Sessions*, 760 F. Supp. 268, 275 (E.D.N.Y. 1991) (citation omitted); *Barnard v. Department of Homeland Sec.*, 656 F. Supp. 2d 91, 99 (D.D.C. 2009) ("Plaintiff does not suggest that the documents which were released yielded information that citizens could rely on in marking 'vital political choices.'"). Here, this factor does not weigh in favor of attorneys' fees because in their complaint Plaintiffs stated only one reason for filing this FOIA lawsuit, which was that "the requested records [had] been ruled [by the state court] to be critical to Gawker's defense of a $100 million lawsuit brought by Hogan . . . ." Complaint [Doc. 1], ¶ 4, ¶ 15 ("Gawker sought these records in connection with its defense of a $100 million lawsuit that Hogan filed against it . . . ."). At no point in their complaint have Plaintiffs asserted that they filed this case to gather and dissiminate information on behalf of the public, so that the public would be able to scrutinize the actions of the federal government.

Similarly, Plaintiffs did not file their subsequent motion for summary judgment on behalf of the public. Instead, their stated purpose for filing the summary judgment motion was to obtain records to defend against the $100 million lawsuit filed by Mr. Hogan in state court. *See* Plaintiffs' Dispositive Motion for Summary

3

Judgment and Memorandum of Law [Doc. 5], p. 1 ("Gawker is currently defending against a $100 million lawsuit in Florida state court brought by the celebrity known as Hulk Hogan ('Hogan') . . . .").

Further, in one case cited by Plaintiffs in support of their motion for fees, the court actually states that legislative history shows that "Congress intended to limit the scope of public benefit in determining fees awards." *Whalen v. Internal Revenue Serv.*, 1993 WL 532506, *1, *5 (N.D. Ill. Dec. 20, 1993); *see also Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (noting "that the district court misapplied the public-benefit prong, interpreting it far too broadly.") (citation omitted). As *Whalen* makes clear, Plaintiffs paint with too broad a brush in claiming there is a public benefit in the information they have obtained through their FOIA litigation. The *Whalen* court reiterated that "[f]ees are unwarranted . . . if a business was using the FOIA . . . as a substitute for discovery in private litigation with the government." *Whalen*, 1993 WL 532506, at *5. Plaintiffs have used FOIA as a substitute for discovery in private litigation, and attorneys' fees are therefore not warranted.

Also, Plaintiffs are not entitled to attorneys' fees because of the nature of the information that they have received from FBI. A court may find a public benefit in information that would allow the public to observe how a federal agency operates. *See Dorsen v. United States Sec. & Exch. Comm'n*, 15 F. Supp. 3d 112, 122 (D.D.C. 2014). However, if the released documents create a "mere increase in general public knowledge of governmental actions," there is not a significant enough

4

public benefit to warrant an award of attorneys' fees.  *See id.*

The release of any documents in the possession of the government will create some benefit to the public regarding the knowledge of the citizens of their government.  *See Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979).  However, "Congress did not have this sort of broadly defined benefit in mind" when it enacted the attorneys' fees provision in the FOIA.  *See id.*  As noted earlier, the legislative history of this provision shows that Congress intended to award attorneys' fees only when the released information "is likely to add to the fund of information that citizens may use in making vital political choices."  *See id.*  The nature of the information Plaintiffs have obtained from the FBI, *i.e.*, various government forms and audio and video recordings, does not "add to the fund of information" to help the public to make political choices.

In fact, at the hearing before the Court on July 2, 2015, counsel for Plaintiffs stated that "[a] lot of these documents you have.  A lot of these redacted names you know.  It seems almost an exercise that we're all spending a great deal of time, effort, in an attempt to get this done before the trial starts on July 6th, when a lot of it you already have, a lot of it you already know, a lof of the redactions you're fully aware of who it is."  *See* July 2, 2015 Tr. at 43-45.  Plaintiffs' counsel acknowledged that not only could he guess the names that the government had redacted, but that he already knew the identity of some of those names through the media, and through information he already possessed.  *See id.* at 44, 46, 66-68, 70.  Plaintiffs' counsel argued that this information was already released to the "public;" thus, he

was entitled to receive it from Defendants in unredacted form.  *See id.*  When information that is released is already in the public domain, courts have found this factor does not weigh in favor of a fee award.  *See Tax Analysts v. United States Dep't of Justice*, 965 F.2d 1092, 1094-95 (D.C. Cir. 1992);  *Horsehead Indus., Inc. v. Environmental Protection Agency*, 999 F. Supp. 59, 69 (D.D.C. 1998) ("Therefore, the conclusion must be that the public benefit from the release is minimal and weighs against an award of fees."); *Morley v. C.I.A.*, 2016 WL 278193, *1, *3 (D.C. Cir. Jan. 21, 2016) ("The nature of the subject that the request seeks to illuminate is obviously important.  Where that subject is the Kennedy assassination—an event with few rivals in national trauma and in the array of passionately held conflicting explanations—showing potential public value is relatively easy.  This of course does not mean that a requester's mere claim of a relationship to the assassination *ipso facto* satisfies the public interest criterion."); *Peter S. Herrick's Customs & Int'l Trade Newsletter v. United States Customs & Border Prot.*, 2006 WL 3060012, *1, *6 (D.D.C. Oct. 26, 2006) ("Indeed, plaintiff has not identified how the 'vital political choices' of ordinary citizens would be affected in the least by insight into the internal standards and procedures that Customs uses in seizing property and contraband, handling such property, and initiating specific types of legal actions.") (citing *Cotton*, 63 F.3d at 1120).

      Here, the record shows, and Plaintiffs have admitted, that most of the information that they have been seeking from FBI has previously been publicly known.  Accordingly, Plaintiffs ultimately received information that had already been

available to them through other sources.  Consequently, their motion for attorney fees should be denied.  *See Tax Analysts*, 965 F.2d at 1094, 1096 ("[T]he news organization before [the court] was not entitled to attorney's fees because . . . the material it obtained was already publicly available.").  The information FBI has produced as a result of this FOIA litigation has been publically known, so it does not provide a public benefit.  Because the information does not add to the "fund of information that citizens may use in making vital political choices," this factor does not weigh in favor of an attorneys' fees award.  *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (citation omitted).

### B. Plaintiffs Further Cannot Overcome Their Predominant Commercial Interest, Weighing Against Entitlement To Fees

Plaintiffs also claim that the second and third factors, the commercial benefit and private interest factors, support an award of attorneys' fees because the determination of a commercial benefit is "made differently in the context of news organizations, because the actions they take as profit-seeking businesses are necessarily pursued in their capacity as surrogates for the public . . . ."  Motion, p. 11.  They further state that unless attorneys' fees are allowed for newspapers and television news shows that bring FOIA suits, those news outlets would wither away. *See* Motion, p. 11 (citing *Davy v. Central Intelligence Agency*, 550 F.3d 1155, 1160 (D.C. Cir. 2008)).  However, *Davy* is distinguishable from the present case because that case involved one individual who did not have the resources that Gawker has at its disposal.  Also, Mr. Davy attempted to obtain information to write a book about the assassination of President Kennedy, which the court found was not necessarily

a commercial endeavor.  See *Davy*, 550 F.3d at 1160.  Conversely, Gawker, as a large corporation, has stated publicly that it submitted their FOIA requests and subsequently commenced this lawsuit for the sole purpose of obtaining documents to defend against a $100 million lawsuit, which cannot be said not to constitute a commercial benefit.  The contrast between the present case and *Davy* is made even more obvious because the *Davy* court noted that Davy stated in a sworn declaration that "his book made a miniscule amount of money."  *Id.*, at 1161.

Plaintiffs quote *Davy* for the proposition that news interests in information should generally not be considered a commercial interest.  *See* Motion, pp. 11-12.  However, Plaintiffs leave out crucial information from the opinion.  Taken in context, it is clear that *Davy* does not stand for the proposition that a news organization should be awarded attorneys' fees when seeking information merely because it is a news organization.  *See Davy*, 550 F.3d at 1160-61.  Instead, *Davy* states that "a court would generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented . . . ."  *Id.*  Gawker baldly claims in its Motion, without any citation to law, that "when a news organization goes to court on behalf of the public's interest in access to information, or in defense of its right to publish newsworthy information, the 'commercial benefits' it may receive are subordinate to its role as a surrogate for the public."  Motion, pp. 12-13.  Besides not being supported by any source of law, it is not credible that a potential commercial benefit of $100 million to a large, successful organization would be subordinate to the public's interest in salacious videos, audio

recordings and documents collected by the federal government during a criminal investigation. Instead, contrary to Plaintiffs' assertion, it appears that Gawker is seeking a "public subsidy" for having to pursue litigation to defend itself against the lawsuit filed by Mr. Hogan. *Davy*, 550 F.3d at 1160.

### C. Plaintiffs Cannot Overcome Their Predominant Private Interest, Weighing Against Their Entitlement To Fees

With respect to the private interest factor, Plaintiffs argue that its interest "in the requested information goes far beyond simply defending a lawsuit. . . . [because it] concerns a news organization's defense of its First Amendment freedoms . . . ." Motion, p. 14. However, as noted above, Plaintiffs admitted that they commenced this lawsuit because they wanted to use defendants' records and information in the state court case to avoid a $100 million judgment. Plaintiffs' stated interest is, therefore, of a private character. *See Muffoletto v. Sessions*, 760 F. Supp. 268, 275 (E.D.N.Y. 1991) ("An award of attorney's fees is considered inappropriate where the lawsuit is commenced solely to further the private commercial interests of the plaintiff."); *Urdaneta v. Internal Revenue Serv.*, 2011 WL 3659591, *1, *2 (D.D.C. Mar. 17, 2011) ("[A]lthough the plaintiffs' interests were not necessarily commercial in nature, the plaintiffs' private and personal interests in the information were sufficient to motivate them to commence FOIA litigation against the IRS and the ICE.").

### D. FBI's Withholdings Were Entirely Reasonable and Well-Founded Under FOIA, Weighing Against A Fees Award

The last factor, the reasonableness of the withholdings and redactions, also

9

does not weigh in favor of an attorneys' fees award, as argued by Plaintiffs.  *See* Motion, pp. 14-17.  FBI ultimately withheld in full and redacted in part certain documents pursuant to FOIA Exemptions (b)(3), (b)(5), (b)(6), (b)(7)(C) and (b)(7)(E).  In an earlier phase of the case, Defendants explained in detail the reasons it withheld some documents in full and redacted other documents pursuant to the various FOIA exemptions.  *See* Defendants' Response in Opposition to Plaintiffs' Objections [Doc. 61].  Other than the names of certain people who have been widely known by the public in the context of this case, the Court has for the most part upheld Defendants' withholdings and redactions pursuant to Exemption (b)(6) and (b)(7)(C).  *See* Court Order Dated November 12, 2015 [Doc. 75].  Likewise, the Court upheld FBI's decisions with respect to Exemptions (b)(3), (b)(5) and (b)(7)(E).

The legislative history regarding the fourth factor shows that "Congress would not award fees where the government's withholding had a colorable basis in law but would ordinarily award them if the withholding appeared to have been made to avoid embarrassment or to frustrate the requester.  *See Republic of New Afrika v. Federal Bureau of Investigation*, 645 F. Supp. 117, 121-22 (D.D.C. 1986).  Accordingly, courts have found that the test for this factor is one of good faith.  *See id.* (citation omitted).  To prove bad faith, the complainant "must show that the government purposefully withheld FOIA documents, not that it merely delayed in producing them." *Id.* Even if the government is found to have intentionally held back records, it "may still prove good faith if it can show that it had a reasonable basis in

10

law for withholding; it need not prove that the information was in fact exempt, but need only show that it was not unduly recalcitrant or otherwise obdurate." Id., at 122.

In *Isometrics, Inc.*, the court found that an agency had acted in good faith while responding to plaintiff's FOIA request where the agency withheld records. *See Isometrics, Inc. v. Orr*, 1987 WL 8709, at *4 (D.D.C. Feb. 27, 1987) (citing S. Rep. No. 93–1854, 93rd Cong., 2d Sess. at 19 (1974)). The *Isometrics, Inc.* court said that "'without evidence of bad faith[,] the court would decline to impose a fee award to sanction sluggish agency response.'" *Id.* (citing *Simon v. United States*, 587 F. Supp. 1029, 1032 (D.D.C. 1984).

Plaintiffs here have complained on many occasions that they believe Defendants have been dilatory. FBI disagrees and notes that such is not an element when it comes to whether defendants' withholdings have been reasonable and well-founded. As the *Isometrics, Inc.* court noted, a "sluggish agency response" is not a basis for an award of attorneys' fees. *Id.* The question is whether FBI withheld the documents in good faith. The Court has upheld the vast majority of FBI's withholdings. With respect to its *Vaughn* index, FBI provided a reasonable amount of information and explained why it was withholding certain documents and redacted others. Based on these facts, FBI cannot be found to have acted unreasonably or that it behaved "obdurately or with[e]ld the documents in bad faith." *Urdaneta v. Internal Revenue Serv.*, 2011 WL 3659591, *1, *2 (D.D.C. Mar. 17, 2011) (citation omitted). Plaintiffs in the present case have not produced any

evidence that would suggest that FBI "purposely withheld the information sought by the plaintiffs." *Id.* In addition , even though FBI "ultimately produced responsive documents after the present litigation ensued, this fact does not suggest that the agency acted in bad faith . . . ." *Id.*

The main case Plaintiffs rely on with respect to this factor is *Piper*. *See* Motion, p. 14. While the court in *Piper* awarded attorneys' fees, that court also reiterated the legal standard for the fourth factor, namely that if the federal government's claims of exemptions are correct under the law, "fees should not be awarded." *Piper*, 339 F. Supp.2d at 22. Further, even where "the agency erroneously interprets the law, its withholdings will be considered reasonable if the interpretation has a colorable basis in law." *Id.*

Here, Plaintiffs' request for an award for attorneys' fees is belied by the record, because the vast majority of FBI's asserted exemptions pursuant to FOIA were entirely reasonable and well-founded pursuant to the FOIA. The record shows that FBI asserted FOIA Exemptions (b)(3), (b)(5) (b)(6) and (b)(7)(C) to withhold documents. Also, the record shows that the Court upheld most of FBI's claims of exemptions. *See* Court's Order of November 4, 2015 [Doc. 75]. In short, while the Court ultimately ordered FBI to unredact the names of specific persons because they were already known to the public, defendants' initial decisions to withhold in full or to redact portions of documents were both reasonable and colorable under the law. Thus, the fourth factor weighs against an award of attorneys' fees.

## II. Plaintiffs' Motion For Fees Must Be Denied Because Their Failure To Provide An Accompanying Fee Schedule Is Fatal

### A. Plaintiffs' Failure To Submit An Accompanying Fee Schedule With His Motion for Attorneys' Fees Bars Him from Relief Is Fatal

Plaintiffs have "the burden of establishing the reasonableness of its fee request, and supporting documentation must be of sufficient detail and probative value to enable the [C]ourt to determine with a high degree of certainty that such hours were actually and reasonably expended." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (alteration, internal quotation marks, and citation omitted). Thus, "fees and costs should not be awarded for excessive, redundant, or otherwise unnecessary work." *Summers v. Dep't of Justice*, 477 F. Supp. 2d 56, 63-64 (D.D.C. 2007); *see also Environmental Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993) ("[W]e properly disallow time spent in duplicative, unorganized or otherwise unproductive effort.") (internal quotation marks omitted).  Should a prevailing party request "an outrageously unreasonable amount," courts may deny the application for fees in its entirety. *Environmental Def. Fund*, 1 F.3d at 1258 (internal quotation marks omitted).  And "[i]n a case of less egregious overbilling, [courts] may impose a lesser sanction," such as reducing the award. *Id.*

The Eleventh Circuit has said that the party seeking attorneys' fees "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates," and that party must submit "specific and detailed evidence from which the court can determine the reasonable hourly rate." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (citing *Hensley v.*

13

*Eckerhart*, 461 U.S. 424, 437 (1983)). That party should also "have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id*. (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)).

It is clear that some of the hours billed by Gawker's attorneys cannot be attributed to the actions of FBI. For example, Plaintiffs cannot collect any attorneys' fees from FBI in connection with their motion for summary judgment because it was denied by the Court as moot. Accordingly, they should not be able to collect any billable hours from FBI for that motion. In addition, Plaintiffs cannot be awarded fees for the time they reviewed the documents that Defendants have produced in this FOIA case. Such time is not related to the claim on which they may have prevailed. *See The Sierra Club v. United States Envtl. Prot. Agency*, 75 F. Supp. 3d 1125, 1149 (N.D. Cal. 2014) ("Plaintiffs are not entitled to recover for time spent reviewing the documents they instituted this lawsuit to obtain.") (citing *Citizens for Responsibility & Ethics in Wash. v. United States Dep' t of Justice*, 825 F.Supp.2d 226, 231 (D.D.C.2011)) (noting that review of documents "is simply the price of making [a FOIA] request.").

Finally, as more fully explained above, Plaintiffs already knew the names that they asked to have unredacted. Plaintiffs knew them because they were publicly known, and Plaintiffs therefore gained nothing when the Court ordered FBI to unredact them. As pointed out above, the Court expressed concern over the

minimal value of unredacting publicly known names. In the end, while the Court ordered FBI to unredact the names of certain individuals whose names were in the public domain. Plaintiffs should not be allowed to charge any billable hours for this to FBI.

### B. Gregg Thomas is Not Entitled to Any Attorneys' Fees from EOUSA

No award of attorney fees should be made to a *pro se* plaintiff even if that plaintiff also is an attorney. *See Kay v. Ehrler*, 499 U.S. 432, 438 (1991). Because the fee-shifting provision of the FOIA was intended "'to encourage potential claimants to seek legal advice before commencing litigation,'" and because a *pro se* attorney, by definition, does not seek out the "'detached and objective perspective necessary'" to litigate his FOIA case, the overwhelming majority of courts have agreed with *Kay* and have held that a *pro se* attorney is not eligible for a fee award that otherwise would have had to be paid to counsel. *Id.*, at 434-35 n.4. This is particularly so because "[a]n award of attorney's fees was intended to relieve plaintiffs of the burden of legal costs, not reward successful claimants or penalize the government." *Burka v. United Statest Dep't of Health & Human Servs.*, 142 F.3d 1286, 1289-90 (D.C. Cir. 1998).

Accordingly, Mr. Gregg Thomas should not be awarded any attorneys' fees as against EOUSA. *See*, *e.g.*, *Pietrangelo v. United States Army*, 568 F.3d 341, 342 (2nd Cir. 2009) (joining its "sister Circuits" in holding that attorney appearing pro se in FOIA suit not eligible for award of fees); *Ray v. United States Dep't of Justice*, 87 F.3d 1250, 1252 (11th Cir. 1996) (deciding that principles announced in *Kay*

apply with "equal force" in FOIA case); *Kemmerly v. United States Dep't of Interior*, 2010 WL 2985813, at *8 (E.D. La. July 26, 2010) (finding D.C. Circuit's decision in *Burka* "persuasive") *aff'd* and remanded on other grounds, 403 Fed. App'x 303 (5th Cir. 2011); *Albino v. United States Postal Serv.*, 2002 WL 32345674, *1, *8 (W.D. Wis. May 20, 2002) (agreeing that *pro se* plaintiffs who are attorneys are barred from receiving attorney fees under the rationale of *Kay*); *Manos v. Department of the Air Force*, 829 F. Supp. 1191, 1193 (N.D. Cal. 1993) (stating that "fairness and sound policy" compel same treatment of attorney and non-attorney *pro se* FOIA plaintiffs); *Whalen v. Internal Revenue Serv.*, 1993 WL 532506, *1, *11 (N.D. Ill. Dec. 20, 1993) (finding "no satisfactory distinction between pro se FOIA litigants who are lawyers and those who are not for the purpose of awarding fees"); *but see Riser v. United States Dep't of State*, 2010 WL 4284925, *1, *8 (S.D. Tex. Oct. 22, 2010) (explaining that "'[p]ro se litigants are not entitled to attorney fees under either the FOIA or the Privacy Act unless the litigant is also an attorney'") (*quoting Smith v. O'Brien*, 1995 WL 413052, at *2 (5th Cir. 1995) (unpublished *per curiam*)); *Texas v. Interstate Commerce Comm'n.*, 935 F.2d 728, 731 (5th Cir. 1991) (pointing out that "lawyers who represent themselves in FOIA actions may recover under the fee-shifting provision").

## CONCLUSION

Based on the foregoing, FBI respectfully submits that the Court must deny Plaintiffs' motion for attorneys' fees against FBI in its entirely.

                                              **A. LEE BENTLEY, III**
                                              United States Attorney

                                              Respectfully submitted,

By:  *s/ E. Kenneth Stegeby*
       **E. KENNETH STEGEBY**
       Esquire Assistant U.S. Attorney
       USAO No. 112
       400 North Tampa Street, Ste. 3200
       Tampa, Florida 33602
       Telephone:  (813) 274-6087
       Facsimile:   (813) 274-6198
       Email: kenneth.stegeby@usdoj.gov
       *Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Counsel of Record:

| | |
|---|---|
| Alia L. Smith | Rachel E. Fugate |
| Gregg Darrow Thomas | Seth D. Berlin |
| Patrick Kabat | *Plaintiffs' Counsel* |

                                         *s/E. Kenneth Stegeby*
                                         E. Kenneth Stegeby