IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAWKER MEDIA, LLC and
GREGG D. THOMAS,

    Plaintiffs,

v.                                                                  Case No. 8:15-cv-01202-SCB-EAJ

THE FEDERAL BUREAU OF
INVESTIGATION and THE
EXECUTIVE OFFICE OF
UNITED STATES ATTORNEYS,

    Defendants.
_____/

**DEFENDANT EOUSA'S RESPONSE TO PLAINTIFFS'
MOTION FOR AN AWARD OF ATTORNEYS' FEES**

    Defendant, the Executive Office of United States Attorneys ("EOUSA"), respectfully submits its response in opposition to Plaintiffs' Motion for Attorneys' Fees ("Motion") [Doc. 106] and respectfully submits that Plaintiffs' Motion must be denied in its entirety both generally against both Department of Justice components named and specifically with respect to EOUSA on the grounds that:

    (1)  Plaintiffs have not  established their eligibility as "prevailing parties," who substantially prevailed against EOUSA because: (a) Defendant EOUSA processed Plaintiffs' FOIA request in its normal course of business and issued a response to Plaintiffs' FOIA request on May 22, 2015, without knowing that Plaintiffs had initiated this lawsuit; and (b) the Court ordered EOUSA to unredact a few names in its records, which does not constitute

a material alteration of the legal relationship between the parties;

(2) Plaintiffs have not established that they are entitled to attorneys' fees from EOUSA because (a) there is no public benefit inuring from the miniscule amount of information that EOUSA released, which, pursuant to Plaintiffs' own argument during the pendency of this litigation, was already made public; (b) Plaintiffs' status as requestors who intend to use the results of this FOIA request for commercial benefits prevents them from recovering attorneys' fees; (c) Plaintiffs' interests in the requested documents are entirely private and not public; and/or (d) EOUSA's bases for its withholdings and redactions were entirely reasonable and well-founded in law; and

(3) Plaintiffs' failure to submit a fee schedule is fatal to their Motion for Fees as they utterly fail to delineate the attorney time they deem recoverable for efforts about which they may allege to have substantially prevailed.

Thus, EOUSA respectfully submits that Plaintiffs' Motion for Fees must be denied in its entirety, addressing each ground for denial point-by-point as follows:

## **MEMORANDUM OF LAW**

Applications for an award of fees under the Freedom of Information Act ("FOIA") are subject to a two-step inquiry. First, the requester must show that he or she "substantially prevailed" and is therefore "eligible" for an award, and, second, the requester must show he or she is "entitled" to the award. *See Weisberg v. Department of Justice*, 745 F.2d 1476, 1495 (D.C. Cir. 1984); *Dorsen v. United States Sec. & Exch. Comm'n*, 15 F. Supp. 3d 112, 116 (D.D.C. 2014).

I.      **Plaintiffs Cannot Establish They are Eligible For Fees Against EOUSA**

   A.   **EOUSA's Initial Response To Plaintiff's FOIA Request Was Not the Result of the Filing of Plaintiff's Complaint In this Case**

Plaintiffs submit that they should be awarded attorney's fees because Defendants only responded to their FOIA request as a result of their filing this lawsuit. See Plaintiffs' Motion for an Award of Attorneys' Fees ("Motion") [Doc. 106], p. 2, ¶ 1. However, this is factually incorrect. EOUSA actually was poised to fully respond to Plaintiffs' FOIA request on May 22, 2015, at which time it was unaware of plaintiffs' lawsuit. *See* Fifth Declaration of Tricia Francis, attached hereto as Exhibit A, ¶¶ 1-2. Furthermore, the record shows that EOUSA's response to Plaintiffs' FOIA request occurred in the ordinary course of business, once EOUSA determined that it did not have a basis to assert an exemption pursuant to (b)(7)(A). *See* Declaration of Tricia Francis [Doc. 35-2], ¶¶ 9-13; Fifth Declaration of Tricia Francis, Exhibit A, ¶ 3. Consequently, EOUSA's actions regarding Plaintiffs' FOIA request was not caused by Plaintiffs' filing this lawsuit, but rather as a result of EOUSA's standard business practice responding to Plaintiffs' request and asserting the exemptions that it deemed to be proper.

While plaintiffs have subsequently complained in this lawsuit that EOUSA should be ordered to produce more documents and information, plaintiffs are incorrect in their assertion that the EOUSA did not produce anything prior to learning that EOUSA had been sued.

> B. **EOUSA Had A Very Minor Role In All Aspects of This Litigation, Having Only 63 Total Pages of Relevant Material; And Plaintiffs Did Not Substantially Prevail On Any Motion for Relief Concerning EOUSA's Withholdings In Connection with Those 63 Pages**

Plaintiffs argue that the Court ordered Defendants to produce more than 2,000 pages of documents as well as multiple audio and video files. See Motion, ¶ 2. Yet, out of all the documents implicated by Plaintiffs' FOIA request, , only 63 pages of records were attributed to EOUSA. . *See* Fourth Declaration of Tricia Francis [Doc. 81], ¶ 5. The specifics of EOUSA's disclosures concerning these 63 pages are detailed below

On May 22, 2015, EOUSA had prepared and submitted for mailing its first release letter and related documents to Plaintiffs, in which it made the following release determinations: 1) one page was released in full (an article, which appears to have been posted on the internet, that discusses the "Hulk Hogan SexTape"); 2) three pages were released in part (an email chain, dated February 23, 2015, between an AUSA and another member of staff at the U.S. Attorney's Office for the Middle District of Florida, which contain the names of these individuals, and the name and contact information of an FBI Agent); and 3) 59 pages of records were withheld in full. *See* Declaration of Tricia Francis [Doc. 35-2], ¶ 13. On June 24, 2015, the Court ordered that EOUSA review its materials and determine what additional materials, if any, could be release to Plaintiffs. *See* Courts' Order of June 24, 2015 [Doc. 31], p. 2. Specifically, the Court requested that EOUSA do the following, "[t]he EOUSA shall also reconsider whether the redacted emails are exempt in light of the fact that privacy concerns are no longer at issue based on the signed waivers. If they are not, the unredacted emails shall be turned over. In addition, the EOUSA is to turn over any documents they have deemed could be segregated for release." *Id*.

4

On June 25, 2015, pursuant to the Court's Order of June 24, 2015, EOUSA again reviewed its records and amended its prior release as follows: 1) released 10 additional pages in full (a privilege log that was prepared by attorneys representing Gawker Media in their separate civil lawsuit involving Mr. Bollea); 2) released 11 additional pages in part, which involved three pages of emails (communications between the Grand Jury ["GJ"] Assistant United States Attorney ["AUSA"] and David Houston in September 2013, which contain Mr. Bollea's name) and eight pages of letters and an attachment (communications between the GJ AUSA and David Houston in September 2013, which contain Mr. Bolllea's name, and a letter dated March 2014, between the GJ AUSA and Seth Berlin – an attorney for Gawker Media); and 3) withheld 38 pages in full. *See* Fourth Declaration of Tricia Francis [Doc. 81], ¶ 5; see also, Second Amended Vaughn [Doc. 80-1].[1] Accordingly, as of June 26, 2015, EOUSA had released 11 pages in full and 14 pages in part to Plaintiffs, and withheld 38 pages in full. *See id*.

On November 12, 2015, the Court ordered EOUSA to unredact the names of three specific individuals in documents that were originally withheld in full or in part by EOUSA. *See* Order dated November 12, 2015 [Doc. 78], pp. 2-3. Pursuant to the Court's Order, EOUSA released one page in full (a single-paged letter from the GJ AUSA to Seth Berlin, dated March 18, 2014, which was previously withheld in part) and eight pages in part that had been previously been withheld in full pursuant to (b)(7)(C) (letters and emails between the GJ AUSA and third parties in August and November 2013, and an email chain between

---

[1] The documents that EOUSA had released in part in June 26, 2015, are listed as Documents 13-16 in EOUSA's Vaughn Index.

the GJ AUSA and an attorney for Gawker Media, which contained notes written by the GJ AUSA – notes which the Court upheld as protectable pursuant to (b)(5)). Once EOUSA complied with this Order, as of November 20, 2015, EOUSA's releases to Plaintiffs comprised a total of: 1) 12 pages released in full; 2) 21 pages released in part; and 3) 30 pages withheld in full.[2]

Thus, Plaintiffs cannot show that, with respect to EOUSA, Gawker has incurred attorneys' fees and costs "in *significant* part from the Agencies' failure to comply both with their statutory obligations and with repeated orders of this Court." Motion, ¶ 4. The record clearly demonstrates the opposite with respect to EOUSA. Indeed, EOUSA's withholding were almost entirely upheld, with discrete exceptions for unredacting certain third party names that Plaintiffs conceded were already publicly known.

Accordingly, Plaintiffs' request for attorneys' fees from EOUSA should be denied on this basis.

### C. Plaintiffs Have Not Shown They Have Received Any Relief that Materially Alters Their Legal Relationship with EOUSA

A claimant will only be deemed a substantially prevailing party if he or she shows that there has been a "material alteration" of the "legal relationship" of the parties' based on an enforceable judgment that was decided on the merits or from a consent decree, and

---

[2] Subsequent to EOUSA's November 20, 2015 release, on December 4, 2015, EOUSA was provided with an additional record, by the District, which consisted of a single-page letter dated July 19, 2013. In this letter, the Grand Jury Assistant U.S. Attorney ("AUSA") informed the attorney for the subject of the Grand Jury investigation that the District was closing its investigation. Upon receiving this document, EOUSA promptly processed this document by redacting the name and contact information of the subject's attorney, pursuant to (b)(7)(C), and released this record in part.

plaintiffs have not done so.  *See Pennington v. United States Dep't of Justice*, 2007 WL 2492745, *1, *1 (D.D.C. Aug. 30, 2007) (quoting *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)); *Campaign for Responsible Transplantation v. Food & Drug Admin.*, 511 F.3d 187, 194 (D.C. Cir. 2007) ("[A] favorable order does not make a plaintiff a prevailing party unless the order constitutes judicial relief on the merits resulting in a court-ordered change in the legal relationship between the plaintiff and the defendant.") (citation omitted); *Oil, Chemical & Atomic Workers International Union v. Department of Energy*, 288 F.3d 452 (D.C. Cir. 2002)); *Summers v. United States Dep't of Justice*, 2007 WL 2111049, *1, *2 (D.D.C. July 23, 2007) *aff'd sub nom. Summers v. United States Dep't of Justice*, 569 F.3d 500 (D.C. Cir. 2009) (citation omitted).

As specifically detailed above, EOUSA's legal relationship with Plaintiffs was not materially altered by this litigation because the Court merely ordered EOUSA to unredact a few names already known to Plaintiffs.  Accordingly, EOUSA's legal position with Plaintiffs was not materially altered by this litigation such that Plaintiffs may establish prevailing party status and, thus, Plaintiffs are not eligible for attorney's fees from EOUSA.

## II. Plaintiffs Cannot Establish They are Entitled to Fees Against EOUSA

Even if the Court determines that Plaintiffs are eligible for attorneys' fees, they must also show that they are entitled to such fees.  To determine whether plaintiffs are entitled to attorneys' fees, the Court must consider at least four factors: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the withholdings by the agencies.  *See*

*Weisberg v. Department of Justice*, 745 F.2d 1476, 1498 (D.C. Cir. 1984); *Dorsen v. United States Sec. & Exch. Comm'n*, 15 F. Supp. 3d 112, 117 (D.D.C. 2014).

### A. Plaintiffs Cannot Demonstrate That The Purpose and/or Results Of This Lawsuit Produced Any Public Benefit

The public benefit factor "does not particularly favor attorneys' fees where the award would merely subsidize a matter of private concern; this factor rather speaks for an award where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Muffoletto v. Sessions*, 760 F. Supp. 268, 275 (E.D.N.Y. 1991) (citation omitted); *Barnard v. Department of Homeland Sec.*, 656 F. Supp. 2d 91, 99 (D.D.C. 2009) ("Plaintiff does not suggest that the documents which were released yielded information that citizens could rely on in marking 'vital political choices.'"). This factor does not weigh in favor of attorneys' fees because, in their complaint, Plaintiffs stated only one reason for filing this FOIA lawsuit, which was that "the requested records [had] been ruled [by the state court] to be critical to Gawker's defense of a $100 million lawsuit brought by Hogan . . . ." Complaint [Doc. 1], ¶ 4, ¶ 15 ("Gawker sought these records in connection with its defense of a $100 million lawsuit that Hogan filed against it . . . ."). At no point in their complaint did Plaintiffs assert that they filed this case to gather and disseminate information on behalf of the public so that the public would be able to scrutinize the actions of the federal government.

Similarly, plaintiffs did not file their subsequent motion for summary judgment on behalf of the public. Instead, their stated purpose for filing the summary judgment motion was to obtain records to defend against the $100 million lawsuit filed by Mr. Hogan in state court. *See* Plaintiffs' Dispositive Motion for Summary Judgment and Memorandum of Law

8

[Doc. 5], p. 1 ("Gawker is currently defending against a $100 million lawsuit in Florida state court brought by the celebrity known as Hulk Hogan ('Hogan') . . . .").

Further, in one case cited by Plaintiffs in support of their motion for fees, the court actually states that legislative history shows that "Congress intended to limit the scope of public benefit in determining fees awards." *Whalen v. Internal Revenue Serv.*, 1993 WL 532506, *1, *5 (N.D. Ill. Dec. 20, 1993); *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (noting "that the district court misapplied the public-benefit prong, interpreting it far too broadly.") (citation omitted). The *Whalen* opinion shows that plaintiffs are attempting to paint the claimed public benefit in the information they have obtained through their FOIA litigation with too broad a brush in the context of their motion for attorneys' fees. The *Whalen* court reiterated that "[f]ees are unwarranted . . . if a business was using the FOIA . . . as a substitute for discovery in private litigation with the government." *Whalen*, 1993 WL 532506, at *5. In the present case, like in the *Whalen* case, Plaintiffs' use of the FOIA as a substitute for discovery in private litigation, albeit against another private party rather than the federal government, weighs against an award of attorneys' fees.

With respect to EOUSA only, moreover, Plaintiffs are not entitled to attorneys' fees because of the nature of the information that they have received from EOUSA. A court may find a public benefit in information that would allow the public to observe how a federal agency operates. *See Dorsen v. United States Sec. & Exch. Comm'n*, 15 F. Supp. 3d 112, 122 (D.D.C. 2014). However, if the released documents create a "mere increase in general public knowledge of governmental actions," there is not a significant enough public benefit to warrant an award of attorneys' fees. *See id*. Similar to the present case, in *Dorsen*, the

9

plaintiff obtained five documents that showed the "collective vote of the Commissioners of the Securities and Exchange Commission that authorized both a formal investigation of Michael Lauer and the commencement of a civil action against Michael Lauer, including just the date and the vote." *See id.*, at 115. The *Dorsen* court found that the information the public gained from the SEC Commissioners' votes and the date they voted was minimal. *See id.*, at 122.

The Court in the present case ordered EOUSA to unredact the names of three third-party individuals in some of its documents. Moreover, the names of the third parties that Plaintiffs received from EOUSA were already known to Plaintiffs. At the hearing on July 2, 2015, the Court stated to Plaintiffs that "[a] lot of these documents you have. A lot of these redacted names you know. It seems almost an exercise that we're all spending a great deal of time, effort, in an attempt to get this done before the trial starts on July 6th, when a lot of it you already have, a lot of it you already know, a lot of the redactions you're fully aware of who it is." *See* July 2, 2015 Tr. at 43-45.

Indeed, Plaintiffs' counsel acknowledged that not only could he guess the names that the government had redacted, but that he already knew the identity of some of those names through the media, and through information he already possessed. *See id.* at 44, 46, 66-68, 70. Plaintiffs' counsel argued that this information was already released to the "public;" thus, he was entitled to receive it from defendants in unredacted form. *See id.* When information that is released is already in the public domain, courts have found this factor does not weigh in favor of a fee award. *See Tax Analysts v. United States Dep't of Justice*, 965 F.2d 1092, 1094-95 (D.C. Cir. 1992); *Horsehead Indus., Inc. v. Environmental*

10

*Protection Agency*, 999 F. Supp. 59, 69 (D.D.C. 1998) ("Therefore, the conclusion must be that the public benefit from the release is minimal and weighs against an award of fees."); *Morley v. C.I.A.*, 2016 WL 278193, *1, *3 (D.C. Cir. Jan. 21, 2016) ("The nature of the subject that the request seeks to illuminate is obviously important. Where that subject is the Kennedy assassination—an event with few rivals in national trauma and in the array of passionately held conflicting explanations—showing potential public value is relatively easy. This of course does not mean that a requester's mere claim of a relationship to the assassination *ipso facto* satisfies the public interest criterion."); *Peter S. Herrick's Customs & Int'l Trade Newsletter v. United States Customs & Border Prot.*, 2006 WL 3060012, *1, *6 (D.D.C. Oct. 26, 2006) "(Indeed, plaintiff has not identified how the "vital political choices" of ordinary citizens would be affected in the least by insight into the internal standards and procedures that Customs uses in seizing property and contraband, handling such property, and initiating specific types of legal actions.").

Plaintiffs, through their own admission at the hearing of July 2, 2015, ultimately received information from EOUSA that had already been available to them through other sources. More specifically, the Plaintiffs only received from EOUSA their own spreadsheet information and certain unredacted names, none of which inured to the public benefit.

Because the records that EOUSA produced in full and in part did not reveal any information that serves a public benefit, Plaintiffs cannot satisfy this prong of the showing required to demonstrate entitlement to attorney's fees under FOIA. Consequently, their motion for attorney fees should be denied on this basis. *See Tax Analysts*, 965 F.2d at 1094, 1096 ("[T]he news organization before [the court] was not entitled to attorney's fees

11

because . . . the material it obtained was already publicly available."). As EOUSA only produced a total of twelve pages in full, and twenty-two pages in part, EOUSA's production does not weigh in favor of an attorneys' fees award because the documents do not add to the "fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (citation omitted).

### B. Plaintiffs Further Cannot Overcome Their Predominant Commercial Interest, Also Weighing Against Entitlement To Fees

Plaintiffs also claim that the second and third factors, the commercial benefit and private interest factors, support an award of attorneys' fees because the determination of a commercial benefit is "made differently in the context of news organizations, because the actions they take as profit-seeking businesses are necessarily pursued in their capacity as surrogates for the public . . . ." Motion, p. 11. They further state that unless attorneys' fees are allowed for newspapers and television news shows that bring FOIA suits, those news outlets would wither away. *See* Motion, p. 11 (citing *Davy*, 550 F.3d at 1160). However, as noted above, the *Davy* decision involved one individual who did not have the resources that Gawker has at its disposal. *See Davy*, 550 F.3d at 1160. Moreover, Davy involved a scholarly endeavor rather than a commercial, as here, where Gawker, as a large corporation, has stated publicly that it submitted their FOIA requests and subsequently commenced with this lawsuit for the sole purpose of obtaining documents to defend against a $100 million lawsuit.

### C. Plaintiffs Further Cannot Overcome Their Predominant Private Interest, Weighing Against Their Entitlement To Fees

With respect to the private interest factor, Plaintiffs argue that its interest "in the

requested information goes far beyond simply defending a lawsuit. . . . [because it] concerns a news organization's defense of its First Amendment freedoms . . . ." Motion, p. 14. However, as noted above, Plaintiffs admitted that they commenced this lawsuit because they wanted to use defendants' records and information in the state court case to avoid being burdened with a $100 million judgment. Plaintiffs' stated interest is of a private character. *See Muffoletto v. Sessions*, 760 F. Supp. 268, 275 (E.D.N.Y. 1991) ("An award of attorney's fees is considered inappropriate where the lawsuit is commenced solely to further the private commercial interests of the plaintiff."); *Urdaneta v. Internal Revenue Serv.*, 2011 WL 3659591, *1, *2 (D.D.C. Mar. 17, 2011) ("[A]lthough the plaintiffs' interests were not necessarily commercial in nature, the plaintiffs' private and personal interests in the information were sufficient to motivate them to commence FOIA litigation against the IRS and the ICE.").

### D. EOUSA's Withholdings Were Entirely Reasonable and Well-Founded Under FOIA, Further Weighing Against A Fees Award

The last factor, the reasonableness of the withholdings and redactions, also does not weigh in favor of an attorneys' fees award, as argued by plaintiffs. *See* Motion, pp. 14-17. EOUSA withheld in full and redacted in part documents pursuant to FOIA Exemptions (b)(5) and (7)(C). In an earlier phase of the case, defendants explained in detail the reasons it withheld some documents in full and redacted other documents pursuant to Exemptions (b)(5) and (7)(C). *See* Defendants' Response in Opposition to Plaintiffs' Objections [Doc. 61], pp. 11-15. The Court upheld in large part Defendants' withholdings and redactions. *See* Court Order Dated November 12, 2015 [Doc. 78], pp. 2-3. The Court only ordered EOUSA to unredact three names in four documents and unredact one document in full, but it

otherwise ruled in EOUSA's favor regarding Exemptions (b)(5) and (7)(C).

The legislative history regarding the fourth factor shows that "Congress would not award fees where the government's withholding had a colorable basis in law but would ordinarily award them if the withholding appeared to have been made to avoid embarrassment or to frustrate the requester. *See Republic of New Afrika v. Federal Bureau of Investigation*, 645 F. Supp. 117, 121-22 (D.D.C. 1986). Accordingly, courts have found that the test for this factor is one of good faith. *See id*. (citation omitted). To prove bad faith, the complainant "must show that the government purposefully withheld FOIA documents, not that it merely delayed in producing them." *Id*.

The main case Plaintiffs rely on with respect to this factor is *Piper*. *See* Motion, p. 14. While the court in *Piper* awarded attorneys' fees, that court also reiterated the legal standard for the fourth factor, namely that if the federal government's claims of exemptions are correct under the law, "fees should not be awarded." *Piper*, 339 F. Supp.2d at 22. Further, even where "the agency erroneously interprets the law, its withholdings will be considered reasonable if the interpretation has a colorable basis in law." *Id*.

Here, Plaintiffs' request for an award for attorney fees is belied by the record, because Defendant EOUSA's asserted exemptions pursuant to FOIA were entirely reasonable and well-founded pursuant to the FOIA. The record shows that EOUSA asserted (b)(5) and (b)(7)(C) to withhold in full and in part some documents, and most of those exemptions were upheld by the Court. *See* Second Amended Vaughn of EOUSA [DOC. 80-1]; *see also* Second Declaration of Tricia Francis at 3-5 [Doc. 37]; Court Order of November 12, 2015 [Doc. 78].

Regarding the records that EOUSA had released in part (Documents 9-19), the Court ordered that EOUSA redact the names of individuals who were already known to the Plaintiffs, but allowed EOUSA to continue to withhold the names and contact information of other third parties whose identities were not known to the Plaintiffs, and who did not submit Certificates of Identity with Plaintiffs' FOIA request. *Id.* at 2-3.[3] Accordingly, defendants' decisions to withhold in full or to redact portions of documents were both reasonable and colorable under the law. Thus, the fourth factor weighs against an award of attorneys' fees.

### III.    Plaintiffs' Motion For Fees Must Be Denied Because Their Failure To Provide An Accompanying Fee Schedule Is Fatal

#### A.    Plaintiffs' Failure To Submit An Accompanying Fee Schedule With His Motion for Attorneys' Fees Bars Him from Relief Is Fatal

Plaintiffs have "the burden of establishing the reasonableness of its fee request, and supporting documentation must be of sufficient detail and probative value to enable the [C]ourt to determine with a high degree of certainty that such hours were actually and reasonably expended." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (alteration, internal quotation marks, and citation omitted). Thus, "fees and costs should not be awarded for excessive, redundant, or otherwise unnecessary work." *Summers v. Dep't of Justice*, 477 F. Supp. 2d 56, 63-64 (D.D.C. 2007); *see also Environmental Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993) ("[W]e properly disallow time spent in duplicative, unorganized or otherwise unproductive effort.") (internal quotation marks omitted). Should a prevailing party request "an outrageously unreasonable amount," courts

---

[3]  EOUSA originally redacted a name in Document 16 and released it in part. However, pursuant to the Court's November 12, 2015 Order, EOUSA unredacted that name and released it in full.

15

may deny the application for fees in its entirety. *Environmental Def. Fund*, 1 F.3d at 1258 (internal quotation marks omitted). And "[i]n a case of less egregious overbilling, [courts] may impose a lesser sanction," such as reducing the award. *Id*.

The Eleventh Circuit has said that the party seeking attorneys' fees "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates," and that party must submit "specific and detailed evidence from which the court can determine the reasonable hourly rate." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). That party should also "have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id*. (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)).[4] At the very least, should the Court allow Plaintiffs to submit a fee schedule, Defendants request an opportunity to brief the issue of reasonableness.

### B. Gawker On The One Hand Seeks Certain Fees for Costs That Are Unrecoverable And The Other Seeks Fees They Cannot Recover From EOUSA

It is clear that the vast majority of hours billed cannot be attributed to the actions of EOUSA. For example, Plaintiffs cannot collect any attorneys' fees from EOUSA in connection with any administrative appeal because plaintiffs did not appeal any of EOUSA's

---

[4] Gawker has provided counsel for the United States with its billing records in a letter sent for settlement purposes. This does not satisfy Gawker's obligation to file those records with its motion for fees, however, so that the Court can make its own individual assessment of whether the fees are reasonable.

16

decisions to withhold or redact documents.  Thus, any time spent on administrative appeals cannot possibly be attributed to EOUSA.  EOUSA anticipates that Plaintiffs may attempt to attribute to EOUSA certain attorney costs that are not recoverable against EOUSA.  For example, Plaintiffs cannot be awarded fees for the time they reviewed the documents that Defendants have produced in this FOIA case.  Such time is not related to the claim on which they may have prevailed.  *See The Sierra Club v. United States Envtl. Prot. Agency*, 75 F. Supp. 3d 1125, 1149 (N.D. Cal. 2014) ("Plaintiffs are not entitled to recover for time spent reviewing the documents they instituted this lawsuit to obtain.") (citing *Citizens for Responsibility & Ethics in Wash. v. United States Dep' t of Justice*, 825 F.Supp.2d 226, 231 (D.D.C.2011)) (noting that review of documents "is simply the price of making [a FOIA] request.").

Also, in terms of Plaintiffs' Motion for Summary Judgment, even if Plaintiffs' work on the summary judgment motion is compensable, they barely mention EOUSA in their motion.  Therefore, they could not have attributed  many hours on the motion with respect to the EOUSA.

Finally, as more fully explained in Section II.A, Plaintiffs already knew the names that they asked the Court to order EOUSA to release.  Pursuant to Plaintiffs' arguments at the hearing on July 2, 2015, Plaintiffs knew those names because they were publicly known; therefore, they gained nothing when the Court ordered EOUSA to release them.  Accordingly, they  should not be granted attorneys' fees for any work related to those releases by EOUSA.   As mentioned above, the Court has noted on the record that there is little value in unredacting the names that Plaintiffs already knew.  In the end, the Court

17

ordered EOUSA to unredact the name of three individuals in its documents; thus, Plaintiffs should not be allowed to charge any billable hours on the part of EOUSA.

### C.  Gregg Thomas is Not Entitled to Any Attorneys' Fees from EOUSA

No award of attorney fees should be made to a *pro se* plaintiff even if that plaintiff also is an attorney.  *See Kay v. Ehrler*, 499 U.S. 432, 438 (1991).  Because the fee-shifting provision of the FOIA was intended "'to encourage potential claimants to seek legal advice before commencing litigation,'" and because a *pro se* attorney, by definition, does not seek out the "'detached and objective perspective necessary'" to litigate his FOIA case, the overwhelming majority of courts have agreed with *Kay* and have held that a *pro se* attorney is not eligible for a fee award that otherwise would have had to be paid to counsel.  *Id*., at 434-35 n.4.  This is particularly so because "[a]n award of attorney's fees was intended to relieve plaintiffs of the burden of legal costs, not reward successful claimants or penalize the government."  *Burka v. United Statest Dep't of Health & Human Servs*., 142 F.3d 1286, 1289-90 (D.C. Cir. 1998).

Accordingly, Mr. Gregg Thomas should not be awarded any attorneys' fees as against EOUSA.  *See, e.g*., *Pietrangelo v. United States Army*, 568 F.3d 341, 342 (2nd Cir. 2009) (joining its "sister Circuits" in holding that attorney appearing *pro se* in FOIA suit not eligible for award of fees); *Ray v. United States Dep't of Justice*, 87 F.3d 1250, 1252 (11th Cir. 1996) (deciding that principles announced in *Kay* apply with "equal force" in FOIA case); *Kemmerly v. United States Dep't of Interior*, 2010 WL 2985813, at *8 (E.D. La. July 26, 2010) (finding D.C. Circuit's decision in *Burka* "persuasive") *aff'd* and remanded on other grounds, 403 Fed. App'x 303 (5th Cir. 2011); *Albino v. United States Postal Serv.*, 2002

WL 32345674, *1, *8 (W.D. Wis. May 20, 2002) (agreeing that *pro se* plaintiffs who are attorneys are barred from receiving attorney fees under the rationale of *Kay*); *Manos v. Department of the Air Force*, 829 F. Supp. 1191, 1193 (N.D. Cal. 1993) (stating that "fairness and sound policy" compel same treatment of attorney and non-attorney *pro se* FOIA plaintiffs); *Whalen v. Internal Revenue Serv.*, 1993 WL 532506, *1, *11 (N.D. Ill. Dec. 20, 1993) (finding "no satisfactory distinction between *pro se* FOIA litigants who are lawyers and those who are not for the purpose of awarding fees"); *but see Riser v. United States Dep't of State*, 2010 WL 4284925, *1, *8 (S.D. Tex. Oct. 22, 2010) (explaining that "'[p]ro se* litigants are not entitled to attorney fees under either the FOIA or the Privacy Act unless the litigant is also an attorney'" (quoting *Smith v. O'Brien*, 1995 WL 413052, at *2 (5th Cir. 1995) (unpublished *per curiam*)); Texas v. ICC, 935 F.2d 728, 731 (5th Cir. 1991) (pointing out that "lawyers who represent themselves in FOIA actions may recover under the fee-shifting provision").

/ / /

/ / /

## CONCLUSION

Based on the foregoing, EOUSA respectfully submits that the Court must deny plaintiffs' motion for attorneys' fees against EOUSA in its entirely.

        **A. LEE BENTLEY, III**
        United States Attorney

        Respectfully submitted,

By: *s/ E. Kenneth Stegeby*
        **E. KENNETH STEGEBY**
        Esquire Assistant U.S. Attorney
        USAO No. 112
        400 North Tampa Street, Ste. 3200
        Tampa, Florida 33602
        Telephone: (813) 274-6087
        Facsimile: (813) 274-6198
        Email: kenneth.stegeby@usdoj.gov
        *Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Counsel of Record:

| | |
|---|---|
| Alia L. Smith | Rachel E. Fugate |
| Gregg Darrow Thomas | Seth D. Berlin |
| Patrick Kabat | *Plaintiffs' Counsel* |

        *s/E. Kenneth Stegeby*
        E. Kenneth Stegeby